## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.* [1],<br><br>　　　　　Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>(Jointly Administered) |
| BRIAN SKAJEM, LISA PAPATZIMAS, ERIN TUTTLE, DAVID ELLENDER, DARA COHEN, MATT LOZE, JESSICA STOECKELER, HEATHER BUNDY, CAREY CAMPBELL, KELLY BURKE HOPKINS, COURTNEY SMITH, on behalf of themselves and behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC.; REDBOX AUTOMATED RETAIL, LLC; WILLIAM J. ROUHANA, JR., AMY NEWMARK, JOHN T. YOUNG, ROBERT H. WARSHAUER, BART SCHWARTZ, and DOES 1-500, inclusive,<br><br>　　　　　Defendants. | Adv. Pro. No. 24-50128 (MFW) |

## FIRST AMENDED COMPLAINT

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

BRIAN SKAJEM, LISA PAPATZIMAS, ERIN TUTTLE, DAVID ELLENDER, DARA COHEN, MATT LOZE, JESSICA STOECKELER, HEATHER BUNDY, CAREY CAMPBELL, KELLY BURKE HOPKINS, COURTNEY SMITH (defined below) ("<u>Plaintiffs</u>") by and through their undersigned counsel, hereby file this *Complaint* against Defendants CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC. ("<u>CSSE</u>"); REDBOX AUTOMATED RETAIL, LLC; WILLIAM J. ROUHANA, JR., AMY NEWMARK, (collectively "<u>Defendants</u>") on behalf of themselves and the class of all other similarly situated current and former employees and common law employees of Defendants as follows:

## <u>NATURE OF THE ACTION</u>[2]

1.      This Complaint arises out of Defendants' greed at shocking levels that one could call criminal. In a nutshell, Plaintiffs are informed and believe that Defendants engaged in a scheme to: (1) defraud employees out of their hard-earned compensation and siphon it away for their own personal benefit, and (2) deduct wages from employees' pay checks for, *inter alia*, medical and/or dental insurance premiums, while allowing these policies to lapse and ultimately get canceled. This resulted in employees unknowingly incurring millions in unreimbursed medical expenses.

2.      To accomplish this, Plaintiffs are informed and believe that Defendant CSSE and its founders were engaged in an elaborate "Ponzi Scheme," setting up multiple business entities under the umbrella of the until-now warm-hearted brand "Chicken Soup for the Soul."

3.      Specifically, Plaintiffs are informed and believe that Defendants first set up the Chicken Soup for the Soul Productions, LLC entity, and thereafter set up the corporation named Chicken Soup for the Soul Entertainment, Inc. Under this latter company, additional entities were

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms below.

formed and/or acquired, including, but not limited to:

      a)      CSS AVOD, Inc.

      b)      Pivotshare, Inc.

      c)      Powerslam, Inc.

      d)      A Sharp, Inc.

      e)      Screen Media Ventures, LLC

      f)      757 Film Acquisition LLC

      g)      Digital Media Enterprises LLC

      h)      Screen Media Films, LLC

      i)      TOFG LLC

      j)      BD Productions, LLC

      k)      PH 2017, LLC

      l)      VRPTC, LLC

      m)      VRP2018, LLC

      n)      RSH00D2 017, LLC

      o)      The Fixer 2018 LLC

      p)      GFBS2, LLC

      q)      CSSESIG, LLC

      r)      Parkside Entertainment, Inc.

      s)      Halcyon Television, LLC

      t)      High Park Entertainment 20/20 Inc.

      u)      RB Second Merger Sub LLC

      v)      Chicken Soup for the Soul Television Group, LLC

3

w)      Chicken Soup for the Soul Studios, LLC

x)      Pet Caves, LLC

y)      Locomotive Global Holdings, Inc.

z)      Remiz Cardoz

aa)     Locomotive Global Holdings Inc.

bb)     Locomotive Global Inc.

cc)     Locomotive Media LLP

dd)     Halcyon Studios, LLC

ee)     Wedding Productions, LLC

ff)     LGBT Talk, LLC

gg)     Landmark Studio Group, LLC

hh)     ITBB, LLC

ii)     Safehaven 2020 Inc.

jj)     LSG 2020, Inc.

kk)     Redbox Automated Retail, LLC

4.      Plaintiffs seek relief on behalf of themselves and the members of the Plaintiff class as a result of employment policies, practices and procedures more specifically described below, which violate the California Labor Code, and the orders and standards promulgated by the California Department of Industrial Relations, Industrial Welfare Commission, and Division of Labor Standards, and which have resulted in the failure of Defendants to pay Plaintiffs and members of the Plaintiff classes all wages due to them.

5.      Plaintiffs are informed and believe that Defendants have engaged in, among other things, a system of willful violations of the California Labor Code, California Business and

Professions Code, and applicable IWC wage orders by creating and maintaining policies, practices and customs that knowingly deny employees the above stated rights and benefits.

6.      Plaintiffs are informed and believe that the policies, practices and customs of Defendants described above and below have further resulted in unjust enrichment of Defendants.

7.      Plaintiffs are informed and believe that Plaintiffs were victims of the policies, practices and customs of Defendants complained of in this action in ways that have deprived them of the rights guaranteed to them by California Labor Code §§ 200, 201-203, 204, 226, 226(a), 510, 512, 1194, 1197, 2802, 12 California Code of Regulations § 11040, and California Business and Professions Code §17200, et seq., (Unfair Practices Act).

8.      Plaintiffs are informed and believe that as of 2024 alone, Defendants employed approximately 1,200 workers.

9.      Plaintiffs are informed and believe that at all times material hereto, each of the Defendants named herein was the agent, employee, alter ego and/or joint venturer of, or working in concert with each of the other Co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity.  To the extent said acts, conduct, and omissions were perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting Defendants.

10.      Plaintiffs are informed and believe that at all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

11.      Plaintiffs are informed and believe that at all times herein mentioned, the acts and omissions of the Defendants contributed to the various acts and omissions of each and all of the

other Defendants in proximately causing the injuries and damages as herein alleged.  At all times herein mentioned, each Defendant ratified each and every act or omission alleged below.  At all times herein mentioned, each Defendant aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages as herein alleged.

12.     The true names and capacities of Defendants DOES 1 through 500 are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names.  Plaintiffs will seek leave to amend this Complaint to allege such names and capacities as soon as they are ascertained. Plaintiffs are informed and believe that each of the fictitiously named Defendants is in some manner responsible, liable, and/or obligated to Plaintiffs and the Class in connection with the acts alleged herein.

13.     Plaintiffs are informed and believe that the members of the Plaintiff class, including the Representative Plaintiffs named herein, have been employed during the Class Period.  The practices and policies which are complained of by way of this Complaint are enforced throughout the State of California and the United States.

14.     Prior to the Petition Date, the Plaintiffs and putative class members were employed by the Debtors.

### JURISDICTION AND VENUE

15.     This adversary proceeding is commenced pursuant to Bankruptcy Rule 7001(1), (7) and (9) and the Class Action Fairness Act ("CAFA") as incorporated in 28 U.S.C. § 1332(d) on behalf of all persons who were employed by CSSE excluding the named defendants. Plaintiffs consent to the entry of final orders or judgments by the Bankruptcy Court in this matter.

16.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

17.     This Court has personal jurisdiction over the Defendants pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure.

18.     The unlawful acts alleged herein occurred in this District and others, thus venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

19.     Plaintiffs are informed and believe that Defendant Chicken Soup For the Soul Entertainment, Inc. is a Delaware Corporation authorized to do business throughout the United States, including California and has done a substantial amount of business in California during the relevant time period.

20.     Plaintiffs are informed and believe that Redbox Automated Retail, LLC is a Delaware Limited Liability Company authorized to do business throughout the United States, including California and has done a substantial amount of business in California during the relevant time period.

21.     Plaintiffs are informed and believe that sometime during the relevant time period, Defendant William J. Rouhana, Jr. was a corporate officer and/or board member of the CSSE Defendants herein and is therefore liable pursuant to Labor Code section 558.1 and other governing statutes, including the Fair Labor Standards Act ("FLSA"). Under the FLSA, there is also liability for individuals or employers who violate wage and hour laws. Essentially, corporate officers, directors, and managing agents can be held personally liable for FLSA violations if they are actively involved in the decision-making/operational control that leads to those violations.

22.     Plaintiffs are informed and believe that Defendant Rouhana violated, or caused to be violated, Labor Code sections or provisions regulating hours and days of work within the definition of Labor Code § 558.1 and is therefore liable for such wage and hour violations pursuant

to such statute. Plaintiffs are further informed and believe that Defendant Rouhana had a direct and/or active role that caused the legal violations alleged herein, including but not limited to: the unauthorized withdrawals from employees' pay for benefits that were not received; unpaid wages, bonuses, and/or commissions; and/or other losses to employees.

23.    Plaintiffs are informed and believe that during the relevant time period, Defendant Amy Newmark was a corporate officer and/or board member of the CSSE Defendants herein who is therefore liable pursuant to pursuant to Labor Code section 558.1 and other governing statutes, including the FLSA. Under the FLSA, there is also liability for individuals or agents acting on behalf of employers who violate wage and hour laws. Essentially, corporate officers, directors, and managing agents can be held personally liable for FLSA violations if they are actively involved in the decision-making/operational control that leads to those violations. Plaintiffs are informed and believe that Defendant Newmark violated, or caused to be violated, Labor Code sections or provisions regulating hours and days of work within the definition of Labor Code § 558.1 and FLSA and is therefore liable for such wage and hour violations pursuant to such statutes. Plaintiffs are further informed and believe that Defendant Newmark had a direct and/or active role that caused the legal violations alleged herein, including but not limited to: the unauthorized withdrawals from employees' pay for benefits that were not received; unpaid wages, bonuses, and/or commissions; and/or other losses to employees.

24.    Plaintiffs are informed and believe that during the relevant time period, Defendant John T. Young was a corporate officer and/or board member of the CSSE Defendants herein who is therefore liable pursuant to pursuant to Labor Code section 558.1 and other governing statutes, including the FLSA. Under the FLSA, there is also liability for individuals or agents acting on behalf of employers who violate wage and hour laws. Essentially, corporate officers, directors, and

managing agents can be held personally liable for FLSA violations if they are actively involved in the decision-making/operational control that leads to those violations. Plaintiffs are informed and believe that Defendant Young violated, or caused to be violated, Labor Code sections or provisions regulating hours and days of work within the definition of Labor Code § 558.1 and FLSA and is therefore liable for such wage and hour violations pursuant to such statutes. Plaintiffs are further informed and believe that Defendant Young had a direct and/or active role that caused the legal violations alleged herein, including but not limited to: the unauthorized withdrawals from employees' pay for benefits that were not received; unpaid wages, bonuses, and/or commissions; and/or other losses to employees.

25.     Plaintiffs are informed and believe that during the relevant time period, Defendant Robert Warshauer was a corporate officer and/or board member of the CSSE Defendants herein who is therefore liable pursuant to pursuant to Labor Code section 558.1 and other governing statutes, including the FLSA. Under the FLSA, there is also liability for individuals or agents acting on behalf of employers who violate wage and hour laws. Essentially, corporate officers, directors, and managing agents can be held personally liable for FLSA violations if they are actively involved in the decision-making/operational control that leads to those violations. Plaintiffs are informed and believe that Defendant Warshauer violated, or caused to be violated, Labor Code sections or provisions regulating hours and days of work within the definition of Labor Code § 558.1 and FLSA and is therefore liable for such wage and hour violations pursuant to such statutes. Plaintiffs are further informed and believe that Defendant Warshauer had a direct and/or active role that caused the legal violations alleged herein, including but not limited to: the unauthorized withdrawals from employees' pay for benefits that were not received; unpaid wages, bonuses, and/or commissions; and/or other losses to employees.

26.     Plaintiffs are informed and believe that during the relevant time period, Defendant Bart Schwartz was a corporate officer and/or board member of the CSSE Defendants herein who is therefore liable pursuant to pursuant to Labor Code section 558.1 and other governing statutes, including the FLSA. Over the past 30 years, Defendant Schwartz's impressive resume includes, but is not limited to serving as chairman of public biopharma company KADMON; Receiver of a Madoff feeder fund valued at $1.2 billion;  Safety Monitor of General Motors, Monitor of Steven Cohen's hedge fund; Federal Monitor of the New York City Housing Authority for five years, an Authority housing; Chief of the Criminal Division of the United States Attorney's Office for the Southern District of New York. Notably, he resigned as receiver in a white-collar fraud case after the Securities and Exchange Commission accused him of a conflict of interest and running up fees. https://nymag.com/intelligencer/2019/02/new-nycha-monitor-bart-schwartz-clashed-with-the-sec.html

27.     Plaintiffs are informed and believe that under the FLSA, there is also liability for individuals or agents acting on behalf of employers who violate wage and hour laws. Essentially, corporate officers, directors, and managing agents can be held personally liable for FLSA violations if they are actively involved in the decision-making/operational control that leads to those violations. Plaintiffs are informed and believe that Defendant Schwartz violated, or caused to be violated, Labor Code sections or provisions regulating hours and days of work within the definition of Labor Code § 558.1 and FLSA and is therefore liable for such wage and hour violations pursuant to such statutes. Plaintiffs are further informed and believe that Defendant Schwartz had a direct and/or active role that caused the legal violations alleged herein, including but not limited to: the unauthorized withdrawals from employees' pay for benefits that were not received; unpaid wages, bonuses, and/or commissions; and/or other losses to employees.

28.     Plaintiffs are informed and believe that HPS Partners, LLC touts itself as a "leading global investment firm" whose clients have entrusted them with approximately "$148 billion of assets under management as of September 2024." *About Us: Creating value for our clients,* HPS Partners Home Page, http://hpspartners.com/en/home/ (last visited January 26, 2025).

29.     Plaintiffs Brian Skajem, Lisa Papatzimas, Erin Tuttle, David Ellender, Dara Cohen, Matt Loze, Jessica Stoeckeler, Heather Bundy, Carey Campbell, Kelly Burke Hopkins, Courtney Smith were employed by Defendant CSSE during the relevant class periods.

## CLASS ACTION ALLEGATIONS

30.     Plaintiffs bring this class action pursuant to Rules 7023(a) and (b)(3) of the Federal Rules of Bankruptcy and Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class of all similarly situated persons who were employed by CSSE during the relevant time periods[3]. Plaintiffs propose the following subclasses (the "Class"), subject to refinement:

**California Sub-Class:**

All individuals employed by Defendants other than the named Defendants who were employed in California within four (4) years of the filing of this action and the entry of judgment in this case.

**Nationwide Sub-class:**

All current and former employees of Defendants other than the named Defendants who were employed in the United States within three (3) years of the filing of this class action and the entry of judgment in this case.

(collectively, "Plaintiff Class" or "Class Members")

31.     The claims involving the Nationwide Subclass have been brought and may properly

---

[3] Plaintiffs initially filed this case in Los Angeles Superior Court on July 19, 2024. The case was dismissed without prejudice as to CSSE.

be maintained under 29 U.S.C. § 201, *et seq,* because there is a well-defined community of interest in the litigation, and the proposed Nationwide Subclass is easily ascertainable by examination of the employment records that Defendants are required to maintain by law, including but not limited to employee payroll records.

32.     Plaintiffs are informed and believe that at all relevant times, Plaintiffs and the other Nationwide Subclass members are, and have been, similarly situated and subject to Defendants' decisions, policies, plans, practices, procedures, routines, and/or rules that have resulted in lost wages, unauthorized deductions from wages and unpaid benefits.  The claims of Plaintiffs herein are essentially the same as those of the other Nationwide Subclass members. Plaintiffs allege that during the Nationwide Subclass Period, they are and were:

a.     individuals who resided in the United States of America;

b.     employed as employees for Defendants in the United States within the three years preceding the filing of the complaint herein;

c.     owed compensation from Defendants in the form of wages, commissions, and/or non-discretionary bonuses and/or PTO;

d.     not paid timely wages by defendants;

e.     subjected to unauthorized deductions in pay by defendants;

f.     incurred unreimbursed expenses while employed; and

g.     incurred out of pocket medical and/or dental expenses that defendant failed to reimburse.

33.     This action has been brought and may properly be maintained as a class action, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable:

a.      **Numerosity—Rule 23(a)(1):** The Class is so numerous that the individual joinder of all members is impracticable under the circumstances. While the exact number of members of the Class is unknown to Plaintiffs at this time, the proposed Class exceeds over 2,000 individuals. Plaintiffs are informed and believe that the class members and their identities can be identified from the Defendants' books and records. The Class is believed to be more than sufficient to satisfy the numerosity requirement of this Court.

b.      **Common Questions of Law and Fact Predominate—Rule 23(a)(2):** Common questions of law and fact exist as to all Class members and predominate over questions that affect only individual Class members. These common questions of law and fact include, without limitation:

- Whether the Plaintiffs and members of the Plaintiff Class were employees of Defendants;

- Whether Defendants failed to pay compensation owed to the members of the Class;

- Whether Defendants made unauthorized deductions to pay the members of the Class;

- Whether Defendants failed to reimburse expenses;

- Whether Defendants caused members of the class to incur out of pocket medical and/or dental expenses;

- Whether Defendants failed to pay members of the class on a timely basis;

- Whether Defendants failed to keep adequate records for the

13

members of the Class pursuant to California Labor Code §226(a) (and the consequence for such statutory violations if Defendants did not);

- Whether the members of the Classes that are no longer employed by the Defendants are entitled to penalties pursuant to California Labor Code §203;

- Whether Defendants unlawfully and/or willfully failed to promptly pay compensation owing to Plaintiffs and members of the class upon termination of their employment, in violation of California Labor Code §§ 201-203;

- Whether Defendants unlawfully and/or willfully failed to provide Plaintiffs and members of the Plaintiff Class with true and proper wage statements upon payment of wages, in violation of California Labor Code section 226;

- Whether Plaintiffs and members of the Plaintiff Class sustained damages, and if so, the proper measure of such damages, as well as interest, penalties, costs, attorneys' fees, and equitable relief;

- Whether Defendants' conduct as alleged herein violates the Unfair Business Practices Act of California, Bus. & Prof. Code § 17200, *et seq*.

c. **Typicality—Rule 23(a)(3):** Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs and Class members sustained injuries and damages arising out of Defendants' common course of conduct in violation of law as complained of herein. The injuries and damages of each member of the Class were

14

caused directly by Defendants' wrongful conduct in violation of law as alleged herein.

d. **Adequacy—Rule 23(a)(4); Rule 23(g)(1):** Plaintiffs are members of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs are adequate representatives of the Class as they have no interests adverse to the interests of absent Class members. Each representative was an employee of CSSE. Plaintiffs have retained the undersigned counsel, which have substantial experience and success in the prosecution of complex actions.

e. **Superiority—Rule 23(b)(3):** A class action is superior to other means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is impracticable. Class action treatment will permit a high number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The damages suffered by each individual Class member are the same throughout. The expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments that would be dispositive of the interests of other members not parties to the individual adjudications and would substantially impair or impede their ability to protect their interests.

34.     Plaintiffs are unaware of any difficulties likely to be encountered in the management of this action that would preclude its maintenance as a class action. The trial of this class action will be manageable because the claims and defenses will be subject to class-wide proof.

35.     This is also an action for a declaratory judgment under 28 U.S.C. §§2201 and 2202 and for unpaid wages and other compensation, interest thereon, liquidated damages, costs of suit, attorneys' fees, and other relief under the FLSA, 29 U.S.C. §201, *et seq*. These individuals constitute a well-defined community of interest in the questions of law and fact in this case. The claims of the Plaintiffs are typical of the claims of those similarly situated. Thus, the Plaintiffs will fairly and adequately reflect and represent the interests of those similarly situated and have retained counsel competent and experienced in class action and FLSA litigation.

36.     The Class meets the requirements of Fed. R. Civ. P. 23(a) for class certification.

37.     The Class meets the requirements of Fed. R. Civ. P. 23(b)(3) because the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## **FACTUAL ALLEGATIONS**

38.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

39.     This class action is brought on behalf of all California and United States employees.

40.     Plaintiffs are informed and believe that Defendants Rouhana and Newmark (who are married) have been previously accused of misappropriation of funds, leading to bankruptcy.

41.     Plaintiffs are informed and believe that in the late 1980s, Defendant Rouhana was an executive at Management Company Entertainment Group ("MCEG"), producing films with big

16

actors like John Travolta and Bruce Willis. However, MCEG filed for bankruptcy in 1990. The bankruptcy filing was shortly after Defendant Rouhana informed the LA Times that MCEG financially sound. It was alleged in that scenario that instead Defendant Rouhana, "cooked the books" to only make it look like the company was financially sound.

42.     Plaintiffs are informed and believe that thereafter, Defendant Rouhana was involved with a company called Lancit Media. Thereafter the Lancit stock price increased nearly 500%, and Defendant Rouhana sold hundreds of thousands of dollars of his stock. Soon after, fractures appeared in the story of the company. It started to struggle and ultimately failed as a public entity. However, it appears that Defendant Rouhana was able to get his money out.

43.     Plaintiffs are informed and believe that Defendants Rouhana and Newmark started Winstar Communications together in the 1990s. Similar to Lancit, the stock soared shortly thereafter. However, again, numerous news outlets started reporting that stakeholders were publicly calling out Defendant Rouhana's self-dealing. Specifically, it was alleged that Winstar was allegedly purchasing "consulting services" from companies owned by Defendant Rouhana. Bloomberg reported in 1995: "under the leadership of [] Rouhana, chairman and chief executive, Winstar's cash has been used to enrich him and his associates in less-than-arms-length transactions." Winstar later filed for bankruptcy after fraud allegations. It was reported in 2002 that there had been a lot of "phony revenue" as Winstar had raised over $1 billion from investors, but    failed    to    generate    a    profit.    See,    e.g. https://www.washingtonpost.com/archive/business/2002/03/09/new-owner-to-raise-concerns-on-winstars-books/013bf310-767c-4ab6-9400-f3fa84037974/

44.    Plaintiffs are informed and believe that Defendants Rouhana and Newmark previously purchased the "warm hearted" brand Chicken Soup for the Soul (CSS) in 2008 and later formed Chicken Soup for the Soul Entertainment (CSSE) in 2017.

45.    Plaintiffs are informed and believe that the two different companies were formed, *inter alia*, for the purpose of self-dealing. As explained herein, Defendants Rouhana and Newmark are both involved in CSS and CSSE, the latter of which has a complex structure of subsidiaries (as outlined herein), and the former has a book publication and a business entity for pet food. Resources and some key executives have been shared across companies when it benefits Defendants Rouhana and Newmark. For instance, employee Chris Mitchell was listed as the Chief Financial Officer for CSS and CSSE, as well for the pet food company, Crackle, and the publishing company.

46.    Plaintiffs are informed and believe that in or around 2020, Defendant Rouhana entered into talks to purchase Redbox.

47.    Plaintiffs are informed and believe that CSSE acquired Redbox in August 2022 – a company with over $300 million in debt - in part from financing from HPS, who had apparently not performed due diligence regarding Defendant Rouhana and Newmark.

48.     Plaintiffs are informed and believe that at the time of the acquisition, Redbox had a longtime CEO. However, in January 2023 the Redbox CEO left, giving Defendant Rouhana control.

49.    Plaintiffs are informed and believe that in or around April 2023 after recognizing that they were involved with a sinking ship, HPS refused to fund a $40 million loan to CSSE. However, the consequence that spiraled thereafter that payroll issues for employees. As explained infra, this would have drastic effects on employees.

50.     Plaintiffs are informed and believe that Defendants have engaged in a pattern and practice of delaying payroll to employees and sometimes not paying employees their wages, commissions, PTO, and/or non-discretionary bonuses at all.

51.     Plaintiffs are informed and believe that, in late 2023, Defendants switched health insurance providers, from Premera to Anthem to begin January 1, 2024. Plaintiffs and class members were thereafter informed that the December 2023 benefits with Premera were being denied.

52.     Plaintiffs are informed and believe that Defendants sent an initial correspondence acknowledging the issue with the denial of benefits in late January 2024, and over the next few months continued to state they were working on it. However, at no time did Defendants indicate that Plaintiffs and class members were not covered for health insurance. Moreover, during this time, Defendants continued to deduct wages for health insurance from employees' pay.

53.     Plaintiffs are informed and believe that sometime in 2024, Defendants ceased providing dental and life insurance benefits to employees yet still deducted these premiums from employees' pay. After ceasing to provide those benefits, Defendants falsely represented that such benefits were still active. Additionally, Plaintiffs are informed and believe that at no time thereafter did Anthem provide direct notice to employees that they were no longer covered for health insurance.

54.     Plaintiffs are informed and believe that on or about April 18, 2024, Defendants and their agents caused corporate-wide correspondence to be issued stating that the Premera health claims from December 2023 had been reinstated.

55.     Plaintiffs are informed and believe that on or about May 3, 2024, two additional "independent" board members – Defendant Young and Defendant Warshauer were added to the

CSSE board at the behest of HPS and as amendments to Defendant CSSE's charter documents. Defendant Young was touted as having deep experience in restructuring advisory matters, including serving as a chief restructuring officer of, or restructuring advisor to, numerous gas, oil and utility companies. Defendant Warshauer was touted as being an experienced executive with decades of experience providing operational, financial and investment banking expertise to public and private companies. Despite their impressive resumes, Defendants Young and Warshauer failed perform due diligence to, *inter alia,* ensure that employees were paid properly in the ensuing weeks and months. What would immediately follow under their "independent" oversight would have dire consequences for the employees and their families.

56.    Plaintiffs are informed and believe that, again in May 2024, employees started having their claims denied by the new provider Anthem. Over the following weeks there was little official information from the Defendants. However, the unofficial general recommendation by Defendant Rouhana was to avoid any non-emergency medical services and to basically use best judgement for non-emergency medical issues.

57.    Plaintiffs are informed and believe that on or about June 18, 2024, Defendants finally informed employees that Anthem had terminated the plan and was denying all claims as of May 14, 2024. Any claims submitted after May 13, 2024 would be denied, regardless of the date of service even in prior months if not already processed. This is despite medical premiums continuing to be deducted from paychecks, including June 2024 pay.

58.    Plaintiffs are informed and believe that, in or around Spring 2024, Defendants also stopped contributing to 401(k) plans and/or HSA plans yet still deducted such amounts from Plaintiffs' and class members' pay.

59.     Plaintiffs are informed and believe that on or about June 28, 2024 Defendant Chicken Soup for the Soul Entertainment, Inc., et al., filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Court stated that it found it "sickening" that money deducted from workers' pay that was supposed to be used to for health insurance was possibly diverted and that payroll had been missed due to a misuse of funds by corporate management. *See* Winston Cho, *As Redbox Collapses, 1,000 Employees Haven't Been Paid, Judge Says*, The Hollywood Reporter, July 11, 2024: https://www.hollywoodreporter.com/business/business-news/redbox-parent-company-alleged-financial-mismanagement-1235946465/.

60.     Plaintiffs are informed and believe that in another bankruptcy court filing regarding the Chicken Soup for the Soul Entertainment Entity, it was noted that "in 2022 and 2023 approximate $18.4 million of management and license fees was paid each year to Defendant Rouhana or entities he controlled. And in the three months ended March 31, 2024, the Debtors paid a total of $9 million in management and license fees. These management and license agreements, which were negotiated between entities controlled by Defendant Rouhana (i.e. Defendant Rouhana was on both sides of the transaction) required the Debtors to pay approximately 10% of their gross revenues to Defendant Rouhana's companies." Case 24-11442-TMH Doc. 29, filed 7-1-24.

61.     Plaintiffs are informed and believe that in or around late June 2024, Defendant Rouhana stepped down as CEO of CSSE, and Defendant Schwartz stepped in as interim CEO. However, Defendant Schwartz failed to perform due diligence as to how much employees were owed for issues related to unpaid wages and benefits, and to what extent employees have been harmed by Defendants' knowing failure to provide insurance despite deducting said premiums from wages. Thus, despite failing to conduct an adequate investigation or inquire of the appropriate

21

parties, Defendant Schwartz "advocated" to the bankruptcy court on behalf of reinstituting employee payroll and certain insurance premium payments. However, like the other Defendants, because Defendant Schwartz, despite his impressive resume on other issues not relating to employee payroll (see supra), failed perform due diligence regarding unpaid wages, benefits, premiums, and out of pocket expenses, Plaintiffs and class members have been harmed. Plaintiffs are informed and believe that Defendant Schwartz's short tenure as interim CEO was marred with problems, as well as the appearance of impropriety and collusion. Defendant Schwartz has since stepped down as CEO.

62.      Plaintiffs are informed and believe that Defendants, and each of them, are engaged in a pattern and practice of finger pointing at one other – to the detriment of the employees and their families. According to HPS, shortly before the bankruptcy filing, Defendant Rouhana fired all other board members, including directors approved by HPS.  HPS has declared CSSE's first day motions to be "not only half-baked, but shocking in their lies, inaccuracies, and lack of merit." This included a DIP motion that sought to prime a collateral securing $500 million in debt.  HPS – ostensibly trying to secure funding to reinstate employees' insurance benefits and wages - later secured DIP financing for merely $8 million and refused to pay more. Defendants have done a disservice to the employees, as shortly after the insufficient funding was approved, the bankruptcy was converted from a Chapter 11 to a Chapter 7. As a result, thousands of employees were subsequently out of jobs.

63.      Plaintiffs are informed and believe that at times relevant, Defendants represented to Plaintiffs and the putative class, *inter alia*, that: 1) they would be paid for all hours worked and/or non-discretionary bonuses and/or commissions, and/or PTO; 2) that they would be reimbursed for business-related expenses, such as over-draft fees and/or travel expenses and/or

issues for company vehicles; 3) that they would be covered for medical, dental, disability, vision 401(k) and/or life insurance benefits, and/or FSA/HSA if they were deducted for premiums and/or other benefits; 4) that Defendants were paying to the relevant taxing authorities when they were making deductions; 5) that Defendants would be paying into Social Security and Medicare if such deductions were made. Plaintiffs are informed and believe that despite deductions being noted on pay stubs, that sometime starting in 2022 or thereafter Defendants were not causing these payments to be made.

64.    Plaintiffs are informed and believe that Plaintiffs relied on Defendants' statements and representations that they would be appropriately compensated, receive benefits, and continued to work to their detriment and with justifiable reliance on Defendants' representations. Plaintiffs have suffered the damages and injuries alleged and Defendants' misrepresentations are/were the proximate and direct cause of these injuries and damages.

65.    Plaintiffs and members of the plaintiff class seek unpaid wages, penalties, other compensation, and damages from Defendants for the relevant time period because Defendants improperly:

    a.    Failed to pay Plaintiffs and the other members of the class appropriate wages;

    b.    Failed to reimburse expenses;

    c.    Made unauthorized deductions from pay;

    d.    Failed to provide benefits after making unauthorized deductions from pay;

    e.    Failed to timely pay Plaintiffs and the class;

    f.    Misrepresented to Plaintiffs and the class that they were covered for benefits, causing Plaintiffs and the class to incur not only substantial

expenses for *inter alia* medical and/or dental;

g.    Failed to maintain accurate records for Plaintiffs and the other members of the plaintiff class pursuant to California Labor Code § 226(a).

66.    Plaintiffs are informed and believe that at all relevant times hereto, Defendants controlled Plaintiffs' and the class members' recompense, determining pay, whether class members would in fact be paid timely, partially, or at all, whether commissions and/or bonuses and/or PTO would be paid, what items are reimbursable, and/or what benefits would be covered despite deducting from employees' pay for such benefits.

67.    Plaintiffs are informed and believe that Plaintiffs and other employees, at all relevant times worked under and subject to the control of Defendants as set forth in Defendants' numerous general overarching policies, practices, and procedures.

68.    Plaintiffs are informed and believe that, as a matter of policy and/or practice, Defendants routinely permitted Plaintiff and plaintiff class members to work portions of the day during which they were subject to Defendants' control and failed to compensate them.

69.    At all times, relevant hereto, California Labor Code § 201 required an employer that discharges an employee to pay compensation due and owing to said employee immediately upon discharge. California Labor Code § 202 requires an employer to pay an employee who quits any compensation due and owing to said employee within seventy-two (72) hours of an employee's resignation. California Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under Sections 201 and 202, then the employer is liable for waiting time penalties in the form of continued compensation for up to thirty (30) workdays.

70.    Plaintiffs are informed and believe that Defendants willfully and knowingly failed

to pay Plaintiff and the members of the plaintiff class, upon termination of employment, all accrued compensation.

71.    Plaintiffs are informed and believe that Plaintiffs, and members of the Plaintiff Class were, and are, routinely provided wage statements which do not truly and accurately reflect the wages due to them.

72.    Plaintiffs are informed and believe that Defendants are and were advised by skilled lawyers, other professionals, employees with human resources background and advisors with knowledge of the requirements of wage and hour laws.

73.    Plaintiffs are informed and believe that at all relevant times, Defendants had a consistent policy or practice of failing to compensate the plaintiff class members, including Plaintiffs, for all wages due.

## COUNT I
## FRAUD

74.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

75.    Plaintiffs are informed and believe that Defendants concealed and suppressed material facts about their intentions for employees to be covered for medical and/or dental benefits.

76.    Once Defendants knew that Plaintiffs and class members were no longer covered for benefits, they should have immediately ceased deducting said premiums from employees' pay and informed employees that they were not covered under any policy.

77.    Plaintiffs are informed and believe Defendants intentionally concealed or suppressed their disregard for their employees, intending to defraud Plaintiffs and Class Members and intending to conceal the fact that the benefits no longer existed.

78.    Plaintiffs were unaware and would not have acted as they did if they had known of the concealed or suppressed facts. The concealed facts were material in that a reasonable person

25

in Plaintiffs' and class members' position would have found it important in determining how they would have acted. Plaintiffs acted reasonably in relying on Defendants· misrepresentations.

79.     Plaintiffs and class members have incurred substantial out of pocket expenses as a result of Defendants' misrepresentation that they had health and dental insurance. Plaintiffs are informed and believe that it was Defendants' intent to fraudulently, deceptively, and pretextually acquire deceive employees for an extended period of time so that Defendant could abscond with these wages for their own personal benefit.

80.     As a direct and proximate result of Defendant's misrepresentations, Plaintiffs and Class Members have suffered damages as described above and, in an amount, according to proof.

81.     As a direct and proximate result of Defendant's misrepresentations, Plaintiffs and Class Members pray for punitive damages, in an amount, according to proof.

## COUNT II
## CONVERSION

82.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

83.     Plaintiffs have an absolute, unconditional, and fully vested right to their wages earned from work performed.

84.     Defendants have refused, retained, and converted those funds.

85.     By failing to pay and converting Plaintiffs and class members' share for their own benefit or for the benefit of others, Defendants are strictly liable.

86.     Plaintiffs are informed and believe that Defendants acted with malice and intentionally attempted to conceal or 'use liquid assets up' frivolously for personal expenses and avoid paying employees.

87.     Plaintiffs are informed and believe that all Defendants acted to convert Plaintiffs' share of monies to deprive Plaintiffs' and class members' share and to create the impression of a

lack of liquid funds so as to deceive Plaintiffs and class members and claim an inability to pay.

88.     Plaintiffs are informed and believe that Defendants acted with oppression, fraud, malice, and in conscious disregard of Plaintiffs' and Class Members' rights, or emotional distress, depriving them of their property and legal rights. Defendants' conduct subjected Plaintiffs to cruel and unjust hardship such that an award of exemplary and punitive damages is proper and justified.

89.     As a direct and proximate result of Defendants' conversion of Plaintiffs' equitable share, Plaintiffs have suffered significant economic damages. and pray for relief further set forth below.

## COUNT III
## FAILURE TO PAY WAGES

90.      Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

91.     Defendants have failed and refused to pay to Plaintiffs and each member of the Plaintiff Class all wages due to them in compliance with California Labor Code. Plaintiffs and the other members of the Plaintiff Class were not routinely paid for all wages, commissions, and/or non-discretionary bonuses and/or PTO due.

92.     As a direct and proximate result of the acts and/or omissions of each Defendants, Plaintiff and each member of the Plaintiff Class has been deprived of wages due in amounts to be determined at trial.

93.     As a result of Defendants' failure to pay Plaintiffs and the members of the Plaintiff Class all wages due, Plaintiff and members of the Plaintiff Class are entitled to each recover the unpaid wages in an amount equal to the wages unlawfully unpaid, liquidated damages in an amount equal to the wages unpaid, plus interest, fees and costs thereon.

94.     Plaintiff incorporates all preceding paragraphs as though fully set for herein.

95.     As a direct and proximate result of the acts and/or omissions of each Defendant,

Plaintiff and each member of the Plaintiff Class has been deprived of minimum wages due in amounts to be determined at trial.

## COUNT IV
## FAILURE TO TIMELY PAY WAGES

96.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

97.     Defendants failed and refused to pay Plaintiffs and each member of the Plaintiff Class all timely wages due to them in compliance with California Labor Code §204.

98.     As a direct and proximate result of the acts and/or omissions of each Defendant, Plaintiff and each member of the Plaintiff Class are entitled to penalties for such late payment, including but not limited to penalties pursuant to Labor Code §210.

## COUNT V
## VIOLATION OF LABOR CODE SECTION 221, ET SEQ.

99.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

100.     Plaintiffs are informed and believe that Defendants have secreted portions of wages due to employees, in violation of California Labor Code §221, *et seq*. Labor Code §221 makes it unlawful for "any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

101.     Specifically, Plaintiffs are informed and believe that Defendants collected or received significant sums from Plaintiffs' and Class Members wages that were labeled as health and/or dental insurance premiums, 401(k) contributions, and/or other benefit contributions.

102.     As a direct and proximate result of the acts and/or omissions of each Defendant, Plaintiffs and each member of the Plaintiff Class have been damaged in an amount to be proven at trial as they have been deprived of wages and also out of pocket expenses.

## COUNT VI
## FAILURE TO REIMBURSE EXPENSES IN VIOLATION OF CALIFORNIA LABOR CODE SECTION 2802

103.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

104.    Pursuant to California Labor Code §2802, Defendant is required to reimburse employees for expenses incurred during the performance of their job duties.

105.    Defendant did not reimburse Plaintiffs and class members for expenses incurred as a condition of the discharge of their employment duties.

106.    As a proximate result of this violation, Plaintiffs have been damaged in an amount according to proof at the time of trial.

## COUNT VII
## FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS IN VIOLATION OF CALIFORNIA LABOR CODE 226(A)

107.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

108.    California Labor Code § 226(a) sets forth reporting requirements for employers when they pay wages, as follows:

"Every employer shall . . . at the time of each payment of wages, furnish his or her employees . . . an itemized statement in writing showing (1) gross wages earned; (2) total hours worked by the employee . . ."

Section (e) provides:

"An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) shall be entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period,  not exceeding an aggregate penalty of four thousand

17322367/1

dollars ($4000), and shall be entitled to an award of costs and reasonable attorneys'

fees."

109.    Plaintiffs and members of the Plaintiff Class were damaged by this failure to

provide accurate wage statements because, among other things, Plaintiffs and members of the

Plaintiff Class were unable to determine the proper amount of wages owed to them, and whether

they had received full compensation therefore. Plaintiffs' wage statements were often entirely

inaccurate as they stated *inter alia* that 1) certain compensation was provided when it actually was

not, 2) benefits were provided when they were not, or 3) employer contributions were made when

they were not.

110.    Plaintiffs and members of the Plaintiff Class request recovery of California Labor

Code § 226(e) penalties according to proof, as well as interest, attorneys' fees and costs pursuant

to California Labor Code § 226(e), and all other damages, attorneys' fees, costs, expenses and

interest permitted by statute.

### COUNT VIII
### FAILURE TO PAY WAGES AT TIME OF
### TERMINATION (CALIFORNIA LABOR CODE §§ 201-203)

111.    Plaintiffs re-allege and incorporate all preceding paragraphs as though fully set

forth herein.

112.    At all times relevant herein, Defendants were required to pay its employees all

wages owed in a timely fashion during and at the end of their employment, pursuant to California

Labor Code §§ 201-203.

113.    Numerous employees no longer work for Defendants. As a pattern and practice,

Defendants failed to pay proper final wages pursuant to California Labor Code §§ 201-203, and

accordingly owe waiting time penalties pursuant to California Labor Code § 203.

114.    The conduct of Defendants and its agents and managerial employees as described herein was willful, and in violation of the rights of Plaintiff and the class members.

115.    Defendants' willful failure to pay wages due and owing them upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due.  Therefore, Plaintiffs and class members who have separated from employment are entitled to compensation pursuant to California Labor Code § 203.

## COUNT IX
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

116.    Plaintiffs re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

117.    The Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, states that an employee must be compensated for all hours worked. 29 C.F.R. § 778.223 and 29 C.F.R. § 778.315.  This Court has concurrent jurisdiction over claims involving the Fair Labor Standards Act pursuant to 29 U.S.C. § 216.

118.    Each Defendant is individually liable for the FLSA violations alleged herein and/or were joint-employers of Plaintiffs and the class and similarly situated employees at the time said violations, based on, but not limited to, one or more of the following circumstances: FLSA Plaintiffs performed work which simultaneously benefited two or more Defendants; one or more Defendants was acting directly or indirectly in the interest of the other employer (or employers) in relation to Plaintiffs and the class ; one or more Defendants were not completely disassociated with respect to the employment of Plaintiffs and the class and may be deemed to have shared control of the employees, , directly or indirectly, by reason of the fact that one or more Defendants controls, is controlled by, or is under common control with one or more of the other Defendants. 29 U.S.C. § 203(d); 29 C.R.R. § 791.2(b).

31

119.    Plaintiffs are informed and believe that, for the purposes of the Fair Labor Standards Act, the employment practices of Defendants were and are uniform throughout the United States in all respects material to the claims asserted in this Complaint.

120.    Plaintiffs are informed and believe that the FLSA violations alleged herein are attributable to each Defendant as a consequence of its/his/her authority over and/or responsibility for the decisions that resulted in said violations; each individual-Defendant was a corporate officer of or managing member of any entity-Defendant, with a significant ownership interest in the same; each Defendant exercised control over significant aspects of the day-to-day operations of the other Defendant, including but not limited to compensation to employees; each Defendant had the power to hire and fire employees such as Plaintiffs and the class; each Defendant supervised and controlled work schedules and conditions of employment; each Defendant determined the rate and method of payment for employees; each Defendant directed work activities; each Defendant controlled the maintenance and/or maintained employment records; each Defendant had to power to act on behalf of the other Defendant, vis-à-vis its employees; each Defendant was ultimately in a position of authority over the business decisions that led to the violations of overtime laws alleged herein; Each Defendant functioned for each of the other Defendant's profit; and/or other facts and circumstances that may be stated under the "economic realities" analysis. 29 U.S.C. § 203(d).

121.    Plaintiffs are informed and believe that Defendants willfully failed to pay Plaintiffs and the class members compensation due and withheld pay and benefits in violation of the FLSA.

122.    At all times mentioned herein, Defendants failed to keep records required by the FLSA, in violation of 29 U.S.C. § 211(c) and 29 C.F.R. §§ 516.1, 516.5, and 516.6.

123.    As a result of each Defendant's conduct, FLSA Plaintiffs have been damaged and

are owed unpaid compensation, entitled to reimbursement of expenses, punitive damages, liquidated damages under are entitled to pre-judgment interest if liquidated damages are not awarded, and reasonable attorney's fees and costs of suit, pursuant to 29 U.S.C. § 216(b).

124. This Complaint is based on the failure of the Defendants to compensate the Plaintiffs and the FLSA Plaintiff Class for all wages, pay the regular rate of pay pursuant to 29 U.S.C. § 207(e), and include all remuneration, reimburse expenses, and compensation for benefits.

125. As a result of the willful actions of the named Defendants in reckless disregard of the rights of the named Plaintiffs and the Class, Plaintiff and the members of the FLSA Plaintiff Class have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and on behalf of the members of the Plaintiff Class, pray for judgment against Defendants as follows:

1. Certification that the Plaintiffs and the other Class Members constitute a class;

2. Appointment of the undersigned attorneys as Class counsel;

3. Appointment of Plaintiffs as the Class Representatives;

4. For general damages according to proof;

5. For special damages according to proof;

6. For out-of-pocket expenses for medical and/or dental care, and/or benefits according to proof;

7. For restoration of life, health, dental, and/or other benefits;

8. For reimbursement of expenses according to proof;

9. For prejudgment and post-judgment interest according to any provision of law, and according to proof;

10.    For costs of suit and reasonable attorneys' fees as provided by law;

11.    For an order the Defendants to deliver to Plaintiffs and account for, property in their possession, custody, and/or control that could be used, sold, or leased under 11 U.S.C. § 363;

12.    For punitive damages as provided by law;

13.    For a declaratory judgment that Plaintiffs are entitled to unpaid wages and other compensation, interest thereon, liquidated damages, costs of suit, attorneys' fees, and other relief under the <u>FLSA</u>;

14.    For disgorgement of profits as well as restitutionary, declaratory, and equitable remedies authorized by the Business and Professions Code, section 17203; and,

15.    For such other and further relief as the Court deems proper.

*[Signatures to Follow]*

34

Dated:  May 8, 2025

Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Tara C. Pakrouh*
Eric J. Monzo (DE Bar No. 5214)
Tara C. Pakrouh (DE Bar No. 6192)
Cortlan S. Hitch (DE Bar No. 6720)
Siena B. Cerra (DE Bar No. 7290)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
        tpakrouh@morrisjames.com
        chitch@morrisjames.com
        scerra@morrisjames.com
-and-

*/s/ Elana R. Levine*
**ALDERLAW, PC**
Michael Alder (CA Bar No. 170381)
Elana R. Levine, Esq. (CA Bar No. 234155)
12800 Riverside Drive, Second Floor
Valley Village, CA 91607
Telephone: (310) 275-9131
Facsimile: (310) 275-9132
E-mail: cmalder@alderlaw.com
        llevine@alderlaw.com
        mtanzer@alderlaw.com

*Counsel to Plaintiffs and the Proposed Class*