## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.* [1], | Case No. 24-11442 (MFW) |
| Debtors. | (Jointly Administered) |
| BRIAN SKAJEM, LISA PAPATZIMAS, ERIN TUTTLE, DAVID ELLENDER, DARA COHEN, MATT LOZE, JESSICA STOECKELER, HEATHER BUNDY, CAREY CAMPBELL, KELLY BURKE HOPKINS, COURTNEY SMITH, on behalf of themselves and behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 24-50128 (MFW) |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., REDBOX AUTOMATED RETAIL, LLC, WILLIAM J. ROUHANA, JR., AMY NEWMARK, JOHN T. YOUNG, ROBERT H. WARSHAUER, BART SCHWARTZ, and DOES 1-500, inclusive, | |
| Defendants. | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO THE MOTION OF DEFENDANT
## ROUHANA TO DISMISS AMENDED COMPLAINT

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS ................................................................1

II.    SUMMARY OF ARGUMENT ................................................................................2

III.    STATEMENT OF AMENDED COMPLAINT ................................................3

IV.    ARGUMENT ................................................................................................9

    A.    Plaintiffs State a Claim Under Applicable Pleading Standards ..............................9

        1.    Defendant's Erroneous Arguments Do Not Warrant Dismissal of the Amended Complaint ........................................................10

        2.    Plaintiffs Allege Sufficient Amended Complaint Entitling Them to Relief ........................................................................12

        3.    Plaintiffs Allege Sufficient Facts Under Alter Ego Theories and Labor Code Labor Code § 558.1 for Defendant to be Personally Liable ........................................................................12

            a.    Count I (Fraud) States a Claim ................................................14

            b.    Count II (Conversion) Is Legally Plausible ................................17

            c.    Counts III–VIII (California Labor Code Violations) Are Properly Alleged ........................................................18

                i.    Count III – Failure to Pay Wages ........................................18

                ii.    Count IV – Violation of Labor Code § 204 ........................19

                iii.    Count V – Violation of Labor Code § 221 ........................20

                iv.    Count VI – Failure to Reimburse Expenses - Violation of Labor Code § 2802 ................................21

                v.    Count VII – Wage Statement Violations - Violation of Labor Code § 226(a) ................................21

                vi.    Count VIII – Waiting Time Penalties - Violation of Labor Code §§ 201-203 ................................22

            d.    Count IX – FLSA ................................................................23

            e.    The Reference to the California UCL is Appropriate ................25

f.     Class Allegations Should Not Be Stricken ....................................25

V.     ALTERNATIVELY, THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND .........................................................................................26

VI.     CONCLUSION.............................................................................................................28

17418731/1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Bus. Fin. Servs.*,
   384 B.R. 80 (D. Del. 2008) ........................................................................................9

*Arneault v. Diamondhead Casino Corp.*,
   277 F. Supp. 3d 671 (D. Del. 2017) .........................................................................27

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................9, 10, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................9, 10, 12, 16

*Brockstedt v. Sussex County Council*,
   771 F. Supp. 2d 348 (D. Del. 2011) .........................................................................12

*Cortez v. Purolator Air Filtration Prods. Co.*
   (2000) 23 Cal. 4th 163 ............................................................................................25

*Doe v. Princeton Univ.*,
   30 F.4th 335 (3rd Cir. 2022) .....................................................................................9

*Doe v. Unocal Corp.*
   (9th Cir. 2001) 248 F.3d 915 ...................................................................................13

*Espinoza v. Hepta Run, Inc.*
   (2022) 74 Cal.App.5th 44 ............................................................................12, 13, 19

*Farmers Ins. Exchange v. Zerrin*
   (1997) 53 Cal.App.4th 445 ......................................................................................17

*Gillibeau v. City of Richmond*
   (9th Cir. 1969) 417 F.2d 426 ...................................................................................25

*Hill v. Pac. Mar. Ass'n*,
   No. 24-CV-00336-JSC, 2025 WL 1282628 (N.D. Cal. May 2, 2025) .............................21, 22

*Landers v. Quality Commc'ns, Inc.*
   (9th Cir. 2014) 771 F.3d 638 (2015, as amended) ..........................................................23, 24

*Maldonado v. Epsilon Plastics, Inc.*
   (2018) 22 Cal. App. 5th 1308 ...................................................................................22

*Martinez v. UPMC Susquehanna*,
    986 F.3d 261 (3rd Cir. 2016) ...................................................................9

*Naranjo v. Spectrum Sec. Servs., Inc.*
    (2024) 15 Cal. 5th 1056 (2024) ........................................................22, 23

*Neubronner v. Milken*
    (9th Cir. 1993), 6 F.3d 666 ...................................................................14

*In re Oakwood Homes Corp.*,
    325 B.R. 696 (Bankr. D. Del. 2005) ........................................................27

*RLH Industries, Inc. v. SBC Communications, Inc.*
    (2005) 133 Cal.App.4th 1277 ...............................................................13

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) .............................................................................9

*Ebeid ex rel. United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ...............................................................15

*Vess v. Ciba-Geigy Corp. USA*
    (9th Cir. 2003) 317 F.3d 1097 (9th Cir. 2003)................................14, 15

*Voris v. Lampert*
    (2019) 7 Cal. 5th 1141 (2019)..........................................................17, 18

*Zoran Corp. v. Chen*
    (2010) 185 Cal.App.4th 799 ...............................................................13

**Statutes**

Bankruptcy Code chapter 11.........................................................................1

California Labor Code and Fair Labor Standards Act ......................... *passim*

Fair Labor Standards Act (FLSA)...................................................... *passim*

FLSA ................................................................................................. *passim*

Labor Code §§ 201-203 ..............................................................................22

Labor Code § 203...........................................................................7, 22, 23

Labor Code § 204.......................................................................................19, 20

Labor Code section 210 ............................................................................19, 20

Labor Code § 221.......................................................................................20, 21

Labor Code § 225.5 .................................................................................................20

Labor Code § 226 ....................................................................................................7

Labor Code § 558.1 .......................................................................................... *passim*

Labor Code § 558.1(a) .....................................................................................12, 18

Labor Code § 1194 ..................................................................................................7

Labor Code § 2802 ..............................................................................................7, 21

Labor Code § 226(a) ..............................................................................................21

Unfair Competition Law ........................................................................................25

**Other Authorities**

Fed. R. Bankr. P. 7023 ...........................................................................................26

Federal Rule of Civil Procedure 9(b) ......................................................................15

Federal Rule of Civil Procedure 2323 ....................................................................26

Rule 8 ................................................................................................................11, 16

Rule 9(b) ......................................................................................................... *passim*

Rule 12(b)(6) ...........................................................................................................9

Rule 15 ................................................................................................................3, 26

Rule 23 ...................................................................................................................25

Rule 23(c)(1) ..........................................................................................................25

Plaintiffs Brian Skajem, Lisa Papatzimas, Erin Tuttle, David Ellender, Dara Cohen, Matt Loze, Jessica Stoeckeler, Heather Bundy, Carey Campbell, Kelly Burke Hopkins, Courtney Smith ("Plaintiffs"), by and through their undersigned counsel, respectfully submit this brief in opposition to Defendant William J. Rouhana, Jr.'s ("Rouhana" or "Defendant") *Motion to Dismiss Amended Complaint for Declaratory and Injunctive Relief* ("Motion") [Adv. 24-50128, D.I. 35].

## I.    NATURE AND STAGE OF PROCEEDINGS

On June 28, 2024, Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and continued to operate as debtors-in-possession. *See* Case No. 24-11442, D.I. 1. On July 10, 2024, the bankruptcy cases were converted into chapter 7. Case No. 24-11442, D.I. 120.

On August 12, 2024, the Trustee filed the applications, to which Rouhana objected, initiating a contested matter.  Depositions of at least Rouhana, John Young Jr., and Robert Warshauer were taken.  Plaintiffs attended the same.  The testimony provided in those depositions, as well as information provided to Plaintiffs after the Complaint was filed provide a basis for the additional allegations in the Amended Complaint and implicate the new defendants in this suit.[1]

On September 6, 2024, Plaintiffs filed their *Complaint* [Adv. D.I. 1] (the "Complaint") against George L. Miller, in his capacity as Chapter 7 Trustee for the bankruptcy estates of Chicken Soup for the Soul Entertainment Inc. and Redbox Automated Retail, LLC (the "Trustee"), HPS Partners, LLC ("HPS"), Anthem Blue Cross and Blue Shield ("Anthem"), William J. Rouhana, Jr. ("Rouhana"), and Amy Newmark (collectively, "Defendants"), alleging violations of the California Labor Code and Fair Labor Standards Act, among other things.

---

[1] As stated in Plaintiffs' Motion to Amend (to which there was no objection by this Defendant), Plaintiffs intend to further develop the factual record supporting their Counts against all Defendants in this adversary proceeding through discovery under the Federal Rules.

Plaintiffs informally discussed allegations in the Complaint with all Defendants, some of which provided informal discovery in connection with the same.  On September 27, 2025, the Plaintiffs voluntarily dismissed HPS Partners, LLC without prejudice.  *See* Adv. D.I. 8.  And, on December 18, 2024, the Plaintiffs and Anthem Blue Cross and Blue Shield ("Anthem") filed a stipulation extending the deadline for Anthem to respond to or answer the complaint. *See* Adv. D.I. 14.

On May 8, 2025, Plaintiffs filed an amended complaint (the "Amended Complaint") [Adv. D.I. 30] adding Defendants John Young Jr., and Robert Warshauer, and Bart Schwartz, and additional allegations to the complaint. There were no objections to the filing of the Amended Complaint by Defendant Rouhana or Newmark.[2] On June 20, 2025, Defendants Rouhana and Newmark moved to dismiss the Amended Complaint. *See* Adv. D.I. 35, 37. Plaintiffs oppose the Motion herein.

## II.    SUMMARY OF ARGUMENT[3]

This case is about corporate fraud at the deepest level. Defendants' exploitation of their corporate structure reached far beyond the systemic violation of state and national labor laws. Not just employees have been harmed – entire families have been harmed by the corporate structure and key officers at the helm: Defendants Rouhana and Newmark. These two Defendants orchestrated this Ponzi scheme that has not only cost employees wages, it has cost them lives.

Defendant Rouhana moves to dismiss Plaintiffs' Amended Complaint on the grounds of insufficient pleading, claiming he cannot be held individually liable for wage and hour violations, fraud, conversion, or violations of the Fair Labor Standards Act (FLSA). His arguments ignore the

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Amended Complaint.

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms below.

substantial allegations that he was a key decision-maker, exercised operational control, and directly caused the violations at issue. The Amended Complaint adequately alleges claims for fraud, conversion, Labor Code violations, and FLSA liability, allegations that Rouhana was an active corporate officer who orchestrated and benefitted from the systemic refusal to pay wages, withdrawal of insurance, and failure to comply with other labor laws. At this stage, Plaintiffs are only required to plausibly plead these claims - a burden they have met.

Even during and after bankruptcy proceedings, Defendants continued their deceptive practices. Misuse of employee wages to pay "management fees" to insiders (totaling tens of millions of dollars) while employees went unpaid was decried by the Bankruptcy Court as "sickening." Though not necessary, as the claims against these two defendants are largely pre-bankruptcy, this further supports the counts in Plaintiffs' Amended Complaint for post-bankruptcy liability to these employees.

As explained below, Plaintiffs have stated a plausible claim against Defendant. They plead counts in the Amended Complaint supporting their claims and plausibly allege the requested relief. Therefore, Defendant's Motion must be denied as a matter of law. However, to the extent that the Court is inclined to grant any portion of Defendant's motion, Plaintiffs respectfully request leave to amend pursuant to Rule 15.

## III.    STATEMENT OF AMENDED COMPLAINT

This case arises from a widespread and deliberate scheme orchestrated by Defendants, including Rouhana and Newmark, to defraud a large class of employees of Chicken Soup for the Soul Entertainment, Inc. ("CSSE") and its affiliated entities - companies that he and Defendant Newmark built from the ground up. The complaint alleges that Defendants Rouhana and Newmark previously purchased Chicken Soup for the Soul ("CSS") in 2008 and later formed CSSE in 2017, forming two different companies for the purpose of self-dealing. Amended Complaint ¶ 44, 45.

3

The complaint alleges "Defendants' greed at shocking levels that one could call criminal." Amended Complaint ¶ 1. Plaintiffs allege that "Defendants engaged in a scheme to: (1) defraud employees out of their hard-earned compensation and siphon it away for their own personal benefit, and (2) deduct wages from employees' pay checks for, inter alia, medical and/or dental insurance premiums, while allowing these policies to lapse and ultimately get canceled. This resulted in employees unknowingly incurring millions in unreimbursed medical expenses." *Id.*

The allegations are that both Defendant Rouhana and Newmark[4] had direct and active roles that caused the legal violations alleged in this case and that therefore they are liable for all of the counts, including the California counts pursuant to Labor Code § 558.1. Amended Complaint ¶ 22.) "Defendant Rouhana had a direct and/or active role that caused the legal violations alleged herein, including but not limited to: the unauthorized withdrawals from employees' pay for benefits that were not received; unpaid wages, bonuses, and/or commissions; and/or other losses to employees." Amended Complaint, ¶ 22.

The Amended Complaint alleges that Defendant had a large scale, long term "Ponzi" scheme by failing to pay earned wages, unlawfully deducting payroll contributions for nonexistent benefits, and misrepresenting the financial and operational status of employee compensation and benefits programs. This scheme ultimately collapsed – resulting in the filing of bankruptcy. The Amended Complaint also details that "Defendants Rouhana and Newmark (who are married) have been previously accused of misappropriation of funds, leading to bankruptcy." Amended Complaint, ¶ 40. *See also* Amended Complaint, ¶¶41-43 (detailing their prior pattern of alleged

---

[4] Defendant Newmark has filed a nearly identical Motion to Dismiss to Defendant Rouhana. As such, Plaintiffs' arguments in both oppositions will be similar throughout.

similar conduct that went unchecked by their co-defendants,[5] to the ultimate harm of the employees).

Even more troubling, these knowing, wrongful actions resulted in significant monetary and health-related harm to over 2,000 current and former employees across the United States – and their families who were relying on and thought they were covered for health insurance. The Amended Complaint details a long-standing pattern of financial misconduct, concealment, and misrepresentation by Rouhana and his co-defendants. *See e.g.* Amended Complaint, ¶ 60.[6] Plaintiffs allege that CSSE and its executives, including Rouhana, executed a Ponzi-like corporate scheme, through the creation and acquisition of dozens of entities to shift assets, liabilities, and avoid financial accountability. Amended Complaint, ¶¶ 2–4, 38–43.

Rouhana is specifically identified not only as the CEO and Chairman of the Board of CSSE, but as the individual who actively directed corporate operations and financial decision-making that gave rise to the violations at issue. Amended Complaint, ¶¶ 21–22, 61. For instance, as detailed in the Amended Complaint, Rouhana ***personally and actively*** wrongfully deducted payroll funds from employees' wages for health and dental benefits, even after those benefit plans had been cancelled for nonpayment. Amended Complaint, ¶¶ 1, 50–54, 56–57. Despite this lapse in coverage, employees continued to have deductions withdrawn from their paychecks for these

---

[5] It is also alleged that when CSSE acquired Redbox in August 2022 – a company with over $300 million in debt - in part from financing from HPS – HPS had apparently not performed due diligence regarding Defendant Rouhana and Newmark, which caused direct harm to the employees.  and subsequently failed to fund CSSE to the detriment of the employees. The failure to fund would have drastic consequences for the employees. Amended Complaint, ¶ 47, 49.

[6] As stated in the Amended Complaint, Court filings revealed that in 2022 and 2023 approximate $18.4 million of management and license fees was paid each year to Defendant Rouhana or entities he controlled. And in the three months ended March 31, 2024, the Debtors paid a total of $9 million in management and license fees. These management and license agreements, which were negotiated between entities controlled by Defendant Rouhana (i.e. Defendant Rouhana was on both sides of the transaction) required the Debtors to pay approximately 10% of their gross revenues to Defendant Rouhana's companies. Amended Complaint, ¶ 60.

nonexistent benefits, resulting in millions of dollars in out-of-pocket medical expenses that employees were left to bear. Amended Complaint, ¶¶ 1, 6, 32, 33, 52, 53.

In late 2023, Defendants switched health insurance providers, from Premera to Anthem to begin January 1, 2024. Plaintiffs and class members were thereafter informed that the December 2023 benefits with Premera were being denied. Amended Complaint, ¶ 51. Despite acknowledging the issue, Defendants failed to inform employees that they were not covered for health insurance. Yet, during this time, Defendants continued to deduct wages for health insurance from employees' pay. Amended Complaint, ¶ 52. Additionally, sometime in 2024, Defendants ceased providing dental and life insurance benefits to employees yet still deducted these premiums from employees' pay. After ceasing to provide those benefits, Defendants (including Rouhana) falsely represented that such benefits were still active. Then, on or about June 18, 2024, Defendants finally informed employees that Anthem had terminated the plan and was denying all claims as of May 14, 2024. This is despite medical premiums continuing to be deducted from paychecks, including June 2024 pay. Amended Complaint, ¶ 53-57.

Rouhana himself made a company-wide "unofficial" communication advising employees to "avoid any non-emergency medical services" due to a lack of coverage — an implicit admission that the insurance plans had been cancelled Amended Complaint, ¶ 56. This statement alone is sufficient to show that he was actively involved in the misconduct, had authority to direct employment policies, and had awareness of the consequences of these decisions – the harm to the employees and their families being without coverage for both minor issues and catastrophic illnesses. Nonetheless, he knowingly and wrongfully canceled the policies.

In Spring 2024, Defendants also stopped contributing to 401(k) plans and/or HSA plans yet still deducted such amounts from employees' pay. Amended Complaint, ¶ 58. Despite

deductions being noted on pay stubs, it appeared that payment to relevant taxing authorities had not been made for some time. Amended Complaint, ¶ 63.

At times relevant, Defendants represented to employees that: 1) they would be paid for all hours worked and/or non-discretionary bonuses and/or commissions, and/or PTO; 2) that they would be reimbursed for business-related expenses, such as over-draft fees and/or travel expenses and/or issues for company vehicles; 3) that they would be covered for medical, dental, disability, vision 401(k) and/or life insurance benefits, and/or FSA/HSA if they were deducted for premiums and/or other benefits; 4) that Defendants were paying to the relevant taxing authorities when they were making deductions; 5) that Defendants would be paying into Social Security and Medicare if such deductions were made. Amended Complaint, ¶ 63. Employees relied on Defendants' statements and representations that they would be appropriately compensated, receive benefits, and **continued to work for Defendants** to their detriment and with justifiable reliance on Defendants' representations. Amended Complaint, ¶ 64.

Plaintiffs further allege that Rouhana is liable pursuant to California Labor Code § 558.1 (an umbrella for other violations under the California Labor Code)[7] and the FLSA because he exercised control over wages, hours, and working conditions. Amended Complaint, ¶¶ 21–27.

Plaintiffs allege that Newmark, acting in her capacity as a director and co-strategist of the company's financial decisions, also caused these violations by approving, directing, or failing to prevent the improper withholding of wages, continuation of payroll deductions despite lapsed

---

[7] The Labor Code sections that § 558.1 makes actionable against individuals include, but are not limited to: Labor Code § 203:Waiting time penalties for failure to pay all wages owed upon separation of employment (Amended Complaint, ¶¶ 112–115); Labor Code § 226: Failure to provide accurate itemized wage statements (Amended Complaint, ¶¶ 108–110); Labor Code § 2802: Failure to reimburse necessary business expenses (Amended Complaint, ¶¶ 104–106); Labor Code § 1194 – Failure to pay minimum wage or overtime (Amended Complaint, ¶¶ 91, 116).

insurance, and failure to reimburse employees for business expenses. These are not passive oversights; they are affirmative omissions or commissions for which individual liability attaches.

The Amended Complaint describes how Rouhana and other individual defendants failed to pay timely final wages, misrepresented wage statements, failed to reimburse expenses, and failed to provide accurate itemized paystubs — all under Rouhana's leadership. Amended Complaint, ¶¶ 44-73.

Importantly, Plaintiffs also allege that Rouhana personally caused the unpaid wages, misappropriation of employee payroll deductions, and continued the deception *even as he resigned and handed control of the company* to co-defendants, during which time employees were left without answers or access to earned wages and benefits. Amended Complaint, ¶¶ 50–58, 61. Plaintiffs allege that even after the bankruptcy filing Rouhana was part of a concerted maneuver to allow HPS and others to renege on financing obligations, further jeopardizing the employees' ability to recover wages and benefits. Amended Complaint, ¶¶ 49, 61.

Finally, Plaintiffs allege that Rouhana (and Newmark's) historical conduct in other failed corporate ventures, including prior bankruptcies and allegations of cooking the books, reflect a pattern of financial abuse that informed the instant conduct at CSSE. Amended Complaint, ¶¶ 40–42. These allegations, support Plaintiffs' theory that Rouhana and Newmark's personal conduct, not just their titles, were instrumental in the Labor Code and FLSA violations asserted.

In sum, Plaintiffs have alleged that Rouhana's role as an officer was not merely a figurehead, or passive. Instead, he participated in, directed, and approved conduct that caused systemic wage violations, unlawful deductions, and misrepresentations to employees across the company, making him individually liable under well-established statutory and common law.

8

## IV.    ARGUMENT

### A.    Plaintiffs State a Claim Under Applicable Pleading Standards

A Rule 12(b)(6) motion "tests the legal sufficiency of plaintiff's claim[s]." *In re Am. Bus. Fin. Servs.*, 384 B.R. 80, 84 (D. Del. 2008). "To survive a motion to dismiss, a complaint need not be detailed," but only needs to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3rd Cir. 2016) (citing Fed. R. Civ. P. 8(a)(2)). That requires only "plausibly suggesting" Amended Complaint sufficient to "draw the reasonable inference" that the pleader is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The short and plain statement is enough to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Martinez*, 986 F.3d at, 265 (quoting *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3rd Cir. 2022).

Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. But plausible does not mean probable; "it simply calls for enough Amended Complaint to raise a reasonable expectation that discovery will reveal evidence" supporting the claims alleged. *Twombly*, 550 U.S. at 556. The issue is not whether the plaintiff will succeed on the merits but whether the plaintiff is entitled to offer evidence – at a later stage - to support the claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).

17418731/1

1.    **Defendant's Erroneous Arguments Do Not Warrant Dismissal of the Amended Complaint**

Defendant claims that the Amended Complaint is hopelessly deficient and not subject to amendment as it has group pleading and that the fraud claim lacks particularity. Yet, all of the allegations pertain to him, so this argument fails. Additionally, these arguments, as are explained herein, are incorrectly premised on a basic misunderstanding of class action jurisprudence, California Law, and the FLSA. Plaintiffs need not jump through Defendant's artificial hoops. Nevertheless, Plaintiffs will demonstrate below that it already satisfied these supposed flaws.

Defendant argues the Amended Complaint fails to meet *Twombly/Iqbal* and Rule 9(b) standards, claiming it lacks specificity and improperly uses group pleading (D.I. 36 at p. 14–15). However, the Amended Complaint identifies specific conduct by Rouhana: deductions for nonexistent health benefits (Amended Complaint, ¶¶ 51-58), instructions to employees to avoid using medical care (Amended Complaint, ¶ 56), and failure to remit 401(k) and HSA funds. (Amended Complaint, ¶ 58). These allegations are sufficiently detailed to support fraud and wage claims.[8]

Under *Twombly* and *Iqbal,* a complaint need only contain sufficient facts to state a claim that is plausible on its face. The Amended Complaint identifies specific acts by Rouhana, including

---

[8] *See also*, *e.g.,* Amended Complaint, ¶¶ 2–4, 21-22, 30, 38–43, 61 (identifying Rouhana as the individual who actively directed corporate operations and financial decision-making that gave rise to the violations at issue, including failure to pay timely final wages, misrepresented wage statements, failed to reimburse expneses and failed to provide accurate itemized wage statements); Amended Complaint, ¶¶ 1, 50–54, 56–57 (identifying Rouhana as the person who ***personally and actively*** wrongfully deducted payroll funds from employees' wages for health and dental benefits, even after those benefit plans had been cancelled for nonpayment); *See* Amended Complaint, ¶¶ 1, 6, 32, 33, 52, 53, identifying Rouhana as one of the reasons that employees continued to have deductions withdrawn from their paychecks for these nonexistent benefits, resulting in millions of dollars in out-of-pocket medical expenses that employees were left to bear); *See also* Amended Complaint, ¶¶ 21–22, 23, 24, 25, 29 (identifying Rouhana as individual with control over wages, hours, and working conditions); Amended Complaint, ¶¶ 49–58, 60 (identifying Rouhana as one who personally caused the unpaid wages, misappropriation of employee payroll deductions, and continued the deception ***even as he resigned and handed control of the company*** to co-defendants).

his role in approving employee payroll deductions for benefits that were never provided, failing to provide payment of earned compensation, and his communication with employees to discourage use of non-emergency medical services despite lapsed coverage. Thus, the Amended Complaint satisfies Rule 8.

Fraud claims under Rule 9(b) are also adequately pled. Plaintiffs identify the misrepresentation (regarding ongoing health coverage), the speaker (Rouhana), the approximate timing (May-June 2024), the recipients (employees), and the harm (unpaid wages, uncovered medical care). Amended Complaint, ¶¶ 51-58.

It is incredulous for Defendant to argue that the Amended Complaint, which contains detailed allegations of a scheme which can only be described as manifest corporate greed concocted by himself and his wife, which resulting in numerous counts all against him has been insufficiently plead. If he does not agree with the allegations, that is an issue for another day. If he does not believe this case is amenable to class treatment, that also is an issue for another day.

This allegations against Defendants Rouhana and Newmark are quite extensive. it presumably understands what it intended with the statements regarding Rouhana having a direct and/or active role that "caused the legal violations alleged," including unauthorized withdrawals from employees' pay, unpaid wages, and misrepresentations about benefits. *See, e.g.* Amended Complaint, ¶¶ 21, 27.

Plaintiffs also identify the who (Rouhana), what (falsely stated benefits were active), when (through at least May–June 2024), and how (email communications, corporate memos, deductions while coverage was lapsed) *See, e.g.* Amended Complaint, ¶¶ 45–60.

11

### 2.    Plaintiffs Allege Sufficient Amended Complaint Entitling Them to Relief

"The purpose of a motion to dismiss is to test the ***sufficiency*** of a complaint, ***not to resolve disputes…*** or decide the merits of the case." *Brockstedt v. Sussex County Council*, 771 F. Supp. 2d 348, 352 (D. Del. 2011) (emphases added). For purposes of surviving a motion to dismiss, Plaintiffs have given "fair notice of what…the claim is" and sufficiently proven a "viable legal theory" that would permit the relief sought. *Twombly*, 550 U.S. at 544, 555. When construing the Complaint in the light most favorably to the Plaintiffs, they have plausibly alleged: (1) California and Federal wage and hour, as well as derivative claims, and (2) claims for fraud and conversion.

### 3.    Plaintiffs Allege Sufficient Facts Under Alter Ego Theories and Labor Code Labor Code § 558.1 for Defendant to be Personally Liable

Labor Code Section 558.1(a) provides in pertinent part: "Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation." *Labor Code* § 558.1.

For an individual to have liability pursuant to Labor Code section 558.1, there must be some allegation beyond status as an owner, officer or director of the corporation. That, is, there must be an allegation that the individual not only had some oversight of the company's operations or some influence on corporate policy, but that their actions in doing so actually *caused Labor Code violations*. *Espinoza v. Hepta Run, Inc.* (2022) 74 Cal.App.5th 44, 59-60. That is, in order to "in order to 'cause' a violation of the Labor Code, an individual must have engaged in some affirmative action beyond his or her status as an owner, officer or director of the corporation. However, that does not necessarily mean the individual must have had involvement in the day-to-day operations of the company, nor is it required the individual authored the challenged

12

employment policies or specifically approved their implementation. But to be held personally liable he or she must have had some oversight of the company's operations or some influence on corporate policy that resulted in Labor Code violations." *Id*.

Whether a party is liable under an alter-ego theory under California law is normally a question of fact. *Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811, citing *Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1248; accord, *RLH Industries, Inc. v. SBC Communications, Inc*. (2005) 133 Cal.App.4th 1277, 1288. "[I]t is generally stated that in order to prevail on an alter-ego theory, the plaintiff must show that "(1) there is such a unity of interest that the separate personalities of the corporations no longer exist; and (2) inequitable results will follow if the corporate separateness is respected." *Id*. (Internal citations omitted.) Under Federal Law, state a claim for alter ego liability, a plaintiff must "adequately allege that (1) there is such unity of interest that the separate personalities [of the entity and the shareholder] no longer exist and (2) that failure to disregard [their separate entities] would result in fraud or injustice." See, e.g., *Doe v. Unocal Corp*. (9th Cir. 2001) 248 F.3d 915, 922.

Defendant argues he cannot be held personally liable (Motion, at p. 18–20), but Labor Code § 558.1 imposes liability on individuals who cause wage violations such as is alleged here. The Amended Complaint alleges Rouhana made funding and payroll decisions and approved unlawful deductions that led to the harm caused to the employees. Amended Complaint, ¶¶ 31, 76–83. Personal liability under California Labor Code § 558.1 is appropriate where an individual causes the violations.

Alter ego liability is appropriate here, as in addition to these allegations, it is detailed that Defendant had a long-standing pattern of financial misconduct, concealment, and

13

misrepresentation – all for his own benefit e.g. Amended Complaint, ¶ 60[9]. The Amended alleges precisely that: Rouhana directed the deductions, misrepresented benefits, and ignored obligations to employees. Thus, the Amended Complaint is sufficiently pled for Defendant to be personally liable for the violations contained therein.

### a.    Count I (Fraud) States a Claim

First, as stated *supra*, Plaintiffs have adequately plead alter ego theories as it pertains to Defendant. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened pleading requirement of Rule 9(b) applies not only where fraud is an essential element of a claim, but where the claim is "grounded in fraud" or "sound[s] in fraud." *Vess v. Ciba-Geigy Corp. USA* (9th Cir. 2003) 317 F.3d 1097, 1103-04 (9th Cir. 2003). This is so that defendants will have notice of the "particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken* (9th Cir. 1993), 6 F.3d 666, 671 In order to provide such notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id.* at 672. In other words, "[a]verments of fraud must be accompanied by 'the who, what, when where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal citations omitted).

---

[9] Court filings revealed that "in 2022 and 2023 approximate $18.4 million of management and license fees was paid each year to Defendant Rouhana or entities he controlled. And in the three months ended March 31, 2024, the Debtors paid a total of $9 million in management and license fees. These management and license agreements, which were negotiated between entities controlled by Defendant Rouhana (i.e. Defendant Rouhana was on both sides of the transaction) required the Debtors to pay approximately 10% of their gross revenues to Defendant Rouhana's companies." Amended Complaint, ¶ 60.

Plaintiff's fraud allegations satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement, which mandates that fraud be pleaded with specificity as to the "who, what, when, where, and how" of the alleged misconduct. The Ninth Circuit has consistently held that Rule 9(b) applies to all fraud-based claims, including those arising under California state law, and requires plaintiffs to provide "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Vess v. Ciba-Geigy Corp. USA* (9th Cir. 2003) 317 F.3d 1097, 1106.

Here, the Amended Complaint specifically identifies the individuals who made the representations, details the exact statements made and when, describes the circumstances and location where the representations occurred, and explains precisely how these statements were false and misleading. This level of detail satisfies the "fair notice" standard established in *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 1001 (9th Cir. 2010), as it provides Defendant with sufficient information to mount a meaningful defense.

Defendant argues the Amended Complaint fails to meet *Twombly/Iqbal* and Rule 9(b) standards, claiming it lacks specificity and improperly uses group pleading (D.I. 36 at p. 14–15). However, the Amended Complaint identifies specific conduct by Rouhana: deductions for nonexistent health benefits (Amended Complaint, ¶¶ 79, 82), instructions to employees to avoid using medical care (Amended Complaint, ¶ 80), and failure to remit 401(k) and HSA funds

15

(Amended Complaint, ¶¶ 82–83). These allegations are sufficiently detailed to support fraud and wage claims.[10]

Under *Twombly* and *Iqbal,* a complaint need only contain sufficient facts to state a claim that is plausible on its face. The Amended Complaint identifies specific acts by Rouhana, including his role in approving employee payroll deductions for benefits that were never provided, failing to provide payment of earned compensation, and his communication with employees to discourage use of non-emergency medical services despite lapsed coverage. The Amended Complaint satisfies Rule 8.

Fraud claims under Rule 9(b) are also adequately pled. Plaintiffs identify the misrepresentation (regarding ongoing health coverage), the speaker (Rouhana), the approximate timing (May-June 2024), the recipients (employees), and the harm (unpaid wages, uncovered medical care). Amended Complaint, ¶¶ 45–60. Rouhana argues that the fraud allegations are insufficiently pled and rely on general statements not attributable to him. Motion pp. 13-14. However, the allegations are largely squared on his fraudulent conduct.

The Amended Complaint alleges that Rouhana actively misrepresented the status of employees' health and dental benefits and continued to approve deductions from their paychecks even after those benefits had been terminated. Amended Complaint, ¶¶ 45–60. Specifically,

---

[10] *See also, e.g.* Amended Complaint, ¶¶ 2–4, 21-22, 30, 38–43, 61 (identifying Rouhana as the individual who actively directed corporate operations and financial decision-making that gave rise to the violations at issue(; Amended Complaint, ¶¶ 1, 50–54, 56–57 (identifying Rouhana as the person who ***personally and actively*** wrongfully deducted payroll funds from employees' wages for health and dental benefits, even after those benefit plans had been cancelled for nonpayment); See Amended Complaint, ¶¶ 1, 6, 32, 33, 52, 53, identifying Rouhana as one of the reasons that employees continued to have deductions withdrawn from their paychecks for these nonexistent benefits, resulting in millions of dollars in out-of-pocket medical expenses that employees were left to bear); Amended Complaint, ¶¶ 21–22, (identifying Rouhana as individual with control over wages, hours, and working conditions); See also, Amended Complaint, ¶¶ 45-60 (identifying Rouhana as one of the individuals who failed to pay timely final wages, misrepresented wage statements, failed to reimburse expenses, and failed to provide accurate itemized paystubs and as one who personally caused the unpaid wages, misappropriation of employee payroll deductions, and continued the deception ***even as he resigned and handed control of the company*** to co-defendants).

employees were advised through corporate-wide correspondence influenced by Rouhana that coverage remained in effect, and they were instructed to avoid using non-emergency medical services—despite the Amended Complaint that Anthem had terminated coverage on May 14, 2024.

Plaintiffs relied on these misrepresentations to their detriment, including deferring or foregoing necessary medical care and incurring unreimbursed medical expenses. Amended Complaint, ¶¶ 74-81. The Amended Complaint alleges that Rouhana's actions were not mere corporate oversight but part of a broader pattern of deception and financial mismanagement, which included self-dealing and diverting corporate resources to himself and his wife. See, e,g, Amended Complaint, ¶¶ 1-60. These allegations meet the elements of fraud: misrepresentation, knowledge of falsity, intent to induce reliance, actual and justifiable reliance, and resulting damage.

### b.    Count II (Conversion) Is Legally Plausible

Conversion is the wrongful exercise of dominion over the property of another. *Farmers Ins. Exchange v. Zerrin* (1997) 53 Cal.App.4th 445, 451. The elements of a conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of property rights; and (3) damages. *Id*. Conversion can involve not just physical taking, but also withholding or assumption or control over property, including withholding of money. *Id.* at 451-52 ("It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use. Money can be the subject of an action for conversion if a specific sum capable of identification is involved."). Defendant contends that the conversion claim is barred under *Voris v. Lampert* (2019) 7 Cal. 5th 1141 (2019). However, the holding in *Voris v. Lampert*, was a declination to "to supplement the existing set of remedies for wage nonpayment with an additional tort remedy in the nature of

17

conversion." Notably, *Voris* did not bar claims involving misappropriated funds that are specifically misappropriated for Defendant's own benefit.

Here, Plaintiffs do not merely seek unpaid wages—they seek recovery of specific deductions from their paychecks that were earmarked for benefits like health insurance, dental coverage, and 401(k) contributions but were not applied as intended. Amended Complaint, ¶¶ 30-60. These are funds taken from employees for a stated purpose and diverted to other uses, which is a textbook case of conversion of a determinate sum of money. Moreover, the diversion of funds does not concern merely employees' wages as contemplated in *Voris*. It concerns entire families' health benefits which fits squarely within the definition of conversion. Further, the Amended Complaint, alleges this was done knowingly and with intent to conceal the company's financial insolvency, supporting punitive damages on a class-wide basis. Amended Complaint, ¶ 1, 5, 47-60, 61, 71. It is specifically pled that Rouhana authorized withdrawals for benefits that were not received, which caused harm to entire families – not just employees' wages. *See, e.g.* Amended Complaint, ¶ 22, 55, 62. Thus, a claim for conversion is appropriate against Rouhana.

### c.    Counts III–VIII (California Labor Code Violations) Are Properly Alleged

#### i.    Count III – Failure to Pay Wages

As stated above, Labor Code Section 558.1(a) provides in pertinent part: "Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation." *Labor Code* § 558.1.

For an individual to have liability pursuant to Labor Code section 558.1, there must be some allegation beyond status as an owner, officer or director of the corporation. That, is, there

must be an allegation that the individual not only had some oversight of the company's operations or some influence on corporate policy, but that their actions in doing so actually *caused Labor Code violations*. *Espinoza v. Hepta Run, Inc*. (2022) 74 Cal.App.5th 44, 59-60.

Defendant contends the count is impermissibly vague, and that he is not liable as an officer pursuant to Labor Code section 558.1 (Motion at 16). The Amended Complaint identifies unpaid compensation (wages, bonuses, PTO) and affected class members. Amended Complaint, ¶¶ 30-60. However, the Amended Complaint details that Rouhana (and Newmark) directly contributed to the decision not to pay employees. *See, e.g*. Amended Complaint, ¶¶ 22-23.

For instance, as discussed above, Rouhana is identified as the individual who actively directed corporate operations and financial decision-making that gave rise to the violations at issue; personally deducted payroll funds resulting in nonexistent benefits Amended Complaint, ¶¶ 1, 2–4, 21-22, 30, 38–43, 50-60; and had control over wages, hours, and working conditions, thus causing the unpaid wages. *See* Amended Complaint, ¶¶ 1, 6, 22, 23, 32, 33, 45-60.

These allegations go well beyond general claims—they are grounded in specific categories of compensation, supported by Amended Complaint showing who was responsible for authorizing or withholding the payments.

### ii.     Count IV – Violation of Labor Code § 204

Labor Code section 204 provides in pertinent part:

> "All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays.…"

Labor Code § 204.

The penalties for Labor Code section 204 are laid out in Labor Code section 210, which provides for individual liability:

"210. (a) In addition to, and entirely independent and apart from, any other penalty provided in this article, every **person** who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 204.11, 205, 205.5, and 1197.5, shall be subject to a penalty as follows:

(1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.

(2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld…"

Labor Code § 210.

Rouhana asserts that he is not liable pursuant to Labor Code § 204. First, he is liable as the employer. But regardless, liability may still attach as a person under Labor Code § 210 as he caused the untimely payment – this is basically an unpaid wages cause of action caused by Rouhana himself. Plaintiffs allege that semi-monthly paychecks were delayed or skipped, that final paychecks were not timely issued, and that Rouhana's decisions directly led to these delays. Amended Complaint, ¶¶50, 84–85, 97–99. Employees were left without income for extended periods due to Rouhana's control of corporate finances and refusal to prioritize or even make payroll obligations.

### iii.    Count V – Violation of Labor Code § 221

Labor Code section 221 states that it is unlawful for an employer to "collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Additionally, Labor Code section 225.5 states that "in addition to, and entirely independent and apart from, any other penalty provided in this article, every **person** who unlawfully withholds wages due any employee in violation of Section 212, 216, **221**, 222, or 223 shall be subject to a civil penalty…" Labor Code § 221 (emphasis added).

Rouhana argues that he is not personally liable pursuant to Labor Code section 221 because it is not one of the enumerated statutes contained in Labor Code section 558.1. This ignores the fact that he is personally liable as the employer. In any event, the Labor Code indicates that there is personal, individual liability for violations of Labor Code section 221. The Amended Complaint shows that deductions were taken from employee paychecks for benefits that were not actually provided by Defendant. This includes premiums for health and dental insurance that had been canceled and retirement contributions that were never deposited. Amended Complaint, ¶¶ 45-60. Under § 221, these constitute unlawful attempts by an employer - or a person causing the violation - to "collect or receive" wages that were previously paid. Thus, this count must stand.

### iv.    Count VI – Failure to Reimburse Expenses - Violation of Labor Code § 2802

As stated above, there is sufficient basis to hold Defendant individually liable for violations of Labor Code § 2802 pursuant to Labor Code § 558.1. Defendant argues the Amended Complaint lacks specificity regarding expenses. However, the Amended Complaint identifies categories of unreimbursed business expenses, including overdraft fees from payroll delays, remote work costs, travel expenses, and expenses for company-assigned vehicles. *See, e.g.* Amended Complaint, ¶¶ 63. Rouhana had knowledge of these conditions and declined to authorize reimbursement, despite controlling the company's finances and decision-making.

### v.    Count VII – Wage Statement Violations - Violation of Labor Code § 226(a)

As stated above, there is sufficient basis to hold Defendant individually liable for violations of Labor Code § 226(a) pursuant to Labor Code § 558.1. Defendant utilizes the recent unpublished Northern District of California case of *Hill v. Pac. Mar. Ass'n,* No. 24-CV-00336-JSC, 2025 WL

1282628, at *3 (N.D. Cal. May 2, 2025) for the proposition that Plaintiffs will be unable to show injury due to the issuance of improper wages. See Motion, at p. 19.

In *Hill*, the District Court confirmed longstanding California law elucidated recently by the California Supreme Court in *Naranjo v. Spectrum Sec. Servs., Inc.* (2024) 15 Cal. 5th 1056, 1064 (2024) "plaintiffs must establish injury flowing from the inaccuracy." The Naranjo court cited *Maldonado v. Epsilon Plastics, Inc.* (2018) 22 Cal. App. 5th 1308, 1334, explaining, that when "there is a wage and hour violation, the hours worked will differ from what was truly earned. But only the absence of the hours worked will give rise to an inference of injury; the absence of accurate wages earned will be remedied by the violated wage and hour law itself ...."

Rouhana claims Plaintiffs were not injured by inaccurate wage statements. The Amended Complaint alleges otherwise: employees received wage statements showing deductions for nonexistent benefits, misleading them into believing they had active coverage. Amended Complaint, ¶¶ 45-60. This confusion caused employees to delay or avoid medical care and deprived them of the ability to understand or correct payroll deductions. Not only that, the inaccurate wage statements have led to other injuries separate from the failure to pay wages – employees were not able to properly quantify their pay and/or earnings for purposes of taxes, and still do not know with specificity how much has been lost because that is solely within Defendants' knowledge. These injuries are precisely the type contemplated by § 226(e), which provides for penalties where employees suffer harm due to intentional inaccuracies in wage statements.

### vi.    Count VIII – Waiting Time Penalties - Violation of Labor Code §§ 201-203

As stated above, there is sufficient basis to hold Defendant individually liable for violations of Labor Code § 203 pursuant to Labor Code § 558.1. This is an enumerated statute contained within Labor Code § 558.1, and as such Defendant is personally liable.

Labor Code § 203 provides in pertinent part: "If an employer *willfully* fails to pay… any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days..."

Regarding the definition of "willfulness" under Labor Code section 203, the California Supreme Court has recently clarified the meaning, stating in *Naranjo v. Spectrum Sec. Servs., Inc.,* 15 Cal. 5th 1056, 1087 (2024):

> "As the Ninth Circuit recently concluded after examining our appellate courts' application of the good faith defense to section 203 penalties, the defense does not "reward ignorance of the law"; it only means that penalties will be imposed on "employers who lack a good excuse" while employers who face genuine legal uncertainty and make mistakes of law that are reasonable and supported by evidence will be spared. (*Hill v. Walmart Inc.* (9th Cir. 2022) 32 F.4th 811, 816.) Allowing a good faith defense in cases where the employer's obligations are genuinely uncertain "amply serves the balance struck by the applicable statutes and regulations between incentivizing prompt payment of wages and shielding innocent mistakes from penalties." (*Id.* at p. 817.)

Rouhana claims there is no allegation of willfulness. The opposite is true: this is a textbook case of willfulness. The Amended Complaint alleges that Rouhana knowingly and willfully failed to pay all wages due to employees and that this failure was a deliberate corporate policy or practice. Amended Complaint, ¶¶ 110–115. Plaintiffs allege they were terminated without receiving compensation owed under California law. Rouhana's role as a decision-maker and his continued withholding of wages satisfies the willfulness standard.

### d.    Count IX – FLSA

Defendant utilizes unpublished case law for the proposition that the FLSA claim must fail, and to the extent that Defendant relies on *Landers v. Quality Commc'ns, Inc.* (9th Cir. 2014) 771 F.3d 638, 645–46 (2015, as amended), Defendant misapplies it. In *Landers*, the Ninth Circuit held that applying a standard to the pleadings in that case, the Plaintiff had failed to state a claim for

minimum wages and overtime because the pleadings therein merely indicated that the compensation system was a "*de facto*'piecework no overtime' system... and defendants utilized a compensation system that did pay some measure of overtime wages upon a designated hourly rate but failed to pay any overtime wages on the additional and substantial portion of the earnings of the plaintiff and those similarly situated that were paid by the defendants solely on a piece rate basis." *Landers v. Quality Commc'ns, Inc.*, (9th Cir. 2014) 771 F.3d 638, 645–46 (2015, as amended). Based on the allegations therein, the Plaintiff had presented only generalized allegations asserting wage and hour violation provisions of the FLSA without any detail for any given workweek.

In contrast, the Plaintiffs here provide detailed factual allegations describing the categories of compensation that were unpaid—including wages, bonuses, commissions, and PTO—and identify when these failures occurred, such as during payroll cycles in late 2023 and 2024. See, e.g. Amended Complaint, ¶¶ 72, 76, 84–87. Plaintiffs also allege a responsible individual, Defendant Rouhana, who directed and authorized these payroll decisions and who continued to extract fees from the company while workers went unpaid. Amended Complaint, ¶¶ 30–31, 76–79. Furthermore, Plaintiffs are not only asserting a failure to pay minimum or overtime wages but also allege a complete failure to remit final paychecks and ongoing deductions from wages that were never applied to their intended purposes Amended Complaint, ¶¶ 88–89, 97–99. These allegations far exceed the pleading threshold discussed in *Landers* and instead resemble the type of factual specificity the Ninth Circuit emphasized would be sufficient to state a claim under the FLSA and related state labor laws. Plaintiffs have therefore alleged liability under the FLSA, and a declaratory judgment is appropriate to determine employees' right to compensation.

### e.    The Reference to the California UCL is Appropriate

Rouhana argues that the Unfair Competition Law ("UCL") claim fails because Plaintiffs have adequate legal remedies. This is incorrect. Moreover, it is inappropriate for Defendant to attempt to dismiss the reference thereto as there is no count associated with the UCL – only a reference. The reference to the statute is necessary insofar as to confer a four-year statute of limitations period on Plaintiffs' California claims. See *Cortez v. Purolator Air Filtration Prods. Co.* (2000) 23 Cal. 4th 163: "(1) unlawfully withheld wages may be recovered as a restitutionary remedy in a UCL action; (2) UCL's four-year limitations period governs a UCL action based on failure to pay wages; and (3) in deciding whether to grant the remedy or remedies sought by a UCL plaintiff, the court must permit the defendant to offer equitable considerations."

Not only does the Amended Complaint seek the unlawfully withheld wages to be recovered as restitution to the employees, it also seeks restitution for wrongfully withheld benefit deductions and equitable remedies not available under the Labor Code. Amended Complaint, ¶¶ 100–104. The UCL permits claims for unlawful business practices where defendants have obtained money through unfair or fraudulent conduct. Here, the deductions for nonexistent benefits and deceptive misrepresentations about coverage qualify as such practices. Additionally, the reference to the UCL is necessary as it secures a four-year statute of limitations on the California wage claims. As such, it must not be dismissed.

### f.    Class Allegations Should Not Be Stricken

Rule 23 analysis is not appropriate on a motion to dismiss. See, e.g. *Gillibeau v. City of Richmond* (9th Cir. 1969) 417 F.2d 426, 432 ("…compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim…" Instead, Rule 23(c)(1) specifically indicates that a motion for an order on class certification shall be brought at "an early practicable time after a person sues…as a class representative." *See* Federal Rule of Civil Procedure 23. Additionally,

Federal Rule of Civil Procedure 2323 applies in an adversary proceeding such as this. *See* Fed. R. Bankr. P. 7023.

The Amended Complaint contains allegations by Plaintiffs for themselves and on behalf of a class of all similarly situated persons who were employed by CSSE during the relevant time periods, including a California Sub-Class of individuals employed by Defendants other than the named Defendants who were employed in California within four (4) years of the filing of this action and a Nationwide Sub-class of current and former employees of Defendants other than the named Defendants who were employed in the United States within three (3) years of the filing of this class action. Amended Complaint, ¶¶ 30-33.

Defendant challenges class treatment (Motion at 25–26), but class certification is premature at the pleading stage. The Amended Complaint alleges over 2,000 similarly situated employees with common legal and factual issues, including but not limited to the same policies of non-payment, unauthorized deductions, and misrepresentations. Amended Complaint, ¶¶ 59–71. Defendant contends class treatment is improper in this bankruptcy proceeding. But class allegations are routinely allowed in bankruptcy courts and should be addressed at the certification stage and such argument is not proper on a motion to dismiss.

The elements of numerosity, commonality, typicality, and adequacy are adequately and there is no basis to strike the class allegations at the pleading stage. Additionally, there has been no request for the striking of the class allegations to date other than from Defendant Newmark.

## V.    ALTERNATIVELY, THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND

If the Court determines that Defendant Rouhana or Newmark established a basis to dismiss the Amended Complaint, the Court should grant Plaintiffs leave to amend. Rule 15 provides that a party may amend a pleading by leave of court, and that leave "shall be freely given when justice

26

so requires." *In re Oakwood Homes Corp.*, 325 B.R. 696, 699 (Bankr. D. Del. 2005) (quoting Fed. R. Civ. P. 15). "The Third Circuit has adopted a liberal approach to the amendment of pleadings" so that a claim will be decided on the merits, rather than technicalities. *Arneault v. Diamondhead Casino Corp.*, 277 F. Supp. 3d 671, 674 (D. Del. 2017). A Court should grant leave to amend unless Defendant can show undue delay, bad faith, dilatory motive, undue prejudice, futility, or repeated failure to cure deficiencies. *In re Oakwood*, 325 B.R. at 699.

To the extent Defendant relies on this position as a basis to refuse Plaintiffs relief, the Court should permit Plaintiffs to file a second Amended Complaint to address any deficiencies if necessary.

[*Remainder of Page Intentionally Left Blank*]

17418731/1

## VI.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss Plaintiffs' Amended Complaint.


Dated:  July 7, 2025
Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Tara C. Pakrouh*
Eric J. Monzo (DE Bar No. 5214)
Tara C. Pakrouh (DE Bar No. 6192)
Cortlan S. Hitch (DE Bar No. 6720)
Siena B. Cerra (DE Bar No. 7290)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
　　　　tpakrouh@morrisjames.com
　　　　chitch@morrisjames.com
　　　　scerra@morrisjames.com

-and-

*/s/ Elana R. Levine*
**ALDERLAW, PC**
Michael Alder (CA Bar No. 170381)
Elana R. Levine, Esq. (CA Bar No. 234155)
12800 Riverside Drive, Second Floor
Valley Village, CA 91607
Telephone: (310) 275-9131
Facsimile: (310) 275-9132
E-mail: cmalder@alderlaw.com
　　　　llevine@alderlaw.com
　　　　mtanzer@alderlaw.com

*Counsel to Plaintiffs and the Proposed Class*