## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| **CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC.,** *et al.*, | **Case No. 24-11442 (MFW)** |
| **Debtors**[1] | **(Jointly Administered)** |
| **BRIAN SKAJEM, LISA PAPATZIMAS, ERIN TUTTLE, DAVID ELLENDER, DARA COHEN, MATT LOZE, JESSICA STOECKELER, HEATHER BUNDY, CAREY CAMPBELL, KELLY BURKE HOPKINS, COURTNEY SMITH, on behalf of themselves and behalf of all others similarly situated,** | **Adv. Proc. No. 24-50128** |
| **Plaintiffs,** | |
| **v.** | |
| **CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC.; REDBOX AUTOMATED RETAIL, LLC; WILLIAM J. ROUHANA, JR., AMY NEWMARK, JOHN T. YOUNG, ROBERT H. WARSHAUER, BART SCHWARTZ, and DOES 1-500, inclusive,** | |
| **Defendants.** | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS ROBERT H. WARSHAUER AND JOHN T. YOUNG, JR.'S
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

---

[1]     The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are:  757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS A VOD Inc. (4038); CSSESIG, LLC (7150), Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).  The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................... 4

    A.    Factual Background ...................................................................... 4
    B.    Procedural Background................................................................. 10

ARGUMENT ....................................................................................................... 11

I.    The FAC Fails to Plead a Claim for Fraud (Count I). ..................... 12

II.    The FAC Fails to Plead a Claim for Conversion (Count II). ............ 14

III.    The FAC Fails to Plead Violations of the California Labor Code
    (Counts III – VIII)........................................................................... 16

    A.    Failure to Pay Wages (Count III)................................................ 16
    B.    Failure to Timely Pay Wages (Count IV) .................................... 18
    C.    Secreting Wages (Count V) ......................................................... 18
    D.    Failure to Reimburse (Count VI) ................................................ 19
    E.    Failure to Provide Accurate Wage Statements (Count VII) ................. 22
    F.    Failure to Pay Wages at Termination (Count VIII) ............................. 23

IV.    The FAC Fails to Plead a Violation of the FLSA (Count IX). ........................... 24

V.    The FAC Fails to Plead a Violation of California's Unfair Competition Law
    (No Count). ..................................................................................... 27

CONCLUSION.................................................................................................... 30

# TABLE OF AUTHORITIES

*Page(s)*

**Cases:**

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999),
  *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ...................................................................................................3, 11

*Alvarenga v. Carlson Wagonlit Travel, Inc.*,
  2016 WL 466132 (E.D. Cal. Feb. 8, 2016) ...........................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................................11, 28

*Coley v. Vannguard Urban Improvement Ass'n*,
  2014 WL 4793825 (E.D.N.Y. Sept. 24, 2014) ................................................................25, 26

*Cordell v. PICC Lines Plus LLC*,
  2016 WL 4702654 (N.D. Cal. Sept. 8, 2016) ...........................................................17, 23, 24

*Gardner v. Safeco Ins. Co. of Am.*,
  2014 WL 2568895 (N.D. Cal. June 6, 2014) .......................................................................28

*Hassell v. Uber Techs., Inc.*,
  2020 WL 7173218 (N.D. Cal. Dec. 7, 2020) ..................................................................21, 28

*Hawk Mountain LLC v. Ram Cap. Grp. LLC*,
  2016 WL 3182778 (D. Del. June 30, 2016) (Report & Recommendation),
  *adopted*, 2016 WL 4541032 (D. Del. Aug. 31, 2016),
  *aff'd*, 689 F. App'x 703 (3d Cir. 2017) ..................................................................................12

*Hill v. Pac. Mar. Ass'n*,
  2025 WL 1282628 (N.D. Cal. May 2, 2025) ........................................................................22

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..............................................................................................12

*In re Keystone Assocs. LLC v. Barclays Bank PLC*,
  2020 WL 109008 (D. Del. Jan. 9, 2020) ...............................................................................12

*Landers v. Quality Commc'ns, Inc.*,
  771 F.3d 638 (9th Cir. 2014), *as amended* (Jan. 26, 2015) ....................................................27

*Li v. A Perfect Day Franchise, Inc.*,
  281 F.R.D. 373 (N.D. Cal. 2012)...................................................................................25, 26

*Martinez v. Combs*,
  231 P.3d 259 (Cal. 2010) ............................................................................................17, 24

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
  79 F. Supp. 2d 494 (D.N.J. 2000) ....................................................................................13

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000)...............................................................................................5

*Pellerin v. Honeywell Int'l, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012)..........................................................................28, 29

*Plaksin v. NewSight Realty, Inc.*,
  2019 WL 4316255 (C.D. Cal. Apr. 30, 2019) ...............................................................20, 24

*Price v. Starbucks Corp.*,
  192 Cal. App. 4th 1136 (2011) ....................................................................................22, 23

*Reynolds v. Bement*,
  116 P.3d 1162 (Cal. 2005),
  *abrogated by Martinez v. Combs*,
  231 P.3d 259 (Cal. 2010) ..................................................................................................17

*Rios v. Linn Star Transfer, Inc.*,
  2020 WL 1677338 (N.D. Cal. Apr. 6, 2020) ............................................................... *passim*

*Rosenblatt v. Getty Oil Co.*,
  493 A.2d 929 (Del. 1985) .................................................................................................22

*Roush v. MSI Inventory Serv. Corp.*,
  2018 WL 3637066 (E.D. Cal. July 30, 2018) ....................................................................20

*Scott v. Cintas Corp.*,
  2024 WL 1421277 (N.D Cal. Apr. 2, 2024) ......................................................................27

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ............................................................................................28

*Travelers Prop. Cas. Co. of Am. v. Centex Homes*,
  2013 WL 4528956 (N.D. Cal. Aug. 26, 2013) ..................................................................29

*Treadstone Servs. PC v. Aetna Life Ins. Co.*,
  2025 WL 740178 (C.D. Cal. Feb. 7, 2025)........................................................................28

*In re TZEW Holdco LLC (Burtch v. Zachem)*,
   2023 WL 6140247 (Bankr. D. Del. Sept. 19, 2023) ................................................12

*Usher v. White*,
   64 Cal. App. 5th 883, 279 Cal. Rptr. 3d 281 (2021)........................................20, 24

*Voris v. Lampert*,
   446 P.3d 284 (Cal. 2019) ..............................................................................14, 15

*In re W.R. Grace & Co.*,
   626 B.R. 217 (Bankr. D. Del. 2021) ...............................................................................4

*Watson v. Tennant Co.*,
   2018 WL 5099281 (E.D. Cal. Oct. 17, 2018) ...................................................15

*Wright v. Lehigh Valley Hosp. & Health Network*,
   2011 WL 2550361 (E.D. Pa. June 23, 2011) .......................................25, 26, 27

*Yori v. Domitrovich*,
   654 F. App'x 52 (3d Cir. 2016) ......................................................................11, 17

**Statutes and Rules:**

29 U.S.C. §§ 201 *et seq.* (Fair Labor Standards Act) ...................................................25

29 U.S.C. § 203(d) ..............................................................................................25

Cal. Bus. & Prof. Code § 17200 .....................................................................27, 28

Cal. Labor Code § 201 ..........................................................................................23

Cal. Labor Code § 202 ..........................................................................................23

Cal. Labor Code § 203 .....................................................................................23, 24

Cal. Labor Code § 204 .....................................................................................18, 19

Cal. Labor Code § 221 ..........................................................................................19

Cal. Labor Code § 226 ..........................................................................................22

Cal. Labor Code § 558.1 ....................................................................19, 20, 23, 24

Cal. Labor Code § 2802 ...................................................................................19, 21

Fed. R. Bankr. P. 7008 ..........................................................................................11

Fed. R. Bankr. P. 7009 ..........................................................................................11

iv

Fed. R. Bankr. P. 7012(b) ...........................................................................................11

Fed. R. Civ. P. 8(a) ............................................................................11, 12, 16, 28

Fed. R. Civ. P. 9(b) ....................................................................................3, 11, 12, 13

Fed. R. Civ. P. 12(b)(6)...............................................................................................11

Fed. R. Evid. 201 .........................................................................................................4

**Other Authorities:**

Cal. Industrial Wage Commission Order No. 12-2001.................................................17

J. Travis Laster & John Mark Zeberkiewicz,
   *The Rights and Duties of Blockholder Directors,*
   70 Bus. L 33 (2015) ...........................................................................................22

## PRELIMINARY STATEMENT

Defendants Robert H. Warshauer and John T. Young, Jr., two former outside directors of defendant Chicken Soup for the Soul Entertainment, Inc. ("CSSE"), submit this memorandum in support of their motion to dismiss Plaintiffs' First Amended Complaint (the "FAC") [Doc. 30].

Plaintiffs filed this putative class action on behalf of themselves and former CSSE employees who claim to have been deprived of compensation and other employee benefits. The lawsuit alleges a pattern of misconduct by CSSE, its former CEO (William Rouhana, Jr.), and his wife (Amy Newmark, a former officer and director) dating back to 2023 and perhaps even earlier. Plaintiffs' initial complaint did not even name Messrs. Warshauer and Young as defendants. That complaint was filed months after CSSE filed for bankruptcy in this Court under chapter 11 on June 28, 2024, and converted its case to a chapter 7 liquidation twelve days later, on July 10, 2024.

Eight months after filing their initial Complaint, Plaintiffs filed their FAC and added Messrs. Warshauer and Young as defendants, even though those two outside directors did not join CSSE's Board until May 2024 (long after the vast amount of the alleged misconduct had occurred), served on the Board for only about *five weeks* (from May 3 to June 11, 2024) until Rouhana fired them before CSSE's bankruptcy filing, and then, by the Court's mandate, served just *six more days* (from July 4 to July 10, 2024) after the bankruptcy filing and until the chapter 7 conversion. The FAC does not allege any act by either defendant that could give rise to any of the claims asserted against them. And not surprisingly, CSSE's chapter 7 trustee saw no reason to sue Messrs. Warshauer and Young when, two months before Plaintiffs filed the FAC, he brought similar claims against Rouhana, Newmark, several former CSSE officers, and CSSE's other, longstanding outside directors, who had served on the Board during the entire period of the alleged misconduct (but whom Plaintiffs inexplicably chose *not* to sue in this adversary proceeding).

Messrs. Warshauer and Young do not belong in this case, as the uncontradicted timeline and the FAC itself make clear:

- The alleged misconduct began in 2023, if not earlier.

- On May 3, 2024, Messrs. Warshauer and Young joined CSSE's Board as restructuring experts, to help address CSSE's need for liquidity.

- On June 11, 2024, just five weeks later, Rouhana fired them from the Board.

- On June 28, 2024, CSSE filed its chapter 11 petition in this Court.

- On July 4, 2024, the Court, on petition from the debtors in possession, ordered Messrs. Warshauer's and Young's reappointment to CSSE's Board.

- On July 10, 2024, CSSE, through counsel, petitioned the Court to convert the case from chapter 11 to a chapter 7 liquidation, at which point Messrs. Warshauer's and Young's Board service ended as the chapter 7 trustee took control.

These are the only *facts* alleged in the FAC (or derivable from public filings) as to Messrs. Warshauer's and Young's involvement with CSSE. And yet, based on this virtually nonexistent factual record, Plaintiffs have sought to drag Messrs. Warshauer and Young into this lawsuit asserting unsupportable claims of fraud, conversion, and violations of the California Labor Code and the federal Fair Labor Standards Act—charges that the chapter 7 trustee declined to bring against them.

Messrs. Warshauer and Young respectfully assert that these untenable claims were brought in bad faith and should be dismissed with prejudice. Most of the alleged events took place before Messrs. Warshauer and Young joined CSSE's Board, and the FAC does not plead a single *factual* allegation suggesting that Messrs. Warshauer and Young had any role in any alleged misconduct even during the brief periods of their Board service.

Moreover, even apart from the utter lack of factual basis for any of the claims, some claims are legally untenable when asserted (as here) against corporate officials who allegedly acted within the scope of their agency.  None of the claims is sustainable on any basis.

The fraud claim (Count I) should be dismissed because the FAC does not plead *any* fact, much less with the particularity required by Fed. R. Civ. P. 9(b), showing that Messrs. Warshauer or Young made or authorized any false statement or omission or acted with any intent to defraud. Nothing in the FAC remotely alleges the "who, what, when, where, and how" that a plaintiff must plead to satisfy Rule 9(b).  *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (internal quotations omitted), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007).

The conversion claim (Count II) should be dismissed because California law does not recognize a common-law conversion claim for nonpayment of wages.  But even if California law did allow such a claim, the FAC does not (and cannot truthfully) plead any *fact* showing that Messrs. Warshauer or Young "converted" or exercised dominion over, or received any other benefit from, the wages allegedly not paid to Plaintiffs and other employees.

The claims for violation of the California Labor Code (Counts III-VIII) should be dismissed because (*i*) for some of those claims, outside directors and other corporate agents cannot be held liable as a matter of law for actions within the scope of their agency, and (*ii*) for the claims where liability is theoretically possible, the FAC does not plead any *fact* suggesting that Messrs. Warshauer and Young were personally involved in the alleged violations.

The claim for violation of the Fair Labor Standards Act (Count IX) should be dismissed because the FAC does not plead any *fact* showing that Messrs. Warshauer and Young could be

considered "employers," *i.e.*, that they had day-to-day operational or functional control over CSSE's alleged failure to compensate its employees.

Finally, to the extent Plaintiffs mean to allege a violation of California's Unfair Competition Law (although the FAC does not plead an actual cause of action), the claim would fail because Plaintiffs have not alleged the lack of an adequate remedy at law and have not adequately pled a substantive violation of the statute.

Plaintiffs already had once chance to amend their initial complaint, but they still have not come close to pleading a cognizable claim against Messrs. Warshauer and Young. Those two defendants therefore respectfully request that the Court dismiss the FAC in its entirety and with prejudice as to them.[2]

## STATEMENT OF FACTS

### A.    Factual Background

This lawsuit arises from the financial difficulties and eventual bankruptcy of CSSE, a Delaware corporation (FAC ¶ 19) that filed a chapter 11 case in this Court on June 28, 2024, and converted the case to a chapter 7 liquidation on July 10, 2024. (*Id.* ¶¶ 59, 62).[3] The FAC alleges that, starting in 2023 (or perhaps earlier), "Defendants engaged in a scheme to" defraud CSSE employees of compensation and to deduct "wages" from employees' paychecks for medical and/or dental insurance premiums "while allowing these policies to lapse and ultimately get canceled."

---

[2]    A dismissal with prejudice is particularly appropriate here because Plaintiffs had the benefit of significant factual development in the bankruptcy case long before they filed the FAC. Plaintiffs' counsel even attended the depositions of Messrs. Warshauer and Young on November 5, 2024, six months before filing the FAC. Warshauer Dep. Tr. at 3:18-22; Young Dep. Tr. at 3:15-18. Excerpts from the two depositions are attached as Exhibits A and B, respectively, to the accompanying Declaration of Nancy H. Turner (the "Turner Decl.").

[3]    The Court's docket in the bankruptcy case (No. 24-11442) ("D.I.") establishes that the chapter 7 conversion was filed on July 10, 2024. [D.I. 119, 120, 132]. The Court may take judicial notice of public records such as its own docket on a motion to dismiss. *See, e.g.*, *In re W.R. Grace & Co.*, 626 B.R. 217, 236 n.13 (Bankr. D. Del. 2021) (noting that Federal Rules of Evidence apply under the Bankruptcy Code and that, under Fed. R. Evid. 201, bankruptcy court may take judicial notice of "its own docket entries, its own records, and contents of court records from other courts in related matters").

(FAC ¶ 2). The FAC (*id.* at 2) defines "Defendants" as CSSE; Redbox Automated Retail, LLC, which CSSE acquired in 2022 (*id.* ¶ 47); Rouhana, CSSE's CEO and a director (*id.* ¶¶ 61, 21); and Newmark, another CSSE director and Rouhana's wife (*id.* ¶¶ 23, 40).

The term "Defendants" does *not* include Messrs. Warshauer and Young (*id.* at 2), two outside directors who served on CSSE's Board for only a microscopic period of time after all or the vast majority of the alleged misconduct had occurred. They joined the Board on May 3, 2024, purportedly "at the behest of HPS," one of CSSE's lenders (*id.* ¶ 55), and they were removed from the Board in June 2024 (specifically on June 11) (*id.* ¶ 62).[4] As shown below, the Court then ordered them reinstated as directors on July 4, 2024, after CSSE's bankruptcy filing, and they resigned six days later, when CSSE converted its chapter 11 case to a chapter 7 liquidation.

The FAC's section titled "Factual Allegations" (FAC at 16) begins with a series of accusations about Rouhana's and Newmark's alleged misconduct at other companies dating back to the late 1980s (*id.* ¶¶ 40-43), including the "misappropriation of funds, leading to bankruptcy" (*id.* ¶ 40). Rouhana and Newmark allegedly purchased the Chicken Soup for the Soul brand in 2008 and formed CSSE in 2017 "for the purpose of self-dealing." (*Id.* ¶¶ 44-45). Rouhana then caused CSSE to acquire Redbox in August 2022 (*id.* ¶¶ 46-49), allegedly leading to financial problems that "spiraled thereafter [causing] payroll issues for employees" (*id.* ¶ 49). Rouhana also allegedly milked Chicken Soup for the Soul entities of tens of millions of dollars in management and license fees through transactions in which Rouhana "was on both sides." (*Id.* ¶ 60).

Turning to the alleged problems involving employee compensation at CSSE, the FAC asserts that "Defendants" "engaged in a pattern and practice of delaying payroll to employees and

---

[4]     According to CSSE's SEC filing on Form 8-K, Rouhana removed Messrs. Warshauer and Young (as well as all other directors) without cause on June 11, 2024. *See* https://www.sec.gov/Archives/edgar/data/1679063/000110465924072312/0001104659-24-072312-index.htm. The Court may take judicial notice of this SEC filing. *See, e.g.*, *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000).

5

sometimes not paying employees their wages, commissions, PTO [*i.e.*, paid time off], and/or nondiscretionary bonuses at all." (*Id.* ¶ 50). The FAC contains much rhetoric but few specific factual allegations about that purported "pattern and practice." However, a vague chronology can be gleaned:

- In "late 2023," long before Messrs. Warshauer and Young joined CSSE's Board on May 3, 2024, "Defendants" allegedly switched CSSE's health insurance from Premera to Anthem effective January 1, 2024, and CSSE employees were informed "in late January 2024" that Premera was denying December 2023 benefits. (*Id.* ¶¶ 51-52). "Defendants" allegedly failed to "indicate" that employees were not covered for health insurance, and "Defendants continued to deduct wages [*sic*] for health insurance from employees' pay." (*Id.* ¶ 52).

- "[S]ometime in 2024 [no indication of when], Defendants ceased providing dental and life insurance benefits to employees yet still deducted those premiums from employees' pay" and "falsely represented that such benefits were still active." (*Id.* ¶ 53).

- On or about April 18, 2024, some two weeks before Messrs. Warshauer and Young joined the Board on May 3, "Defendants" informed employees that "the Premera health claims from December 2023 had been reinstated." (*Id.* ¶ 54).

- On May 3, 2024, Messrs. Warshauer and Young joined CSSE's Board, allegedly because of their financial and operational experience in advising and restructuring distressed companies. (*Id.* ¶ 55).

- "[I]n May 2024," Anthem started denying employees' medical claims. (*Id.* ¶ 56).

- On June 11, 2024, Rouhana fired Messrs. Warshauer and Young from the Board. (*Id.* ¶ 62 & n.4, *supra*).

- "[O]n or about June 18, 2024," one week *after* Messrs. Warshauer and Young had been removed from the Board, "Defendants" informed employees that Anthem had terminated the health-insurance plan and was retroactively denying all claims as of May 14, 2024, even though "medical premiums continu[ed] to be deducted from paychecks, including June 2024 pay." (FAC ¶ 57).

- At an unspecified time "in or around Spring 2024" (no indication whether before or after Messrs. Warshauer and Young joined the Board on May 3 or were removed on June 11), "Defendants" allegedly stopped contributing to employees' "401(k) plans and/or HSA plans" but still deducted monies from employees' pay. (*Id.* ¶ 58).

- "[O]n or about June 28, 2024," CSSE filed its chapter 11 petition. (*Id.* ¶ 59). Rouhana stepped down as CEO in "late June 2024," and defendant Bart Schwartz stepped in as interim CEO. (*Id.*).

The FAC further alleges that "Defendants" (again, a term that does not include Messrs. Warshauer and Young) failed to pay employees certain wages, "nondiscretionary bonuses and/or commissions, and/or PTO" and failed to reimburse various "business-related expenses," but it does not plead when the alleged nonpayments occurred, in what amounts, or even whether Plaintiffs themselves allegedly lost any particular increments of compensation. (*Id.* ¶ 63). Nor does it plead any *fact* suggesting that Messrs. Warshauer and Young were involved in those alleged decisions. The FAC also charges that "Defendants" did not remit to governmental authorities certain payroll and other taxes that had been withheld from employees' wages "starting in 2022," years before Messrs. Warshauer and Young joined CSSE's Board. (*Id.*).

The FAC does not trace the CSSE story to its conclusion, but the Court's judicially noticeable records in the bankruptcy case (No. 24-11442) do.

- On June 29, 2024, after Messrs. Warshauer and Young had been removed from the Board on June 11, CSSE as debtor in possession filed a motion asking the Court for authority to pay prepetition obligations to employees for wages (apparently for two pay periods) and benefits.  [D.I. 3, ¶¶ 14-17, 20-22, 29-48].

- On July 2, 2024, the Court issued an interim order authorizing CSSE to make the requested payments for prepetition wages and benefits:  approximately $3.5 million for employee wages and $2.2 million for "Health and Welfare Benefits."  [D.I. 75, ¶ 2].

- On July 4, 2024, the Court issued an interim order (the "DIP Order") [D.I. 85] authorizing CSSE to obtain debtor-in-possession financing subject to various conditions.  The DIP Order reappointed Messrs. Warshauer and Young to CSSE's Board as part of a Strategic Review Committee with defendant Schwartz.  [*Id.* at 43, ¶ 18].  It also provided funds for the following specified payments: (*i*) $3.5 million for past-due payroll and payroll due on July 5, 2024, (*ii*) $2.85 million for payroll deductions, and (*iii*) $1.65 million for payments to Anthem for healthcare premiums.  [*Id.* at 16, ¶ 1].

- On July 10, 2024, the Court held a status conference during which CSSE orally moved to convert its case from chapter 11 to chapter 7 because of CSSE's inability to continue paying its employees.  [D.I. 132].  CSSE's counsel reported that CSSE had made the June 21 and July 5 payroll payments that the Court had previously approved but had not been able to pay the medical benefits.  [*Id.* at 6-7, 16-17].

Counsel also stated that Messrs. Warshauer and Young would resign "immediately after this" and that "we are going to advise all of the employees that the case has been converted."  [*Id.* at 11].  The Court orally approved the chapter 7 conversion because "there is no means to continue to pay employees, pay bills, otherwise finance this case, it is hopelessly insolvent . . . ."  [*Id.* at 36].  The Court added:  "I do not want you to ask employees to work a moment longer."  [*Id.* at 39].

- CSSE filed a Certification of Counsel Regarding Debtors' Oral Motion to Convert Cases immediately after the hearing.  [D.I. 119].

- That same day (July 10, 2024), the Court converted the case from chapter 11 to chapter 7 and placed CSSE's records and property under the chapter 7 trustee's custody and control.  Messrs. Warshauer's and Young's Board service ended as the chapter 7 trustee took charge of CSSE.  [D.I. 120, ¶ 3].  The Court's Order also ensured that "in no circumstances" would any CSSE employees be required "to provide any services without assurance of pay."  [*Id.* ¶ 5].

As the above recitation reflects, no *fact* in the FAC or in the Court's public record even suggests that Messrs. Warshauer and Young were involved in the alleged "scheme" to deprive CSSE employees of compensation and benefits.  Because Messrs. Warshauer and Young do not fall within the definition of "Defendants," the sole factual allegations about them are:

- They joined the Board on May 3, 2024 (FAC ¶ 55);

- They were "touted" as having significant restructuring experience (*id.*); and

- Rouhana fired them from the Board in June 2024 (*id.* ¶ 62 & n.4, *supra*).

Without any further factual allegations, Plaintiffs conclusorily charge that Messrs. Warshauer and Young "failed to perform due diligence to, *inter alia*, ensure that employees were

properly paid in the ensuing weeks and months." (FAC ¶ 55). The FAC also concludes that, even though Messrs. Warshauer and Young were only outside directors who did not join the Board until May 2024, *after* much of the alleged misconduct had already occurred, they "had a direct and/or active [but unexplained] role that caused the legal violations alleged herein, including but not limited to: the unauthorized withdrawals from employees' pay for benefits that were not received; unpaid wages, bonuses, and or commissions; and other losses to employees" (*id*. ¶¶ 24, 25).

###    B.    Procedural Background

CSSE's collapse led to a wave of litigation. Plaintiffs filed their complaint in this action on September 6, 2024, but did not name Messrs. Warshauer and Young as defendants. [Doc. 1].

On March 12, 2025, CSSE's bankruptcy trustee filed an adversary proceeding in this Court against Rouhana, Newmark, several former CSSE officers, and seven outside directors who had joined CSSE's Board between 2016 and 2021, asserting claims for breach of fiduciary duty, nonpayment of employee wage, benefit, and tax obligations, recovery of fraudulent transfers and illegal dividends, and avoidance of insider releases. [Adv. Proc. No. 25-50399-MFW, D.I. 1]. The trustee's complaint specifically pled the alleged misconduct relating to employee compensation and benefits that Plaintiffs assert here [*id*. ¶¶ 2, 4, 78-81], but the trustee saw no cause to assert any claims against Messrs. Warshauer and Young.

Not until they filed the FAC on May 8, 2025 did Plaintiffs add Messrs. Warshauer and Young as defendants in this action, even though (as shown above) the FAC contains no specific factual allegations about their purported misconduct. The FAC asserts claims for fraud, conversion, and violations of the California Labor Code (the "Labor Code") and the Fair Labor Standards Act (the "FLSA"), and possibly for violation of California's Unfair Competition Law. All of those claims should be dismissed with prejudice as to Messrs. Warshauer and Young.

## **ARGUMENT**

A complaint cannot withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), incorporated by Fed. R. Bankr. P. 7012(b), unless it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although factual allegations are taken as true, nonfactual conclusory statements "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "[B]are assertions . . . [that are] nothing more than a formulaic recitation of the elements of a . . . claim . . . are conclusory and not entitled to be assumed true." *Id.* (internal quotations omitted).

All complaints must comply with the pleading requirements of Fed. R. Civ. P. 8(a), incorporated by Fed. R. Bankr. P. 7008, which demands that complaints contain sufficient information and organization "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555; *see, e.g.*, *Yori v. Domitrovich*, 654 F. App'x 52, 54 (3d Cir. 2016) (dismissing amended complaint where "neither it nor the initial complaint was drafted in a way to put the defendants on notice of the claims against them").

Where a claim sounds in fraud, a plaintiff must also meet the stricter standard of Fed. R. Civ. P. 9(b), incorporated by Fed. R. Bankr. P. 7009, which requires that the "circumstances constituting the fraud" be pled with particularity. To satisfy Rule 9(b), a plaintiff must allege the "who, what, when, where, and how" of the purported fraud. *In re Advanta Corp.*, 180 F.3d at 534 (internal quotations omitted); *accord, e.g.*, *In re Keystone Assocs. LLC v. Barclays Bank PLC*, 2020 WL 109008, at *2 (D. Del. Jan. 9, 2020) (dismissing fraud claims for failure to plead falsity and scienter with requisite particularity).

Under Rules 8(a) and 9(b), a plaintiff may not use "group pleading" to avoid the need to "differentiate between defendants" in a multi-defendant case. *In re TZEW Holdco LLC (Burtch v. Zachem)*, 2023 WL 6140247, at *3 (Bankr. D. Del. Sept. 19, 2023). A pleading that alleges only

that "the 'Defendants' took various actions (or failed to act) without identifying which transactions *each Defendant* may have authorized or the nature of *each Defendant's* authority to approve such transactions, [and] when such action or inaction may have occurred," "is anathema to contemporary pleading standards," even under the more liberal Rule 8(a). *Id.* (emphasis added).[5]

The FAC here does not satisfy the applicable pleading requirements and fails to state a claim on which relief can be granted.

## I.  <u>The FAC Fails to Plead a Claim for Fraud (Count I).</u>

Count I pleads common-law fraud against Messrs. Warshauer and Young.  That claim should be dismissed under both Rules 9(b) and 12(b)(6).

To allege a fraud claim, a plaintiff must plead (*i*) a material misrepresentation or omission, (*ii*) knowledge of falsity, (*iii*) an intent to defraud, (*iv*) reasonable reliance by the plaintiff, and (*v*) resulting damage to the plaintiff.  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2009) (analyzing fraud claims under California law).[6]  Under Rule 9(b), the "circumstances constituting the fraud" must be pled with particularity.

Here, Plaintiffs have failed to allege even the basic elements of a fraud claim against Messrs. Warshauer and Young, let alone with the particularity required by Rule 9(b).  The FAC offers only general averments that "Defendants concealed and suppressed material facts" about employees' coverage for medical and dental benefits, that "Defendants" failed to inform employees that the employees were not covered under any policy, and that, because of the alleged

---

[5]    *See also, e.g.*, *Hawk Mountain LLC v. Ram Cap. Grp. LLC*, 2016 WL 3182778, at *16 (D. Del. June 30, 2016) (improper group pleading under Rule 9(b) because "it is unclear which defendants are precisely charged with" each type of alleged misconduct) (Report & Recommendation), *adopted*, 2016 WL 4541032, at *2 (D. Del. Aug. 31, 2016) (agreeing that "each defendant has not been properly or sufficiently placed on notice of the exact nature of the claims asserted, as these claims apply to each defendant") (internal quotations omitted), *aff'd*, 689 F. App'x 703 (3d Cir. 2017).

[6]    Because of the FAC's focus on California's Labor Code (and also perhaps its Unfair Competition Law), Plaintiffs appear to maintain that California law governs all claims in the FAC.  Solely for purposes of this motion, Messrs. Warshauer and Young accept that assumption.

misconduct, Plaintiffs acted differently than they would have acted had they been aware of the "concealed or suppressed material facts."  (FAC ¶¶ 74-81).  But, as shown above, the defined term "Defendants" does not include Messrs. Warshauer and Young (*id.* at 2), and the FAC does not plead a single *fact* about their alleged misconduct.

Moreover, even if the term "Defendants" did include Messrs. Warshauer and Young, it still would not comply with Rule 9(b)'s pleading requirements because, as explained above, it would not plead what *Messrs. Warshauer and Young* allegedly did, as opposed to what other defendants (such as Rouhana) allegedly did.  *See, e.g.*, *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 2000) ("Pleadings containing collectivized allegations against 'defendants' do not suffice.  Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

That defect would be particularly fatal here because the FAC indiscriminately accuses "Defendants" of a wide range of alleged misconduct, most of which occurred even before Messrs. Warshauer and Young joined CSSE's Board.  As Plaintiffs concede, those two outside directors served on the Board for only about five weeks (from May 3 to June 11, 2024) and were terminated by Rouhana before the June 28, 2024 bankruptcy filing.  (FAC, ¶¶ 55, 62; *see also* n.4, *supra* (showing that termination actually occurred on June 11)).  But most of the conduct pled in the FAC allegedly occurred *before* Messrs. Warshauer's and Young's tenure began, dating back to 2023 or perhaps earlier.  (FAC ¶¶ 49-54).  And to the extent any purported misstatements or omissions were made during the five weeks of their service as outside directors, the FAC does not attribute them to Messrs. Warshauer or Young:  it does not allege *what* they personally said or did, or *when* they said or did it.

13

The FAC thus does not allege (much less *adequately* allege) that *Messrs. Warshauer or Young* made or authorized any material misrepresentations or omissions, or the substance of any such alleged statements or omissions.  Nor do Plaintiffs plead any fact suggesting that Messrs. Warshauer or Young acted with intent to defraud even if they had made a purported misstatement or omission (which they are not alleged to have done).

Count I therefore should be dismissed as to Messrs. Warshauer and Young for failure to plead, with particularity, the elements of a common-law fraud claim against them.

## II.     The FAC Fails to Plead a Claim for Conversion (Count II).

Count II pleads a claim for conversion based on "Defendants[']" allegedly having "refused, retained, and converted" Plaintiffs' "wages earned from work performed."  (*Id.* ¶ 83-84).  This claim also fails as to Messrs. Warshauer and Young.

As an initial matter, the California Supreme Court held in 2019 that California law does not recognize a common-law conversion claim for nonpayment of wages.  *Voris v. Lampert*, 446 P.3d 284, 297-99 (Cal. 2019) (no conversion claim for unpaid wages "in light of the extensive remedies that already exist to combat wage nonpayment in California").  Count II thus fails as a matter of law for this reason alone.

Moreover, even those now-undermined pre-*Voris* cases that had allowed conversion claims for unpaid wages had dismissed the claims where the plaintiffs had not specified identifiable sums that purportedly had been converted.  *See, e.g.*, *Alvarenga v. Carlson Wagonlit Travel, Inc.*, 2016 WL 466132, at *4-5 (E.D. Cal. Feb. 8, 2016) (dismissing conversion wage claim where it was "not evident from the pleadings that any specific sum of money owed is identifiable").  The FAC makes no effort to allege the specific amounts that were purportedly converted.  It does not even provide the kind of information suggesting that the purportedly unpaid wages are capable of being ascertained, such as the time periods during which wages allegedly were not paid, the hours the

Plaintiffs worked, Plaintiffs' hourly wage, etc.  *See Alvarenga*, 2016 WL 466132, at *4-5 (to survive motion to dismiss, plaintiffs must plead facts that plausibly indicate that sum is "capable of identification") (internal quotations omitted); *see also Watson v. Tennant Co.*, 2018 WL 5099281, at *6 (E.D. Cal. Oct. 17, 2018) (dismissing conversion claim where complaint left "the total amount of unpaid wages, the dates on which wages went unpaid, and the specific nature and circumstances of the unpaid labor entirely indefinite").

In addition, even if (despite *Voris*) conversion claims for wages were cognizable under California law, and even if Plaintiffs had adequately specified the sums allegedly converted, the claim would still fail as to Messrs. Warshauer and Young.  Conversion consists of "the wrongful exercise of dominion over personal property of another."  *Voris*, 446 P.3d at 290 (internal quotations omitted).  The elements of a conversion claim are "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages."  *Id.* (internal quotations omitted).  But nowhere does the FAC allege any facts showing that *Messrs. Warshauer and Young* exercised dominion over or otherwise disposed of Plaintiffs' wages.  Nor does it contain the slightest factual suggestion that Messrs. Warshauer and Young themselves obtained any benefit whatsoever from the alleged nonpayment of Plaintiffs' wages.[7]  In fact, the FAC does not plead facts showing that Messrs. Warshauer and Young were even affiliated with CSSE (from May 3 to June 11, 2024) when the alleged conversion occurred.  The Court therefore should dismiss the conversion claim.

---

[7]      Indeed, as Plaintiffs' counsel know from having attended Messrs. Warshauer's and Young's depositions in the bankruptcy litigation, Messrs. Warshauer and Young did not receive even standard directors' fees for their service on CSSE's Board.  Warshauer Dep. Tr. at 21:12-23 (Turner Decl., Ex. A); Young Dep. Tr. at 64:6-65:22 (Turner Decl., Ex. B).

III.     **The FAC Fails to Plead Violations of the California Labor Code (Counts III – VIII).**

The FAC alleges that "Defendants" purportedly violated numerous Labor Code provisions and can be held personally liable for those alleged violations.  However, all of Plaintiffs' Labor Code claims fail as to Messrs. Warshauer and Young.

First, as a matter of law, several of the statutory provisions do not permit imposition of individual liability on corporate agents who acted within the scope of their agency, as is alleged here.  For this reason alone, those claims should be dismissed with prejudice.

Second, even where Labor Code provisions might allow for individual liability in some circumstances, no alleged fact suggests that Messrs. Warshauer and Young could be subject to personal liability under the law.  The following subsections will consider each Labor Code count separately because of the legal differences among the cited sections of the Code.

A.     **Failure to Pay Wages (Count III)**

Count III (¶¶ 90-95) alleges a "failure to pay wages" but does not cite any provision of the Labor Code that Messrs. Warshauer and Young purportedly violated.  They thus are left to guess at the statutory provision(s) they allegedly breached.  This defect alone is fatal under Rule 8(a) because the FAC does not provide sufficient notice of the claim.  *See, e.g.*, *Yori*, 654 F. App'x at 54 (dismissing complaint for failure to "put the defendants on notice of the claims against them").

In addition, the FAC fails to establish that Messrs. Warshauer and Young were legally or factually responsible under California law for any alleged "failure to pay wages."  In California, the statutory obligation to pay wages is implemented through applicable Industrial Wage Commission ("IWC") orders.  *See, e.g.*, *Martinez v. Combs*, 231 P.3d 259, 272-73 (Cal. 2010) ("[A]n employee who sues to recover unpaid[] wages actually and necessarily sues to enforce the wage order.").  And FAC ¶ 5 alleges violations of "applicable IWC wage orders."

All operative IWC wage orders define "employer" as "any person . . . who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."  *E.g.*, IWC Wage Order No. 12-2001 (applying to employees in entertainment industry); *see Martinez*, 231 P.3d at 278 ("The applicable wage order defined 'employer' in precisely the same language as all of the commission's other industry and occupation orders.").  The IWC's definition of "employer" therefore applies absent any statute to the contrary.  *Id.* at 279; *see also Cordell v. PICC Lines Plus LLC*, 2016 WL 4702654, at *8 (N.D. Cal. Sept. 8, 2016) ("For purposes of the California Labor Code, courts are instructed to use the definition of 'employer' found in the Industrial Wage Commission's orders.").

Under the IWC definition, outside directors (and other alleged corporate agents) are not liable as "employers" as a matter of law if they act within the scope of their agency.  *See, e.g.*, *Martinez*, 231 P.3d at 279 ("[T]he IWC's definition of 'employer' does not impose liability on individual corporate agents acting within the scope of their agency."); *Cordell*, 2016 WL 4702654, at *8 (corporate agent "could not be held individually liable for the violations of the company under the Labor Code"); *cf. Reynolds v. Bement*, 116 P.3d 1162, 1167-70 (Cal. 2005) (noting that, even under common law, corporate agents acting within scope of their agency are not personally liable for corporate employer's failure to pay its employees' wages), *abrogated by Martinez v. Combs*, 231 P.3d 259 (Cal. 2010).

The FAC alleges (¶ 9) that each defendant acted within the scope of his or her agency.  Thus, Messrs. Warshauer and Young cannot be liable as "employers" under the IWC definition for alleged conduct within the scope of their agency.  Indeed, undersigned counsel are not aware of any case holding that an outside director with no other role in the company was an "employer" under the IWC standard.

17

Moreover, as discussed below in connection with the FAC's other, more specific counts, the FAC does not plead any *fact* suggesting that Messrs. Warshauer and Young, as outside directors who served on CSSE's Board for only about five weeks (between May 3 and June 11, 2024) before CSSE's bankruptcy filing and for six days after it, did anything that could constitute "employ[ing] or exercis[ing] control over the wages, hours, or working conditions of any person" working for CSSE.  IWC Wage Order No. 12-2001.  There is no allegation that Messrs. Warshauer and Young made any decision about payroll or benefits, that they had any operational ability to make any such decision or to cause payroll to be met (or not met), or even that they had any knowledge of any other person's alleged failure to make payroll or provide benefits.

### B.    Failure to Timely Pay Wages (Count IV)

Count IV alleges a violation of Labor Code § 204, which requires an "employer" to pay wages twice during each calendar month.  Unlike other sections of the Labor Code (including several discussed below), § 204 does not define "employer" and is not subject to another statute's definition of that term.  Accordingly, as in Count III, the IWC definition applies, and, as shown above, that definition does not cover individual corporate agents acting within the scope of their agency.  *See, e.g.*, *Rios v. Linn Star Transfer, Inc.*, 2020 WL 1677338, at *3 (N.D. Cal. Apr. 6, 2020) (Labor Code §§ 201 and 204, "by their express terms, impose liability only on 'employers' and *not on individuals acting on behalf of an employer*") (emphasis added).  And again, as discussed below in connection with the FAC's other, more specific counts, the FAC does not plead any *fact* suggesting that Messrs. Warshauer and Young did anything in connection with the alleged failure to pay wages that could create personal liability for them as "employers."

### C.    Secreting Wages (Count V)

Count V, which alleges a violation of Labor Code § 221, fails for the same reasons. Section 221 prohibits an "employer" from "collect[ing] or receiv[ing]" any wages it pays to an

employee, but, like § 204, it does not define "employer" and is not subject to any other statutory definition of that term.  *See* Cal. Lab. Code § 558.1 (not applicable to § 221).  The IWC wage order's interpretation of "employer" therefore controls, and, as shown above, that definition does not permit imposition of liability on individual corporate agents acting on behalf of a corporate employer, as Messrs. Warshauer and Young were alleged to have done.  Moreover, on its face, the FAC is devoid of any factual allegation even hinting that those two outside directors "collect[ed] or receive[d]" any part of any employee's wages.

### D.    Failure to Reimburse (Count VI)

Count VI alleges a violation of Labor Code § 2802, which requires an "employer" to indemnify employees for necessary expenditures or losses they incurred in discharging their duties.  Unlike the Code provisions discussed above, § 2802 is subject to another statute's definition of "employer":  the definition in Labor Code § 558.1.  Section 558.1(a) imposes liability on any "employer or other person acting on behalf of an employer" who violates or causes a violation of (*i*) a statute regulating minimum wages or hours and days of work or (*ii*) "Sections 203, 226, . . . or 2802."  And § 558.1(b) defines "other person acting on behalf of an employer" as "a natural person who is an owner, director, officer, or managing agent of the employer."  Thus, unlike with Counts III, IV, and V, outside directors' liability is not precluded as a matter of law; the analysis turns on the factual allegations as viewed under § 558.1's applicable standard.

An individual will not be considered an "employer" under § 558.1 unless he or she was *personally involved* in causing the alleged Labor Code violation.  A complaint must "allege specific facts to establish that [the individual] was *personally involved* in the alleged violation." *Rios*, 2020 WL 1677338, at *6 (emphasis added).  Section 558.1 "does not enable courts to, in effect, pierce the corporate veil to hold corporate owners, shareholders, or other officers liable for wrongdoing committed by the employer corporation."  *Roush v. MSI Inventory Serv. Corp.*, 2018

WL 3637066, at *3 (E.D. Cal. July 30, 2018); *accord Plaksin v. NewSight Realty, Inc.*, 2019 WL 4316255, at *5 (C.D. Cal. Apr. 30, 2019).  "Instead, the law makes these individuals (owners, directors, officers, or managing agents) liable *for their own violations* of the enumerated state laws or for *causing* such violations."  *Roush*, 2018 WL 3637066, at *3 (emphasis added); *see, e.g.*, *Usher v. White*, 64 Cal. App. 5th 883, 897, 279 Cal. Rptr. 3d 281, 291 (2021) (no liability under § 558.1 where no facts that individual "participate[d] in" alleged violation or was "consulted about, or provided any guidance regarding," alleged violation).

The FAC does not contain any factual allegation that Messrs. Warshauer and Young had any personal involvement in the policies or decisionmaking that purportedly resulted in a failure to reimburse CSSE employees for expenditures or losses.  As shown above, the only *factual* allegations about those two outside directors concern their joining the Board, their restructuring experience, and their removal from the Board in June 2024.  (FAC ¶¶ 24, 25, 55, 62).  They are not included in the definition of "Defendants" (*id.* at 2), and, in any event, most of the "Defendants'" alleged misconduct occurred before Messrs. Warshauer and Young joined the Board on May 3, 2024 (*id.* ¶¶ 46-52).  And even if Messrs. Warshauer and Young had been included in the definition of "Defendants," the undifferentiated use of that term would not comply with applicable pleading requirements for the reasons stated above.

Moreover, the FAC does not plead any *facts* about the business-related expenses that allegedly were not reimbursed or even imply that any such expenses accrued or came due during Messrs. Warshauer's and Young's Board tenure between May 3 and June 11, 2024.  (*Id.* ¶¶ 63, 105).  Count VI therefore must be dismissed.  *See Hassell v. Uber Techs., Inc.*, 2020 WL 7173218, at *3 (N.D. Cal. Dec. 7, 2020) (dismissing § 2802 claim because plaintiff did not allege he incurred any unreimbursed expenses, or nature or amount of any unreimbursed expenses).

Plaintiffs cannot salvage their claims through nonspecific, conclusory allegations that Messrs. Warshauer and Young "violated, or caused to be violated, Labor Code sections" or "had a direct and/or active role that caused the legal violations alleged" (FAC ¶¶ 24, 25). A complaint must plead *facts* to demonstrate the possible existence of a claim; generalized legal conclusions about a corporate official's alleged involvement in corporate "violations" do not suffice. *See, e.g.*, *Rios*, 2020 WL 1677338, at *6 ("merely repeating a legal conclusion" "that the Individual Defendants 'violated, or caused to be violated' the various statutes giving rise to Plaintiffs' claims . . . without alleging sufficient *facts* to support that legal conclusion does not state a plausible claim for relief"; dismissing claims against individual because "allegations pertained only to his role as a corporate officer," without any "allegation of individual wrongdoing") (emphasis added). Nothing more is alleged here.

The absence of any *factual* allegations suggesting Messrs. Warshauer's and Young's *personal involvement* in the purported violation of Labor Code § 2802 (and of the other Code provisions pled in the FAC) is hardly surprising, particularly because Messrs. Warshauer and Young were only (short-term) *outside directors*, with no positions in corporate management. Boards of directors do not usually manage corporations' day-to-day operations; management (such as CEO Rouhana) has that responsibility. *See, e.g., Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 943 (Del. 1985) ("The realities of modern corporate life are such that directors cannot be expected to manage the day-to-day activities of a company."); J. Travis Laster & John Mark Zeberkiewicz, *The Rights and Duties of Blockholder Directors*, 70 Bus. L. 33, 36 (2015) (Delaware's "board-centric model of governance" does not "expect the board to be involved in every decision—or even most decisions. Few modern corporations could function effectively if that was the norm. In fact, it is the rare corporation that is actually 'managed by' the board . . . ."). Plaintiffs' inability

to plead any *fact* showing Messrs. Warshauer's and Young's personal involvement in the challenged conduct is thus entirely expected and consistent with corporate realities.

### E. Failure to Provide Accurate Wage Statements (Count VII)

Count VII alleges a violation of Labor Code § 226(a), which requires an "employer" to provide timely and accurate wage statements to employees. As shown above in connection with Count VI, § 558.1's definition of "employer" applies to § 226. Count VII fails for several reasons.

First, to state a cognizable claim under § 226, Plaintiffs must demonstrate a distinct injury—separate and apart from their wage-and-hour claims—arising from their "employer's" failure to provide accurate wage statements. *See Hill v. Pac. Mar. Ass'n*, 2025 WL 1282628, at *3 (N.D. Cal. May 2, 2025) (inability to determine accuracy of sick-pay gross wages earned and paid not a distinct injury from plaintiffs' wage-and-hour claims); *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011) ("confusion" regarding "possible underpayment of wages" that "forced the putative class to attempt to reconstruct their time and pay records" was not a distinct injury). Plaintiffs' unsupported assertion that the purportedly inaccurate wage statements caused them injury because Plaintiffs were "unable to determine the proper amount of wages owed to them" (FAC ¶ 109) is precisely the type of alleged harm that California courts have rejected as insufficient to sustain a claim under § 226. *See Price*, 192 Cal. App. 4th at 1144-45 (dismissing claims). Plaintiffs' claim thus fails for this reason alone.

Second, even if the Court were to determine that Plaintiffs had adequately asserted a distinct injury flowing from their allegedly inaccurate wage statements, the FAC still fails to allege any *fact* suggesting that Messrs. Warshauer and Young could be held personally liable for that purported wrongdoing. As shown above, Plaintiffs must plead facts showing that Messrs. Warshauer and Young were "employers" or acted on behalf of the "employer" under § 558.1: that they were "*personally involved* in the alleged violations." *Rios*, 2020 WL 1677338, at *6

(emphasis added). The FAC does not contain even the slightest hint of such involvement. Nor does it plead which wage statements were allegedly inaccurate, when those statements were issued, or even that the statements were issued during the short period of Messrs. Warshauer's and Young's Board service. (FAC ¶¶ 107-110). But even if Messrs. Warshauer and Young had been on the Board when the statements were issued, mere Board service would not establish their *personal involvement* in CSSE's issuance of allegedly inaccurate wage statements—hardly the type of activity in which an outside director would be expected to engage in a corporation allegedly employing thousands of employees (*id.* ¶ 33.a).

###  F.    **Failure to Pay Wages at Termination (Count VIII)**

Count VIII alleges violations of Labor Code §§ 201-203, which require an "employer" to pay proper and final wages. As shown above in connection with Count VI, § 203 is subject to § 558.1's definition of "employer." Sections 201 and 202 are not, however, so the IWC definition applies to those sections, as explained above in connection with Counts III, IV, and V. *See also Cordell*, 2016 WL 4702654, at *8 (IWC definition applies to § 201 claim).

Because §§ 201 and 202 are subject to the IWC's definition of "employer," the claims against Messrs. Warshauer and Young fail as a matter of law for the reasons discussed in connection with Counts III, IV, and V: "the IWC's definition of 'employer' does not impose liability on individual corporate agents acting within the scope of their agency." *Martinez*, 231 P.3d at 279; *see also Rios*, 2020 WL 1677338, at *4-5 ("Section 558.1 does *not* incorporate Section[] 201," and § 201 claim fails with prejudice because statute "do[es] not impose liability on individuals"); *Cordell*, 2016 WL 4702654, at *8 ("Labor Code section 201 only applies to employers so [corporate agent] cannot be held liable."). And in any event, the FAC does not plead any *fact* suggesting that Messrs. Warshauer and Young had anything to do with the alleged nonpayment of wages.

As for the § 203 claim:  Messrs. Warshauer and Young cannot be considered "employers" or acting on behalf of the "employer" under § 558.1 unless they were "*personally involved* in the alleged violations."  *Rios*, 2020 WL 1677338, at *6 (emphasis added).  But the FAC does not plead any *fact* alleging that Messrs. Warshauer and Young were *personally* involved in failing to pay proper and final wages or in the policies, practices, or decisionmaking that purportedly led to violations of § 203.  As with other counts, the FAC does not even allege that Messrs. Warshauer and Young were still associated with CSSE when the purportedly unpaid wages came due; they were removed from the Board on June 11, 2024.  (FAC ¶ 62; *see also* n.4, *supra*).

Under such circumstances, the § 203 claim must be dismissed.  *See, e.g*., *Usher,* 64 Cal. App. 5th at 894 (dismissing § 203 claim where plaintiffs could not show defendant's personal involvement in alleged violation, such as consulting or providing guidance regarding violation); *see also Plaksin*, 2019 WL 4316255, at *6 (no § 203 liability for corporate officer because § 558.1 does not allow courts to hold officers liable for employer corporation's wrongdoing).

## IV.     <u>The FAC Fails to Plead a Violation of the FLSA (Count IX).</u>

Count IX alleges a violation of the FLSA's requirement that employees "be compensated for all hours worked."  (FAC ¶ 117).  This claim fails as to Messrs. Warshauer and Young for reasons similar to those that defeat Plaintiffs' Labor Code claims.

A corporate official cannot be personally liable under the FLSA unless such person qualifies as an "employer," defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  This definition requires a showing that the individual exercised operational control over the company's employment practice or the employment relationship.  *See, e.g.*, *Li v. A Perfect Day Franchise, Inc*., 281 F.R.D. 373, 399 (N.D. Cal. 2012) (no individual liability under FLSA where plaintiffs failed to demonstrate that corporate

agent "exercised control over the nature and structure of the employment relationship or otherwise 'controlled the purse strings' at [the employer]"); *Wright v. Lehigh Valley Hosp. & Health Network*, 2011 WL 2550361, at *2 (E.D. Pa. June 23, 2011) ("[C]ourts also look to whether an individual undertakes 'managerial responsibilities' relating to the corporation or exerts 'substantial control' over its operation.").

This requirement of operational control over the relevant employment relationship or practice has significance for FLSA claims against outside directors. "Generally speaking, it is presumed that a *board member is not concerned with, or involved in, the day-to-day operations* of an organization, and thus *will not be deemed an employer* for purposes of the FLSA, absent adequate allegations or evidence concerning the employer's *functional control of employees*." *Coley v. Vannguard Urban Improvement Ass'n*, 2014 WL 4793825, at *6 (E.D.N.Y. Sept. 24, 2014) (emphasis added). This presumption coincides with Delaware law's recognition (discussed above) that corporate directors do not usually manage day-to-day corporate operations. Thus, an outside director will not be considered an FLSA "employer" "based solely on his status as a . . . board member." *Id.* at *4 n.6; *cf. Li*, 281 F.R.D. at 399 ("In cases where courts have found corporate officers and board members liable as employers, the individuals were generally involved in supervising employees, controlling work schedules, and setting wages.").

As in *Coley*, Plaintiffs seek to impose individual liability on Messrs. Warshauer and Young based solely on their (brief) status as members of CSSE's Board. Nowhere does the FAC allege a single *fact* suggesting that Messrs. Warshauer and Young exercised operational or functional control over CSSE's employment operations or practices, particularly the payment of wages.

- The allegation that "each individual-Defendant was a corporate officer of or managing member of any entity-Defendant, with a significant ownership interest in the same" (FAC ¶ 120) does not apply to Messrs. Warshauer and Young, who are

not alleged to have been (and were not) officers or managing members of CSSE and are not alleged to have had (and did not have) any ownership interest in it.

- The FAC does not plead any *fact* as to Messrs. Warshauer and Young to support the broad assertion that "each Defendant" (a defined term that does not include Messrs. Warshauer and Young) "exercised control over significant aspects of the day-to-day operations of the other Defendant, including but not limited to compensation to employees" (*id.*).  *See, e.g.*, *Wright*, 2011 WL 2550361, at *3 (allegations that individual defendants "have 'operational control' of the institutional defendants and are 'ultimately responsible' for ensuring their compliance with the FLSA . . . are not facts; they are legal conclusions utterly devoid of any factual basis asserted to support the beliefs pled").

- Nor does the FAC plead any *fact* suggesting that Messrs. Warshauer and Young, as outside directors of a company with thousands of employees, were among the "Defendant[s]" who allegedly "had the power to hire and fire employees such as Plaintiffs and the class," "supervised and controlled work schedules and conditions of employment," "determined the rate and method of payment for employees," "directed work activities," or "controlled the maintenance and/or maintained employment records" (FAC ¶ 120).

In addition to failing to allege any *fact* suggesting that Messrs. Warshauer and Young could be "employers" under the FLSA, the FAC lacks any non-conclusory, factual allegations to support the FLSA claim.  The FAC does not plead any details about Plaintiffs' employment, their positions, their dates and hours worked, their compensation entitlements, or the amounts allegedly withheld from them.  Instead, the FAC pleads only generically that "Defendants'" "business decisions" caused "violations of the overtime laws" (*id.*); "Defendants" "willfully failed to pay Plaintiffs and the class members compensation due and withheld pay and benefits in violation of the FLSA" (*id.* ¶ 121), and "Defendants" failed "to compensate the Plaintiffs and the FLSA Plaintiff Class for all wages" (*id.* ¶ 124).

These boilerplate assertions do not plausibly establish unpaid overtime or wages under the FLSA.  *See, e.g.*, *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014), *as amended* (Jan. 26, 2015) ("generalized allegations asserting violations of the minimum wage and overtime provisions of the FLSA" are insufficient under Rules 8 and 12); *Scott v. Cintas Corp.*,

26

2024 WL 1421277, at *3 (N.D Cal. Apr. 2, 2024) (dismissing FLSA claims where plaintiff alleged only that employer "failed to pay [p]laintiff the overtime wages," without any factual allegations concerning working conditions that purportedly led to FLSA violation); *Wright*, 2011 WL 2550361, at *2-4 (declining to permit plaintiffs to amend complaint a third time where FLSA-related allegations provided only "a formulaic recitation of the elements of a cause of action").

Plaintiffs' FLSA claim against Messrs. Warshauer and Young thus fails as a matter of law and should be dismissed with prejudice.

## V.    The FAC Fails to Plead a Violation of California's Unfair Competition Law (No Count).

Plaintiffs do not appear to have pled a claim under California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*) (the "UCL") because the FAC does not contain a count alleging any such claim.    However, inasmuch as FAC ¶ 7 mentions the UCL in passing, Messrs. Warshauer and Young will briefly address it to show that any such (unpled) claim would have been meritless.

First, if Plaintiffs seek to impose UCL liability on Messrs. Warshauer and Young, they should have pled a cause of action under the UCL.    Their failure to do so violates Rule 8(a), which requires a complaint "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."    *Bell Atl. Corp.*, 550 U.S. at 555.

Second, any UCL claim would fail because the FAC does not allege the absence of an adequate remedy at law, which is an essential element of a UCL claim.    *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843-44 (9th Cir. 2020) ("[Plaintiff] must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL."); *Treadstone Servs. PC v. Aetna Life Ins. Co.*, 2025 WL 740178, at *8 (C.D. Cal. Feb. 7, 2025) ("A plaintiff seeking equitable relief under the UCL in federal court must comply with traditional

27

equitable principles, including establishing that there is no adequate remedy at law available."). To the contrary, not only have Plaintiffs failed to allege the absence of an adequate legal remedy, but they have asserted numerous claims for money damages, *see, e.g.*, FAC ¶¶ 74-125, thereby conceding that an adequate remedy at law does exist if Plaintiffs have a viable claim for relief. *See Gardner v. Safeco Ins. Co. of Am.*, 2014 WL 2568895, at *7-8 (N.D. Cal. June 6, 2014) (dismissing UCL claim where money damages would be available if plaintiff prevailed on legal claims).

Third, the FAC does not plead any facts establishing the substantive elements of a UCL claim. The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. If Plaintiffs mean to suggest that Messrs. Warshauer's and Young's alleged conduct was "unlawful" under § 17200, they must show that it violated "some other law." *Hassell*, 2020 WL 7173218, at *7; *accord, e.g., Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("unlawful" prong of § 17200 "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable") (internal quotations omitted). As shown above, however, the FAC does not adequately plead a cognizable violation of any other law. If Plaintiffs mean that Messrs. Warshauer's and Young's conduct constituted a fraudulent business act or practice, they must adequately plead that "the alleged wrongdoing ha[d] some impact on the general public." *Travelers Prop. Cas. Co. of Am. v. Centex Homes*, 2013 WL 4528956, at *4-5 (N.D. Cal. Aug. 26, 2013); *accord, e.g., Pellerin*, 877 F. Supp. 2d at 992 ("a fraudulent business practice is one that is likely to deceive members of the public") (internal quotations omitted). Plaintiffs have not alleged any such deception of the public. This dispute is between employees of a private company and the company itself, two of its former managers, and several former outside directors. No member of the public was allegedly targeted or injured by the challenged actions. Finally, if Plaintiffs mean to allege that Messrs.

Warshauer's and Young's actions somehow were "unfair," they must plead conduct "violative of a public policy tethered to specific constitutional, statutory, or regulatory provisions." *Id.* (internal quotations omitted).  But Plaintiffs again fail:  they do not plead any fact suggesting that Messrs. Warshauer and Young did anything that violated any public policy based on specific constitutional, statutory, or regulatory provisions.

The UCL claim, if it exists at all in the FAC, should therefore be dismissed with prejudice.

[*Remainder of page intentionally left blank*]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC with prejudice as to Messrs. Warshauer and Young.

Dated:  October 30, 2025
        Wilmington, Delaware

                         **DLA PIPER LLP (US)**

                         _/s/  R. Craig Martin_
                         R. Craig Martin (DE Bar No. 5032)
                         Roxanne M. Eastes (DE Bar No. 6654)
                         1201 North Market Street, Suite 2100
                         Wilmington, Delaware 19801
                         Tel: (302) 468-5700 (Main)
                         Tel: (302) 468-5655 (Direct)
                         Fax: (302) 778-7834
                         Email: craig.martin@us.dlapiper.com
                                   roxanne.eastes@us.dlapiper.com

                         - and -

                         Stephen A. Best (admitted _pro hac vice_)
                         Daniel J. Healy (admitted _pro hac vice_)
                         Jonathan E. Richman (admitted _pro hac vice_)
                         Nancy H. Turner (admitted _pro hac vice_)
                         Brown Rudnick LLP
                         1900 N Street, NW, Suite 400
                         Washington, D.C.  20036
                         Telephone:  (202) 536-1700
                         Facsimile:  (202) 536-1701
                         Email: sbest@brownrudnick.com
                                     dhealy@brownrudnick.com
                                   jrichman@brownrudnick.com
                                   nturner@brownrudnick.com

                         Counsel for Defendants Robert H. Warshauer and John T. Young, Jr.

30