## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.* [1], | Case No. 24-11442 (MFW) |
| Debtors. | (Jointly Administered) |
| BRIAN SKAJEM, LISA PAPATZIMAS, ERIN TUTTLE, DAVID ELLENDER, DARA COHEN, MATT LOZE, JESSICA STOECKELER, HEATHER BUNDY, CAREY CAMPBELL, KELLY BURKE HOPKINS, COURTNEY SMITH, on behalf of themselves and behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 24-50128 (MFW) |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., REDBOX AUTOMATED RETAIL, LLC, WILLIAM J. ROUHANA, JR., AMY NEWMARK, JOHN T. YOUNG, ROBERT H. WARSHAUER, BART SCHWARTZ, and DOES 1-500, inclusive, | |
| Defendants. | |

## PLAINTIFFS' OMNIBUS BRIEF IN OPPOSITION TO INDEPENDENT DIRECTOR DEFENDANTS' MOTIONS TO DISMISS

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND ...........................................................................4

I.      THE OPERATION OF CSSE PRIOR TO THE YWS DEFENDANTS ...........................4

II.     DEFENDANTS YOUNG AND WARSHAUER JOIN BOARD DURING
        MISMANAGEMENT OF CSSE .......................................................................5

III.    DEFENDANT SCHWARTZ IS BRIEFLY THE CEO AND OVERSEES
        MISMANAGEMENT, FRAUDULENT DEDUCTIONS, AND NON-
        PAYMENTS OF EMPLOYEES ......................................................................6

IV.     YWS DEFENDANTS PERPETUATED MISMANAGEMENT POST-
        PETITION FOLLOWING THE INTERIM DIP ORDER .................................7

V.      PLAINTIFFS COMMENCE THIS ADVERSARY PROCEEDING AND
        AMEND COMPLAINT TO INCLUDE THE YWS DEFENDANTS ..............9

LEGAL STANDARD ......................................................................................10

I.      MOTION TO DISMISS ................................................................................10

II.     JUDICIAL NOTICE .....................................................................................11

ARGUMENT ...................................................................................................12

I.      THE FAC SUFFICIENTLY ALLEGES CLAIMS FOR FRAUD
        AGAINST THE YWS DEFENDANTS .........................................................12

II.     THE FAC SUFFICIENTLY PLEADS A CLAIM FOR CONVERSION ........14

III.    THE FAC PLAUSIBLY PLEADS VIOLATIONS OF THE CALIFORNIA
        LABOR CODE AGAINST THE YWS DEFENDANTS.................................17

        A.      Failure to Pay Wages (Count III) is Properly Pled under California
                Law ...................................................................................................17

        B.      Failure to Timely Pay Wages (Count IV) is Properly Pled under
                California Law ..................................................................................20

        C.      Violation of Labor Code Section 221, Et Seq. (Count V) is Properly
                Pled under California Law ................................................................21

        D.      Failure to Reimburse Expenses (Count VI) is Properly Pled Under

California Law ...................................................................................................23

E.      Failure to Provide Accurate Wage Statements (Count VII) is
        Properly Pled under California Law ........................................................24

F.      Failure to Pay Wages at Time of Termination (Count VIII) is
        Properly Pled under California Law ........................................................26

IV.    THE PLAINTIFFS SUFFICIENTLY STATED A CLAIM FOR
       VIOLATION OF THE FAIR LABOR STANDARDS ACT ...........................................28

V.     ALTERNATIVELY, THE COURT SHOULD GRANT PLAINTIFFS
       LEAVE TO AMEND ........................................................................................30

CONCLUSION........................................................................................................30

17629267/3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpizar-Fallas v. Favero*,
  908 F.3d 910 (3d Cir. 2018).............................................................................................11

*Alvarenga v. Carlson Wagonlit Travel, Inc.*,
  1:15-cv-01560-AWI-BAM, 2016 WL 466132 (E.D. Cal. Feb. 8, 2016) ...............................16

*In re Am. Bus. Fin. Servs.*,
  384 B.R. 80 (D. Del. 2008)...............................................................................................10

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) ............................................................................................13

*Arneault v. Diamondhead Casino Corp.*,
  277 F. Supp. 3d 671 (D. Del. 2017)..................................................................................31

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................................10

*Boone v. T-Mobile USA Inc.*,
  No. 17-378-KM-MAH, 2018 WL 588927 (D.N.J. Jan. 27, 2012) .........................................17

*Boucher v. Shaw*,
  572 F.3d 1087 (9th Cir. 2009) ..........................................................................................29

*Brock v. Concord Automobile Dealership, LLC*,
  No. 14-cv-01889-HSG, 2015 WL 3466543 (N.D. Cal. June 1, 2015) ...................................16

*Cabardo v. Patacsil*,
  248 F.Supp.3d 1002 (E.D. Cal. 2017) ................................................................................26

*Carroll v. Prothonotary*,
  No. 08CV1683, 2008 WL 5429622 (W.D. Pa. Dec. 31, 2008) ............................................12

*In re Chicken Soup for the Soul Entertainment Inc., et al.*,
  Case No. 24-11442 (TMH) (Bankr. D. Del. July 10, 2024) ...................................................6

*In re Chicken Soup for the Soul Entertainment Inc., et al.*,
  No. 24-11442 (TMH) (Bankr. D. Del. July 2, 2024)............................................................7

iv

*In re Cool Springs, LLC*,
    657 B.R. 767 (Bankr. D. Del. 2024) ...................................................11

*Copper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) .......................................................14

*Derum v. Saks & Co.*,
    95 F.Supp.3d 1221 (S.D. Cal. 2015)..........................................26, 27

*Dhoat v. Walia*,
    No. 24-cv-03716-JSC, 2024 WL 4804980 (N.D. Cal. Nov. 15, 2024) ..............13, 14

*Doe v. Princeton Univ.*,
    30 F.4th 335 (3rd Cir. 2022) ........................................................10

*Espinoza v. Hepta Run, Inc.*,
    74 Cal.App.5th 44 (Cal. Ct. App. 2022) ...............................................19

*Fischer v. Machado*,
    50 Cal.App.4th 1069 (Cal. Ct. App. 1996) .............................................15

*Greif v. Sanin*,
    74 Cal. App. 5th 412 (Cal. Ct. App. 2022) ............................................16

*Groove Digital, Inc. v. King.com, Ltd.*,
    No. 1:18-cv-00836-RGA, 2018 WL 6168615 (D. Del. March 24, 2018) ...............10

*Hill v. Pac. Mar. Ass'n*,
    No. 24-CV-00336-JSC, 2025 WL 1282628 (N.D. Cal. May 2, 2025) ..................26

*Huy Fong Foods, Inc. v. Underwood Ranches, LP*,
    66 Cal. App. 5th 1112 (Cal. Ct. App. 2021) ...........................................15

*Kao v. Holiday*,
    12 Cal. App.5th 947 (Cal. Ct. App. 2017) ............................................28

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .....................................................13

*Kim v. Westmoore Partners, Inc.*,
    201 Cal.App.4th 267 (Cal. Ct. App. 2011) ...........................................15

*Lambert v. Ackerley*,
    180 F.3d 997 (9th Cir. 1999) ......................................................29

*Las Palmas Associates v. Las Palmas Center Associates*,
    235 Cal. App. 3d 1220 (Cal. Ct. App. 1991) ..........................................15

v

*Li v. A Perfect Day Franchise, Inc.*,
   281 F.R.D. 373 (N.D. Cal. 2012) ...........................................................................29

*Martinez v. UPMC Susquehanna*,
   986 F.3d 261 (3rd Cir. 2016) ...........................................................10, 18, 20, 24

*In re Mervyn's Holdings, LLC*,
   426 B.R. 488 (Bankr. D. Del. 2010) ....................................................................11

*In re Oakwood Homes Corp.*,
   325 B.R. 696 (Bankr. D. Del. 2005) ....................................................................31

*In re OSC 1 Liquidating Corporation*,
   529 B.R. 825 (Bankr. D. Del. 2015) ....................................................................13

*In re Paolino*,
   No. 85-00759F, 1991 WL 284107 (Bankr. E.D. Pa. Jan. 11, 1991) ......................12

*Patel v. Vaghashia*,
   2018 WL 3216516 (Cal Ct. App. July 2, 2018) ....................................................26

*Plan Adm'r v. 225 Bowery Mezz Lender LLC (In re 225 Bowery Lender LLC)*,
   Nos. 23-10094 (TMH), 25-50018 (TMH), 2025 WL 24445879 (Bankr. D.
   Del. Aug. 25, 2025) ............................................................................................17

*In re Popple*,
   532 B.R. 581 (Bankr. M.D. Pa. 2015) ..................................................................12

*Price v. Starbucks Corp.*,
   192 Cal. App. 4th 1136 (Cal. Ct. App. 2011) .......................................................26

*Reynolds v. Bement*,
   116 P.3d 1162 (Cal. 2005), *abrogated by Martinez v. Combs*, 231 P.3d 259
   (Cal. 2010) ........................................................................................................21

*Rios v. Linn Star Transfer, Inc.*,
   2020 WL 1677338 (N.D. Cal. Apr. 6, 2020) .........................................................28

*In re Rockefeller Ct. Props., Inc. Sec. Litig.*,
   311 F.3d 18 (3d Cir. 2002) ..................................................................................11

*Sanford v MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ..............................................................................13

*ScroeBlue, LLC v. Locum Tele PC*,
   No. 2:23-cv-00345-WLH-AS, 2024 WL 3304515 (C.D. Cal. May 29, 2024) .........14

*Smith v. HSBC Bank, USA, N.A.*,
  2018 WL 2753129 (Cal. Ct. App. June 8, 2018) ...................................................26

*In re Swarthmore Group, Inc.*,
  677 B.R. 258 (Bankr. E.D. Pa. 2005) ...................................................................10

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002)..............................................................................................10

*Taylor-Rush v. Multitech Corp.*,
  217 Cal. App. 3d 103 (Cal. Ct. App. 1990) .....................................................21, 28

*Usher v. White*,
  64 Cal.App.5th 883 (Cal. Ct. App. 2021) .......................................................18, 19

*Voris v. Lampert*,
  446 P.3d 284 (Cal. 2019) ...............................................................................15, 16

*White v. WMC Mortg. Corp.*,
  No. 1–1427, 2001 WL 1175121 (E. D. Pa. July 31, 2001)...................................17

*Williams v. Allstate Ins. Co.*,
  B272353 2017 WL 6350378 (Cal Ct. App. Dec. 13, 2017) ................................26

**Statutes**

29 U.S.C. § 203(d) .....................................................................................................29

CA Labor Code § 201 ............................................................................................27, 28

CA Labor Code § 203 ............................................................................................27, 28

CA Labor Code § 204 .................................................................................................20

CA Labor Code § 210 .................................................................................................20

CA Labor Code Section 221 ......................................................................................22

CA Labor Code § 226(a).......................................................................................25, 27

CA Labor Code § 226(e)(2)(B)..................................................................................26

CA Labor Code Section 558.1 ...........................................................................*passim*

CA Labor Code sections 1194 and 1197 ..................................................................20

CA Labor Code section 2802.................................................................................24, 25

Labor Code Section 221, Et Seq. ..............................................................................22

Labor Code section 225.5 ...................................................................................................22

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................................11

Fed. R. Civ. P. 12(d) ......................................................................................................11

Fed. R. Evid. 201 ...........................................................................................................11

L.R. 7007-2 (b)(ii)..........................................................................................................19

Rule 8 .............................................................................................................................11

Rule 12(b)(6)...........................................................................................................10, 12

Rule 15 ...........................................................................................................................31

17629267/3

Plaintiffs Brian Skajem, Lisa Papatzimas, Erin Tuttle, David Ellender, Dara Cohen, Matt Loze, Jessica Stoeckeler, Heather Bundy, Carey Campbell, Kelly Burke Hopkins, and Courtney Smith ("Plaintiffs"), by and through their undersigned counsel, respectfully submit this omnibus brief in opposition to *Defendant Bart Schwartz's Motion to Dismiss First Amended Complaint* [Adv. 24-50128, D.I. 69] ("Schwartz Motion") and *Defendants Robert H. Warshauer and John T. Young, Jr.'s Motion to Dismiss First Amended Complaint* [Adv. 24-50128, D.I. 80] ("Young and Warshauer Motion"). In support of this opposition, the Plaintiffs offer the *Declaration of Tara C. Pakrouh in Support of Plaintiffs' Omnibus Brief in Opposition to Independent Director Defendants' Motion to Dismiss* (the "Pakrouh Declaration")*,* which is being filed contemporaneously herewith, and respectfully state as follows:

**PRELIMINARY STATEMENT**[2]

This action is brought on behalf of the putative class of former employees of Chicken Soup for the Soul Entertainment, Inc. ("CSSE"), as the parent company for several other subsidiaries, and certain of its related affiliates (collectively with CSSE, "CSSE Companies") dating back to at least 2022. This case is about the above-captioned defendants' (each individually a "Defendant", and collectively, the "Defendants") concoction and participation in a scheme to defraud these former employees by deducting money from their paychecks under the guise of contributions toward medical and dental insurance premiums and 401(k) investments, depriving those same employees of wages due, and then siphoning those funds away and leaving the employees without insurance or 401(k) contributions. The harm suffered by the employees continued all the way through the bankruptcy proceedings, through different corporate governorships, all resulting in the employees losing insurance coverage, and being forced to incur millions of dollars in

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the FAC.

unreimbursed medical expenses. This wanton misconduct plainly violates the California Labor Code ("CA Labor Code") and the Fair Labor Standards Act ("FLSA") and further constitutes conversion and fraud.

Defendants John T. Young, Jr. ("Young"), Robert H. Warshauer ("Warshauer"), and Bart Schwartz ("Schwartz") (collectively, "YWS Defendants") served on the CSSE board and operated the company while the misconduct occurred. They repeatedly note that they served on the CSSE board for a short duration. But during the limited time frame that they operated the company, management turned over, payroll and benefit payments ceased, they represented to the Court that employee compensation was unable to be met, and healthcare coverage lapsed. The brevity of their tenure does not absolve them of liability. As alleged, these infractions occurred on their watch, while they were actively involved in the company's day-to-day operations on the board or through the Strategic Review Committee ("SRC"). The fact that they were "outside" or "independent" directors does not insulate them from liability where they were personally aware of and authorized or oversaw the conduct giving rise to employees' harm.

The YWS Defendants spend a lot of time pointing fingers at prior management or the proverbial "empty-chair" defendant that is the Chapter 7 estates, as those parties were named in the initial complaint. But those efforts strain credulity. Although the YWS Defendants were not initially named in the Plaintiffs' original complaint, discovery in the main-case proceedings—including depositions—demonstrated their active involvement in management decisions during the relevant period. On that basis, Plaintiffs sought and obtained leave to amend, as detailed in *Plaintiffs' Motion for Leave to File an Amended Complaint* [Adv. 24-50128, D.I. 18], to add the YWS Defendants. This Court has since entered an order formally recognizing their inclusion as

Defendants.[3] Adv. 24-50128, D.I. 29.

Despite the YWS Defendants' plea to the contrary, the Chapter 7 Trustee's separate adversary proceeding[4]—brought against different defendants and premised on what is ostensibly one overlapping claim—does not shield the YWS Defendants of responsibility here.  This action is far broader in scope than the Trustee's complaint against prior management, reaching back to 2022 and encompassing the full spectrum of harm detailed in the FAC and explained herein. As the Court is aware, the Trustee's ability to conduct diligence is inherently limited, and the Trustee does not have access to the same universe of information available to the clients in the putative class. As Plaintiffs' counsel has already represented to the Court, the parties will work cooperatively in pursuing their respective claims. But the fact that the Trustee's claims overlap only in a narrow respect does not mean that the YWS Defendants should escape liability; it simply means the Trustee elected not to assert claims against them in that proceeding.

The FAC alleges, and the bankruptcy record confirms, that during the period of no less than six days of active control by the YWS Defendants, multiple violations occurred: (1) non-payment of wages, (2) improper benefit deductions, and (3) lapses in health coverage. YWS Defendants' reliance on the pendency of the bankruptcy proceeding to say something different is misplaced. Indeed, the record therein supports, rather than undermines, the factual allegations in the FAC.  The YWS Defendants will likely contend that they were unaware of the wrongdoing when they were elected to serve on the CSSE board; however, that assertion is directly contradicted by the allegations in the complaint, their own testimony in these cases, and the representations their counsel have already made to the Court on these issues.

---

[3]    To the extent YWS Defendants contend they are not captured by the First Amended Complaint's ("FAC") defined term "Defendants," they are otherwise expressly named as defendants and treated as such by this Court's order and unmistakably included in the FAC's allegations.

[4]    Adv. 24-50399, D.I. 1.

3

To the extent the Court considers the record in this case, it cannot ignore the history of these cases, the repeated representations to the Court that employees were not paid for their work pre- and post-petition, that the one paycheck that cleared post-petition included benefit deductions when no medical policy had been in place, and that the YWS Defendants recommended conversion resulting in employees being terminated without pay. The FAC includes well-pled allegations detailing the same. Accordingly, Plaintiffs have adequately pleaded each claim, and the YWS Defendants should remain in the case so that employees who were deprived of wages, benefits, or coverage can seek appropriate redress.

## FACTUAL BACKGROUND

### I.    THE OPERATION OF CSSE PRIOR TO THE YWS DEFENDANTS

In 2008, defendants William J. Rouhana, Jr. ("Rouhana") and Amy Newmark ("Newmark") purchased the "warm hearted" brand Chicken Soup for the Soul ("CSS") and later formed CSSE in 2017. FAC ¶ 44. Rouhana and Newmark actively operated the CSSE Companies either personally or through the parent, CSS. FAC ¶¶ 21-23; *see also* D.I. 7 at ¶ 1 (testifying that Rouhana has "been responsible for overseeing the operations and financial activities of the debtors"); D.I. 10 at ¶¶ 9, 27 (Defendants Rouhana and Newmark provided accounting services to the Debtors and payment of employee health insurance historically).

In or around 2020, Rouhana commenced talks to purchase Redbox Automated Retail, LLC ("Redbox"). FAC ¶ 46. CSSE acquired Redbox, a company with over $300 million in debt, in August 2022. FAC ¶ 47. In January 2023, Redbox's CEO stepped down, giving Rouhana full control. FAC ¶ 48. Warshauer was nominated and appointed to the Redbox board prior to the merger, at the request of HPS Partners, LLC ("HPS"), who helped finance the acquisition of Redbox. FAC ¶ 47; Transcript of Deposition of Robert Warshauer (Nov. 5, 2024) ("Warshauer Transcript"), attached to the Pakrouh Declaration as **Ex. A**, at 19:9-22.

In late 2023, CSSE Companies switched health insurance providers from Premera to Blue Cross Anthem ("Anthem") effective January 1, 2024. FAC ¶ 51. Plaintiffs and the putative class members were thereafter informed that the December 2023 benefits with Premera were being denied. FAC ¶ 51. At no time during this period did CSSE Companies indicate that the Plaintiffs and class members were not covered for health insurance. As a result, CSSE Companies ceased providing dental and life insurance benefits to employees yet still deducted those premiums from employees' pay. FAC ¶ 53. After ceasing to provide these benefits, CSSE Companies falsely represented that such benefits were still active. FAC ¶ 53. On April 18, 2024, CSSE Companies and their agents caused corporate-wide correspondence to be issued stating that the Premera health claims from December 2023 had been reinstated. FAC ¶ 54.

## II.    DEFENDANTS YOUNG AND WARSHAUER JOIN BOARD DURING MISMANAGEMENT OF CSSE

On May 3, 2024, Young and Warshauer were added to CSSE's board of directors as independent directors amid the ongoing unlawful deduction of wages from the employees.[5] FAC ¶ 55. Transcript of Deposition of John T. Young, Jr. (Nov. 5, 2024) ("Young Transcript"), attached to the Pakrouh Declaration as **Ex. B,** at 40:21-41:2; Warshauer Transcript at 27:22-28:1. Young and Warshauer failed to perform due diligence and ensure that employees were paid properly in the ensuing weeks and months. FAC ¶ 55.

In May 2024, employees had their insurance claims denied by Anthem with little information provided by Young, Warshauer, or any other Defendant. FAC ¶ 56. For his part, Rouhana unofficially recommended employees avoid any non-emergency medical services. FAC ¶ 56. Additionally, in Spring 2024, CSSE Companies stopped contributing to 401(k) and/or HSA

---

[5]    Young and Warshauer were added as independent directors, pursuant to a Forbearance Agreement entered into by CSSE and HPS.  FAC ¶ 55 ("Defendant Young and Defendant Warshauer were added to the CSSE board at the behest of HPS and as amendments to Defendant CSSE's charter documents."); Young Transcript at 41:7-12.

plans yet still deducted amounts from employees' pay for those purported reasons. FAC ¶ 58.

On June 11, 2024, Rouhana purported to terminate Young and Warshauer, among others, from the CSSE board with no explanation. FAC ¶ 62; Young Transcript at 107:14-17; Warshauer Transcript at 69:5-10. However, Young and Warshauer understood that Rouhana did not have such authority and therefore did not view themselves as officially terminated. Young Transcript at 107:4-25; Warshauer Transcript at 69:10-14, 69:22-24; 70:7-14.

Health benefits stopped being provided to Anthem on or about June 14, 2024. *In re Chicken Soup for the Soul Entertainment Inc., et al.*, Case No. 24-11442 (TMH) (Bankr. D. Del. July 10, 2024) ("Status Conference Transcript"), attached to the Pakrouh Declaration as **Ex. C** at 13:5-7. On June 18, 2024, CSSE Companies finally informed employees that Anthem had terminated the insurance plan and was denying all claims as of May 14, 2024. FAC ¶ 57. Yet, CSSE Companies continued to deduct medical premiums from employees' paychecks, including in June 2024.  FAC ¶ 57; *see also* D.I. 178 (pay stub filed by former employee evidencing medical deductions for pay period of June 16, 2024 through June 29, 2024), attached to the Pakrouh Declaration as **Ex. D**.

## III.   DEFENDANT SCHWARTZ IS BRIEFLY THE CEO AND OVERSEES MISMANAGEMENT, FRAUDULENT DEDUCTIONS, AND NON-PAYMENTS OF EMPLOYEES

At the end of June 2024, Rouhana stepped down as CEO of CSSE; Schwartz replaced him as CEO on or around June 28, 2024. FAC ¶ 61. On June 28, 2024 ("Petition Date"), CSSE filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. FAC ¶ 59; D.I. 1 (voluntary petition filed for Chicken Soup for the Soul Entertainment, Inc. signed by Bart Schwartz); Transcript of Deposition of Bart Schwartz (Nov. 7, 2024) (the "Schwartz Transcript"), attached to the Pakrouh Declaration as **Ex. E**, at 10:9-20.

On the Petition Date, the Debtors also filed numerous motions, including the *Debtors'*

*Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Reimbursable Expenses, And Other Obligations on Account of Compensation and Benefits Program and (B) Continue Compensation and Benefits Programs; And (II) Granting Related Relief* [D.I. 3] ("Wage Motion"). The Wage Motion admits that the Debtors failed to pay employees for at least one pay period pre-petition, and that Anthem health insurance policies lapsed at least one month prior to the Petition Date. Wage Motion at ¶¶ 15, 35.

The Court held the first day hearing on July 1, 2024 ("First Day Hearing") which continued into a second day on July 2, 2024. At this time, Schwartz, as CEO, was in total control of CSSE and its related subsidiaries. FAC ¶ 61; Transcript of First Day Hearing, *In re Chicken Soup for the Soul Entertainment Inc., et al.*, No. 24-11442 (TMH) (Bankr. D. Del. July 2, 2024) ("First Day Hearing Day 2 Transcript") attached as **Ex. F** at 38:25-39:1. Although Schwartz was actively involved in the operation of the Debtors, he failed to perform due diligence regarding unpaid wages, benefits, premiums, and out-of-pocket expenses. FAC ¶ 61.

## IV.   YWS DEFENDANTS PERPETUATED MISMANAGEMENT POST-PETITION FOLLOWING THE INTERIM DIP ORDER

On July 4, 2024, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing and (V) Granting Related Relief* [24-1142-TMH, D.I. 85] ("Interim DIP Order"). Under the Interim DIP Order, the SRC consisting of the YWS Defendants was "empowered to be the sole body entitled to manage all of the affairs and operations of the Debtors and their subsidiaries…" Interim DIP Order at ¶ 18. Additionally, CSSE was authorized to borrow: (i) up to $3.5 million for past due payroll and payroll due on July 5, 2024; (ii) up to $2.85 million for payroll deductions; and (iii) up to $1.65

7

million for payments to Anthem for healthcare premiums. FAC ¶ 62; Interim DIP Order at ¶ 1.

At this point, control of the company was solely in the hands of the YWS Defendants. Interim DIP Order at ¶ 18; Warshauer Transcript at 70:20-71:1; First Day Hearing Day 2 Transcript at 38:25-39:1, 40:1-3. During the YWS Defendants' exclusive control of the company, the employees were not timely paid for at least one pay period, and upon payment for such pay period, employees continued to have deductions from their wages for benefits that were not provided. FAC ¶¶ 24, 25, 27 (Young, Warshauer, and Schwartz caused the unauthorized withdrawals from employees' pay for benefits that were not received; unpaid wages, bonuses, and/or commissions; and/or other losses to employees); Status Conference Transcript at 13:24-14:4 (post-petition payrolls had deductions purportedly for Anthem that could not be found); 18:4-9 (expressing doubt that 401(k) payments were made). This is despite the Court's *Interim Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Reimbursable Expenses, and Other Obligations on Account of Compensation and Benefits Programs and (B) Continue Compensation and Benefits Programs; and (II) Granting Related Relief* ("<u>Interim Wage Order</u>") [D.I. 75], which directed the Debtors to pay prepetition wages to the employees in the amount of nearly $3.5 million with over $2.8 million to be paid toward "Health and Welfare Benefits" and the "401(K) Plan."

The YWS Defendants were aware of the issues with paying the employees and the improper deductions from their wages. FAC ¶¶ 24, 25, 27, 59; Schwartz Transcript at 89:22-90:5. Even after the Interim DIP Order and Interim Wage Order were entered, the YWS Defendants were aware the deductions were not being appropriately applied toward providing insurance for the employees. FAC ¶ 59; Schwartz Transcript at 102:23-103:5; Young Transcript at 149:20-150:3; Warshauer Transcript at 84:23-85:1. This resulted in approximately 1,200 employees not being adequately compensated as ordered by the Court, with improper deductions taken out for

8

insurance and 401(k) benefits that the employees did not receive. FAC ¶¶ 1, 8.

On July 10, 2024, the Court, following request by oral motion, entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Grating Related Relief* ("Order to Convert") [D.I. 120]. FAC ¶ 59. On the same day, Young and Warshauer resigned from both the CSSE board and the company in its entirety. Warshauer Transcript at 88:13-19; Young Transcript at 165:4-6. Schwartz resigned from the SRC prior to the Order to Convert being entered. Schwartz Transcript at 13:1-7.

Upon conversion of the cases to Chapter 7, all employees were terminated. The Plaintiffs did not receive payment for all amounts due upon their termination.

## V.    PLAINTIFFS COMMENCE THIS ADVERSARY PROCEEDING AND AMEND COMPLAINT TO INCLUDE THE YWS DEFENDANTS

On September 6, 2024, the Plaintiffs filed their original complaint against Defendants CSSE, Redbox, Rouhana, Newmark, HPS Partners, LLC, Anthem Blue Cross, and Does 1-500 [Adv. 24-50128, D.I. 1] (the "Complaint") for violations of the CA Labor Code and FLSA, and for conversion and fraud.

After filing the Complaint, the Plaintiffs became aware of new evidence implicating other Defendants including the YWS Defendants. The Plaintiffs filed *Plaintiffs' Motion for Leave to File an Amended Complaint* ("Motion to Amend") on February 3, 2025 to add the YWS Defendants to the case. Adv. 24-50128, D.I. 18. Unlike other Defendants, the YWS Defendants did not use this opportunity to contest their inclusion by opposing the Motion to Amend.[6] Without objection from the YWS Defendants, the Court granted the Motion to Amend on May 6, 2025 [Adv. 24-50128, D.I. 29] and the FAC was filed on May 8, 2025 [Adv. 24-50128, D.I. 30].

---

[6]    *See HPS Investment Partners, LLC's Partial Objection to Plaintiff's Motion for Leave to file an Amended Complaint.* Adv. 24-50128. D.I. 20.

On October 17, 2025, the Schwartz Motion was filed. Adv. 24-50128, D.I. 69. On October

30, 2025, the Young and Warshauer Motion was filed. Adv. 24-50128, D.I. 80.

## LEGAL STANDARD

### I.    MOTION TO DISMISS

A Rule 12(b)(6) motion "tests the legal sufficiency of plaintiff's claim[s]." *In re Am. Bus.*

*Fin. Servs.*, 384 B.R. 80, 84 (D. Del. 2008). "To survive a motion to dismiss, a complaint need not

be detailed," but only needs to contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3rd Cir. 2016)

(citing Fed. R. Civ. P. 8(a)(2)). That requires only "plausibly suggesting" facts sufficient to "draw

the reasonable inference" that the pleader is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The short and plain

statement is enough to 'give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests.'" *Martinez*, 986 F.3d at, 265 (quoting *Twombly*, 550 U.S. at 555). In deciding

a motion to dismiss, the Court must accept all well-pleaded allegations as true and view them in

the light most favorable to the plaintiff. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3rd Cir. 2022).

Determining whether a claim is plausible is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. But

plausible does not mean probable; "it simply calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence" supporting the claims. *Twombly*, 550 U.S. at 556.

The issue is not whether the plaintiff will succeed on the merits but whether the plaintiff is entitled

to offer evidence to support the claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).

In actions for fraud, Fed. R. Civ. P. 9(b)'s heightened pleading standard applies. *In re*

*Rockefeller Ct. Props., Inc. Sec. Litig.*, 311 F.3d 18, 216 (3d Cir. 2002). When alleging fraud, the

plaintiff must state "with particularity the circumstances constituting the fraud." Fed. R. Civ. P.

9(b). "Particularity" simply requires placing the defendant on notice "of the precise misconduct with which [it is] charged" by "alleg[ing] the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 918-19 (3d Cir. 2018).

## II.    JUDICIAL NOTICE

While Fed. R. Civ. P. 12(d) states that motions to dismiss should be converted to summary judgment motions when considering matters outside the pleadings, the Third Circuit recognizes two well-established exceptions. First, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion into one for summary judgment." *In re Mervyn's Holdings, LLC*, 426 B.R. 488, 496 (Bankr. D. Del. 2010) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Second, under the public record exception, courts may take judicial notice of public records to acknowledge that the facts contained in the records existed in the public realm at that time. *Mervyn's Holdings*, 426 B.R. 496 (citing *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 (3d Cir. 2006)) (affirming judicial notice of newspaper articles "not for the truth of the facts reported, but to show that information was in the public realm at the time").

Pursuant to Fed. R. Evid. 201, the Court may take judicial notice of background facts that are not subject to reasonable dispute and are reflected in the public record of the main bankruptcy case. *In re Cool Springs, LLC*, 657 B.R. 767, 771 n.1 (Bankr. D. Del. 2024) (taking judicial notice of the debtor's business operations, financing arrangements, and related filings in the main bankruptcy case as part of the undisputed factual background relevant to the dispute) citing *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a Rule 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."). This includes docket events in a

case and the contents of bankruptcy schedules. *In re Popple*, 532 B.R. 581, 585 (Bankr. M.D. Pa. 2015) (taking judicial notice of dockets in underlying Chapter 11 case and related adversary proceeding) (citing *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008)); *In re Paolino*, No. 85-00759F, 1991 WL 284107, at *12, n.19 (Bankr. E.D. Pa. Jan. 11, 1991); *see also Carroll v. Prothonotary*, No. 08CV1683, 2008 WL 5429622, at *2 (W.D. Pa. Dec. 31, 2008) (taking judicial notice of court records and dockets of Federal District Courts because they are public records) (citing *DiNicola v. DiPaolo*, 945 F.Supp. 848, 854 n.2 (W.D. Pa. 1996)).[7]

## **ARGUMENT**

## I. **THE FAC SUFFICIENTLY ALLEGES CLAIMS FOR FRAUD AGAINST THE YWS DEFENDANTS**

The Young and Warshauer Motion moves to dismiss Count I under California law, while the Schwartz Motion moves to dismiss under Delaware law. Young and Warshauer Motion at p. 12; Schwartz Motion at pp. 10-11. Under either Delaware or California law, the analysis for pleading a fraud claim is the same.[8] To allege a fraud claim there must be (i) a material misrepresentation or omission; (ii) knowledge that the misrepresentation is false; (iii) the misrepresentation was made with the intent to mislead; (iv) the plaintiff took an action or inaction in reasonable reliance on the misrepresentation; and (v) the plaintiff suffered damages as a result of reliance. *Compare Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2009) *with In re OSC 1 Liquidating Corporation*, 529 B.R. 825, 832 (Bankr. D. Del. 2015). While it is true that

---

[7]    For additional support in this opposition, Plaintiffs cite to sources outside the four corners of the FAC. The Court can take judicial notice of these documents from the bankruptcy record for purposes of resolving the Schwartz Motion and the Young and Warshauer Motion. Additionally, the pay stub [D.I. 178] attached to the Pakrouh Declaration as Exhibit D, is being cited because it was "integral to or explicitly relied upon in the FAC." *Mervyn's Holdings*, 426 B.R. 496 (citing *Burlington Coat Factory*, 435 F.3d 401).The YWS Defendants agree that it is appropriate for the Court to consider their deposition transcripts when resolving the motions. Young and Warshauer Motion at pp. 4 n.2, 15 n.7.

[8]    For the avoidance of doubt, the Plaintiffs bring this Count under California's common law. Plaintiffs cite both California and Delaware common law to show that no conflict of law or choice of law analysis is necessary.

if defendants "engage in different wrongful conduct" with each actor "playing different parts," it is insufficient to simply lump the defendants together and assert that everyone did everything. *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018). However, the Defendants here each had "the exact same role in a fraud," meaning the complaint does not need to distinguish between each Defendant as the YWS Defendants contend. *Id.*

The FAC alleges at least five material misrepresentations by all of the named Defendants, including Young, Warshauer, and Schwartz. The FAC alleges that each Defendant represented to the Plaintiffs that (1) they would be paid for all hours worked and for non-discretionary bonuses and commissions and PTO; (2) they would be reimbursed for business-related expenses; (3) they would be covered for medical, dental, disability and other benefits; (4) they were paying to the relevant taxing authorities when making deductions; and (5) they would be paying into Social Security and Medicare if such deductions were made. FAC ¶¶ 63, 65, 75.

The FAC also alleges that the Defendants all knew the misrepresentations were false. For example, the FAC alleges the Defendants were advised by lawyers and other professionals as to the wage requirements and that they willfully and knowingly failed to pay Plaintiffs their due compensation. FAC ¶¶ 70, 72. The Plaintiffs even allege that Defendants went so far as to have a "consistent policy or practice of failing to compensate the plaintiff class members." *Id.* at ¶ 73.

In alleging fraud, a party can plead intent generally. *Sanford v MemberWorks, Inc.*, 625 F.3d 550, 557-58 (9th Cir. 2010) (quoting Fed. R. Civ. P. 9(b)); *Dhoat v. Walia*, No. 24-cv-03716-JSC, 2024 WL 4804980, at *2 (N.D. Cal. Nov. 15, 2024) ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally."). Plaintiffs sufficiently state a claim by pleading Defendants' actions were taken with the necessary fraudulent intent to use the wages for their own benefit. FAC ¶ 79.

13

The FAC also alleges that Plaintiffs justifiably relied on the Defendants' misrepresentations and that they suffered damages due to such reliance. FAC ¶ 64. Plaintiffs allege they justifiably believed representations that they would be compensated for their employment, including their wages, reimbursement expenses, and other benefits. *Id.* Defendants had control over the mechanisms for determining the Plaintiffs' wages as well as when they would be paid and whether commissions or bonuses would be provided and the deductions taken from their pay for any benefits. *Id.* at ¶ 66. Plaintiffs were unquestionably harmed due to the "sickening" amount of money pilfered from their wages instead of being used for insurance and the additional failure to pay their full compensation. *E.g. id.* at ¶ 59; *see also* Status Conference Transcript at 18:7.

In short, Plaintiffs plausibly plead the "who," (each named Defendant) "what," (engaged in a scheme to defraud Plaintiffs by siphoning their wages and payments that were supposed to go toward Plaintiffs' benefits) "when," (May 2024 through the bankruptcy filing and beyond), "where" (defrauded employees both in California and nationwide) and "how" (through material misstatements regarding the employees' wages and benefits) of the fraud. *See e.g. ScroeBlue, LLC v. Locum Tele PC*, No. 2:23-cv-00345-WLH-AS, 2024 WL 3304515, at *7 (C.D. Cal. May 29, 2024); *see also Copper v. Pickett*, 137 F.3d 616, 625, 627 (9th Cir. 1997) (plaintiffs need to plead the "who, what, when, where, and how" that would suggest fraud).

Thus, Count I regarding the YWS Defendants' fraudulent conduct should not be dismissed.

## II.    THE FAC SUFFICIENTLY PLEADS A CLAIM FOR CONVERSION

"Conversion is any act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights therein." *Fischer v. Machado*, 50 Cal.App.4th 1069, 1072 (Cal. Ct. App. 1996). Conversion claims can apply to money where the plaintiff can allege interference with a "possessory interest in a specific, identifiable sum, such as when a trustee or agent misappropriates the money entrusted to him." *Kim v. Westmoore Partners, Inc.*, 201

Cal.App.4th 267, 284 (Cal. Ct. App. 2011). A plaintiff can also recover punitive damages with a showing of "malice, fraud, or oppression." *Voris v. Lampert*, 446 P.3d 284, 290 (Cal. 2019); *see also Huy Fong Foods, Inc. v. Underwood Ranches, LP*, 66 Cal. App. 5th 1112, 1126 (Cal. Ct. App. 2021) (punitive damages may be awarded for fraud even though the fraud incidentally involves breach of contract); *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220, 1238 (Cal. Ct. App. 1991) (recognizing the adverse effect fraud has on commercial transactions, the law permits a defrauded party to seek punishment of the wrongdoer through the imposition of punitive damages).

YWS Defendants rely on *Voris* to argue that California does not recognize a common-law conversion claim for nonpayment of wages. Young and Warshauer Motion at p. 14 (citing 446 P.3d at 297-99); Schwartz Motion at p. 12. However, *Voris* only serves to preclude conversion claims for wage nonpayment. It does not preclude conversion claims based on Defendants' exertion of control over identifiable sums specifically intended by the Plaintiffs to be used for certain purposes, such as insurance and 401(k) investments. A conversion cause of action on this basis does not conflict with *Voris. See Voris*, 446 P.3d at 291 (noting claims for conversion of money "typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others.") (internal citations omitted). Plaintiffs' claim for conversion is not based on the Defendants' failure "to reach into its own funds to satisfy its debt;" instead, it is based on the Defendants "wrongfully exercis[ing] dominion over a specifically identifiable pot of money that already belong to the employee." *Id.* at 292.

YWS Defendants also argue that Plaintiffs did not sufficiently identify the sums that were converted. However, "it is not necessary to plead the specific sum of money; instead, Plaintiff must plead facts that plausibly indicate that a sum is 'capable of identification.'" *Alvarenga v.*

*Carlson Wagonlit Travel, Inc.*, 1:15-cv-01560-AWI-BAM, 2016 WL 466132, at *5 (E.D. Cal. Feb. 8, 2016) (quoting *Brock v. Concord Automobile Dealership, LLC*, No. 14-cv-01889-HSG, 2015 WL 3466543 (N.D. Cal. June 1, 2015)). Here, Plaintiffs have alleged a scheme whereby Defendants stole money that was intended to be used for insurance premiums and 401(k) investments; and such specific amounts are capable of being identified and are thus sufficient to support a claim for conversion at the pleading stage. *See Brock*, 2015 WL 3466543, at *6 (ruling plaintiffs sufficiently pled conversion where they alleged a scheme by which defendant stole bonuses related to the sale of specific automobiles).

YWS Defendants also argue that the conversion claim is not sufficiently pled as to them individually or that the Defendants obtained any benefit. Young and Warshauer Motion at p. 15; Schwartz Motion at p. 13. However, a conversion claim does not require that Defendants obtain any benefit. *See e.g. Greif v. Sanin*, 74 Cal. App. 5th 412, 449 (Cal. Ct. App. 2022) (questions of the defendant's motive are ordinarily immaterial). All that is required is the plaintiff's ownership or right to possession of property, defendant's interference with that right, and resulting damages to the plaintiff. *Voris*, 446 P.3d at 290. Plaintiffs have also sufficiently pled these elements as to the YWS Defendants.[9] *See e.g.* FAC ¶ 57 (alleging Defendants stole money intended to be for health insurance), ¶ 58 (stealing money intended to be for 401(k) and/or HSA plans), ¶ 61 (failing to provide insurance despite pocketing money dedicated to premiums), ¶ 89 (alleging Plaintiffs suffered significant economic damages).

There is also plentiful evidence in the record demonstrating the same. The YWS Defendants were in sole control of the company (Interim DIP Order at ¶ 18; First Day Hearing

---

[9]  Courts in the Third Circuit allow group pleadings to survive motions to dismiss "where the complaint sets forth sufficient facts to put individuals on notice of the claims against them." *In re Swarthmore Group, Inc.*, 677 B.R. 258, 270 (Bankr. E.D. Pa. 2005).  This similarly applies to Counts III through IX.

16

Day 2 Transcript at 38:25-39:1, 40:1-3) and oversaw the employees' pay deductions for benefits that were not provided. Status Conference Transcript at 13:24-14:4, 18:4-9; D.I. 178. The SRC knew about the improper payroll deductions and did not stop them. Schwartz Transcript at 102:23-103:5; Young Transcript at 149:20-150:3; Warshauer Transcript at 84:23-85:1.

For the reasons stated above, Plaintiffs have sufficiently pled a claim for conversion.

## III. THE FAC PLAUSIBLY PLEADS VIOLATIONS OF THE CALIFORNIA LABOR CODE AGAINST THE YWS DEFENDANTS

### A. Failure to Pay Wages (Count III) is Properly Pled under California Law

As an initial matter, the YWS Defendants do not need to guess which provision of the CA Labor Code they allegedly breached. *See* Young and Warshauer Motion at p. 16. The FAC unmistakably points to several sections of the CA Labor Code—of which only 1194 and 1197 could plausibly be related to "Failure to Pay Wages." FAC ¶ 7.[10]

Young and Warshauer argue that this claim must fail because the Industrial Wage Commission's ("IWC") definition of "employer" must be used and, under such definition, corporate agents are not liable if they acted within the scope of their employment. Young and Warshauer Motion at pp. 16-17 (citing *Martinez v. Combs*, 231 P.3d 259, 272-73 (Cal. 2010)). However, five years after *Martinez* was decided, the California legislature enacted Section 558.1 of the CA Labor Code, which expressly permits a cause of action under §§ 203, 226, 226.7, 1193.6, 1194, and 2802 against any "person acting on behalf of an employer," explicitly including an

---

[10] Regardless, as courts in the Third Circuit have observed, Plaintiffs are not required to list the specific subsection of a statute in any given count. *See e.g., see also Plan Adm'r v. 225 Bowery Mezz Lender LLC (In re 225 Bowery Lender LLC)*, Nos. 23-10094 (TMH), 25-50018 (TMH), 2025 WL 24445879 (Bankr. D. Del. Aug. 25, 2025) (stating "[t]he Motion to Dismiss ignores the liberal notice-pleading framework that governs at this stage"; and finding "the Complaint alleges facts sufficient to support the elements of [the claim], and, thus, the Motion to Dismiss should be denied and Defendants' contention that the Complaint must identify a specific state law rejected"). *Boone v. T-Mobile USA Inc.*, No. 17-378-KM-MAH, 2018 WL 588927, at *13 (D.N.J. Jan. 27, 2012) ("Courts do not generally dismiss complaints for failure to cite to a specific subsection of a statute."); *White v. WMC Mortg. Corp.,* No. 1–1427, 2001 WL 1175121, at *1 (E. D. Pa. July 31, 2001).

"owner, director, officer, or managing agent of the employer." Cal. Labor Code § 558.1 (2015)."[11]

In interpreting Section 558.1, courts have noted "Senate Bill 588 … targets individual officers who are involved in the failure to pay wages or to satisfy final wage judgments" through enactment of section 558.1."" *Usher v. White*, 64 Cal.App.5th 883 (Cal. Ct. App. 2021) (citing *Voris v. Lampert*, 446 P.3d 284, 297 (Cal. 2019). "By making certain individuals such as owners, directors, officers, and managing agents personally liable, the Legislature sought to 'discourage [such individuals] from rolling up their operations and walking away from their debts to workers and starting a new company.'" *Id.* Clearly the legislative intent of section 558.1, as well as courts' interpretation, is to permit an action under the enumerated subsections against those other than solely "employers" as defined by the IWC.[12] As such, section 558.1 is not cited as an independent cause of action; instead, it permits section 1194 to be applied against the YWS Defendants.

It is undisputed that Young, Warshauer, and Schwartz acted as directors and/or officers of CSSE and thus are implicated by the provision. Young and Warshauer Motion at pp. 17-18 ("…FAC does not plead any fact suggesting that Messrs. Warshauer and Young, **as outside directors**…") (emphasis added); Schwartz Motion at p. 3 (saying FAC pled Schwartz was a corporate officer and/or board member); Interim DIP Order at ¶ 18.

Additionally, the YWS Defendants satisfy the test set out in *Usher* that they "had sufficient participation in managing or overseeing those directly responsible" for the failure to pay wages "such that [they] contributed to the violation." *See* Schwartz Motion at p. 14[13] (citing *Usher v.*

---

[11]    Young and Warshauer do not address section 558.1 for Count III or how it personally implicates them as officers or directors. As such, this argument is waived as to Young and Warshauer.

[12]    Section 1197 simply states that failure to pay the minimum wage is unlawful, while Section 1194 provides the right to bring a civil action against an employer for failure to pay the minimum wage. As such, it is inapposite that the California legislature logically omitted section 1197 in the list provided in section 558.1.

[13]    Schwartz spends less than two pages of his motion discussing six different Counts that have been adequately pled against him. Schwartz Motion at pp. 13-15. Unsurprisingly, these two pages do not adequately address the issues with specific granularity as to each Count, and he is precluded from raising additional arguments in his reply brief that should have been raised in a full and fair opening brief. Del. Bankr. L.R. 7007-2 (b)(ii).

*White*, 64 Cal. App. 5th 883, 896-97 (2021)); *see also Espinoza v. Hepta Run, Inc.,* 74 Cal. App. 5th 44, 59 (Cal. Ct. App. 2022) (stating that to cause a violation of the Labor Code "does not necessarily mean the individual must have had involvement in the day-to-day operations of the company, nor is it required the individual authored the challenged employment policies or specifically approved their implementation … . to be held personally liable he or she must have had some oversight of the company's operations or some influence on corporate policy that resulted in Labor Code violations"). There is no question that the Defendants had sufficient participation in managing or overseeing the individuals responsible for providing the employees' wages. *See* FAC ¶¶ 24-27. The FAC alleges that the YWS Defendants failed to adequately investigate the issues with paying the employees and improper wage deductions and participated in the unlawful deductions and non-payments.[14] FAC ¶¶ 24-27, 61, 65-68, 91-95.

The record is also replete with evidence of the same. For example, YWS Defendants were the operators and "100 percent in control" of the company during the nonpayment and deduction of wages. First Day Hearing Day 2 Transcript at 38:25 – 39:1, 40:1-3; Interim DIP Order at ¶ 18. It is also undisputed that the YWS Defendants were aware of the payroll and unlawful deduction issues. First Day Hearing Day 2 Transcript at 86:21-87:3, 88:2-10; FAC ¶¶ 56, 57. Finally, the record shows the employees were not paid while the YWS Defendants were in exclusive control. Young Transcript at 152:6-15; D.I. 178; Status Conference Transcript at 6:24-7:1, 12:11-13.

Thus, the FAC sufficiently and plausibly states a claim under sections 1194 and 1197.

---

[14] A common theme of the Young and Warshauer Motion is that the FAC fails to allege that the YWS Defendants made payroll decisions or knew of others' failures to pay wages or provide benefits. *See* Young and Warshauer Motion p. 18. However, this is not a defense to consider on a motion to dismiss. Directors cannot excuse imprudence by claiming lack of knowledge. *See Gaillard v. Natomas Co.*, 208 Cal. App.3dd 1250, 1263-64 (Cal. Ct. App. 1989) ("A director cannot close his eyes to what is going on about him in the conduct of the business of the corporation and have it said that he is exercising business judgment."). Indeed, day-to-day involvement is not required—only some oversight or influence on corporate policy that resulted in Labor Code violations. *See Usher v. White*, 64 Cal.App.5th 883, 896–97 (Cal. Ct. App. 2021).

19

### B.    Failure to Timely Pay Wages (Count IV) is Properly Pled under California Law

Section 204 requires that all wages other than certain express exclusions are due and payable twice during each calendar month. CA Labor Code § 204. If a person fails to pay wages to an employee as required under section 204, they shall be subject to an initial penalty of $100 for each failure and $200 for each subsequent or willful violation. CA Labor Code § 210.

The Young and Warshauer Motion heavily relies on the IWC wage order's interpretation of "employer" and *Martinez* to argue it precludes liability against them on multiple counts in the FAC. [15] Young and Warshauer Motion at p. 18. The IWC's wage orders define "employer" as "any person…who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." However, YWS Defendants stretch *Martinez* too far by positing that their positions as officers or directors unconditionally shields them from liability.

It is true defendants do not incur liability "merely by reason of their official position;" however, if they act outside the "scope of their agency," they may be held personally liable. *See Reynolds v. Bement*, 116 P.3d 1162, 1169-70 (Cal. 2005), *abrogated by Martinez v. Combs*, 231 P.3d 259 (Cal. 2010). For example, a corporate officer that "directly authorize[s] or actively participate[s] in wrongful or tortious conduct" can be held liable. *Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103, 113 (Cal. Ct. App. 1990).

Here, the Defendants each actively participated and were directly involved in the violations of the CA Labor Code. Specifically, Young and Warshauer were on the board through at least June 11, and despite their purported termination, continued to view their involvement as ongoing, and were involved in the untimely payment of employees for the period ending on June 14, 2024. *See*

---

[15]    The Schwartz Motion does not make this argument. As such the argument is waived as to Schwartz.

FAC ¶¶ 24-27; Wage Motion at ¶ 15 ("…the Debtors were unable to make payroll for the two-week period ending on June 14, 2024"); First Day Hearing Day 2 Transcript at 86:21-23 ("…the debtors did not make their June 21st payroll to employees at the normally scheduled time."); Schwartz Transcript at 39:6-16, 40:21-25 (stating Young and Warshauer had a lot of authority prior to Schwartz's arrival); Young Transcript at 79:23-80:6.

All three YWS Defendants were actively involved in operating the company at the time of the untimely July 5, 2024 payment that did not include the prior two-weeks of accrued pay.[16] *See* FAC ¶¶ 24-27; Warshauer Transcript at 70:20-71:1, 74:17-75:20; Schwartz Transcript at 17:21-18:3. The YWS Defendants had the employees working after the bankruptcy petition but chose to convert the cases into a Chapter 7 case on July 10, 2024, thereby terminating all employees without pay immediately. *See* FAC ¶ 62; Young Transcript at 157:4-11, 162:24-163:1. As such, the employees were not timely paid on July 19, 2024.

### C.    Violation of Labor Code Section 221, Et Seq. (Count V) is Properly Pled under California Law

Section 221 of the CA Labor Code states "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." CA Labor Code § 221.[17]

This claim directly addresses the improper deductions taken out of the Plaintiffs' paychecks the only time they were paid post-petition. But for the employees' purported receipt of benefits, they would have received wages. YWS Defendants wrongfully deducted amounts for insurance and other items from Plaintiffs' paychecks that would have otherwise been their wages

---

[16] When counting two-week periods, the next two payments after June 21, 2024 would have been July 5, 2024, and July 19, 2024.

[17] Additionally, Labor Code section 225.5 states that "in addition to, and entirely independent and apart from, any other penalty provided in this article, every ***person*** who unlawfully withholds wages due any employee in violation of Section 212, 216, ***221***, 222, or 223 shall be subject to a civil penalty…." *Id*. (emphasis added). Here, the YWS Defendants were "persons" who withheld wages due to employees.

when no benefits were in place:



D.I. 178 (red boxes added).

Yet again, Young and Warshauer—not Schwartz—contend the more restrictive IWC definition of "employer" applies to this claim, insulating them from liability. Young and Warshauer Motion at p. 19. For the same reasons as mentioned above, *supra* pp. 19-20, *Martinez* cannot be used to absolutely shield the YWS Defendants from personal liability based solely on their positions as officers or directors. The YWS Defendants directly authorized or participated in the wrongful conduct at issue for this count as well. FAC ¶¶ 24, 25, 27. They engaged in deducting premiums for life, medical, and dental insurance from the Plaintiffs' paychecks post-petition without permission, and without being used for those purposes. FAC ¶¶ 53, 57, 59, 61, 62. Defendants also ceased contributing to 401(k) plans and/or HSA plans, yet still deducted such amounts from the Plaintiffs' paychecks without permission. *Id.* at ¶¶ 57-59. Indeed the Defendants collected or received significant sums from the Plaintiffs' wages that were labeled as health and/or dental insurance premiums, 401(k) contributions and/or other benefit contributions. *Id.* at ¶ 101; D.I. 178. The evidence from the bankruptcy records indicate the same. Status Conference Transcript at 13:24-14:4, 18:4-9; Schwartz Transcript at 102:23-103:5; Young Transcript at 149:20-150:3; Warshauer Transcript at 84:23-85:1.

As such, Plaintiffs plausibly plead a claim against each Defendant as to Count V.

### D.     Failure to Reimburse Expenses (Count VI) is Properly Pled Under California Law

Section 2802 requires that an employer indemnify employees "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties. CA Labor Code §2802. YWS Defendants are correct that section 2802 is subject to the definition of § 558.1 which permits an action to be brought against any person acting on behalf of an employer, such as an "owner, director, officer, or managing agent of the employer." Young and Warshauer Motion at p. 19; Schwartz Motion at pp. 13-14.

23

However, YWS Defendants incorrectly argue that the FAC does not contain any factual allegations that they had any personal involvement in the policies or decision-making that resulted in a failure to reimburse the employees. Young and Warshauer Motion at 19; Schwartz Motion at 14. There are plenty of allegations and evidence to the contrary that sufficiently state a claim for a violation of section 2802 against the YWS Defendants—who were officers and directors of Debtors during the failure to reimburse.

It is undisputed that the Debtors would reimburse employees for various expenses in the ordinary course of business. Wage Motion at ¶¶ 20, 22 (Debtors reimburse employees for various expenses in the ordinary course of business). Yet the Defendants failed to reimburse the employees for these business-related expenses. FAC ¶¶ 63, 65, 66. Defendants also failed to reimburse the employees for their medical expenses incurred while they were falsely informed they had coverage. FAC ¶¶ 1, 32, 65. The YWS Defendants' exclusive control over the Debtors and the mechanisms for payment undoubtedly permit Plaintiffs to bring this Count against them personally under section 558.1. *See supra* pp. 18-19.

### E.    Failure to Provide Accurate Wage Statements (Count VII) is Properly Pled under California Law

Section 226(a) requires an employer to furnish timely and accurate itemized statements of their employees' wages that shows several items such as the gross wages earned, all deductions from the wages, and the net wages earned. CA Labor Code § 226(a). Section 226(a) is also subject to section 558.1, extending liability to officers and directors. CA Labor Code § 558.1.

Young and Warshauer first argue that Count VII should be dismissed because there is no alleged distinct injury separate and apart from the wage-and-hour claims. Young and Warshauer Motion at p. 22 (*citing Hill v. Pac. Mar. Ass'n*, No. 24-CV-00336-JSC, 2025 WL 1282628, at *3 (N.D. Cal. May 2, 2025) and *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (Cal. Ct.

24

App. 2011)). However. Defendants rely on outdated and misapprehensive case law. The *Price* case was decided in 2011 and determined that an injury under section 226 could not be satisfied simply based on one of the itemized requirements in a wage statement being absent. 192 Cal. App.4th at 1142. However, section 226 was amended in 2013 to clarify when an employee is deemed to have suffered an injury—namely, when "the employer fails to provide accurate and complete information as required by any one or more items…of subdivision (a)." *See* CA Labor Code § 226(e)(2)(B); *see also Cabardo v. Patacsil*, 248 F.Supp.3d 1002, 1011 (E.D. Cal. 2017) (discussing 2013 amendment to § 226); *see also Derum v. Saks & Co.*, 95 F.Supp.3d 1221, 1230 (S.D. Cal. 2015) (noting *Price* predates 2013 amendments). Several unpublished California opinions have also recognized *Price* as superseded by statute. *Williams v. Allstate Ins. Co.*, B272353 2017 WL 6350378, at *13 (Cal Ct. App. Dec. 13, 2017) (clarifying that "injury arises from defects in the wage statement, rather than from a showing that an individual experienced harm as a result of the defect"); *Smith v. HSBC Bank, USA, N.A.*, 2018 WL 2753129, at *5 (Cal. Ct. App. June 8, 2018); *Patel v. Vaghashia*, 2018 WL 3216516, at *4 (Cal Ct. App. July 2, 2018). As such, *Price* is outdated law, and *Hill*—the other case Young and Warshauer cite— misapprehends the law by relying primarily on *Price*'s reasoning to reach the same conclusion. *Hill,* 2025 WL 1282628 at *3-4.

Instead, the current state of the law instructs that an injury is suffered by a wage statement simply failing to provide accurate and complete information and the employee being unable to promptly and easily determine such information. *Derum*, 95 F.Supp.3d at 1229. Here, as detailed by a screenshot of the post-petition paycheck above, Plaintiffs were not provided with accurate wage statements because they represented that deductions were made ostensibly for insurance and 401(k) purposes when that was not the case. *E.g.* FAC ¶¶ 63, 65, 71; *see also* D.I. 178. Plaintiffs

25

were also unable to determine the proper amount of wages owed to them and whether they had received full compensation because, among other reasons, Plaintiffs believed they were actually receiving the benefits of insurance and/or 401(k) contributions stemming from the wage deductions. *E.g.* FAC ¶ 109. As such a claim under section 226 has been plausibly pled.

YWS Defendants also posit that there are insufficient facts of individual wrongdoing as to each of them. Young and Warshauer Motion at p. 22; Schwartz Motion at p. 14. This too is incorrect. The FAC alleges that the YWS Defendants informed the employees about Anthem terminating the insurance plan and denying all claims, yet still deducted these funds from their paychecks. FAC ¶¶ 57, 61 ("Schwartz 'advocated' to the bankruptcy court on behalf of reinstating employee payroll and certain insurance premium payments"). The YWS Defendants similarly deducted wages to purportedly pay for 401(k) and HSA contributions yet did not make those contributions. FAC ¶ 58; D.I. 178.

Again, the YWS Defendants controlled the company (Interim DIP Order at ¶ 18), and oversaw the employees' pay deductions for benefits that were not provided, meaning the post-petition paycheck that Plaintiffs received contained inaccurate information in violation of section 226(a), triggering personal liability under section 558.1. Status Conference Transcript at 13:24-14:4, 18:4-9; D.I. 178; Schwartz Transcript at 102:23-103:5; Young Transcript at 149:20-150:3; Warshauer Transcript at 84:23-85:1. That is all Plaintiffs need to plead for this Count. *Derum*, 95 F.Supp. 3d at 1229.

### F.    Failure to Pay Wages at Time of Termination (Count VIII) is Properly Pled under California Law

Section 201 requires that upon discharge of an employee, the employer must immediately pay all wages earned and unpaid at the time of discharge. CA Labor Code § 201. Section 203 states that if an employer willfully fails to pay in accordance with Section 201, the wages of the employee

26

who is discharged will continue as a penalty until paid. CA Labor Code § 203. Section 203 is also subject to section 558.1, extending liability to officers and directors. CA Labor § 558.1.

Young and Warshauer first argue that sections 201 and 202 are not expressly stated in section 558.1 so the IWC's definition of "employer" must apply. Young and Warshauer Motion at p. 23. Again, Schwartz does not argue this, meaning it is waived. Regardless, this argument misses the mark. Plaintiffs are bringing a claim under section 203 due to Defendants' *willful* violation of sections 201 and/or 202. This comports with the cases Defendants cite which say that officers and directors can be liable for a willful violation of section 201 based on section 558.1. *Rios v. Linn Star Transfer, Inc.*, 2020 WL 1677338, at *4 (N.D. Cal. Apr. 6, 2020) ("In other words, a violation of Section 203 requires an *intentional* act that can be committed by individuals acting on behalf of employers…"). Thus, Young and Warshauer cannot shield themselves from liability on the basis that sections 201 and 202 are not expressly contained in section 558.1.

Moreover, even if Plaintiffs were bringing an action solely based on sections 201 and 202, YWS Defendants would still be liable notwithstanding their positions as officers or directors. As mentioned above, *supra* p. 20, because the YWS Defendants directly authorized or participated in the wrongful conduct, they may be held personally liable. FAC ¶¶ 24, 25, 27; *see also Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103, 113 (Cal. Ct. App. 1990).  To be willful means "merely that the employer intentionally failed or refused to perform an act which was required to be done." *Kao v. Holiday*, 12 Cal. App.5th 947, 962-63 (Cal. Ct. App. 2017) (citing *Barnhill v. Robert Saunders & Co.,* 125 Cal.App.3d 1,7 (Cal. Ct. App. 1981) and Cal. Code Regs., tit. 8, § 13520)).

There are numerous allegations cited in the previous sections that demonstrate the YWS Defendants' personal involvement in the willful nonpayment of wages, triggering personal liability under section 558.1. *E.g.* FAC ¶¶ 24, 25, 27, 70; *see also* First Day Hearing Day 2 Transcript at

27

38:25-39:1, 40:1-3, 86:21-87:3, 88:2-10; Interim DIP Order at ¶ 18; Young Transcript at 152:6-15. As such, this Count is also plausibly pled as to each of the YWS Defendants.

## IV.    THE PLAINTIFFS SUFFICIENTLY STATED A CLAIM FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT

The YWS Defendants argue Count IX fails because a corporate official cannot be personally liable under the FLSA unless they qualify as an employer. Young and Warshauer Motion at p. 24; Schwartz Motion at p. 15.

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d). The definition of an employer "is to be given an expansive interpretation." *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999). When deciding what an "employer" is, the Court should not consider YWS Defendants' generalized presumptions about officers or directors from other cases that are not tethered to the facts here. *See* Young and Warshauer Motion at p. 25. Instead, the Ninth Circuit applies a four-factor test in considering whether an individual is an employer: "Whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 397 (N.D. Cal. 2012) (quoting *Lambert*, 180 F.3d at 1001-02, 1012) *see also Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (FLSA liability extends to individuals who "exercise 'control over the nature and structure of the employment relationship," or "economic control" over the relationship.").

Here, the YWS Defendants satisfy every factor in the Ninth Circuit's test for an "employer." They were the undisputed 100% operators of the company and had the ability to manage all affairs and operations of the company. *See* FAC ¶¶ 24, 25, 27; First Day Hearing Day

17629267/3

2 Transcript at 38:25-39:1, 40:1-3; Young Transcript at 79:23-80:6; Schwartz Transcript at 17:21-18:3; Interim DIP Order at ¶ 18. The YWS Defendants had the power to terminate employees. Warshauer Transcript at 89:7-17 ("I know we had discussions on [whether to terminate employees]…"). The YWS Defendants supervised and controlled the employees' work schedules and conditions of employment and determined the rate and method of payment. Schwartz Transcript at 17:21-18:3; Warshauer Transcript at 84:4-15 ("We were asking employees to work during the pendency of the bankruptcy. We needed to have clarity that we would pay them."); Young Transcript at 152:2-5. ("I mean the whole reason for the Chapter 7 case was because we didn't want people working who could not be paid."). As for the last factor, the YWS Defendants could not easily access the books and records of the company despite their efforts. Schwartz Transcript at 96:18-21, 113:5-8.  However, the Defendants' efforts to locate and access the books and records demonstrates they had a duty to maintain the employment records. Because all four factors of the "employer" test are satisfied, the Defendants meet the FLSA's definition of an "employer."

Defendants also argue that Plaintiffs have not adequately pled unpaid overtime or wage claims under the FLSA. This too is incorrect as Plaintiffs have alleged that the Defendants were corporate officers or board members and had a direct and active role in the legal violations, including unauthorized withdrawals from employees' pay. FAC ¶¶ 24-27, 55, 57, 61. There is also evidence that the Defendants were the operators and "100 percent in control" of the company during the nonpayment and unlawful deduction of wages. First Day Hearing Day 2 Transcript at 38:25 – 39:1, 40:1-3; Interim DIP Order at ¶ 18. The Defendants were aware of the payroll and unlawful deduction issues and oversaw the nonpayment of employees. First Day Hearing Day 2 Transcript at 86:21-87:3, 88:2-10; FAC ¶¶ 56, 57; Young Transcript at 152:6-15.

29

Thus, this Count has also been sufficiently pled as to each of the YWS Defendants.[18]

## V.   ALTERNATIVELY, THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND

If the Court determines that the YWS Defendants established a basis to dismiss the Amended Complaint, the Court should grant Plaintiffs leave to amend. Rule 15 provides that a party may amend a pleading by leave of court, and that leave "shall be freely given when justice so requires." *In re Oakwood Homes Corp.*, 325 B.R. 696, 699 (Bankr. D. Del. 2005) (quoting Fed. R. Civ. P. 15). "The Third Circuit has adopted a liberal approach to the amendment of pleadings" so that a claim will be decided on the merits, rather than technicalities. *Arneault v. Diamondhead Casino Corp.*, 277 F. Supp. 3d 671, 674 (D. Del. 2017). A Court should grant leave to amend unless Defendant can show undue delay, bad faith, dilatory motive, undue prejudice, futility, or repeated failure to cure deficiencies. *In re Oakwood*, 325 B.R. at 699.  To the extent the YWS Defendants rely on this position as a basis to refuse Plaintiffs' relief, the Court should permit Plaintiffs to file a second amended complaint to address any deficiencies if necessary.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court deny the YWS Defendants' motions to dismiss.

*[Remainder of Page Intentionally Blank]*

---

[18]   The YWS Defendants also raised oppositions to unpled causes of action related to unfair competition and declaratory judgment. Young and Warshauer Motion at p. 27; Schwartz Motion at pp. 16-17. Because these causes of action have not been asserted in the FAC, there is no need to respond to these portions of the motions to dismiss. However, Plaintiffs do not waive the right to bring such causes of action at a later date.

Dated: November 20, 2025
      Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Tara C. Pakrouh*
Eric J. Monzo (DE Bar No. 5214)
Tara C. Pakrouh (DE Bar No. 6192)
Cortlan S. Hitch (DE Bar No. 6720)
Siena B. Cerra (DE Bar No. 7290)
3205 Avenue North Blvd., Suite 100
Wilmington, DE 19803
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
       tpakrouh@morrisjames.com
       chitch@morrisjames.com
       scerra@morrisjames.com

-and-

**ALDERLAW, PC**
Michael Alder (CA Bar No. 170381)
Elana R. Levine, Esq. (CA Bar No. 234155)
12800 Riverside Drive, Second Floor
Valley Village, CA 91607
Telephone: (310) 275-9131
Facsimile: (310) 275-9132
E-mail: cmalder@alderlaw.com
       llevine@alderlaw.com

*Counsel to Plaintiffs and the Proposed Class*