**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Ch. 7 |
| CHICKEN SOUP FOR THE SOUL | ) | |
| ENTERTAINMENT, INC., et al., | ) | Case No. 24-11442 (MFW) |
|     Debtors. | ) | |
| | ) | (Jointly Administered) |
| BRIAN SKAJEM, LISA PAPATZIMAS, | ) | |
| ERIN TUTTLE, DAVID ELLENDER, DARA | ) | |
| COHEN, MATT LOZE, JESSICA | ) | |
| STOECKELER, HEATHER BUNDY, CAREY | ) | |
| CAMPBELL, KELLY BURKE HOPKINS, | ) | |
| COURTNEY SMITH, on behalf of | ) | |
| themselves and on behalf of all | ) | |
| others similarly situated, | ) | Adv. No. 24-50128 (MFW) |
| | ) | |
|         Plaintiffs, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| CHICKEN SOUP FOR THE SOUL | ) | |
| ENTERTAINMENT, INC.; REDBOX | ) | |
| AUTOMATED RETAIL, LLC; WILLIAM J. | ) | |
| ROUHANA, JR., AMY NEWMARK, JOHN T. | ) | |
| YOUNG, ROBERT H. WARSHAUER, BART | ) | |
| SCHWARTZ, and DOES 1-500, | ) | |
| inclusive, | ) | |
|         Defendants. | ) | Rel Adv. D.I. 35, 36, 37, |
| | ) | 38, 43, 44, 47, 48, 49, |
| | ) | 50 |

**MEMORANDUM OPINION**[1]

    Before the Court are Motions filed by Defendants William J.
Rouhana Jr. ("Rouhana") and Amy L. Newmark ("Newmark") to Dismiss
the First Amended Complaint ("FAC") filed by several former
employees (the "Plaintiffs") of Chicken Soup for the Soul

---

[1]    The Court is not required to state findings of fact or
conclusions of law pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure.  Instead, the facts recited are those
averred in the First Amended Complaint, which must be accepted as
true for the purposes of these Motions to Dismiss.  Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009).

Entertainment, Inc. (the "Debtor").  For the reasons stated below, the Court will grant the Motions to Dismiss with leave for the Plaintiffs to amend.

I.    PROCEDURAL BACKGROUND

The Debtor was an entertainment content company that provided advertising-supported video-on-demand products.  Its three flagship services were Redbox, Crackle, and Chicken Soup for the Soul.[2]  In connection with the Debtor's acquisition of the Redbox business in 2022, the Debtor and its subsidiaries assumed and became co-obligors on additional debt.  Thereafter, the Debtor was unable to service its larger debt load.  As a result, the Debtor was unable to secure or maintain rights to new video content, resulting in declining revenue, insufficient cash flow, and liquidity challenges.

The Debtor and several subsidiaries filed for relief under chapter 11 of the Bankruptcy Code on June 28, 2024.  The cases were converted to chapter 7 on July 10, 2024.[3]  On September 6, 2024, the Plaintiffs commenced this adversary proceeding on behalf of themselves and other similarly situated employees of

---

[2]    D.I. 7 ¶ 6.  References to the docket in this adversary proceeding are to "Adv. D.I. #" while references to the docket in the main case are to "D.I. #."  The Debtor is an indirect subsidiary of Chicken Soup for the Soul, LLC, which publishes the Chicken Soup for the Soul book series.

[3]    D.I. 120.

the Debtor asserting claims related to the failure to pay their
wages and benefits.[4]  The Plaintiffs sued, inter alia, the
Debtor, its subsidiary and co-debtor Redbox Automated Retail, LLC
("Redbox"), the Debtor's chairman of the board and former CEO
(Rouhana), and an officer and/or member of the board (Newmark).[5]

Though initially named as Defendants, the Debtor's pre-
petition administrative and collateral agent HPS [Investment]
Partners, LLC ("HPS") and healthcare company Anthem Blue Cross
were voluntarily dismissed by the Plaintiffs.[6]  The Plaintiffs
then sought leave to amend the complaint to add back HPS and to
add additional officers and/or members of the board (John T.
Young, Robert H. Warshauer, and Bart Schwartz).[7]  The Court
granted the motion as to the new officers and/or board members
and denied the motion as to HPS.[8]

The Plaintiffs filed their FAC on May 8, 2025, which added
those parties but did not otherwise amend the causes of action or

---

[4]    Adv. D.I. 1.

[5]    The Complaint also included as Defendants "Does 1-500" who
are alleged to be "in some manner responsible, liable, and/or
obligated to Plaintiffs and the Class in connection with the acts
alleged herein."  Id. ¶ 12.

[6]    Adv. D.I. 8 & 15.

[7]    Adv. D.I. 18.

[8]    Adv. D.I. 29.

relief requested.[9]  On June 20, 2025, Rouhana and Newmark filed
Motions to Dismiss the FAC as to them for failure to plead
adequately under Rules 8 and 9 and for failure to state a claim
under Rule 12(b)(6).[10]  On July 7, 2025, the Plaintiffs filed
their response.[11]  Rouhana and Newmark filed replies on July 14,
2025.[12]  The Motions are now ripe for decision.


II.  <u>FACTUAL ALLEGATIONS</u>

   The Plaintiffs' FAC asserts claims for fraud, conversion,
failure to pay wages, violation of various sections of the
California Labor Code, and a violation of the Fair Labor
Standards Act ("FLSA").  Essentially, the Plaintiffs allege that
as the Debtor began to develop liquidity issues, the Defendants
failed to timely and accurately pay employee wages, failed to
reimburse employee expenses, made unauthorized deductions from
employee pay, failed to provide promised employee benefits, made
misrepresentations to employees about their health insurance

---

[9]    Adv. D.I. 30.

[10]    Adv. D.I. 35, 37.  Rules 8, 9, and 12(b)(6) of the Federal
Rules of Civil Procedure are incorporated by the Federal Rules of
Bankruptcy Procedure.  Therefore, citations herein are to the
Federal Rules of Civil Procedure.

[11]    Adv. D.I. 43, 44.

[12]    Adv. D.I. 47, 48.

coverage, and failed to maintain accurate employee records.[13]

III. <u>JURISDICTION</u>

The Bankruptcy Court has subject matter jurisdiction over all "proceedings arising under title 11 or arising in or related to a case under title 11."[14]  The Court has "related to" jurisdiction over this adversary proceeding, which asserts claims based on non-core state and federal labor laws and common law fraud and conversion.  The Plaintiffs consent to the entry of a final order or judgment by the Court.[15]  Although Rouhana and Newmark do not consent to the entry of a final order,[16] it is not necessary for the Court to decide that issue at this time.  Even if the Court does not have constitutional authority to enter a final order, the Court does have the authority to enter orders on preliminary matters to the extent they do not constitute a final adjudication.[17]

---

[13]    Adv. D.I. 30 ¶ 65.

[14]    28 U.S.C. §§ 157(a), 157(b)(1) & 1334(b).

[15]    Adv. D.I. 1 ¶ 15.

[16]    Adv. D.I. 35 at 2, 37 at 2.

[17]    <u>See</u> <u>O'Toole v. McTaggart (In re Trinsum Grp., Inc.)</u>, 467 B.R. 734, 738 (Bankr. S.D.N.Y. 2012) (holding that "both before and after <u>Stern v. Marshall</u>, it is clear that the bankruptcy court may handle all pretrial proceedings, including the entry of an interlocutory order dismissing fewer than all of the claims in an adversary complaint.") (citations omitted).  <u>See also</u> <u>Borelli v. City of Reading</u>, 532 F.2d 950, 951-52 (3d Cir. 1976)

IV.   <u>DISCUSSION</u>

    A.   <u>Standard of Review</u>

       1.   <u>Rule 12(b)(6)</u>

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."[18]  Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[19]  When a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of [their] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[20]  Two "working principles" underlie this pleading standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining

---

("Generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.").

[18]    Fed. R. Civ. P. 12(b)(6).

[19]    Fed. R. Civ. P. 8(a)(2).

[20]    <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).

whether a complaint states a plausible claim for relief
will, as the Court of Appeals observed, be a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense.[21]

Under this standard, a complaint must nudge claims "across the
line from conceivable to plausible."[22]  The movant carries the
burden of showing that dismissal is appropriate.[23]

Interpreting this pleading standard, the Third Circuit
instructs courts to follow a multi-step analysis.  "First, the
court must 'tak[e] note of the elements a plaintiff must plead to
state a claim.'"[24]  Second, the court must separate the factual
and legal elements of the claim, accepting all of the complaint's
well-pleaded facts as true and disregarding any legal
conclusions.[25]  Third, the court must determine whether the facts
alleged in the complaint are sufficient to show that the
plaintiff has a plausible claim for relief.[26]  After conducting
this analysis, the court may conclude that "[a] claim has facial

---

[21]   Iqbal, 556 U.S. at 678-79 (citations omitted).

[22]   Twombly, 550 U.S. at 570.

[23]   Paul v. Intel Corp. (In re Intel Corp. Microprocessor
Antitrust Litig.), 496 F. Supp. 2d 404, 408 (D. Del. 2007).

[24]   Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir.
2010) (quoting Iqbal, 556 U.S. at 675).

[25]   Santiago, 629 F.3d at 130. See also Fowler v. UPMC
Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 556
U.S. at 679).

[26]   Santiago, 629 F.3d at 130.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27]

2.  Rule 9(b)

In addition, there is a heightened pleading standard for allegations of fraud under Rule 9(b), which provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.[28]

Rule 9(b) requires that plaintiffs plead the "who, what, where, when, how, and why" when alleging fraud.[29]  The Third Circuit has stated that the purpose of Rule 9(b) is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."[30]

B.  Arguments

In their Motions to Dismiss, Rouhana and Newmark argue that the FAC fails to state a claim against them because it lumps all

---

[27]  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

[28]  Fed. R. Civ. P. 9(b).

[29]  See Gerbitz v. ING Bank, FSB, 967 F. Supp. 2d 1072, 1078 (D. Del. 2013).  But see Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984) ("Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.").

[30]  Seville Indus., 742 F.2d at 791.

the Defendants together and casts allegations at them

collectively, rather than identifying what each Defendant did

that was improper.[31]  They argue that such "group pleadings" are

insufficient to state a claim for individual liability against

them.[32]

The Plaintiffs argue that the Motions to Dismiss fail

because the allegations in the FAC all pertain to Rouhana and

Newmark.  The Plaintiffs point to factual allegations in the FAC

that do allege specific conduct by Rouhana[33] and by Newmark.[34]

They contend that those allegations and the more general

allegations regarding actions by all Defendants (which they

---

[31]    See, e.g., Adv. D.I. 30 ¶¶ 45-59, 76-80.

[32]    See, e.g., Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th
Cir. 2007) (holding that "Rule 9(b) does not allow a complaint to
merely lump multiple defendants together but requires plaintiffs
to differentiate their allegations . . . and inform each
defendant separately of the allegations surrounding his alleged
participation in the fraud") (internal quotations omitted); Hawk
Mountain LLC v. Mirra, Civ. No. 13-2083, 2016 WL 3182778, at *16
(D. Del. June 3, 2016), report and recommendation adopted, Civ.
No. 13-2083, 2016 WL 4541032 (D. Del. Aug. 31, 2016) (same);
Burtch v. Zachem (In re TZEW Holdco LLC), Adv. Proc. No.
22-50255, 2023 WL 6140247, at *3 (Bankr. D. Del. 2023)
(recognizing that lumping defendants together "without supplying
specific facts as to each defendant's wrongdoing" is grounds to
dismiss for failure to state a claim).

[33]    See, e.g., Adv. D.I. 30 ¶¶ 21-22 (alleging that as an
officer Rouhana was responsible for violations of the state and
federal labor statutes), ¶ 56 (alleging that Rouhana recommended
that employees avoid using non-emergency medical services).

[34]    See, e.g., id. ¶ 23 (alleging that as an officer Newmark was
responsible for violations of the state and federal labor
statutes).

contend apply to Rouhana and Newmark specifically) are
sufficiently detailed to support their claims against Rouhana and
Newmark.

The Court disagrees with the Plaintiffs.  The FAC largely
alleges that the Defendants collectively acted to deduct amounts
from employees' wages but failed to remit them to pay for health
benefits or contributions to 401(k) and HSA plans.[35]  Those
allegations fail to state with any detail the specific actions
Rouhana or Newmark took with respect to those deductions or
services, with only one exception.  In paragraph 56, it is
alleged that Rouhana recommended that employees avoid using non-
emergency medical services.[36]  The Court concludes, however, that
this allegation alone is insufficient to state a claim for fraud
against Rouhana.

Similarly, the other allegations of the FAC contain no
specifics of any actions Rouhana or Newmark took, as opposed to
the other Defendants, that were fraudulent.[37]  Because the FAC

---

[35]    See, e.g., id. ¶¶ 51-54 (alleging that Defendants continued
to deduct amounts from employees' wages for nonexistent health
benefits), ¶ 58 (alleging that the Defendants continued to deduct
401(k) and HSA funds from employees' wages but failed to remit
them).

[36]    Id. ¶ 56.

[37]    See, e.g., id. ¶ 9 ("Plaintiffs are informed and believe
that at all times material hereto, each of the Defendants named
herein was the agent, employee, alter ego and/or joint venturer
of, or working in concert with each of the other Co-Defendants. .
. . To the extent said acts, conduct, and omissions were

fails to differentiate the specific actions taken or the capacity in which the individual Defendants were acting, the Court finds that it is impossible for Rouhana and Newmark to know what allegations apply to them.[38]  Such general "group pleadings" are insufficient to state a claim against Rouhana or Newmark.[39]

Further, the FAC alleges only generally in an introductory

---

perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting Defendants"), ¶ 11 ("At all times herein mentioned, the acts and omissions of the Defendants contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.  At all times herein mentioned, each Defendant ratified each and every act or omission alleged below.  At all times herein mentioned, each Defendant aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages as herein alleged.").

[38]    See, e.g., Swartz, 476 F.3d at 764-65 (holding that Rule 9(b) does not allow a complaint to assert broad allegations against multiple defendants without informing each defendant of the alleged actions it took in furtherance of the fraud); Hawk Mountain, 2016 WL 3182778, at *16 (holding that a pleading that fails to differentiate precisely the alleged conduct of each defendant in a forgery ring constitutes an improper group pleading pursuant to Rule 9(b)); Burtch v. Zachem, 2023 WL 6140247, at *3 (holding that group pleadings fail to meet the pleading standards of Rules 8(a)(2) and 12(b)(6) because it "forc[es] both the Defendants and the Court to guess who did what to whom and when.  Such speculation is anathema to contemporary pleading standards.") (citing Baldeo v. City of Paterson, No. 18-5359, 2019 WL 277600, at *4 (D.N.J. Jan. 18, 2019)).

[39]    See Agudelo v. Recovo Mortg. Mgmt. LLC, 22-cv-4004, 2025 WL 1674486, at *9 (E.D.N.Y. June 13, 2025) ("It is well-settled that Rule 8(a)(2) 'is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it.'") (citation omitted).

paragraph that the Defendants were engaged in a Ponzi scheme.[40] However, the FAC makes no additional factual or legal assertions that would support a claim that Rouhana or Newmark were operating a Ponzi scheme. A Ponzi scheme is a specific type of fraud where earlier investors are paid, not from the profits of any legitimate business but from funds paid in by later investors.[41] There are no such allegations in the FAC and a bald allegation that the Defendants were running a Ponzi scheme is insufficient.

With respect to the claims for violations of the FLSA and California labor laws, the Plaintiffs allege that Rouhana and Newmark are liable for the Debtor's failure to pay employees' wages and benefits by virtue of their status as officers and directors of the Debtor.[42] However, Plaintiffs admit in the FAC that officers and directors can be held liable under the FLSA and California Labor Code only if they "are actively involved in the decision-making/operational control that leads to those violations."[43]

---

[40]   Adv. D.I. ¶ 2.

[41]   In re Bernard L. Madoff Investment Securities LLC, 12 F.4th 171, 179 (2d Cir. 2021); In re Bonham, 229 F.3d 750, 759 n. 1 (9th Cir. 2000).

[42]   Adv. D.I. 30 ¶¶ 21-23.

[43]   See, e.g., id. ¶ 21 ("Essentially, corporate officers, directors, and managing agents can be held personally liable for FLSA violations if they are actively involved in the decision-making/operational control that leads to those violations.") (emphasis added).

Under California law, something beyond merely being an officer or director is necessary to state a claim for violation of the California Labor Code.

> [I]n order to 'cause' a violation of the Labor Code, an individual must have engaged in some affirmative action beyond his or her status as an owner, officer or director of the corporation. However, that does not necessarily mean the individual must have had involvement in the day-to-day operations of the company, nor is it required the individual authored the challenged employment policies or specifically approved their implementation. But to be held personally liable he or she must have had some oversight of the company's operations or some influence on corporate policy that resulted in Labor Code violations.[44]

The Plaintiffs contend that they have met the pleading standards under the FLSA and the California Labor Code with the allegations of the FAC.

The Court disagrees. Many of the allegations are merely assertions of legal theories and statutory liability[45] which the Court must disregard at this stage.[46] For example, in support of their claims against Rouhana and Newmark for violation of the FLSA and California Labor Code, the Plaintiffs simply state that

---

[44]  Espinoza v. Hepta Run, Inc., 74 Cal. App. 5th 44, 59 (Cal. Ct. App. 2022).

[45]  See, e.g., Cal. Lab. Code § 558.1 ("Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.") (emphasis added).

[46]  Santiago, 629 F.3d at 130; Fowler, 578 F.3d at 210-11.

they "are further informed and believe that Defendant Rouhana
[Newmark] had a direct and/or active role that caused the legal
violations alleged herein, including but not limited to: the
unauthorized withdrawals from employees' pay for benefits that
were not received; unpaid wages, bonuses, and/or commissions;
and/or other losses to employees."[47]  Such bare bones conclusory
allegations that Rouhana and Newmark had a direct or active role
are insufficient to state a plausible claim for relief.  Instead,
the Plaintiffs must provide the factual foundation for those
claims in the FAC.

The FAC also raises temporal issues as to Count VIII:
Failure to Pay Wages at Time of Termination (California Labor
Code §§ 201-203).[48]  The FAC does not specify when the employees
were terminated by the Debtor or that Rouhana and Newmark were in
control of the Debtor at that time.[49]  Therefore, the Court
cannot conclude that the Plaintiffs have pleaded sufficient
"factual content that allows the court to draw the reasonable
inference that the defendant[s] [are] liable for the misconduct
alleged."[50]

---

[47]   Adv. D.I. 30 ¶¶ 22-23.

[48]   Id. ¶¶ 112-15.

[49]   See, e.g., id. ¶ 61 (alleging that Rouhana stepped down as
CEO of the Debtor in June 2024).

[50]   Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

14

For the reasons stated above, the Court will grant the Motions to Dismiss filed by Rouhana and Newmark.

### C.    Leave to Amend

In their response to the Motions to Dismiss, the Plaintiffs request leave to amend if the Court grants the Motions.  Under Rule 15, leave to amend "shall be freely given when justice so requires."[51]  "The Third Circuit has adopted a liberal approach to the amendment of pleadings"[52] with a goal of resolving matters on their merits, not on technicalities.  While the Plaintiffs have previously amended their complaint, they have not done so to address substantive deficiencies.  Therefore, the Court will grant them leave to amend to do so now.

### V.    CONCLUSION

For the foregoing reasons, the Court will grant the Defendants' Motions to Dismiss without prejudice.  The Plaintiffs are granted leave to file a second amended complaint within 30 days.

An appropriate Order is attached.

---

[51]    OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.), 325 B.R. 696, 699 (Bankr. D. Del. 2005) (quoting Fed. R. Civ. P. 15).

[52]    Arneault v. Diamondhead Casino Corp., 277 F. Supp. 3d 671, 674 (D. Del. 2017); Burtch v. Zachem, 2023 WL 6140247, at *4.

15

Dated: December 9, 2025                    BY THE COURT:

_____
Mary F. Walrath
United States Bankruptcy Judge