**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| CSS ENTERTAINMENT INC. (f/k/a CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC.), *et al.,*[1] | Case No. 24-11442 (MFW) |
| | (Jointly Administered) |
| Debtors. | |
| BRIAN SKAJEM, LISA PAPATZIMAS, ERIN TUTTLE, DAVID ELLENDER, DARA COHEN, MATT LOZE, JESSICA STOECKELER, HEATHER BUNDY, CAREY CAMPBELL, KELLY BURKE HOPKINS, COURTNEY SMITH, on behalf of themselves and behalf of all others similarly situated, | Adv. Pro. No. 24-50128 (MFW) |
| Plaintiffs, | |
| v. | |
| CSS ENTERTAINMENT INC. (f/k/a CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC.), REDBOX AUTOMATED RETAIL, LLC, WILLIAM J. ROUHANA, JR., AMY L. NEWMARK, JOHN T. YOUNG, ROBERT H. WARSHAUER, BART SCHWARTZ, and DOES 1-500, inclusive, | |
| Defendants. | |

**DEFENDANT AMY L. NEWMARK'S OPENING BRIEF
IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Counsel Listed on Next Page*

---

[1] Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

**WOMBLE BOND DICKINSON (US) LLP**
Donald J. Detweiler (DE Bar No. 3087)
1313 N. Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
Email: don.detweiler@wbd-us.com

Cathy A. Hinger (admitted *pro hac vice*)
Victoria A. Bruno (admitted *pro hac vice*)
2001 K Street, NW
Suite 400 South
Washington, DC 20006
Telephone: (202) 467-6900
Facsimile:  (202) 467-6910
Email: cathy.hinger@wbd-us.com
Email: victoria.bruno@wbd-us.com

*Counsel for Defendant Amy L. Newmark*
*And William J. Rouhana, Jr.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................... 1

NATURE AND STAGE OF THE PROCEEDING.......................................................... 3

      A.      The Chapter 11 Cases And Later Conversion To Chapter 7, And HPS's
            Failure To Fully Fund The DIP Financing Approved In The Chapter 11 Cases..... 3

      B.      The SAC Is Plaintiffs' Fourth Complaint. .......................................................... 5

      C.      The FAC Order................................................................................................... 6

STATEMENT OF FACTS ........................................................................................... 7

      A.      The Limited Allegations Regarding Plaintiffs. ................................................... 7

      B.      The Limited Allegations Regarding Ms. Newmark............................................. 7

      C.      The SAC Alleges The Same Eight Causes Of Action Against Ms. Newmark
            And Every Defendant. ........................................................................................ 8

ARGUMENT ............................................................................................................. 9

I.      Pleading Standards Under Rules 12(b)(6) and 9(b)................................................ 9

II.     Count I For Fraud Fails To State A Claim Under Rules 9(b) And 12(b)(6)........................ 9

III.    Count II For Conversion Fails To State A Claim Under Rule 12(b)(6). .......................... 10

IV.   Counts III Through VII Under The Labor Code Fail Under Rule 12(b)(6)...................... 10

      A.      Ms. Newmark Has No Personal Liability For Any Labor Code Violation. .......... 10

      B.      Count III Under Labor Code §§ 1194 And 1197 Fails To State A Claim. ............ 13

      C.      Count IV Under Labor Code § 204 Fails To State A Claim. ............................... 15

      D.      Count V Under Labor Code § 221 Fails To State A Claim................................... 16

      E.      Count VI Under Labor Code § 2802 Fails To State A Claim. .............................. 17

      F.      Count VII Under Labor Code § 226(a) Fails To State A Claim............................ 18

      G.     Claims Under Labor Code §§ 510 And 512 Fail To State Claims........................ 20

V.     Count IX Under The FLSA Fails To State A Claim.......................................................... 22

      A.      The SAC Fails To Plead Sufficient Facts To State An FLSA Violation................ 22

      B.      The SAC Fails To Plead Facts To Support An FLSA Collective Action. ............. 24

VI.   The Court Should Disallow Plaintiffs' Attempt To Pursue Their Claims As A Class....... 27

CONCLUSION.......................................................................................................... 30

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................. 20, 23

*Balascio v. Leitzke (In Re: Leitzke)*,
No. 13-12156, Adv. No. 14-50017, 2014 WL 3583706
(Bankr. D. Del. July 18, 2014) ........................................................ 18, 20, 23, 27

*Barajas v. Blue Diamond Growers Inc.*,
No. 1:20-CV-0679 JLT SKO, 2022 WL 1103841 (E.D. Cal. Apr. 13, 2022) ............. 16, 17, 22

*Boucher v. Shaw*,
572 F.3d 1087 (9th Cir. 2009) ............................................................................. 23

*Byrd v. Masonite Corp.*,
No. EDCV 16-35 JGB (KKx), 2016 WL 756523 (C.D. Cal. Feb. 25, 2016) ........................ 27

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) ............................................................................. 25

*Carter v. Rasier-CA, LLC*,
No. 17-cv-00003-HSG, 2017 WL 4098858 (N.D. Cal. Sept. 15, 2017),
*aff'd*, 724 F. App'x 586 (9th Cir. 2018) ............................................................. 11

*Cook v. Land O'Lakes, Inc.*,
No. 1:20-CV-00553-NONE-SAB, 2020 WL 5633045 (E.D. Cal. Sept. 21, 2020) .......... 14, 21

*Cordell v. PICC Lines Plus LLC*,
No. 16-cv-01814-TEH, 2016 WL 4702654 (N.D. Cal. Sept. 8, 2016) ................................. 16

*Fernandez v. Tox Corp.*,
677 F. Supp. 3d 1089 (C.D. Cal. 2023) ................................................................ 26

*Harding v. Time Warner, Inc.*,
No. 09cv1212-WQH-WMc, 2010 WL 457690 (S.D. Cal. Jan. 26, 2010) .............................. 25

*Hassell v. Uber Technologies, Inc.*,
No. 20-cv-04062-PJH, 2020 WL 7173218 (N.D. Cal. Dec. 7, 2020) .................................... 18

*Heath v. Google Inc.*,
215 F. Supp. 3d 844 (N.D. Cal. 2016) .................................................................... 25

*Hill v. Pacific Maritime Assoc.*,
No. 24-cv-00336-JSC, 2025 WL 1282628 (N.D. Cal. May 2, 2025) .............................. 19, 20

*In re Chaparral Energy, Inc.*,
No. 16-11144 (LSS), 2018 WL 818309 (Bankr. D. Del. Feb. 9, 2018) ................................. 27

*In re Circuit City Stores, Inc.*,
No. 08–35653, 2010 WL 2208014 (Bankr. E.D. Va. May 28, 2010) .................................... 29

*In re Ephedra Prods. Liab. Litig.*,
329 B.R. 1 (S.D.N.Y. 2005) ................................................................................. 29

*In re Musicland Holding Corp.*,
362 B.R. 644 (Bankr. S.D.N.Y. 2007)................................................................... 27, 28, 29, 30

*In re Oakwood Homes Corp.*,
325 B.R. 696 (Bankr. D. Del. 2005) ............................................................................... 30

*In re OSC 1 Liquidating Corp.*,
529 B.R. 825 (Bankr. D. Del. 2015) ............................................................................... 9

*In re Sacred Heart Hosp. of Norristown*,
177 B.R. 16 (Bankr. E.D. Pa. 1995)........................................................................... 28, 29

*Landers v. Quality Commc'ns, Inc.*,
771 F.3d 638 (9th Cir. 2014) ...................................................... 14, 20, 21, 22, 25

*Litty v. Merrill Lynch & Co.*,
No. CV 14-0425 PA (PJWx), 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015)......................... 26

*Lowenthal v. Quicklegal, Inc.*,
No. 16-cv-03237-LB, 2016 WL 5462499 (N.D. Cal. Sept. 28, 2016)................................. 23

*Martinez v. Combs*,
49 Cal. 4th 35 (2010) ...................................................................... 12, 13, 17

*Mendez v. H.J. Heinz Co., L.P.*,
No. CV 12-5652-GHK (DTBx), 2012 WL 12888526 (C.D. Cal. Nov. 13, 2012)...... 24, 26, 27

*Moreno v. Zuckerman Family Farms, Inc.*,
No. 2:25-cv-01574-CKD, 2026 WL 323088 (E.D. Cal. Feb. 6, 2026).................................. 13

*Perez v. DNC Parks & Resorts at Sequoia*,
No. 1:19-cv-00484 DAD-SAB, 2020 WL 4344911 (E.D. Cal. July 29, 2020) ...................... 22

*Phillipps v. Pac. Maritime Assoc.*,
No. 25-cv-03241-JST, 2025 WL 1726404 (N.D. Cal. June 20, 2025).................................. 13

*Reyes v. Five Diamond Cold Storage, Inc.*,
No. 1:24-cv-00028-JLT-SAB, 2024 WL 3011123 (E.D. Cal. June 11, 2024),
*report and recommendation adopted*, 2024 WL 3252911
(E.D. Cal. July 1, 2024) ................................................. 11, 13, 14, 20, 21

*Rios v. Linn Star Transfer, Inc.*,
No. 19-cv-07009-JSC, 2020 WL 1677338 (N.D. Cal. Apr. 6, 2020)......................... 12, 15, 16

*Roush v. MSI Inventory Serv. Corp.*,
No. 2:17-CV-1010-JAM-KJN, 2018 WL 3637066 (E.D. Cal. July 30, 2018) ................. 11, 12

*Russell v. Wells Fargo & Co.*,
No. 07-CV-3993-CW, 2008 WL 4104212 (N.D. Cal. Sept. 3, 2008) ................................... 25

*Russo v. Fed. Med. Servs., Inc.*,
744 F. Supp. 3d 914 (N.D. Cal. 2024) ........................................................... 11, 12

*Scott v. Cintas Corp.*,
No. 3:23-cv-05764-JSC, 2024 WL 1421277 (N.D Cal. Apr. 2, 2024)................................... 22

*See's Candy Shops, Inc. v. Super. Ct.*,
   210 Cal. App. 4th 889 (2012)................................................................................. 15

*Shann v. Durham Sch. Servs., L.P.*,
   182 F. Supp. 3d 1044 (C.D. Cal. 2016).................................................... 24, 25, 26

*Skajem, et al. v. Chicken Soup for the Soul Entertainment, Inc., et al.*,
   Case No. 24STCV18214 (Cal. Super. Ct., Los Angeles Co.) ............................. 5, 28

*Usher v. White*,
   64 Cal. App. 5th 883 (2021)................................................................................. 11

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................ 9

*Voris v. Lampert*,
   7 Cal 5th 1141 (2019) ................................................................................... 2, 10

**STATUTES**

29 U.S.C. § 201 ..................................................................................................... 22

29 U.S.C. § 206 ..................................................................................................... 22

29 U.S.C. § 207 ..................................................................................................... 22

Cal. Lab. Code § 1194 ........................................................................ 8, 13, 15, 22

Cal. Lab. Code § 1197 ........................................................................ 8, 13, 15, 22

Cal. Lab. Code § 201 ............................................................................................ 16

Cal. Lab. Code § 204 ................................................................................... 8, 15, 16

Cal. Lab. Code § 221 ................................................................................... 9, 16, 17

Cal. Lab. Code § 226(a) ........................................................................ 9, 18, 19, 20

Cal. Lab. Code § 226(e) ........................................................................................ 19

Cal. Lab. Code § 226(e)(2)(B) .............................................................................. 19

Cal. Lab. Code § 2802 ................................................................................. 9, 17, 18

Cal. Lab. Code § 2802(a) ...................................................................................... 17

Cal. Lab. Code § 510 ................................................................................. 20, 21, 22

Cal. Lab. Code § 512 ................................................................................. 20, 21, 22

Cal. Lab. Code § 558.1 ........................................... 11, 12, 15, 16, 18, 20, 21, 22

Cal. Lab. Code § 558.1(a) ............................................................................... 11, 15

California Business and Professions Code § 17200 .............................................. 22

**RULES**

Fed. R. Bankr. P. 7012(b).........................................................................................1

Fed. R. Bankr. P. 7023 .......................................................................................... 27

Fed. R. Bankr. P. 7009 ................................................................................................................. 1

Fed. R. Bankr. P. 9014 .............................................................................................................. 27

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1, 2, 9, 10

Fed. R. Civ. P. 23.......................................................................................................... 27, 28, 29

Fed. R. Civ. P. 8(a)(2) ................................................................................................................. 6

Fed. R. Civ. P. 9(b) ......................................................................................................... 1, 2, 6, 9

**PRELIMINARY STATEMENT**

This is individual Defendant, Amy L. Newmark's ("Ms. Newmark"), Opening Brief in Support of Motion to Dismiss (the "Motion," Adv. 98)[2] the Second Amended Complaint (the "SAC," Adv. 95). The SAC follows this Court's December 9, 2025 Order granting Ms. Newmark's prior motion to dismiss the First Amended Complaint ("FAC") (the "FAC Order," Adv. 89), but giving Plaintiffs one more chance to amend. But the SAC failed to heed the FAC Order. Rather, the SAC makes immaterial word edits, adds allegations about the procedural history of the Debtors' downfall and the events that transpired upon filing of this bankruptcy, and adds substantial new allegations about the Strategic Review Committee co-defendants; but it is bereft of any new facts concerning Ms. Newmark, and perpetuates the group pleading deficiencies that the FAC Order found impermissible. The SAC fails to allege Ms. Newmark had any operational authority or control over Debtor Chicken Soup for the Soul Entertainment, Inc. ("CSSE") or its employees (because she did not), nor does it allege she had anything to do with Plaintiffs' claims – only that she was a CSSE Board member, a senior brand advisor to CSSE and William Rouhana's wife. Such scant allegations are inadequate to state any plausible claims against her. Thus, the Court should dismiss all claims against Ms. Newmark with prejudice pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), applicable to this adversary proceeding ("Adversary Proceeding"), pursuant to Fed. R. Bankr. P. 7012(b), ("Rule 12(b)(6)"), for failure to state any claim upon which relief may be granted or to plead fraud with particularity.

More specifically, Plaintiffs' claims against Ms. Newmark fail for the following reasons:

Count I (Fraud) should be dismissed as to Ms. Newmark under Rule 12(b)(6) for failure to meet Plaintiffs' heightened pleading burden.[3] Despite the FAC Order's recognition that, "Rule

---

[2] As used herein, "Adv." refers to the docket index entries in this Adversary Proceeding.
[3] *See* Fed. R. Civ. P. 9(b), applicable to this Adversary Proceeding pursuant to Fed. R. Bankr. P. 7009, ("Rule 9(b)").

1

9(b) requires that plaintiffs plead the "who, what, where, when, how, and why; when alleging fraud," and finding Plaintiffs previously failed to do so as to Ms. Newmark, the SAC does not bother to cure these patent deficiencies. Specifically, the SAC does not allege any (i) particularized facts showing Ms. Newmark made any statements at all, much less false statements of material fact, or (ii) particularized facts satisfying any of the other elements of fraud. (Adv. 89 at 8.)

Count II (Conversion) should be dismissed as to Ms. Newmark under Rule 12(b)(6) because, as shown by Ms. Newmark's motion to dismiss the FAC, California law does not recognize such a claim for nonpayment of wages. It is astonishing that Plaintiffs had the temerity to plead this claim again given Ms. Newmark's previous showing that *Voris v. Lampert*, 7 Cal 5th 1141, 1145, 1162-63 (2019), expressly rejected the availability of conversion claims in wage claim actions.

Counts III through VII (California Labor Code, the "Labor Code"), also fail for the same reasons they failed in the FAC because (i) Plaintiffs fail to allege any facts showing Ms. Newmark took any affirmative action resulting in a Labor Code violation under the other sections asserted to hold her personally liable or that she qualifies as an "employer" responsible for any alleged Labor Code violation, and (ii) Plaintiffs fail to allege sufficient facts to state a plausible claim for wage or hour violations.[4]

Count IX (Fair Labor Standards Act, the "FLSA"), which alleges claims under the FLSA, similarly fail for the same reasons it did in the FAC because: (i) the claims are derivative of Plaintiffs' other inadequately plead minimum wage and overtime claims; (ii) Plaintiffs fail to allege any facts showing Ms. Newmark qualifies as an "employer" under the FLSA as necessary to hold her personally liable; and (iii) Plaintiffs fail to adequately allege that they were subject to any

---

[4] Count VIII is not plead against Ms. Newmark.

common illegal policy or practice with respect to wages or that they were similarly situated to all employees they seek to represent, which are necessary elements of an FLSA collective action.

Finally, as explained previously, if any of Plaintiffs' poorly plead claims were to survive dismissal, which they should not, the Court, in its discretion, should disallow the class proof of claim. No class was certified prior to the commencement of the underlying bankruptcy cases. More importantly, certification of a class is unnecessary and will adversely affect the orderly administration of Debtors' bankruptcy cases and the bankruptcy estates.

In sum, the SAC, like the FAC, is woefully inadequate and fails to state a plausible claim for relief against Ms. Newmark. Indeed, despite the clear and uncontroverted pleading standards identified in the FAC Order, the Plaintiffs simply have no facts nor do they allege any, plausibly connecting Ms. Newmark to any employee wage, benefit, or healthcare claim alleged in the SAC. Plaintiffs' allegations against Ms. Newmark are without any basis in fact or law, and smack of bad faith and harassment. Accordingly, the Court should dismiss all claims against Ms. Newmark with prejudice, without leave to amend.

## **NATURE AND STAGE OF THE PROCEEDING**

**A.**     **The Chapter 11 Cases And Later Conversion To Chapter 7, And HPS's Failure To Fully Fund The DIP Financing Approved In The Chapter 11 Cases.**

On June 28, 2024 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in this Court. (D.I. 1.) On July 10, 2024, the chapter 11 bankruptcy cases were converted to chapter 7 cases. (D.I. 120.)[5] George Miller has been duly appointed as the trustee of the chapter 7 Debtors. (D.I. 130.)

On the Petition Date, Debtors moved for orders authorizing and allowing Debtors to pay pre- and post-petition employee wages and benefits. (D.I. 3 ("Workforce Motion".)) As

---

[5] As used herein, "D.I." refers to the docket index entries in the related bankruptcy cases, Case No. 24-11442 (MFW).

3

Mr. Rouhana, Debtors' then-Chairman of the Board, attested to in his supporting Declaration, Debtors entered bankruptcy with the desire to continue operating under "the protections and 'breathing room' that chapter 11 is intended to provide." (D.I. 7 ¶ 33.)  But, Mr. Rouhana resigned as CEO as of June 28, 2024.  (SAC ¶ 107.)  Co-Defendant Bart Schwartz replaced him as CEO, and was appointed to CSSE's Board on June 28, 2024.  (D.I. 7 ¶ 10; SAC ¶ 107.)  As part of Debtors' restructuring strategy, Mr. Rouhana arranged for up to $20.0 million in Debtor in Possession ("DIP") financing.  (D.I. 7 ¶ 34.)  The financing was to be used, in part, to pay employee wages and benefits.  (*Id.* ¶ 33.)

Debtors entered bankruptcy as the result of Debtors' senior secured lender, HPS Investment Partners, LLC's ("HPS"), ongoing failure to honor and perform its funding obligations and commitments to Debtors under that certain August 11, 2022 Amended and Restated Credit Agreement (the "Credit Agreement") by and among Debtors and HPS.  (*Id*. ¶¶ 19, 24-32; SAC ¶ 60.)  The parties entered into the Credit Agreement as part of the Redbox merger with and into CSSE.  (D.I. 7 ¶ 19.)  As part of the merger, CSSE and its subsidiaries assumed approximately $350 million of Redbox's secured debt with HPS.  (*Id.* ¶¶ 19, 23-30.)[6]

Post-petition, HPS refused to agree to Debtors' proposed $20.0 million DIP financing, insisted that it not only provide limited *interim* DIP financing, and required broad releases from Debtors, which, under the leadership of the "Strategic Review Committee" (the "SRC") (*i.e.*, Defendants Warshauer and Young[7]), they agreed to.  (*See generally* D.I. 7 ¶¶ 30-40; *see also* D.I. 28, 85.)  Capitalizing on the mounting pressure on payroll created by disputes over DIP financing, HPS wielded its power to get its way, and strongarmed Debtors into capitulating to a broad release

---

[6] HPS's failure to honor and perform its funding obligations under the Credit Agreement is detailed more fully in Mr. Rouhana's Objection to Trustee's Application to Retain Pachulski Stang Ziehl & Jones LLP ("PSZJ") (the "PSZJ Objection").  (*See* D.I. 283.)

[7] HPS had appointed Messrs. Warshauer and Young to the SRC pursuant to a forbearance agreement.  (*See* D.I. 283.)

4

and acquiescing in HPS's representations that it would provide $8 million in interim DIP financing (the "Interim DIP Financing").  (D.I. 75, 85.)  The Court approved the Interim DIP Financing, without hearing, on July 4, 2024.  (D.I. 85.)  Significantly, paragraph 1 of the Interim DIP Financing Order, specifically provided the funds be used for:

(i)     up to $3.5 million for past due payroll and payroll due on July 5, 2024;
(ii)    up to $2.85 million for payroll deductions; and
(iii)   up to $1.65 million for payments to Anthem for healthcare premiums

(*Id.* at 16; SAC ¶ 119.)  To the detriment of Debtors and its employees, on July 10, 2024, Debtors orally moved, at Messrs. Warshauer and Young's instruction, to convert the chapter 11 cases to chapter 7 cases.  (D.I. 120.)  At this point, HPS had only funded $3.5 million of the Interim DIP Financing, and then used the chapter 7 conversion as an excuse not to fund the balance.  The unfunded amounts were to be used to cover employee payroll deductions including 401(k) and Anthem healthcare premiums, the very type of claims the SAC asserts.  On or around July 9, 2024, Mr. Schwartz resigned.  (SAC ¶ 132.)

### B.   The SAC Is Plaintiffs' Fourth Complaint.

On July 19, 2024, Plaintiffs filed a class action claim in California state court against CSSE, Redbox, Mr. Rouhana, and Ms. Newmark without relief from the automatic stay.[8]  Plaintiffs never served Ms. Newmark and the case is stayed. (*See* n.8.)

On September 6, 2024, Plaintiffs filed their first class action complaint in this Court against CSSE, Redbox, Mr. Rouhana, Ms. Newmark, HPS, and Anthem.  (Adv. 1.)  Without explanation, Plaintiffs voluntarily dismissed HPS and Anthem without prejudice.  (Adv. 8, 15.)  No defendant filed a response to this complaint.

---

[8] *See Skajem, et al. v. Chicken Soup for the Soul Entertainment, Inc., et al.*, Case No. 24STCV18214 (Cal. Super. Ct., Los Angeles Co.).

On February 3, 2025, Plaintiffs moved for leave to file an amended complaint against CSSE, Redbox, Mr. Rouhana, Ms. Newmark, HPS, and Messrs. Young, Warshauer, and Schwartz. (Adv. 18, 18-2.)  On May 6, 2025, the Court granted leave to file an amended complaint to add only Messrs. Young, Warshauer, and Schwartz, but not HPS.  (Adv.  29.)  Plaintiffs then filed the FAC on May 8, 2025.  (Adv. 30.) Ms. Newmark and Mr. Rouhana filed motions to dismiss the FAC on June 20, 2025 (Adv. 38, 43), which the Court granted in the FAC Order on December 9, 2025 (Adv. 89-90).  The SAC followed on January 8, 2026.  (Adv. 95.)

### C.    The FAC Order.

The FAC Order recognizes that to state a claim under Rule 8(a)(2), the plaintiff's obligation to provide the grounds of their entitlement to relief, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . ." (Adv. 89 at 6.)  The FAC Order also recognizes that with respect to Plaintiffs' attempt to plead fraud claims, Rule 9(b) requires plaintiffs to allege, "with particularity the circumstances constituting the fraud," which requires pleading the "who, what, where, when, how, and why" of the fraud to put defendants on notice of the "precise misconduct with which they are charged and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  (*Id*. at 8.)

Applying these standards, the FAC Order found the FAC failed to state, "with any detail the specific actions Rouhana or Newmark took" with respect to deductions taken from the employees' wages, and that other allegations contained "no specifics of any actions Rouhana or Newmark took, as opposed to other Defendants, that were fraudulent."  (*Id*. at 10.)  This Court made clear that such, "group pleading" is insufficient to state claims against individuals.

With respect to claims for violations of the FLSA and California labor laws, the Court found officers or directors could only be held liable for such claims if they were "actively involved

6

in the decision-making/operational control" that led to the violation. (*Id*. at 12.)  The Court found the FAC's allegations on these points were "bare bones" and conclusory, having no factual allegations to show either Mr. Rouhana or Ms. Newmark "had a direct or active role." (*Id*. at 14.) For these and other reasons stated in the FAC Order, the Court dismissed the FAC.

**STATEMENT OF FACTS**

**A.     The Limited Allegations Regarding Plaintiffs.**

Plaintiffs allege they are former employees of "the Company and/or Debtors." (SAC ¶ 16). However, the SAC does not identify Plaintiffs' job titles, job duties, where they lived or worked, to whom they reported, whether they were hourly or salaried, whether they were exempt or non-exempt, whether they were full- or part-time, what hours they worked, whether they were required to work overtime, what their rate of pay was, whether their job duties required incurring reimbursable expenses, whether they participated in any employee benefit programs, whether they contributed to any such employee benefit programs, the nature or amount of any individual losses they suffered or when, or whether they were employed as of the time of the Petition. *See generally id*.   Instead, Plaintiffs broadly and vaguely allege they are "informed and believe" that "Defendants" engaged in a "scheme" to not pay wages, commissions, paid time off and/or non-discretionary bonuses, deduct wages for health and life insurance without maintaining that coverage, misrepresent that such benefits were still active, and stop contributing to 401(k) and/or HSA plans while still deducting wages in connection with these plans. (*Id*. ¶¶ 2-7.)  Plaintiffs do not allege a specific instance where any individual Plaintiff was not paid wages or other compensation, or had payroll deductions made for health coverage or other benefit plans.

**B.     The Limited Allegations Regarding Ms. Newmark.**

Plaintiffs allege they are "informed and believe" that Ms. Newmark was a director or an officer (though in reality she was not an officer), served as a brand advisor to CSSE, and is married

to Mr. Rouhana.  (*Id*. ¶¶ 19-20.)  Plaintiffs further allege, albeit generally, that Ms. Newmark, through her position as director, had "primary responsibility for the payment of employee wages and benefits" and "payroll administration functions." (*Id*. ¶¶ 140, 244.)  Tellingly, Plaintiffs fail to identify any plausible facts in support of their generic and cursory allegations against Ms. Newmark.  Nor do they offer any specifics as to why an alleged Board member of a publicly traded company, or its brand consultant, would be "primarily responsible" for payment of wages, benefits and payroll.  Indeed, the allegations asserted against Ms. Newmark in the SAC are made of whole cloth, conclusory, and suffer from the same group pleading deficiencies as the FAC.

**C.      The SAC Alleges The Same Eight Causes Of Action Against Ms. Newmark And Every Defendant.**

The SAC alleges the same eight causes of action against each Defendant:

- Count I seeks damages for common-law fraud, and alleges Plaintiffs "are informed and believe" that "Defendants concealed, omitted, and suppressed material facts about their intentions for employees to be covered for pre- and post-petition medical benefits and dental benefits, and receive wages, 401(k) contributions, reimbursements for work-related expenses and unreimbursed medical expenses, commissions, non-discretionary bonuses, and/or other fringe benefits," to "mislead and induce the employees into a false sense of security about their wages, health and dental insurance and benefits, 401(k) contributions, and other fringe benefits so that they would not leave CSSE or other Debtors' employ."  (*Id*. ¶¶ 137, 144.)

- Count II seeks damages for common-law conversion of wages, and alleges "Defendants" converted "unpaid wages for work performed."  (*Id*. ¶¶ 152, 160.)

- Count III seeks damages under the Labor Code §§ 1194 and 1197, regulating minimum and overtime wages, and alleges "Defendants failed and refused to pay . . . all wages, commissions, and/or non-discretionary bonuses and/or PTO due," including "overtime."  (*Id*. ¶¶ 163-165.)

- Count IV seeks penalties under Labor Code §§ 204 and 210, requiring semi-monthly wage payments, and alleges "[o]n information and belief, each Defendant failed and refused to pay . . . all timely wages due . . . twice a month."  (*Id*. ¶¶ 175, 177.)

- Count V seeks damages under Labor Code § 221, prohibiting collection of employee wages, and alleges "Defendants have deducted portions of wages" and, "[o]n information and belief, certain funds were deducted from . . . pay checks under the guise of deductions for medical and dental benefits, 401(k) contributions, tax obligations, and other fringe benefits."  (*Id*. ¶¶ 188-189.)

- Count VI seeks damages under Labor Code § 2802, requiring reimbursement of necessary, employment related expenses, and alleges "certain employees were entitled to reimbursements for certain work-related costs," and "made expenditures and incurred losses . . . resulting from Defendants' failure to reimburse or authorize reimbursement."  (*Id*. ¶¶ 199, 204.)

- Count VII seeks penalties under Labor Code § 226(a), requiring itemized wage statements, and alleges "Defendants . . . provided, or caused to be provided, inaccurate pay statements that reflected itemized deductions for medical benefits, 401(k) contributions, tax obligations, dental benefits, and other fringe benefits when such deducted funds were not remitted to the respective entities for such alleged purposes."  (*Id*. ¶ 214.)

- Count IX seeks damages under the FLSA, and alleges "Defendants" failed to pay "the required minimum wage" and "required overtime compensation."  (*Id*. ¶¶ 237-239.)  Plaintiffs also seek to bring their FLSA claims as a collective action.  (*Id*. ¶¶ 38-48.)

Significantly, the SAC fails to identify on whose behalf the claims are being asserted.  In places the SAC asserts they are brought on behalf of "all similarly situated persons who were employed by CSSE."  Yet it also asserts the plaintiff Class Members were employed by "the Company [and/or] Debtors."  The SAC does not specify which Company and/or Debtors the employee worked for and in which state, leaving it clear as mud as to which alleged employer employed which plaintiff class representative or plaintiff.  (*Id*. ¶¶ 11, 29.)

## ARGUMENT

### I.    Pleading Standards Under Rules 12(b)(6) and 9(b).

The applicable pleading standards are accurately reflected in the FAC Order, which Ms. Newmark relies upon herein.  (Adv. 89 at 6-8.)

### II.    Count I For Fraud Fails To State A Claim Under Rules 9(b) And 12(b)(6).

The Court should dismiss Count I, as the SAC fails to plead any particularized facts to state a fraud claim against Ms. Newmark.  To state a fraud claim, a plaintiff must allege: (1) a material misrepresentation or omission of fact; (2) made with knowledge of its falsity; (3) with intent to defraud; and (4) reasonable reliance; (5) that causes the plaintiff damage.  *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *In re OSC 1 Liquidating Corp.*, 529 B.R.

9

825, 832 (Bankr. D. Del. 2015). But the SAC does not allege a single statement made by Ms. Newmark to anyone, much less a false statement of material fact. Nor does the SAC attribute any alleged misrepresentations or omissions to Ms. Newmark. Additionally, Plaintiffs do not (and cannot) plead any facts showing how Ms. Newmark could have acted with an intent to deceive Plaintiffs into taking a particular action to their detriment when she is not alleged to have made any false statements or omissions in the first place. Nor does the SAC explain how any of these many Plaintiffs relied on the phantom misrepresentation or omission by Ms. Newmark in a way that resulted in damages to any one of them. Since the who, what, where, when, how and why of the supposed fraud by Ms. Newmark remain completely absent the Court should dismiss this specious claim with prejudice.

**III. <u>Count II For Conversion Fails To State A Claim Under Rule 12(b)(6).</u>**

Count II's theory of liability has also not changed: like the FAC, the SAC alleges that Plaintiffs "have an absolute, unconditional, and fully vested ownership right or possessive right to all their wages," and are entitled to damages for "Defendants' conversion of . . . unpaid wages for work performed." (SAC ¶¶ 152, 160.) But, the California Supreme Court has held that claims for common-law wage conversion are not cognizable. *See Voris*, 7 Cal 5th at 1145, 1162-63.[9]

**IV. <u>Counts III Through VII Under The Labor Code Fail Under Rule 12(b)(6).</u>**

    **A. Ms. Newmark Has No Personal Liability For Any Labor Code Violation.**

The SAC advances three theories for holding Ms. Newmark personally liable for alleged Labor Code violations, none of which is supported by well-pled facts that meet the applicable tests.

---

[9] The SAC does not allege what state's law applies to the common-law claims. While Ms. Newmark does not concede California law applies, given that the SAC largely concerns statutory claims under California law, Plaintiffs cannot credibly argue conversion was not pled under California law when they learned from Ms. Newmark's prior motion to dismiss that no such claim exists.

First, Counts III, VI, and VII allege Labor Code violations against Ms. Newmark pursuant to Labor Code § 558.1 based solely on her alleged status as a director or officer (though in reality she was not an officer). (*See* SAC ¶ 20.) That section extends liability to an "owner, director, officer . . ." who "violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802" of the Labor Code. Cal. Lab. Code § 558.1(a), (b); *see also Reyes v. Five Diamond Cold Storage, Inc.*, No. 1:24-cv-00028-JLT-SAB, 2024 WL 3011123, at *11 (E.D. Cal. June 11, 2024), *report and recommendation adopted*, 2024 WL 3252911 (E.D. Cal. July 1, 2024). The Court should dismiss these Counts because the SAC, like the FAC, fails to plead any facts showing Ms. Newmark *caused* any Labor Code violation.

Section 558.1 "does not enable courts to, in effect, pierce the corporate veil to hold corporate owners, shareholders, or other officers liable for wrongdoing committed by the employer corporation." *Roush v. MSI Inventory Serv. Corp.*, No. 2:17-CV-1010-JAM-KJN, 2018 WL 3637066, at *3 (E.D. Cal. July 30, 2018). Personal liability attaches only "if they themselves acted to violate or cause the violation of California's labor laws." *Id*.

As the FAC Order recognized (*see* Adv. 89 at 12), to "cause" a Labor Code violation, an individual must have engaged in some affirmative action beyond their status as an owner, director, or officer. *See Russo v. Fed. Med. Servs., Inc.*, 744 F. Supp. 3d 914, 920-21 (N.D. Cal. 2024). The individual must (1) have been directly involved in the alleged violation, or (2) have had sufficient participation in managing or overseeing the activities of those persons directly responsible for the alleged violation. *See Usher v. White*, 64 Cal. App. 5th 883, 896-97 (2021). Courts dismiss claims that do not allege individual wrongdoing. *See Carter v. Rasier-CA, LLC*, No. 17-cv-00003-HSG, 2017 WL 4098858, at *5 (N.D. Cal. Sept. 15, 2017), *aff'd*, 724 F. App'x 586 (9th Cir. 2018);

11

*Roush*, 2018 WL 3637066, at *3; *Rios v. Linn Star Transfer, Inc.*, No. 19-cv-07009-JSC, 2020 WL 1677338, at *6 (N.D. Cal. Apr. 6, 2020).

Count III alleges Ms. Newmark is liable under § 558.1 merely because of "her position on the Board," which is insufficient without additional factual allegations that she engaged in some affirmative action regarding employee wages. *See Russo*, 744 F. Supp. 3d at 920-21. The conclusory allegation that Ms. Newmark had "primary responsibility for the payment of wages and benefits" (SAC ¶ 168), does not plead the required additional facts showing what affirmative action she took that caused the alleged Labor Code violation. Counts VI and VII allege that "[a]ll individual Defendants in their positions . . . subject[s] each individual Defendant to personal liability under Cal. Lab. Code § 558.1." (*Id.* ¶ 208; *see also id.* ¶ 219.) In addition to the fact that the Court already ruled that this kind of unspecified group pleading fails to state a claim against Ms. Newmark, mere director status alone does not meet § 558.1's requirements for imposing personal liability. *See Russo*, 744 F. Supp. 3d at 920-21. In sum, the SAC is devoid of facts specifying what action Ms. Newmark took – beyond her alleged status as director or officer – that links her to any Labor Code violation to subject her to personal liability under § 558.1.

Second, Counts IV and V allege that "[e]ach Defendant" is personally liable under the California Industrial Welfare Commission's ("IWC") definition of "employer" because "each Defendant exercised control over the wages and hours of employees." (SAC ¶¶ 178, 192.) Plaintiffs' reliance on impermissible group pleading alone is grounds to dismiss Counts IV and V. Additionally, the SAC is devoid of any factual allegations sufficient to plead that Ms. Newmark meets the test for "exercising control" over any employee's wages or hours. *See Martinez v. Combs*, 49 Cal. 4th 35, 63 (2010) (defining "employer" under the IWC as one who "exercise[s] control over . . . wages, hours or working conditions"). To survive a motion to dismiss allegations

of personal liability based on the "exercise control" standard, a plaintiff must allege "facts in support of this legal conclusion." *Phillipps v. Pac. Maritime Assoc.*, No. 25-cv-03241-JST, 2025 WL 1726404, at *1 (N.D. Cal. June 20, 2025) (dismissing complaint with conclusory allegations that defendants "supervised" plaintiff without additional "factual content" specifying what control they had over plaintiff's working conditions); *Moreno v. Zuckerman Family Farms, Inc.*, No. 2:25-cv-01574-CKD, 2026 WL 323088, at * 3 (E.D. Cal. Feb. 6, 2026) (dismissing complaint because "naked assertions" that plaintiff was "subject to control of Defendants" and "performed under the supervision of Defendants" did not satisfy "exercise control" standard).  The SAC does not allege how Ms. Newmark had anything to do with setting employee wages, hours, or working conditions.

Third, to circumvent the rule that, even under the IWC definition of "employer," individual corporate agents acting *within* the scope of their agency do not qualify as "employers," *Martinez*, 231 P.3d at 279, Counts IV, V, and VII allege that Ms. Newmark "acted *outside* the scope of . . . [her] agency."  (SAC ¶¶ 180, 194, 217 (emphasis added).)  The Court should not accept this conclusory allegation as true because it lacks any factual support explaining what the scope of her agency as a director was, or how she acted outside of it as to any alleged Labor Code violation. The allegation is conclusory because it is pure speculation - as a CSSE Board Member, Ms. Newmark had nothing to do with any Debtors' employees' compensation and benefits.

### B.    Count III Under Labor Code §§ 1194 And 1197 Fails To State A Claim.

The Court should dismiss Count III because the SAC fails to plead sufficient facts to state a plausible claim under Labor Code §§ 1194 and 1997, which regulate overtime wages and minimum wages), or any basis on which to hold Ms. Newmark personally liable.

To state minimum or overtime wage claims under §§ 1194 and 1197, Plaintiffs must identify "'at least one workweek when [they] worked in excess of forty hours and [were] not paid for the excess hours in that workweek, or [were] not paid minimum wages.'"  *Reyes*, 2024 WL

13

3011123, at \*6 (quoting *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014) (holding that, post-*Iqbal*, conclusory allegations that merely recite the statutory requirements of wage-and-hour claims under the FLSA are inadequate to state a plausible claim)); *see also Cook v. Land O'Lakes, Inc.*, No. 1:20-CV-00553-NONE-SAB, 2020 WL 5633045, at \*8 (E.D. Cal. Sept. 21, 2020) (recognizing that *Landers* also applies to Labor Code claims), *report and recommendation adopted*, 2020 WL 5983346 (E.D. Cal. Oct. 8, 2020).

The SAC fails to allege any of the facts required under *Landers*.  Although within their knowledge, Plaintiffs do not identify any workweek in which **they** were paid less than the minimum wage or worked more than the maximum hours without being paid overtime.  *See Reyes*, 2024 WL 3011123, at \*6 (dismissing §§ 1194 and 1197 claims because plaintiff failed "to identify any workweek where she worked in excess of forty hours and was not paid for the excess hours in that workweek or was not paid minimum wages").  The SAC does not even allege whether any Plaintiff was an hourly employee, or any other facts from which the Court could infer what hours any Plaintiff typically worked during a workweek, their hourly wage rate, or an estimated amount of minimum and overtime wages owed.  *See id*.  The SAC's vague and conclusory allegations that "California Sub-Class plaintiffs were not routinely paid for all wages, commissions, and/or non-discretionary bonuses and/or PTO due," that "[e]ach" of them "was paid less than the minimum wage requires . . . for some or all of the hours worked," and that "[s]ome or all of [them] . . . were not paid by **Defendants** for the overtime hours worked" (SAC ¶¶ 163-165 (emphasis added)), do not state a plausible claim under *Landers* because they do not identify what constitutes "routine" and whether that represented an average workweek.  *Id*. at \*7 (collecting cases).

The SAC also contains no factual allegations specifying any action Ms. Newmark took, beyond her mere status as director, that links her to any alleged violations of §§ 1194 or 1197,

14

without which there is no basis to hold her personally liable under § 558.1.  (*See* § IV.A.)  The threadbare allegation that Ms. Newmark had "primary responsibility for the payment of wages and benefits" (SAC ¶ 168), does not adequately allege any direct involvement necessary to show that she caused any alleged §§ 1194 or 1197 violations.  (*See* § IV.A.)  Count III, thus, also fails to cure the group pleading defects on which the Court dismissed the FAC.  (*See* Adv. 89 at 8-11.)

C.      **Count IV Under Labor Code § 204 Fails To State A Claim.**

Plaintiffs cannot allege a plausible claim against Ms. Newmark under Labor Code § 204, which requires wage payments on a semi-monthly basis, because California does not recognize individual liability under this section.  *See Rios*, 2020 WL 1677338, at *3.  "By its plain terms," § 558.1, which extends liability for enumerated Labor Code violations to an individual who is an "owner, director, officer, or managing agent" "acting on behalf of an employer," does not incorporate, and thus, does not apply to, § 204.  *Id*. at *3-4 (citing § 558.1(a) (listing only "Sections 203, 226, 226.7, 1193.6, 1194, or 2802" as within its coverage)); *see also See's Candy Shops, Inc. v. Super. Ct*., 210 Cal. App. 4th 889, 904-05 (2012) ("[T]he sole purpose of [§ 204] is to require an *employer* of labor . . . to maintain two regular pay days each month.") (emphasis added).

Plaintiffs' vague, conclusory, and threadbare allegation that Ms. Newmark is liable as Plaintiffs' "employer" because "each **Defendant** exercised control over the wages and hours of employees" (SAC ¶ 178 (emphasis added)), and she was a "member[] of the Board" (*id*. ¶ 180), is legally and factually incorrect, should not be accepted as true because it contradicts the allegation that CSSE was the employer (SAC ¶ 174), and does not satisfy the "exercises control" test under the IWC definition of "employer."  (*See* § IV.A.)  The SAC's alternative theory of holding Ms. Newmark personally liable based on the equally vague, conclusory, and threadbare allegation that "each individual **Defendant** acted outside the scope of his or her agency" (SAC ¶ 179 (emphasis

15

added)), also fails for the reasons stated above. (*See* § IV.A.) Count IV, thus, also fails to cure the group pleading defects on which the Court dismissed the FAC. (*See* Adv. 89 at 8-11.)

The SAC also fails to allege even the most basic facts to state a plausible § 204 claim, although this information is within Plaintiffs' knowledge. For example, Plaintiffs do not allege how often they were paid (or not paid), or whether any of them was not paid on a semi-monthly basis at any time. *See Barajas v. Blue Diamond Growers Inc.*, No. 1:20-CV-0679 JLT SKO, 2022 WL 1103841, at *21 (E.D. Cal. Apr. 13, 2022) (dismissing § 204 because plaintiffs did not allege how frequently they received paychecks such that the court could assess whether plaintiffs plausibly alleged existence of a violation). The Court should dismiss Count IV with prejudice.[10]

### D.    Count V Under Labor Code § 221 Fails To State A Claim.

Plaintiffs cannot allege a plausible claim against Ms. Newmark under Labor Code § 221, prohibiting "any *employer* to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Cal. Lab. Code § 221 (emphasis added). There is no individual liability under § 221, which expressly extends liability only to "employer[s]." *Id*. Section 558.1 does not incorporate, and thus, does not apply to, § 221. *See* Cal. Lab. Code § 558.1 (listing only "Sections 203, 226, 226.7, 1193.6, 1194, or 2802" as within its coverage). *Accord Rios*, 2020 WL 1677338, at *3 (holding same as to §§ 201 and 204, which are limited only to "employers," not individual owners, directors, officers, or managing agents "acting on behalf of an employer" within the meaning of § 558.1); *Cordell v. PICC Lines Plus LLC*, No. 16-cv-01814-TEH, 2016 WL 4702654, at *8 (N.D. Cal. Sept. 8, 2016) (dismissing with prejudice § 201 claim against individual because it imposes liability only on "employers"). Plaintiffs' vague, conclusory, and threadbare allegation that Ms. Newmark is liable as Plaintiffs' "employer" because "each

---

[10] As Plaintiffs have failed to state a claim under Labor Code § 204, they are not entitled to recover penalties under Labor Code § 210.

***Defendant*** exercised control over the wages and hours of employees" (SAC ¶ 192 (emphasis added)), and she was a "member[] of the Board" (*id*. ¶ 194), is legally and factually incorrect, should not be accepted as true because it contradicts the allegation that CSSE was the employer (*id*. ¶ 187), and does not satisfy the *Martinez* test for holding Ms. Newmark liable under the IWC definition of employer. (*See* § IV.A.) The SAC's alternative theory of holding Ms. Newmark personally liable is based on the equally vague, conclusory, and threadbare allegation that "each individual ***Defendant*** acted outside the scope of his or her agency" (SAC ¶ 193 (emphasis added)), and fails for the reasons stated above. (*See* § IV.A.) Count IV, thus, also fails to cure the group pleading defects on which the Court dismissed the FAC. (*See* Adv. 89 at 8-11.)

The SAC also fails to allege even the most basic facts to state a plausible § 221 claim. *See Barajas*, 2022 WL 1103841, at *21 (dismissing § 221 because plaintiffs failed to allege how defendant "collected" wages). For example, Plaintiffs do not allege any facts showing ***they*** participated in any employee benefit programs subject to payroll deductions, actually contributed to any such employee benefit programs, experienced any instances where they had wages deducted from their paychecks that were not properly allocated, or the nature or amount of any individual losses they suffered as a result. The Court should dismiss Count V with prejudice.

### E. Count VI Under Labor Code § 2802 Fails To State A Claim.

The Court should dismiss Count VI because the SAC fails to plead sufficient facts to state a plausible claim under Labor Code § 2802(a), which requires reimbursement of "necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties," Cal. Lab. Code § 2802, or any basis on which to hold Ms. Newmark personally liable.

The SAC alleges that "***certain*** employees were entitled to reimbursements for ***certain*** work-related costs pursuant to the Employee Handbook," "***[s]ome*** of California Sub-Class plaintiffs were required to travel or incur certain expenses . . . in connection with their

17

employment," and they "made expenditures or incurred losses . . . resulting from the ***Defendants'*** failure to reimburse."   (SAC ¶¶ 199-200, 204 (emphasis added).)   Beyond these vague and conclusory recitations of the elements of a § 2802 violation, Plaintiffs do not allege any facts showing what ***their*** job duties were or whether those duties required ***them*** to incur business-related expenses, or more importantly, whether ***they*** actually incurred any business-related expenses that were both "necessary" and unreimbursed, the reasons why, or the amount of any such "necessary" unreimbursed expenses.   Without these basic facts, which are within Plaintiffs' knowledge, the SAC fails to state a plausible § 2802 claim.   *See Hassell v. Uber Technologies, Inc.*, No. 20-cv-04062-PJH, 2020 WL 7173218, at *3 (N.D. Cal. Dec. 7, 2020) (dismissing § 2802 claim because plaintiff did not allege he incurred any unreimbursed expenses, or the nature or amount of any unreimbursed expenses to assess whether he plausibly alleged a violation occurred).

The SAC also contains no factual allegations specifying any action Ms. Newmark took that links her to any alleged violations of § 2802, without which there is no basis to hold her personally liable under § 558.1.   (*See* § IV.A.)   The Court should not infer otherwise because the SAC alleges that employees were required to seek reimbursement through third-party benefits processor Motus, which "provided reimbursement processing and/or administration services to employees" (SAC ¶¶ 26, 201), which contradicts that Ms. Newmark had any direct involvement.   *See Balascio v. Leitzke (In Re: Leitzke)*, No. 13-12156, Adv. No. 14-50017, 2014 WL 3583706, at *4 (Bankr. D. Del. July 18, 2014) (courts need not draw inferences contradicted by other allegations or are otherwise unreasonable).   Count IV, thus, also fails to cure the group pleading defects on which the Court dismissed the FAC.   (*See* Adv. 89 at 8-11.)

### F.      Count VII Under Labor Code § 226(a) Fails To State A Claim.

The Court should dismiss Count VII because the SAC fails to plead sufficient facts to state a plausible claim under Labor Code § 226(a), authorizing statutory penalties for an employer's

18

"knowing and intentional failure" to provide itemized wage statements, Cal. Lab. Code § 226(e), or any basis on which to hold Ms. Newmark personally liable.

Plaintiffs seek penalties under § 226(e).  (SAC ¶ 222.)  But non-compliant wage statements alone do not warrant penalties; an employee must show an injury flowing from the non-compliance.  *See Hill v. Pacific Maritime Assoc.*, No. 24-cv-00336-JSC, 2025 WL 1282628, at *3 (N.D. Cal. May 2, 2025).  This injury requirement is met only if an employer does not include the nine items in § 226(a), *and* (2) as a result, employees "cannot promptly and easily determine," from the wage statement, the information in § 226(e)(2)(B)(i)-(iv).  Cal. Lab. Code § 226(e)(2)(B).

The SAC fails to satisfy either prong of the injury requirement.  The SAC does not allege that any Plaintiff received any wage statement that did not include any of the nine required items.  The SAC's allegation that "California Sub-Class plaintiffs . . . could not properly quantify their pay and/or earnings for purposes of filing accurate taxes and believed benefits and employer contributions were made when they were not, resulting in out-of-pocket medical expenses and lost contributions" (SAC ¶ 216), is inadequate because it does allege facts identifying what information set forth in § 226(e)(2)(B) was missing, or explain how that missing information prevented any employee from calculating their wages.  *See Hill*, 2025 WL 1282628, at *3 (dismissing § 226(e) claim because plaintiffs failed to plead injury caused by lack of accurate wage statements).

Instead, Plaintiffs' theory is that, because "deducted funds [from wage statements] were not remitted to the respective entities for such alleged purposes," the wage statements were by default "inaccurate."  (SAC ¶ 214.)  In other words, Plaintiffs do *not* allege that deductions were missing from wage statements.[11]  Plaintiffs' theory is not a cognizable under § 226(a), and it is

---

[11] It is telling that Plaintiffs avoid comparing their wage statements against the lists in § 226(a) and (e), which suggests they did not do basic due diligence to determine if there was a good faith basis to assert Count VII, despite supposedly interviewing score of employees.  (*See* Adv. 38 at 6 n.9.)

19

derivative of the other inadequately plead wage claims. *See Hill*, 2025 WL 1282628, at *3 (dismissing § 226(a) claim based on inadequately plead wage and hour claims). The SAC also contains no factual allegations specifying any action Ms. Newmark took that links her to any alleged violations of § 226(a), without which there is no basis to hold her personally liable under § 558.1. (*See* § IV.A.) The Court should not infer otherwise because the SAC alleges that the Company utilized third-party payroll processor UKG to "administer CSSE's payroll operations" and "was responsible for . . . processing payroll deductions, including deductions for health insurance premiums, retirement contributions, garnishments, federal and/or state taxes, or other benefits," and "generating pay statements" (SAC ¶ 25), which contradicts that Ms. Newmark had any direct involvement. *See Leitzke*, 2014 WL 3583706, at *4 (courts need not draw inferences contradicted by other allegations or are otherwise unreasonable). Moreover, the SAC alleges that "***Defendants***," without specifying who, "failed . . . to furnish . . . accurate itemized statements." (SAC ¶ 213 (emphasis added).) Count VII, thus, fails to cure the group pleading defects on which the Court dismissed the FAC. (*See* Adv. 89 at 8-11.)

G.    **Claims Under Labor Code §§ 510 And 512 Fail To State Claims.**

To the extent the SAC purports to bring claims under Labor Code §§ 510 and 512, even though it only mentions them in passing once, (*see* SAC ¶ 7 (Plaintiffs "are informed and believe" they were "deprived . . . of the rights guaranteed to them by . . . §§ 510, 512")), the Court should dismiss them for failing to allege facts to state a plausible claim.

Section 510 regulates maximum work hours. *See* Cal. Lab. Code § 510. To state a § 510 claim, Plaintiffs must identify "'at least one workweek when [they] worked in excess of forty hours and [were] not paid for the excess hours in that workweek.'" *Reyes*, 2024 WL 3011123, at *6 (quoting *Landers*, 771 F.3d at 646 (holding that, post-*Iqbal*, conclusory allegations that merely recite the statutory requirements of wage-and-hour claims under the FLSA are inadequate to state

a plausible claim)); *see also Cook*, 2020 WL 5633045, at *8  (recognizing that *Landers* also applies to Labor Code claims).

The SAC fails to allege any facts required under *Landers* to state a plausible claim. Although within their knowledge, Plaintiffs do not identify any workweek in which any of them worked more than the maximum hours without being paid overtime.  *See Reyes*, 2024 WL 3011123, at *6 (dismissing § 510 claim because plaintiff failed "to identify any workweek where she worked in excess of forty hours and was not paid for the excess hours in that workweek").  The SAC does not even allege whether any Plaintiff was an hourly employee, or any other facts from which the Court could infer what hours any Plaintiff typically worked during a workweek, their hourly wage rate, or an estimated amount of overtime wages owed. *See id*.  The SAC's vague and conclusory allegation that Plaintiffs "were not routinely paid for all wages" (SAC ¶ 163), is woefully insufficient to state a plausible claim under *Landers*. *Id*. at *7 (collecting cases).

The SAC also contains no factual allegations specifying any action Ms. Newmark took that links her to any alleged § 510 violation, without which there is no basis to hold her personally liable under § 558.1. (*See* § IV.A.)  The SAC's  § 510 claim, thus, fails to cure the group pleading defects on which the Court dismissed the FAC.  (*See* Adv. 89 at 8-11.)

Section 512 requires employers to provide non-exempt employees with a thirty-minute meal period for every five hours of work. *See* Cal. Lab. Code § 512; *Reyes*, 2024 WL 3011123, at *4.  Yet the SAC fails to allege any facts showing (1) any Plaintiff was a non-exempt employee, who worked more than five hours a day on any given day, and on that day, was deprived of a meal period, or (2) that Ms. Newmark, a CSSE director and brand advisor, had anything to do with when

21

or how long any employee took meal breaks, without which there is no basis to hold her personally liable under § 558.1. (*See* § IV.A.)[12]

## V.     Count IX Under The FLSA Fails To State A Claim.

### A.     The SAC Fails To Plead Sufficient Facts To State An FLSA Violation.

The Court should dismiss Count IX because the SAC fails to plead sufficient facts to state a plausible claim under the FLSA's minimum and overtime wage requirements, 29 U.S.C. §§ 201, 206-207. Nor does it plead any basis on which to hold Ms. Newmark personally liable.

Plaintiffs' FLSA claims are duplicative of their §§ 1194 and 1197 claims for failure to pay minimum and overtime wages, and should be dismissed for failure to meet the requirements to state a plausible claim under *Landers*. (*See* § IV.B.) *See also Barajas*, 2023 WL 2333548, at *10-11 (noting that, "[f]ollowing *Landers*, courts repeatedly found allegations corresponding to the elements for an FLSA claim could not withstand a motion to dismiss," and dismissing FLSA claims alleging only that overtime violations occurred "routinely"); *Scott v. Cintas Corp*., No. 3:23-cv-05764-JSC, 2024 WL 1421277, at *3 (N.D Cal. Apr. 2, 2024) (dismissing FLSA overtime claims based on conclusory allegation that employer "failed to pay [p]laintiff the overtime wages" he was entitled to under the FLSA); *Perez v. DNC Parks & Resorts at Sequoia*, No. 1:19-cv-00484 DAD-SAB, 2020 WL 4344911, at *8 (E.D. Cal. July 29, 2020) (dismissing FLSA claims because plaintiffs could have, but did not, "allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages").

---

[12] Plaintiffs also allege, as they did in the FAC, that they are "informed and believe" that "Defendants" had "policies, practices and customs" that "deprived them of the rights guaranteed them by California Labor Code . . . §§ 510, 512, . . . and California Business and Professions Code § 17200, *et seq*." (*Id*. ¶ 7.) But, since these claims are not set forth as separate counts in the SAC, the Court should construe these references as an editing oversight and assume that no such claim is actually asserted by the SAC. To the extent Plaintiffs assert otherwise in their Opposition, such theory fails for the reasons briefed in Ms. Newmark's prior motion to dismiss. (*See* Adv. 38 at 25-27.)

The SAC also contains no factual allegations showing that Ms. Newmark qualifies as an "employer" subject to potential liability under the FLSA. FLSA liability extends to individuals who "exercise[] 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship." *Lowenthal v. Quicklegal, Inc.*, No. 16-cv-03237-LB, 2016 WL 5462499, at \*8 (N.D. Cal. Sept. 28, 2016) (quoting *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009)). The SAC alleges through impermissible group pleading that "each Defendant exercised control over the nature and structure of the employment relationship or economic control over the relationship, including day-to-day operations." (SAC ¶ 242.) This vague and conclusory allegation merely parrots the elements of personal liability under the FLSA, which is insufficient to state a plausible claim against Ms. Newmark. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice"). There are no allegations supporting that Ms. Newmark, a former director, had any involvement in the day-to-day oversight of any employees. The allegation that she "possessed an ownership interest" in the Company does not support an inference that she had any day-to-day oversight of employees. (SAC ¶ 244.) The allegation that she "exercised significant operational control . . . through her payroll administration functions" (*id*.), is not supported by any facts, and is contradicted by the allegation that the Company used third-party UKG to oversee payroll administration functions and, thus, should not be accepted as true. *See Leitzke*, 2014 WL 3583706, at \*4. In sum, the SAC bases its claim of personal liability under the FLSA solely on Ms. Newmark's director status, and "officer-, director-, or majority-shareholder-status alone is [not] sufficient to qualify as an 'employer'" liable under the FLSA. *Id*. at \*9.

23

**B.** **The SAC Fails To Plead Facts To Support An FLSA Collective Action.**

For the first time, Plaintiffs seek to bring their FLSA claims as a collective action. Because the SAC fails to plead facts that state an FLSA claim against Ms. Newmark, the Court need not consider whether the SAC adequately pleads the requirements for bringing an FLSA collective action. It does not. Plaintiffs have failed to adequately allege that (1) they and the class were subject to any common, *illegal* policy or practice that violated the FLSA, or (2) that they and the class were similarly situated as to their employment relationships and pay provisions. *See Shann v. Durham Sch. Servs., L.P.*, 182 F. Supp. 3d 1044, 1046-47 (C.D. Cal. 2016).

**1.** **The SAC Fails To Allege A Common, Illegal Policy Or Practice That Violated The FLSA.**

To properly plead their collective class claims to represent all current and former employees of the Company and/or Debtors employed in the United States, Plaintiffs must allege that the Company subjected them and all class members to the same common, *illegal* policy or practice on a nationwide basis. *See Mendez v. H.J. Heinz Co., L.P.*, No. CV 12-5652-GHK (DTBx), 2012 WL 12888526, at *4 (C.D. Cal. Nov. 13, 2012) ("To adequately assert class allegations, Plaintiff must allege facts that would plausibly suggest that members of the putative class are subjected to the same offending policies.").

The SAC fails to allege the existence of any common, *illegal* policy or practice that violated the FLSA's wage and hour provisions, which is a required element to bring an FLSA claim as a collective action. (*Id.*) Plaintiffs' vague and conclusory allegations that "Defendants" had "employment policies, practices and procedures . . . which violate the FLSA," "create[d] and maintain[ed] policies, practices and customs that knowingly deny employees" their rights under the FLSA, and that "[l]iability is based on a systemic course of wrongful conduct by Defendants" that "was widespread, repeated, and consistent" (SAC ¶¶ 3, 5, 43, 45), are insufficient to meet this

24

requirement.  *See Harding v. Time Warner, Inc.*, No. 09cv1212-WQH-WMc, 2010 WL 457690, at *5 (S.D. Cal. Jan. 26, 2010 (dismissing "practice" allegations where there were no "specific factual allegations which suggest that, in practice, [the employer's] policies resulted in" the wrongful conduct alleged); *Landers*, 771 F.3d at 644 ("[W]e do not agree that conclusory allegations that merely recite the statutory language are adequate").

Instead, Plaintiffs' theory appears to be that the Company had a "standard practice . . . to provide each employee with an employee handbook." (SAC ¶ 63.)  There are no allegations, however, that any policy or procedure within the handbook violated the FLSA.  Rather, the allegations suggest that the handbook was FLSA-compliant. (*See, e.g.*, *id.* at 65 (alleging that the employee handbook had a policy of paying overtime consistent with FLSA requirements).)

### 2. The SAC Fails To Allege That Plaintiffs And The Entire Class Had Similarly Situated Employment Conditions Or Pay Provisions.

To successfully bring an FLSA claim on behalf of themselves and "all similarly situated persons," a named plaintiff must show that he or she is similarly situated to the absent members of the collective action and present "'some identifiable factual or legal nexus [that] binds together the various claims of the class members . . ..'"  *Heath v. Google Inc.*, 215 F. Supp. 3d 844, 850–51 (N.D. Cal. 2016) (quoting *Russell v. Wells Fargo & Co.*, No. 07-CV-3993-CW, 2008 WL 4104212, at *3 (N.D. Cal. Sept. 3, 2008)).  However, the basis must be beyond mere conclusory allegations that their employment conditions were substantially similar to the class.  *Shann*, 182 F. Supp. 3d at 1046 (dismissing national FLSA collective claims where plaintiffs failed to specify their own job titles and descriptions or the job titles and descriptions of the class members).

In a collective action "plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018).  The SAC fails to allege any

25

facts about Plaintiffs' job locations, titles, duties, exempt or non-exempt status, wage provisions, work schedules, or any other aspects of their employment. For that reason alone, the Court should dismiss the FLSA collective action because there is no basis to determine whether their working conditions were substantially similar to each other, let alone the proposed nationwide collective class. Collective actions require a proposed group of similarly situated employees or employees with "similar work experiences." *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *7 (C.D. Cal. Apr. 27, 2015) (denying conditional certification where plaintiff failed to provide "the modest factual showing that he is "similarly situated" to other proposed collective group members' job requirements and pay provisions[.]").

To survive a motion to dismiss, the complaint must allege the plaintiff had similar experiences to the other employees in the putative class, which Plaintiffs here make no effort to do. *Mendez*, 2012 WL 12888526, at *4 (dismissing putative class claims because the plaintiff did not allege facts "to demonstrate or suggest that any member of the putative class, in California or nationwide, had similar work experiences"). The SAC's vague and conclusory allegations that they and class members were "similarly situated," had "substantially similar pay provisions," had an "employment relationship" that was "identical or substantially similar," and the alleged harm did "not depend on the personal circumstances" of any of them (SAC ¶¶ 31, 40-42), are insufficient to meet this requirement. *Compare Shann*, 182 F. Supp. 3d at 1046 *with Fernandez v. Tox Corp.*, 677 F. Supp. 3d 1089, 1099 (C.D. Cal. 2023) (finding complaint sufficient where it included three potential opt-in collective members with the same or similar job requirements and pay provisions).

Additionally, Plaintiffs' own allegations concede the proposed, nationwide class did ***not*** share substantially similar working conditions. For example, the SAC acknowledges that compensation was dependent upon whether an employee was "eligible" or "bonus-eligible," what

the terms of each employee's "written employment agreement" were (which are not alleged), whether an employee was "actively employed" and in good standing," and whether an employee met "performance" metrics.  (*Id*. ¶¶ 64, 66, 67, 69, 71, 73, 74.)  The Court need not accept as true allegations contradicted by other allegations.  *See Leitzke*, 2014 WL 3583706, at *4.

Plaintiffs also fail to allege a single fact to support that they have any basis to know what the employment conditions of the collective class they seek to represent were, and instead plead solely upon information and belief.  District courts have found such failures impermissible to sustain a collective wage and hour claim.  *See Mendez*, 2012 WL 12888526, at *4; *see also Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 WL 756523, at *3 (C.D. Cal. Feb. 25, 2016) (dismissing overtime claim where plaintiff "[did] not allege the basis for his knowledge and belief that other [ ] employees worked shifts in excess of eight hours and/or forty hours without adequate compensation.").  As Plaintiffs have neither plead any specific facts as to their own individual experiences, nor any facts showing that their experiences were substantially similar to all other non-exempt employees nationwide, the collective class allegations should be dismissed.

**VI.    The Court Should Disallow Plaintiffs' Attempt To Pursue Their Claims As A Class.**

A class action under Fed. R. Civ. P. 23 ("Rule 23") is not allowed in this court.  *See In re Musicland Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007).

There is no "absolute right" to file a class proof of claim, and a bankruptcy court's decision to extend Rule 23 to contested matters is discretionary.  *Id.* at 650; *see also* Fed. R. Bankr. P. 9014 (excluding Bankruptcy Rule 7023 from rules applying in contested matters and permitting application of that Rule only by court order).  This Court has applied the *Musicland* factors to disallow class actions, and it should do so here.  *See In re Chaparral Energy, Inc.*, No. 16-11144 (LSS), 2018 WL 818309, at *4 (Bankr. D. Del. Feb. 9, 2018) (applying *Musicland* factors to sustain debtors' objection to class proof of claim).

*Musicland* arose out of a fact pattern similar to the *Skajem* lawsuit. The *Musicland* plaintiffs, former in-store managers, filed a pre-petition class action in California state court, alleging overtime claims, but a class was never certified because Musicland filed for chapter 11 bankruptcy. *See Musicland*, 362 B.R. at 647-48. When the plaintiffs moved for Rule 23 certification, the debtors and creditors committee objected, prompting the court to analyze whether to allow application of Rule 23. *See id*. at 649-50. The court articulated three factors that bankruptcy courts must evaluate to determine whether to allow a class proof of claim: (1) whether the class was certified pre-petition; (2) whether putative class members received notice of the claims bar date; and (3) whether class certification will adversely affect the estate's administration. *See id*. at 654. First, there was no class certification pre-petition. *Id*. at 656. Second, while the California court did not issue formal notice of the class action, the court found the fact that the plaintiffs' lawyers asserted they conducted extensive pre-filing interviews, and the plaintiffs had filed proofs of claims, supported a conclusion that "many of the class members should have been aware that they might have claims." *Id*. The court also noted that any creditor that did not receive notice of the claims bar date could seek an extension. *See id*. at 656 n.13. And, third, the court found a class action would extend the proceedings to the prejudice of other creditors who timely filed claims. *See id*. at 656-57. Thus, the court denied the plaintiffs' request for class certification.

Here, as in *Musicland*, the first factor weighs against extending Rule 23 to Plaintiffs' claims, as the putative class was not certified pre-petition. *See Musicland*, 362 B.R. at 654 (without pre-petition certification, class members had no reasonable expectation that they did not have to comply with the claims bar date); *see also In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995) (denying class proof of claim because unnamed class members rely on notice procedures in the class action where the class is certified pre-petition.)

As to the second factor, whether all putative class members received notice of the claims bar date weighs against allowing the class proof of claim.  The 341 notice was filed on July 22, 2024 (three days after Plaintiffs sued in California), setting a September 18, 2024 deadline for non-governmental claimants to file proofs of claim.  This notice was effective as to some, but not all creditors or employees.  Two days later, Plaintiffs' counsel asserted at his press conference (like the *Musicland* plaintiffs' lawyers) that they spoke with hundreds of employees and announced they intended to assert the employees' claims in the bankruptcy court.  (*See* n.9.)  As in *Musicland*, "if [Mr. Adler] conducted as many pre-filing interviews as [he] claimed, many of the class members should have been aware that they might have claims."  *Musicland*, 362 B.R. at 656.  Indeed, Mr. Skajem timely filed a proof of claim signed by Plaintiffs' counsel on August 5, 2024, which he amended on October 4, 2024.  Regardless, the Trustee has yet to file the schedules that provide notice of the bar date to *all* creditors.  So, once the schedules are filed, the Court will need to set a new claims bar date to put putative class members on notice.  Thus, a class action is unnecessary, and this factor does not present a reason to allow one.  *See id.*; *Sacred Heart*, 177 B.R. at 24.

The third factor likewise weighs against extending Rule 23 because "[a]llowing the Class Claim[] to go forward would unduly complicate and delay the administration of th[is] case[]." *In re Circuit City Stores, Inc.*, No. 08–35653, 2010 WL 2208014, at *6 (Bankr. E.D. Va. May 28, 2010) (allowing class claims to proceed would delay administration and would be more costly than beneficial), *aff'd*, 439 B.R. 652 (E.D. Va. 2010).  Debtors' estate will be forced to deal with "expensive, time-consuming, protracted litigation that could delay and lessen the distribution of the Debtors' assets to [its] creditors." *Id.*; *see also In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) (stating that "the potential interference with timely distribution in itself presents sufficient grounds to expunge the class claims" based on the protracted litigation that would result,

29

including precertification discovery, notice to class members, discovery on the merits, and a trial).

Here, Plaintiffs' class proof of claim named non-debtor individuals and "Doe Defendants." As such, the reference will have to be withdrawn to the District Court for trial, and this Court will not have jurisdiction to enter final orders anyway. Moreover, each employee's claims will need to be separately adjudicated. Unlike a class action, the bankruptcy claims process can more expeditiously address disputed, individualized claims without the need to include non-debtors in what ought to be a straightforward claims resolution process. As the *Musicland* court emphasized, "[b]ankruptcy provides the same procedural advantages as a class action. In fact, it provides more advantages. Creditors, even corporate creditors, don't have to hire a lawyer, and can participate in the distribution for the price of a stamp." *Musicland*, 362 B.R. 650 n.8 (citation omitted).

## CONCLUSION

Ms. Newmark requests dismissal of all claims against her with prejudice and without leave to amend, given that this is Plaintiffs' fourth iteration of a complaint and any further pleading would be futile. *See In re Oakwood Homes Corp.*, 325 B.R. 696, 699 (Bankr. D. Del. 2005).

30

**WOMBLE BOND DICKINSON (US) LLP**

Dated: February 20, 2026
Wilmington, DE

*/s/ Donald J. Detweiler*

Donald J. Detweiler (DE Bar No. 3087)
1313 N. Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
Email:  don.detweiler@wbd-us.com

-and-

Cathy A. Hinger (admitted *pro hac vice*)
Victoria A. Bruno (admitted *pro hac vice*)
2001 K Street, NW
Suite 400 South
Washington, DC 20006
Telephone: (202) 467-6900
Facsimile: (202) 467-6910
Email:  cathy.hinger@wbd-us.com
Email:  victoria.bruno@wbd-us.com

*Counsel for Defendant Amy L. Newmark*

31