## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CSS ENTERTAINMENT INC. (f/k/a CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC.)*, et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 24-11442 (MFW)<br><br>(Jointly Administered) |
| BRIAN SKAJEM, LISA PAPATZIMAS, ERIN TUTTLE, DAVID ELLENDER, DARA COHEN, MATT LOZE, JESSICA STOECKELER, HEATHER BUNDY, CAREY CAMPBELL, KELLY BURKE HOPKINS, COURTNEY SMITH, on behalf of themselves and behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CSS ENTERTAINMENT INC. (f/k/a CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC.), REDBOX AUTOMATED RETAIL, LLC, WILLIAM J. ROUHANA, JR., AMY L. NEWMARK, JOHN T. YOUNG, ROBERT H. WARSHAUER, BART SCHWARTZ, and DOES 1-500, inclusive,<br><br>Defendants. | Adv. Pro. No. 24-50128 (MFW) |

### DEFENDANT WILLIAM J. ROUHANA'S OPENING BRIEF
### IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Counsel Listed on Next Page*

---

[1] Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508).

**WOMBLE BOND DICKINSON (US) LLP**
Donald J. Detweiler (DE Bar No. 3087)
1313 N. Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
Email: don.detweiler@wbd-us.com

Cathy A. Hinger (admitted *pro hac vice*)
Victoria A. Bruno (admitted *pro hac vice*)
2001 K Street, NW
Suite 400 South
Washington, DC 20006
Telephone: (202) 467-6900
Facsimile:  (202) 467-6910
Email: cathy.hinger@wbd-us.com
Email: victoria.bruno@wbd-us.com

*Counsel for Defendant William J. Rouhana, Jr.
And Amy L. Newmark*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................... 1

NATURE AND STAGE OF THE PROCEEDING.................................................... 2

    A.    Procedural Background........................................................................ 2

    B.    The FAC Order...................................................................................... 4

STATEMENT OF FACTS ....................................................................................... 5

    A.    The Limited Allegations Regarding Plaintiffs. ....................................... 5

    B.    Allegations Regarding Mr. Rouhana And Employee Wages And Benefits. ........... 5

    C.    Plaintiffs' New Allegations Concerning Statements Made By Mr. Rouhana. ....... 6

        1.    Alleged Statements Regarding Incentive Awards And Bonuses. .................... 6

        2.    Alleged Statements Regarding Health Benefits. .............................................. 6

    D.    The FAC Alleges The Same Eight Causes Of Action Against Every Defendant. .. 8

ARGUMENT .......................................................................................................... 9

I.    Pleading Standards Under Rules 12(b)(6) and 9(b). ........................................ 9

II.    Count I For Fraud Fails To State A Claim Under Rules 9(b) And 12(b)(6). .................... 9

    A.    Several Of The Statements Made By Mr. Rouhana Are True. ............................... 9

    B.    The SAC Fails To Plead Intent Not To Perform Promissory Statements. ........... 10

    C.    The SAC Fails To Adequately Allege Reliance. ................................................... 12

III.    Count II For Conversion Fails To State A Claim Under Rule 12(b)(6). ....................... 14

IV.    Counts III Through VII Under The Labor Code Fail Under Rule 12(b)(6). .................. 14

    A.    Mr. Rouhana Has No Personal Liability For Any Labor Code Violation. ............ 14

    A.    Count III Under Labor Code §§ 1194 And 1197 Fails To State A Claim. ............ 18

    B.    Count IV Under Labor Code § 204 Fails To State A Claim. ............................... 19

    C.    Count V Under Labor Code § 221 Fails To State A Claim. ................................. 21

    D.    Count VI Under Labor Code § 2802 Fails To State A Claim. ............................. 22

    E.    Count VII Under Labor Code § 226(a) Fails To State A Claim........................... 23

V.    Count IX Under The FLSA Fails To State A Claim. ..................................................... 25

    A.    The SAC Fails To Plead Sufficient Facts To State An FLSA Violation................ 25

    B.    The SAC Fails To Plead Facts To Support An FLSA Collective Action. ............. 26

        1.    The SAC Fails To Allege A Common, Illegal Policy Or Practice That Violated The FLSA........................................................................................... 27

        2.    The SAC Fails To Allege That Plaintiffs And The Entire Class Had Similarly Situated Employment Conditions Or Pay Provisions.................................... 28

CONCLUSION.................................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 26

*Balascio v. Leitzke (In Re: Leitzke)*,
  No. 13-12156, 2014 WL 3583706 (Bankr. D. Del. July 18, 2014) ........................ 16, 23, 24, 26

*Barajas v. Blue Diamond Growers Inc.*,
  No. 1:20-CV-0679 JLT SKO, 2022 WL 1103841 (E.D. Cal. Apr. 13, 2022) ............... 20, 22, 25

*Bartesch v. Cook*,
  941 F. Supp. 2d 501 (D. Del. 2013) .................................................................... 3

*Berdel, Inc. v. Berman Real Estate Mgmt., Inc.*,
  No. CIV.A. 13579, 1997 WL 793088 (Del. Ch. Dec. 15, 1997) .............................. 11

*Boucher v. Shaw*,
  572 F.3d 1087 (9th Cir. 2009) ............................................................................ 26

*Byrd v. Masonite Corp.*,
  No. EDCV 16-35 JGB (KKX), 2016 WL 756523 (C.D. Cal. Feb. 25, 2016) .............. 30

*Cadlo v. Owens-Illinois, Inc.*,
  125 Cal. App. 4th 513 (2004), *as modified* (Dec. 30, 2004) .................................. 13

*Campbell v. City of Los Angeles*,
  903 F.3d 1090 (9th Cir. 2018) ............................................................................ 28

*Carter v. Rasier-CA, LLC*,
  No. 17-CV-00003-HSG, 2017 WL 4098858 (N.D. Cal. Sept. 15, 2017), *aff'd*, 724 F. App'x
  586 (9th Cir. 2018) ............................................................................................ 15

*Combs v. Greenfield*,
  No. C 09-06042 SI, 2010 WL 1912113 (N.D. Cal. May 11, 2010) ......................... 16

*Cook v. Land O'Lakes, Inc.*,
  No. 1:20-CV-00553-NONE-SAB, 2020 WL 5633045 (E.D. Cal. Sept. 21, 2020) .......... 18

*Cordell v. PICC Lines Plus LLC*,
  No. 16-cv-01814-TEH, 2016 WL 4702654 (N.D. Cal. Sept. 8, 2016) ...................... 21

*Dunn v. FastMed Urgent Care, P.C.*,
  No. CV 2018-0934 MTZ, 2019 WL 4131010 (Del. Ch., Aug. 30, 2019) ................... 10, 11

*Fernandez v. Tox Corp.*,
  677 F. Supp. 3d 1089, 1099 (C.D. Cal. 2023) ...................................................... 29

*Gentry v. eBay, Inc.*,
  99 Cal. App. 4th 816 (2002) .............................................................................. 10

*Grunstein v. Silva*,
No. CIV.A. 3932-VCN, 2009 WL 4698541 (Del. Ch. Dec. 8, 2009) .................................10, 11

*Harding v. Time Warner, Inc.*,
No. 09CV1212WQH-WMC, 2010 WL 457690 (S.D. Cal. Jan. 26, 2010)............................. 27

*Hassell v. Uber Techs., Inc.*,
No. 20-cv-04062-PJH, 2020 WL 7173218 (N.D. Cal. Dec. 7, 2020) ...................................... 22

*Heath v. Google Inc.*,
215 F. Supp. 3d 844 (N.D. Cal. 2016)...................................................................................... 28

*Hill v. Pacific Maritime Ass'n.*,
No. 24-cv-00336-JSC, 2025 WL 1282628 (N.D. Cal. May 2, 2025) ................................ 23, 24

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .................................................................................................... 12

*In re LifeUSA Holding, Inc.*,
242 F.3d 136 (3d Cir. 2001) ..................................................................................................... 12

*In re Myford Touch Consumer Litig.*,
No. 13-CV-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ................................ 14

*In re Oakwood Homes Corp.*,
325 B.R. 696 (Bankr. D. Del. 2005)......................................................................................... 30

*In re OSC 1 Liquidating Corp.*,
529 B.R. 825 (Bankr. D. Del. 2015).......................................................................................... 9

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009)............................................................................................................... 13

*In re: First Am. Home Buyers Prot. Corp. Class Action Litig.*,
313 F.R.D. 578 (S.D. Cal. 2016), *aff'd sub nom. Carrera v. First Am. Home Buyers Prot. Co.*,
702 F. App'x 614 (9th Cir. 2017) ............................................................................................. 13

*In re: First Am. Home Buyers Prot. Corp. Class Action Litig.*,
313 F.R.D. at 604 ...................................................................................................................... 13

*Landers v. Quality Commc'ns, Inc.*,
771 F.3d 638 (9th Cir. 2014) .............................................................................................. 18, 27

*Litty v. Merrill Lynch & Co.*,
No. CV 14-0425 PA (PJWX), 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) .......................... 28

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
No. CV 17-14-JFB-SRF, 2019 WL 10252725 (D. Del. Apr. 30, 2019) ................................... 10

*Lowenthal v. Quicklegal, Inc.*,
No. 16-cv-03237-LB, 2016 WL 5462499 (N.D. Cal. Sept. 28, 2016) ...................................... 26

*Martinez v. Combs*,
  49 Cal. 4th 35, 64 (2010)..................................................................................................17

*McDonald v. Ricardo's on the Beach, Inc.*,
  No. CV 11-9366 PSG MRWX, 2013 WL 153860 (C.D. Cal. Jan. 15, 2013) .........................16

*Mendez v. H.J. Heinz Co., L.P.*,
  No. CV125652GHKDTBX, 2012 WL 12888526 (C.D. Cal. Nov. 13, 2012) ........................27

*MicroStrategy Inc., Acacia Research Corp.*,
  No. CIV.A. 5735-VCP, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010) ...................................10

*Mirkin v. Wasserman*,
  5 Cal. 4th 1082 (1993).......................................................................................................13

*Missakian v. Amusement Indus., Inc.*,
  69 Cal. App. 5th 630 (2021)...............................................................................................11

*Moreno v. Zuckerman Family Farms, Inc.*,
  No. 2:25-cv-01574-CKD, 2026 WL 323088 (E.D. Cal. Feb. 6, 2026) .................................17

*Outdoor Techs., Inc. v. Allfirst Fin., Inc.*,
  No. CIV.A. 99C-09-151-JRS, 2001 WL 541472 (Del. Super. Apr. 12, 2001) .........................11

*Perez v. DNC Parks & Resorts at Sequoia*,
  No. 1:19-cv-00484-DAD-SAB, 2020 WL 4344911 (E.D. Cal. July 29, 2020) ................. 20, 25

*Phillipps v. Pac. Maritime Ass'n.*,
  No. 25-cv-03241-JST, 2025 WL 1726404 (N.D. Cal. June 20, 2025)....................................17

*Reyes v. Five Diamond Cold Storage, Inc.*,
  No. 1:24-cv-00028-JLT-SAB, 2024 WL 3011123 (E.D. Cal. June 11, 2024), *report and recommendation adopted*, No. 1:24-cv-0028-JLT-SAB, 2024 WL 3252911 (E.D. Cal. July 1, 2024)................................................................................................................... 15, 18

*Rios v. Linn Star Transfer, Inc.*,
  No. 19-cv-07009-JSC, 2020 WL 1677338 (N.D. Cal. Apr. 6, 2020)..................... 15, 16, 19, 21

*Roush v. MSI Inventory Serv. Corp.*,
  No. 2:17-CV-1010-JAM-KJN, 2018 WL 3637066 (E.D. Cal. July 30, 2018).........................15

*Russell v. Wells Fargo & Co.*,
  No. C 07-3993 CW, 2008 WL 4104212 (N.D. Cal. Sept. 3, 2008).........................................28

*Russo v. Fed. Med. Servs., Inc.*,
  744 F. Supp. 3d 914 (N.D. Cal. 2024).............................................................................. 15, 16

*Scott v. Cintas Corp.*,
  No. 3:23-cv-05764-JSC, 2024 WL 1421277 (N.D Cal. Apr. 2, 2024)....................................25

*See's Candy Shops, Inc. v. Super. Ct.*,
  210 Cal. App. 4th 889 (2012)..............................................................................................19

*Shann v. Durham Sch. Servs., L.P.*,
   182 F. Supp. 3d 1044 (C.D. Cal. 2016) .......................................................................... 26, 28, 29

*Skajem, et al. v. Chicken Soup for the Soul Entertainment, Inc., et al.*,
   Case No. 24ST-cv-18214 (Cal. Super. Ct., Los Angeles Co.) ....................................................... 3

*Tucker v. Pac. Bell Mobile Servs.*,
   208 Cal. App. 4th 201 (2012) ........................................................................................ 14

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................................................. 11

*Usher v. White*,
   64 Cal. App. 5th 883, 896-97 (2021) ............................................................................ 15, 16

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ......................................................................................... 9

*Voris v. Lampert*,
   7 Cal 5th 1141 (2019) ............................................................................................... 1, 14

*Yarger v. ING Bank, FSB*,
   285 F.R.D. 308 (D. Del. 2012) ...................................................................................... 12

**Statutes**

29 U.S.C. § 201 ............................................................................................................ 25

29 U.S.C. §§ 206-207 .................................................................................................... 25

Cal. Lab. Code § 201 ..................................................................................................... 21

Cal. Lab. Code § 226(a) ............................................................................................ 23, 24

Cal. Lab. Code § 226(e)(2)(B) ......................................................................................... 23

Cal. Lab. Code § 204 ............................................................................................... 19, 21

Cal. Lab. Code § 221 ..................................................................................................... 21

Cal. Lab. Code § 558.1 ....................................................................................... 14, 16, 19, 21

Cal. Lab. Code § 1194 .............................................................................................. 18, 19

Cal. Lab. Code § 1197 .............................................................................................. 18, 19

Cal. Lab. Code § 1997 .................................................................................................... 18

Cal. Lab. Code § 2802 .................................................................................................... 22

**Rules**

Fed. R. Bankr. P. 7009 ..................................................................................................... 1

Fed. R. Bankr. P. 7012(b) ................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 1

Fed. R. Civ. P. 9(b) ............................................................................................................. 1, 4, 9

Rule 8(a)(2) ...................................................................................................................................... 4

## PRELIMINARY STATEMENT

This is individual Defendant, William J. Rouhana, Jr.'s ("Mr. Rouhana"), Opening Brief in Support of Motion to Dismiss (the "Motion," Adv. 102)[2] the Second Amended Complaint (the "SAC," Adv. 95). The SAC follows this Court's December 9, 2025 Order granting Mr. Rouhana's prior motion to dismiss the First Amended Complaint ("FAC") without prejudice (the "FAC Order," Adv. 89). Like the FAC, the SAC is replete with conclusory statements and allegations, expansive group pleading, generalized and implausible fraud theories, and wholly defective labor law claims. As shown herein, dismissal of the claims asserted against Mr. Rouhana in the SAC, with prejudice is appropriate, if not mandated, pursuant to Fed. R. Civ. P. 12(b)(6), applicable to this adversary proceeding ("Adversary Proceeding"), pursuant to Fed. R. Bankr. P. 7012(b), ("Rule 12(b)(6)"), for failure to state any claim upon which relief may be granted.

Count I (Fraud) should be dismissed as to Mr. Rouhana under Rule 12(b)(6) for failure to meet Plaintiffs' heightened pleading burden.[3] While the SAC adds several statements made by Mr. Rouhana, none of them are actionable as fraud. Some of them are blatantly truthful statements, and others are unactionable promissory or predictive statements as to future acts, without any particularized allegations of fraud or fraudulent intent. Plaintiffs also fail to plausibly allege reliance by any Plaintiff on any particular statement made by Mr. Rouhana, and classwide reliance is not an available theory for fraud.

Count II (Conversion) should be dismissed under Rule 12(b)(6) because, as shown by Mr. Rouhana's motion to dismiss the FAC, California law does not recognize such a claim for nonpayment of wages. *Voris v. Lampert*, 7 Cal 5th 1141, 1145, 1162-63 (2019).

---

[2] As used herein, "Adv." refers to the docket index entries in this Adversary Proceeding.
[3] *See* Fed. R. Civ. P. 9(b), applicable to this Adversary Proceeding pursuant to Fed. R. Bankr. P. 7009, ("Rule 9(b)").

Counts III through VII (California Labor Code, the "Labor Code"), also fail for the same reasons they failed in the FAC because: (i) Plaintiffs fail to allege any facts showing Mr. Rouhana took any affirmative action resulting in a Labor Code violation under the other sections, as necessary to hold him personally liable, and (ii) Plaintiffs fail to allege sufficient facts to state a plausible claim for wage or hour violations.[4]

Count IX (Fair Labor Standards Act, the "FLSA"), similarly fails for the same reason it did in the FAC because: (i) the claims are derivative of Plaintiffs' other inadequately plead minimum wage and overtime claims; (ii) Plaintiffs fail to allege any facts showing Mr. Rouhana qualifies as an "employer" under the FLSA; and (iii) Plaintiffs fail to adequately allege that they were subject to any common illegal policy or practice with respect to wages or that they were similarly situated to all employees they seek to represent, which are necessary elements of an FLSA collective action.

In sum, the Court should dismiss all claims against Mr. Rouhana with prejudice.

## NATURE AND STAGE OF THE PROCEEDING

### A.    Procedural Background.

On June 28, 2024 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in this Court. (D.I. 1.) On July 10, 2024, the chapter 11 bankruptcy cases were converted to chapter 7 cases. (D.I. 120.)[5] George Miller has been duly appointed as the trustee of the chapter 7 Debtors. (D.I. 130.)

On the Petition Date, Debtors moved for orders authorizing and allowing Debtors to pay pre- and post-petition employee wages and benefits. (D.I. 3 ("Workforce Motion".) As Mr.

---

[4] Count VIII does not assert any claims against Mr. Rouhana, only the following co-Defendants: Plaintiffs' alleged employer and Debtor Chicken Soup for the Soul Entertainment, Inc. ("CSSE"), Debtor Redbox Automated Retail, LLC ("Redbox"), CSSE's former Strategic Review Committee ("SRC"), Robert Warshauer and John Young, post-Petition CEO Bart Schawartz.

[5] As used herein, "D.I." refers to the docket index entries in the related bankruptcy cases, Case No. 24-11442 (MFW).

Rouhana attested to in his supporting Declaration,[6] Debtors entered bankruptcy with the desire to continue operating under "the protections and 'breathing room' that chapter 11 is intended to provide." (D.I. 7 ¶ 3.)  But, Mr. Rouhana had resigned as CEO as of June 28, 2024. (SAC ¶ 107.) Co-Defendant Bart Schwartz replaced him as CEO, and was appointed to CSSE's Board on June 28, 2024. (D.I. 7 ¶ 10; SAC ¶ 107.)  As part of Debtors' restructuring strategy, Mr. Rouhana arranged for up to $20.0 million in Debtor in Possession ("DIP") financing. (D.I. 7 ¶ 34.)  The financing was to be used, in part, to pay employee wages and benefits. (*Id.* ¶ 33.)

Debtors entered bankruptcy as the result of Debtors' senior secured lender, HPS Investment Partners, LLC's ("HPS"), ongoing failure to honor and perform its funding obligations and commitments to Debtors under the August 11, 2022 Amended and Restated Credit Agreement (the "Credit Agreement") by and among Debtors and HPS as part of the Redbox merger with and into CSSE. (*Id.* ¶¶ 19, 24-32; SAC ¶ 60.)[7]  On July 10, 2024, to the detriment of Debtors and their employees, Debtors, under the control of co-defendants Mssrs. Young and Warshaur, appointed to CSSE's Board and Strategic Review Committee ("SRC") by HPS, made an oral motion to convert the chapter 11 cases to chapter 7 cases. (D.I. 120; SAC ¶¶ 108, 120.)

On July 19, 2024, Plaintiffs filed a class action claim in California state court against CSSE, Redbox, Mr. Rouhana, and Ms. Newmark.[8]  On September 6, 2024, Plaintiffs filed their first class action complaint in this Court against CSSE, Redbox, Mr. Rouhana, Ms. Newmark, HPS, and Anthem. (Adv. 1.)  Plaintiffs voluntarily dismissed HPS and Anthem without prejudice. (Adv. 8, 15.)  On February 3, 2025, Plaintiffs moved for leave to file an amended complaint against CSSE,

---

[6] The SAC specifically references D.I. 7, Mr. Rouhana's First Day Declaration. (SAC ¶ 110.)  Therefore, Plaintiffs may rely on it in full.  *Bartesch v. Cook*, 941 F. Supp. 2d 501, 505 n.1 (D. Del. 2013) ("This Court may consider on a motion to dismiss documents 'integral to or explicitly relied upon in the complaint[.]'").

[7] HPS's failures are detailed more fully in Mr. Rouhana's Objection to Trustee's Application to Retain Pachulski Stang Ziehl & Jones LLP ("PSZJ") (the "PSZJ Objection"). (*See* D.I. 283.)

[8] *Skajem, et al. v. Chicken Soup for the Soul Entertainment, Inc., et al.*, Case No. 24ST-cv-18214 (Cal. Super. Ct., Los Angeles Co.).  *See* https://www.lacourt.org/casesummary/ui/.  The case was never served and is stayed.

Redbox, Mr. Rouhana, Ms. Newmark, HPS, and Messrs. Young, Warshauer, and Schwartz. (Adv. 18, 18-2.) On May 6, 2025, the Court granted leave but only to add only Messrs. Young, Warshauer, and Schwartz, not HPS. (Adv. 29.) Plaintiffs then filed the FAC on May 8, 2025. (Adv. 30.) Mr. Rouhana and Ms. Newmark filed motions to dismiss the FAC on June 20, 2025 (Adv. 38, 43), which the Court granted in the FAC Order on December 9, 2025 (Adv. 89-90.) The SAC followed on January 8, 2026. (Adv. 95.)

### B.   The FAC Order.

The FAC Order recognizes that to state a claim under Rule 8(a)(2), the plaintiff's obligation to provide the grounds of their entitlement to relief, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," and that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . ." (Adv. 89 at 6.) The FAC Order also recognizes that with respect to Plaintiffs' attempt to plead fraud, Rule 9(b) requires plaintiffs to allege, "with particularity the circumstances constituting the fraud," which requires pleading the "who, what, where, when, how, and why" of the fraud to put defendants on notice of the "precise misconduct with which they are charged and to safeguard defendants against spurious charges of immoral and fraudulent behavior." (*Id*. at 8.)

Applying these standards, the FAC Order found the FAC failed to state, "with any detail the specific actions Rouhana or Newmark took" with respect to deductions taken from the employees' wages, and that other allegations contained "no specifics of any actions Rouhana or Newmark took, as opposed to other Defendants, that were fraudulent." (*Id*. at 10.) This Court made clear that such, "group pleading" is insufficient to state claims against individuals.

With respect to claims for violations of the FLSA and California Labor Code, the Court found officers or directors could only be held liable for such claims if they were "actively involved in the decision-making/operational control" that led to the violation. (*Id*. at 12.) The Court found

4

the FAC's allegations on these points were "bare bones" and conclusory, having no factual allegations to show either Mr. Rouhana or Ms. Newmark "had a direct or active role." (*Id*. at 14.) For these and other reasons stated in the FAC Order, the Court dismissed the FAC.

## STATEMENT OF FACTS

### A.    The Limited Allegations Regarding Plaintiffs.

Plaintiffs allege they are former employees of "the Company and/or Debtors." (*See* SAC ¶ 16.)  However, the SAC does not identify Plaintiffs' job titles, job duties, where they lived or worked, to whom they reported, whether they were hourly or salaried, whether they were exempt or non-exempt, whether they were full- or part-time, what hours they worked, whether they were required to work overtime, what their rate of pay was, whether their job duties required incurring reimbursable expenses, whether they participated in any employee benefit programs, whether they contributed to any such employee benefit programs, the nature or amount of any individual losses they suffered or when, or whether they were employed as of the time of the Petition. (*See generally id*.)  Instead, Plaintiffs broadly and vaguely allege they are "informed and believe" that "Defendants" engaged in a "scheme" to not pay wages, commissions, paid time off and/or non-discretionary bonuses, deduct wages for health and life insurance without maintaining that coverage, misrepresent that such benefits were still active, and stop contributing to 401(k) and/or HSA plans while still deducting wages in connection with these plans. (*Id.* ¶¶ 2-7.)

### B.    Allegations Regarding Mr. Rouhana And Employee Wages And Benefits.

Plaintiffs allege they are "informed and believe" that Mr. Rouhana was a corporate officer and/or board member of CSSE, that he was the Chairman of the Board and CEO of CSSE, but they also allege in conclusory fashion, without supporting facts, that he "controlled CSSE and its subsidiaries". (SAC ¶¶ 19, 54.)  Plaintiffs also allege generally that these roles, "allowed him to assert overarching control of the Company." (SAC ¶¶ 54, 55.)  They also cite Mr. Rouhana's First

Day Declaration in the bankruptcy cases as representing that he "had been responsible for overseeing the operations and financial activities of the Debtors," (just as any other CEO). (SAC ¶ 110.) Once Mr. Rouhana resigned and the bankruptcy petition was filed, control of CSSE and Debtors was "solely in the hands of the SRC". (SAC ¶ 120.)

### C.   Plaintiffs' New Allegations Concerning Statements Made By Mr. Rouhana.

The SAC alleges two new categories of statements made by Mr. Rouhana.

#### 1.   Alleged Statements Regarding Incentive Awards And Bonuses.

The first category of statements by Mr. Rouhana relates to Plaintiffs' claims concerning unpaid incentive awards and bonuses. (SAC ¶ 139.) The first statement is an October 26, 2022 statement announcing an incentive award that would replace CSSE's 2022 bonus plan. (SAC ¶ 67 ("Bonus Statement No. 1").)[9] The second statement was that the Company would not pay the awards as originally anticipated," and that employees would instead receive a differently calculated bonus "expected to begin in the second quarter of 2023," clearly explaining these changes were due "cash-flow constraints" and were dependent on "completing a financing transaction." (*See* SAC ¶¶ 69, 71 ("Bonus Statement No. 2").)

#### 2.   Alleged Statements Regarding Health Benefits.

The second category of statements relates to Plaintiffs' claims that Mr. Rouhana made misrepresentations concerning health benefits and reimbursements. (SAC ¶ 139.) In support of these claims, Plaintiffs identify five allegedly fraudulent statements by Mr. Rouhana:

- A March 2024 letter that Mr. Rouhana allegedly sent *to healthcare providers* for CSSE employees, where Mr. Rouhana wrote that the company "…is working to resolve claims

---

[9] The SAC alleges other email statements regarding bonuses, but says they were made by CSSE without identifying who the actual sender of the emails were – only alleging in conclusory fashion and "on information and belief" that Mr. Rouhana "caused" such emails to be sent or that such emails were "sent on his behalf". (*See* SAC ¶¶ 67-74.)

incurred in 2023." (SAC ¶ 77 (emphasis added) ("Health Benefits Statement No. 1").) The SAC alleges this letter, "was subsequently *relayed* to employees" without saying when, by whom, to whom, or how. (*Id*. (emphasis added).)[10]

- A June 18, 2024 statement Mr. Rouhana allegedly "issued" to "CSSE employees", confirming that Anthem health insurance coverage had been terminated. (SAC ¶ 85 ("Health Benefits Statement No. 2").)

- A June 21, 2024 email Mr. Rouhana allegedly sent to "CSSE employees" stating that "We are finalizing a financing that *is scheduled to close* this week. Payroll for the 6/21/24 pay date *is scheduled to be deposited* into your accounts by Wednesday, 6/26/24," and with respect to health benefits, "We *estimate* that we *will have* this in place *within two weeks*." (SAC ¶ 94 (emphasis added) ("Health Benefits Statement No. 3").)

- A June 26, 2024 email Mr. Rouhana allegedly sent to "CSSE employees" notifying them that "the financing has *not yet* closed" and "We *hope* to fund payroll for [ ] 6/21/24 by Monday, 7/1/24." (SAC ¶ 95 (emphasis added) ("Health Benefits Statement No. 4").) He also stated, "We still *expect* health benefits to be reinstated," and that, "There are teams of people working tirelessly to remedy our current situation." (*Id*. (emphasis added))

- A June 28, 2024 email Mr. Rouhana allegedly sent to an unspecified "Team" stating, "We promised we would provide an update today. We are still working on the timing for funding payroll. We will provide an update by this evening." (SAC ¶ 96 ("Health Benefits Statement No. 5").) This was the day the Debtors filed for Chapter 11 bankruptcy, which included immediate efforts for DIP financing to fund the payroll and benefits. (*Id*. ¶¶ 108, 110-111.)

---

[10] The lack of a cover email supporting this allegation strongly suggests this letter is confidential company property a former employee misappropriated, not something distributed company-wide by email. (*Id*.)

The email headers for the Health Benefits Statements Nos. 2-5 emails have all been manipulated to omit the "To" line, rendering the scope of recipients of these statements completely vague.

### D.    The FAC Alleges The Same Eight Causes Of Action Against Every Defendant.

The SAC alleges the same eight causes of action against each Defendant:

- Count I seeks damages for common-law fraud, and alleges Plaintiffs "are informed and believe" that "Defendants concealed, omitted, and suppressed material facts about their intentions for employees to be covered for pre- and post-petition medical benefits and dental benefits, and receive wages, 401(k) contributions, reimbursements for work-related expenses and unreimbursed medical expenses, commissions, non-discretionary bonuses, and/or other fringe benefits," to "mislead and induce the employees into a false sense of security about their wages, health and dental insurance and benefits, 401(k) contributions, and other fringe benefits so that they would not leave CSSE or other Debtors' employ." (SAC ¶¶ 137, 144.)

- Count II seeks damages for common-law conversion of wages, and alleges "Defendants" converted "unpaid wages for work performed." (*Id*. ¶¶ 152, 160.)

- Count III seeks damages under the Labor Code §§ 1194 and 1197, regulating minimum and overtime wages, and alleges "Defendants failed and refused to pay . . . all wages, commissions, and/or non-discretionary bonuses and/or PTO due," including "overtime." (*Id*. ¶¶ 163-165.)

- Count IV seeks penalties under Labor Code §§ 204 and 210, requiring semi-monthly wage payments, and alleges "[o]n information and belief, each defendant failed and refused to pay . . . all timely wages due . . . twice a month." (*Id*. ¶¶ 175, 177.)

- Count V seeks damages under Labor Code § 221, prohibiting collection of employee wages, and alleges "Defendants have deducted portions of wages" and, "[o]n information and belief, certain funds were deducted from . . . pay checks under the guise of deductions for medical and dental benefits, 401(k) contributions, tax obligations, and other fringe benefits." (*Id*. ¶¶ 188-189.)

- Count VI seeks damages under Labor Code § 2802, requiring reimbursement of necessary, employment related expenses, and alleges "certain employees were entitled to reimbursements for certain work-related costs" and "made expenditures and incurred losses . . . resulting from Defendants' failure to reimburse or authorize reimbursement." (*Id*. ¶¶ 199, 204.)

- Count VII seeks penalties under Labor Code § 226(a), requiring itemized wage statements, and alleges "Defendants . . . provided, or caused to be provided, inaccurate pay statements that reflected itemized deductions for medical benefits, 401(k) contributions, tax obligations, dental benefits, and other fringe benefits when such deducted funds were not remitted to the respective entities for such alleged purposes." (*Id*. ¶ 214.)

- Count IX seeks damages under the FLSA, and alleges "Defendants" failed to pay "the required minimum wage" and "required overtime compensation." (*Id*. ¶¶ 237-239.)  Plaintiffs also seek to bring their FLSA claims as a collective action.  (*Id*. ¶¶ 38-48.)

Significantly, the SAC fails to identify on whose behalf the claims are asserted, stating in places they are brought on behalf of "all similarly situated persons who were employed by CSSE" and in others that the Class Members were employed by "the Company and/or Debtors."  Without specifying which Company or Debtor, if any, employed each Plaintiff.  (*Id*. ¶¶ 11, 29.)

## ARGUMENT

## I.   Pleading Standards Under Rules 12(b)(6) and 9(b).

The applicable pleading standards are reflected in the FAC Order.  (Adv. 89 at 6-8.)

## II.   Count I For Fraud Fails To State A Claim Under Rules 9(b) And 12(b)(6).

The Court should dismiss Count I because the SAC fails to plead particularized facts to state a fraud claim against Mr. Rouhana under Rule 9(b)'s heightened pleading standard.

### A.   Several Of The Statements Made By Mr. Rouhana Are True.

To plead fraud, a plaintiff must allege: (1) a material misrepresentation or omission of fact; (2) made with knowledge of its falsity; (3) with intent to defraud; and (4) reasonable reliance; (5) that causes the plaintiff damage.  *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *In re OSC 1 Liquidating Corp.*, 529 B.R. 825, 832 (Bankr. D. Del. 2015) (same).

Several of the statements identified in the SAC do not satisfy the first element (material misrepresentation or omission of fact) because they are true.  The first part of Bonus Statement No. 2 must be true because non-payment of bonuses is part of the Plaintiffs' claims.  Health Benefits Statement No. 1 is a statement Mr. Rouhana made to "healthcare providers," not the employees. (SAC ¶ 77.)  Even if "relayed" to them, the SAC does not allege why or how anything Mr. Rouhana said to the "healthcare providers" was false.  Rather, the entire letter confirms

9

Plaintiffs' theory that health benefits were not covered or paid.  Additionally, Health Benefits Statement No. 2 is an accurate statement, because Plaintiffs allege Anthem terminated coverage. (*See* SAC ¶¶ 83, 85.)

### B.    The SAC Fails To Plead Intent Not To Perform Promissory Statements.

Bonus Statements Nos. 1 and 2, and Health Benefits Statements Nos. 3-5, are similarly not actionable.  The statements are predicated on promissory or predictive statements concerning expected future events, which the Court should find on their face are not actionable because they are aspirational expressions of beliefs, not facts.  *See Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 835 (2002) (applying "clear" principle that opinions expressing the maker's uncertain belief or personal judgment cannot form the basis of a fraud claim); *cf. Liqwd, Inc. v. L'Oreal USA, Inc.*, No. CV 17-14-JFB-SRF, 2019 WL 10252725, at *5 (D. Del. Apr. 30, 2019) ("Only statements of fact capable of being proven false are actionable under the Lanham Act because, when personal opinions on nonverifiable matters are given, the recipient is likely to assume only that the communicator believes the statements, not that the statement is true.").  The Statements are not actionable for the additional reason that the SAC fails to plead particularized facts showing any intent on behalf of Mr. Rouhana to not perform or bring about the future events he forecasted at the time he made these Statements.

When a fraud claim is based "on promissory statements, or expressions as to what will happen in the future, a plaintiff must plead 'particularized facts that allow the Court to infer that, at the time the promise was made, the speaker had no intention of keeping it.'"  *Dunn v. FastMed Urgent Care, P.C.*, No. CV 2018-0934 MTZ, 2019 WL 4131010, at * (Del. Ch., Aug. 30, 2019) (*quoting MicroStrategy Inc., v. Acacia Research Corp.*, No. CIV.A. 5735-VCP, 2010 WL 5550455, at *15 (Del. Ch. Dec. 30, 2010)); *see also Grunstein v. Silva*, No. CIV.A. 3932-VCN, 2009 WL 4698541, at *13 (Del. Ch. Dec. 8, 2009) (stating plaintiff must allege particularized facts

10

that infer "the speaker had no intention of performing").  Elaborating on this rule, the Delaware Chancery Court has stated "because the factual predicate of a promissory fraud claim is the speaker's state of mind at the time the statement is made, a general averment of a culpable state of mind is insufficient.  Instead, the plaintiff 'must plead specific facts that lead to a reasonable inference that the promissor had no intention of performing at the time the promise was made.'"  *Dunn*, 2019 WL 4131010, at *9 (*quoting Grunstein*, 2009 WL 4698541, at *13.  The basis for this is "because of the general rule that 'statements which are merely promissory in nature and expressions as to what will happen in the future are not actionable as fraud.'"  *Id*., *quoting Outdoor Techs., Inc. v. Allfirst Fin., Inc.*, No. CIV.A. 99C-09-151-JRS, 2001 WL 541472, at *4 (Del. Super. Apr. 12, 2001).  As the court stated in *Outdoor Techs.*, "[o]nly when such statements are made with the present intention not to perform will courts endorse a fraud claim."  2001 WL 541472, at *4.  "[F]ailure to keep a promise does not prove the promise was false when made."  *Id.* (*quoting Berdel, Inc. v. Berman Real Estate Mgmt., Inc.*, No. CIV.A. 13579, 1997 WL 793088, at *8 (Del. Ch. Dec. 15, 1997)).

A fraud claim under California law based on predictive statements similarly requires the plaintiff to establish "(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promisee; and (6) resulting damage to the promise[e]."  *Missakian v. Amusement Indus., Inc.*, 69 Cal. App. 5th 630, 654 (2021).  Importantly, "intent not to perform cannot be proved simply by showing a subsequent failure to perform."  *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015).  Here, Plaintiffs have not pled any facts to show Mr. Rouhana made any of the Statements

with fraudulent intent.  Rather, numerous allegations corroborate that Mr. Rouhana was doing everything in his power to close on the necessary financing, reinstate health benefits, and get the employees paid.  (*See e.g.* SAC ¶ 77.)

### C.    The SAC Fails To Adequately Allege Reliance.

To sustain a class claim based on promissory or predictive statements, in addition to alleging fraudulent intent not to perform, Plaintiffs must plead sufficient facts to establish that each member of the class reasonably relied on the predictive statement by taking, or refraining from taking, actions in response.  *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 327 (D. Del. 2012) (". . . reliance, cannot be proven through class-wide evidence and will, instead, require individualized proof demonstrating that each member of the Proposed Class took action in justifiable reliance upon ING's representation.").  The Court stated "[n]umerous courts have denied class certification of claims where reliance is an element based on their conclusion that proving reliance would cause individual issues to predominate over individual questions.  *Id.*

Courts have adopted different standards in identifying the degree of factual commonality required in the misrepresentations to class members in order to establish class-wide fraud.  The Third Circuit has highlighted the importance of uniformity among misrepresentations made to class members in order to establish that element of fraud on a class-wide basis.  *See In re LifeUSA Holding, Inc.*, 242 F.3d 136, 138-40 (3d Cir. 2001) (vacating class certification on appeal where "the gravamen of Plaintiffs' claims [was] that [the] Defendant's sales techniques and advertising constituted an allegedly fraudulent scheme" but where the district court had found that the annuity policies were not sold according to uniform sales presentations).  Conversely, the Ninth Circuit has found class treatment of fraud claims appropriate when stemming from a "common course of conduct."  *See In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006).  While there may be a presumption of reliance under certain circumstances, *(see, e.g., In re Tobacco II Cases*, 46 Cal.

4th 298, 328 (2009)).  Plaintiffs here fail to allege that the entire class was defrauded by a common course of action, and they allege that only portions of the putative class received the statements made by Mr. Rouhana.  (*See* SAC ¶ 69 (email sent to "all bonus-eligible CSSE employees"); ¶ 77 ("written communications directly to healthcare providers" and "subsequently relayed to [unidentified] employees"); ¶ 85 ("written statement to CSSE employees"); ¶ 94 ("emailed CSSE employees"); ¶ 95 ("emailed CSSE employees"); ¶ 96 ("emailed CSSE employees").)

"Actual reliance occurs when the defendant's misrepresentation is an immediate cause of the plaintiff's conduct, altering his legal relations, and when, absent such representation, the plaintiff would not, in all reasonable probability, have entered into the transaction."  *In re: First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 604 (S.D. Cal. 2016), *aff'd sub nom. Carrera v. First Am. Home Buyers Prot. Co.*, 702 F. App'x 614 (9th Cir. 2017) (*quoting Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004), *as modified* (Dec. 30, 2004). However, "the mere assertion of 'reliance' is insufficient.  The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual reliance."  *Cadlo*, 125 Cal. App. 4th at 519.  In order to prove reliance on an omission, "[o]ne need only prove that, had the omitted information been disclosed one would have been aware of it and behaved differently."  *In re: First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. at 604 (*quoting Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093, (1993).)  Plaintiffs do no more than allege, in impermissibly conclusory fashion, that all class members detrimentally relied on "each and every material misrepresentation and omission," and such an allegation, particularly when the statements are not even alleged to have been made to the entire class, is facially insufficient.  (*See* SAC ¶ 145.)

13

Moreover, as noted above, several of Mr. Rouhana's alleged statements transparently explain the companies were experiencing cash flow issues, stating things like "funding has not yet closed" and expressing "hope" for resolution and "working nonstop" and "working tirelessly to remedy our current situation." (*See* SAC ¶¶ 69, 95.)  Such allegations render detrimental reliance implausible, if not impossible.  Accordingly, classwide reliance cannot be presumed.  *See In re Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 7734558, at *22 (N.D. Cal. Sept. 14, 2016); *see also Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 228 (2012).

In sum, Plaintiffs have made no particularized showing as to how the entire class relied on each and every promissory or aspirational statement by Mr. Rouhana.  Nor have they alleged why each of the named Plaintiffs allegedly relied on each and every statement by Mr. Rouhana.

## III.    Count II For Conversion Fails To State A Claim Under Rule 12(b)(6).

Count II's theory of liability has also not changed:  like the FAC, the SAC alleges that "Plaintiffs have an absolute, unconditional, and fully vested ownership right or possessive right to all their wages," and are entitled to damages for "Defendants' conversion of . . . unpaid wages for work performed." (SAC ¶¶ 152, 160.)  But, the California Supreme Court has held that claims for common-law wage conversion are not cognizable.  *See Voris*, 7 Cal. 5th at 1145, 1162-63.

## IV.    Counts III Through VII Under The Labor Code Fail Under Rule 12(b)(6).

### A.    Mr. Rouhana Has No Personal Liability For Any Labor Code Violation.

The SAC advances three theories for holding Mr. Rouhana personally liable for alleged Labor Code violations, none of which is supported by well-pled facts that meet the applicable tests.

First, Counts III through VIII allege Labor Code violations against Mr. Rouhana as an owner, director, or officer pursuant to Labor Code § 558.1.  (*See* SAC ¶ 19.)  That section extends liability to an "owner, director, officer . . ." who "violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802" of the Labor Code.  Cal. Lab. Code § 558.1(a), (b); *see also*

*Reyes v. Five Diamond Cold Storage, Inc*., No. 1:24-cv-00028-JLT-SAB, 2024 WL 3011123, at

\*11 (E.D. Cal. June 11, 2024), *report and recommendation adopted*, No. 1:24-cv-0028-JLT-SAB,

2024 WL 3252911 (E.D. Cal. July 1, 2024).  The Court should dismiss these Counts because the

SAC, like the FAC, fails to plead any facts showing Mr. Rouhana *caused* any Labor Code

violation.

Section 558.1 "does not enable courts to, in effect, pierce the corporate veil to hold

corporate owners, shareholders, or other officers liable for wrongdoing committed by the employer

corporation." *Roush v. MSI Inventory Serv. Corp*., No. 2:17-CV-1010-JAM-KJN, 2018 WL

3637066, at \*3 (E.D. Cal. July 30, 2018).  Personal liability attaches only "if they themselves acted

to violate or cause the violation of California's labor laws." *Id*.

As the FAC Order recognized (*see* Adv. 89 at 12), to "cause" a Labor Code violation, an

individual must have engaged in some affirmative action beyond their status as an owner, director,

or officer.  *See Russo v. Fed. Med. Servs., Inc.*, 744 F. Supp. 3d 914, 920-21 (N.D. Cal. 2024).

The individual must (1) have been directly involved in the alleged violation, or (2) have had

sufficient participation in managing or overseeing the activities of those persons directly

responsible for the alleged violation.  *See Usher v. White*, 64 Cal. App. 5th 883, 896-97 (2021).

Courts dismiss claims that do not allege individual wrongdoing.  *See Carter v. Rasier-CA, LLC*,

No. 17-CV-00003-HSG, 2017 WL 4098858, at \*5 (N.D. Cal. Sept. 15, 2017), *aff'd*, 724 F. App'x

586 (9th Cir. 2018); *Roush*, 2018 WL 3637066, at \*3; *Rios v. Linn Star Transfer, Inc.*, No. 19-cv-

07009-JSC, 2020 WL 1677338, at \*6 (N.D. Cal. Apr. 6, 2020).

The SAC alleges no affirmative action by Mr. Rouhana beyond, sending or causing

communications to be sent regarding aspirational future payments and hopeful resolution of "cash

flow constraints."  (SAC ¶¶ 69-72, 94-96.)  Plaintiffs have added no new allegations of affirmative

actions taken by Mr. Rouhana beyond his status as a director and officer. *Usher*, 64 Cal. App. 5th at 898 (citing *McDonald v. Ricardo's on the Beach, Inc.*, No. CV 11-9366 PSG MRWX, 2013 WL 153860, at *2 (C.D. Cal. Jan. 15, 2013). Courts have similarly found CEOs or presidents of national corporations are not 'employers' absent findings of control over day-to-day operations or involvement in the management, wages, or working conditions of specific employees working in California – there are no such allegations in the SAC. *See Combs v. Greenfield*, No. C 09-06042 SI, 2010 WL 1912113 (N.D. Cal. May 11, 2010). Further, Plaintiffs' allegation that Mr. Rouhana controlled corporate finances and "refus[ed] to prioritize, or even make, payroll obligations" (SAC ¶ 180) directly contradicts the allegation that "CSSE[] and other Debtors" had the "ability to pay wages and benefits" (SAC ¶139). *See Balascio v. Leitzke (In Re: Leitzke)*, No. 13-12156, Adv. No. 14-50017, 2014 WL 3583706, at *4 (Bankr. D. Del. July 18, 2014) (courts need not draw inferences contradicted by other allegations or are otherwise unreasonable).

Count III alleges Mr. Rouhana is liable under § 558.1 because "[a]s CEO…[he] had tremendous influence over payroll and personally oversaw and acted to influence the payment of benefits, fringe benefits, wages, and deductions." (SAC ¶ 166.) Yet, the SAC is bereft of any facts showing he engaged in any affirmative actions regarding employee wages. *See Russo*, 744 F. Supp. at 920-21. Plaintiffs' allegations remain conclusory and "bare bones." *Rios v. Linn Star Transfer, Inc.*, No. 19-CV-07009-JSC, 2020 WL 1677338, at *6 (N.D. Cal. Apr. 6, 2020) (dismissing claims CEO "violated, or caused to be violated" various Labor Code statutes because "merely repeating a legal conclusion without alleging sufficient *facts* to support that legal conclusion does not state a plausible claim for relief.") (emphasis in original).

Counts VI and VII allege that "[a]ll individual Defendants in their positions . . . subject[s] each individual Defendant to personal liability under Cal. Lab. Code § 558.1." (*Id.* ¶ 208; *see also*

*id*. ¶ 219.)  In addition to the fact that the Court already ruled that this kind of unspecified group pleading fails to state a claim against Mr. Rouhana, the SAC is devoid of facts specifying any actions Mr. Rouhana took linking him to any Labor Code violation.

Second, Counts IV and V allege that "[e]ach Defendant" is personally liable under the California Industrial Welfare Commission's ("IWC") definition of "employer" because "[e]ach Defendant exercised control over the wages and hours of employees."  (SAC ¶¶ 178, 192.) Plaintiffs' reliance on impermissible group pleading alone is grounds to dismiss Counts IV and V. Additionally, the SAC is devoid of any factual allegations supporting the conclusory assertion that Mr. Rouhana "exercise[ed] control" over any employee's wages or hours.  *See Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010) (defining "employer" under the IWC as one who "exercises control over . . . wages, hours, or working conditions").  To survive a motion to dismiss allegations of personal liability based on the "exercise control" standard, a plaintiff must allege "facts in support of this legal conclusion."  *Phillipps v. Pac. Maritime Ass'n*., No. 25-cv-03241-JST, 2025 WL 1726404, at *1 (N.D. Cal. June 20, 2025) (dismissing complaint that lacked "factual content" specifying control over plaintiff's working conditions); *Moreno v. Zuckerman Family Farms, Inc*., No. 2:25-cv-01574-CKD, 2026 WL 323088, at *3 (E.D. Cal. Feb. 6, 2026) (dismissing complaint because "naked assertions" did not satisfy "exercise control" standard).  The SAC does not allege that Mr. Rouhana had anything to do with setting employee wages, hours, or working conditions.

Third, to circumvent the rule that, even under the IWC definition of "employer," individual corporate agents acting ***within*** the scope of their agency do not qualify as "employers," *Martinez*, 49 Cal. 4th 66, Counts IV, V, and VII allege that Mr. Rouhana "acted ***outside*** the scope of . . . [his] agency."  (*See* SAC ¶¶ 180, 194, 217 (emphasis added).)  The Court should not accept this

17

conclusory allegation as true because it lacks any factual support explaining what the scope of his agency as an officer was, or how he acted outside of it as to any alleged Labor Code violation.

### A.    Count III Under Labor Code §§ 1194 And 1197 Fails To State A Claim.

The Court should dismiss Count III because the SAC fails to plead a plausible claim under Labor Code §§ 1194 and 1997, which regulate overtime wages and minimum wages, or any basis on which to hold Mr. Rouhana personally liable.  To state minimum or overtime wage claims under §§ 1194 and 1197, Plaintiffs must identify "'at least one workweek when [they] worked in excess of forty hours and [were] not paid for the excess hours in that workweek, or [were] not paid minimum wages.'"  *Reyes*, 2024 WL 3011123, at \*6 (*quoting Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014) (holding that, post-*Iqbal*, conclusory allegations that merely recite the statutory requirements of wage-and-hour claims under the FLSA are inadequate to state a plausible claim)); *see also Cook v. Land O'Lakes, Inc.*, No. 1:20-CV-00553-NONE-SAB, 2020 WL 5633045, at \*8 (E.D. Cal. Sept. 21, 2020) (recognizing that *Landers* also applies to Labor Code claims), *report and recommendation adopted*, No. 1:20-CV-00553-NONE-SAB, 2020 WL 5983346 (E.D. Cal. Oct. 8, 2020).

The SAC fails to allege any of the facts required under *Landers*.  Although within their knowledge, Plaintiffs do not identify any workweek in which ***they*** were paid less than the minimum wage or worked more than the maximum hours without being paid overtime.  *See Reyes*, 2024 WL 3011123, at \*6 (dismissing §§ 1194 and 1197 claims because plaintiff failed "to identify any workweek where she worked in excess of forty hours and was not paid for the excess hours in that workweek or was not paid minimum wages").  The SAC does not even allege whether any Plaintiff was an hourly employee, or any other facts from which the Court could infer what hours any Plaintiff typically worked during a workweek, their hourly wage rate, or an estimated amount of minimum and overtime wages owed.  *See id.*  The SAC's vague and conclusory allegations that

18

"California Sub-Class plaintiffs were not routinely paid for all wages, commissions, and/or non-discretionary bonuses and/or PTO due," that "[e]ach" of them "was paid less than the minimum wage requires . . . for some or all of the hours worked," and that "[s]ome or all of [them] . . . were not paid by **Defendants** for the overtime hours worked" (SAC ¶¶ 163-164 (emphasis added)), do not state a plausible claim under *Landers* because they do not identify what constitutes "routine" and whether that represented an average workweek. *Id*. at *7 (collecting cases).

The SAC also contains no factual allegations specifying any action Mr. Rouhana took, that links him to any alleged violations of §§ 1194 or 1197, without which there is no basis to hold him personally liable under § 558.1. (*See* § IV.A.) The threadbare allegation that Mr. Rouhana had "tremendous influence over payroll and personally oversaw and acted to influence the payment of benefits, fringe benefits, wages, and deductions." (SAC ¶ 168), does not adequately allege any factual support of direct involvement necessary to show that he caused any alleged §§ 1194 or 1197 violations. (*See* § IV.A.)[11]

## B.    Count IV Under Labor Code § 204 Fails To State A Claim.

Plaintiffs cannot allege a plausible claim against Mr. Rouhana under Labor Code § 204, which requires wage payments on a semi-monthly basis, because California does not recognize individual liability under this section. *See Rios*, 2020 WL 1677338, at *3. "By its plain terms," § 558.1, which extends liability for enumerated Labor Code violations to an individual who is an "owner, director, officer, or managing agent" "acting on behalf of an employer," does not incorporate, and thus, does not apply to, § 204. *Id*. at *3-4 (citing § 558.1(a) (listing only "Sections 203, 226, 226.7, 1193.6, 1194, or 2802" as within its coverage); *see also See's Candy Shops, Inc.*

---

[11] In fact, the SAC alleges Mr. Rouhana **lacked** such control as he stated "due to economic conditions and cash-flow constraints, the Company would not pay the awards as originally anticipated" (SAC ¶ 69), that CSSE "hope[d] to pay [Motus reimbursements] next week" (SAC ¶ 95), and CSSE "hope[d] to fund payroll . . . by Monday." (SAC ¶ 96.)

*v. Super. Ct.*, 210 Cal. App. 4th 889, 904-05 (2012) ("[T]he sole purpose of [§ 204] is to require an *employer* of labor . . . to maintain two regular pay days each month.") (emphasis added).

Plaintiffs' vague, conclusory, and threadbare allegation that Mr. Rouhana is liable as Plaintiffs' "employer" because "each ***Defendant*** exercised control over the wages and hours of employees" (SAC ¶ 178 (emphasis added)), and he was CEO and "member[] of the Board" (*id.* ¶ 180), is legally and factually incorrect, should not be accepted as true because it contradicts the allegation that CSSE was the employer (SAC ¶ 174), and does not satisfy the "exercises control" test under the IWC definition of "employer." (*See* § IV.A.) The SAC's alternative theory of holding Mr. Rouhana personally liable based on the equally vague, conclusory, and threadbare allegation that "each individual ***Defendant*** acted outside the scope of his or her agency" (SAC ¶ 179 (emphasis added)), also fails for the reasons stated above. (*See* § IV.A.) Count IV relies on impermissible group pleading. (*See* Adv. 89 at 8-11.)

The SAC also fails to allege even the most basic facts to state a plausible § 204 claim, although this information is within Plaintiffs' knowledge. For example, while the SAC alleges that per Employee Handbook, CSSE employees were to be paid on a biweekly basis (SAC ¶ 90), the SAC fails to allege how often Plaintiffs were actually paid (or not paid), or whether any of them was not paid on a semi-monthly basis at any time. *See Barajas v. Blue Diamond Growers Inc.*, No. 1:20-CV-0679 JLT SKO, 2022 WL 1103841, at *21 (E.D. Cal. Apr. 13, 2022) (dismissing § 204 because plaintiffs did not allege how frequently they received paychecks such that the court could assess whether plaintiffs plausibly alleged existence of a violation). Granting leave to amend to cure these pleading deficiencies would be futile because individual liability does not exist under § 204. *See Perez v. DNC Parks & Resorts at Sequoia*, No. 1:19-cv-00484-DAD-SAB, 2020 WL 4344911, at *6 (E.D. Cal. July 29, 2020) (dismissing with prejudice where

plaintiffs "were already given the opportunity to cure . . . and failed to make any effort to do so," thus, "granting further leave to amend . . . would be futile and prejudicial to defendants").  The Court should dismiss Count IV with prejudice.[12]

### C.    Count V Under Labor Code § 221 Fails To State A Claim.

Plaintiffs cannot allege a plausible claim against Mr. Rouhana under Labor Code § 221, prohibiting "any *employer* to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."  Cal. Lab. Code § 221 (emphasis added).  There is no individual liability under § 221, which expressly extends liability only to "employer[s]."  *Id.* Section 558.1 does not incorporate, and thus, does not apply to, § 221.  *See* Cal. Lab. Code § 558.1 (listing only "Sections 203, 226, 226.7, 1193.6, 1194, or 2802" as within its coverage).  *Accord Rios*, 2020 WL 1677338, at *3 (holding same as to §§ 201 and 204, which are limited only to "employers," not individual owners, directors, officers, or managing agents "acting on behalf of an employer" within the meaning of § 558.1); *Cordell v. PICC Lines Plus LLC*, No. 16-cv-01814-TEH, 2016 WL 4702654, at *8 (N.D. Cal. Sept. 8, 2016) (dismissing with prejudice § 201 claim against individual because it imposes liability only on "employers").  Plaintiffs' vague, conclusory, and threadbare allegation that Mr. Rouhana is liable as Plaintiffs' "employer" because "each ***Defendant*** exercised control over the wages and hours of employees" (SAC ¶ 192 (emphasis added)), and he was CEO and a member of the Board (*id.* ¶ 194), is legally and factually incorrect, should not be accepted as true because it contradicts the allegation that CSSE was the employer (SAC ¶ 187), and does not satisfy the *Martinez* test for holding Mr. Rouhana liable under the IWC definition of employer.  (*See* § IV.A.)  The SAC's alternative theory of holding Mr. Rouhana personally liable is based on the equally vague, conclusory, and threadbare allegation that "each

---

[12] As Plaintiffs have failed to state a claim under Labor Code § 204, they are not entitled to recover penalties under Labor Code § 210.

individual *Defendant* acted outside the scope of his or her agency" (SAC ¶ 193 (emphasis added)), and fails for the reasons stated above.  (*See* § IV.A.)  Count IV, thus, also fails to cure the group pleading defects on which the Court dismissed the FAC.  (*See* Adv. 89 at 8-11.)

The SAC also fails to allege even the most basic facts to state a plausible § 221 claim.  *See Barajas*, 2022 WL 1103841, at *21 (dismissing § 221 because plaintiffs failed to allege how defendant "collected" wages).  For example, Plaintiffs do not allege any facts showing *they* participated in any employee benefit programs subject to payroll deductions, actually contributed to any such employee benefit programs, experienced any instances where they had wages deducted from their paychecks that were not properly allocated, or the nature or amount of any individual losses they suffered as a result.  The Court should dismiss Count V with prejudice.

### D.      Count VI Under Labor Code § 2802 Fails To State A Claim.

The Court should dismiss Count VI because the SAC fails to plead sufficient facts to state a plausible claim under Labor Code § 2802(a), which requires reimbursement of "necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties," Cal. Lab. Code § 2802, or any basis on which to hold Mr. Rouhana personally liable.

The SAC alleges that "*certain* employees were entitled to reimbursements for *certain* work-related costs pursuant to the Employee Handbook," "*some* of California Sub-Class plaintiffs were required to travel or incur certain expenses . . . in connection with their employment," and they "made expenditures or incurred losses . . . resulting from the *Defendants'* failure to reimburse."  (SAC ¶¶ 199-200, 204 (emphasis added).)  Beyond these mere conclusory recitations of the elements of a § 2802 violation, Plaintiffs do not allege any facts showing what *their* job duties were or whether those duties required *them* to incur business-related expenses, or more importantly, whether *they* actually incurred any business-related expenses that were both "necessary" and unreimbursed, the reasons why, or the amount of any such "necessary"

unreimbursed expenses.  Without these basic facts, which are within Plaintiffs' knowledge, the SAC fails to state a plausible § 2802 claim.  *See Hassell v. Uber Techs., Inc.*, No. 20-cv-04062-PJH, 2020 WL 7173218, at *3 (N.D. Cal. Dec. 7, 2020) (dismissing § 2802 claim because plaintiff did not allege he incurred any unreimbursed expenses, or the nature or amount of any unreimbursed expenses to assess whether he plausibly alleged a violation occurred).

The SAC also contains no factual allegations specifying any action Mr. Rouhana took that links him to any alleged violations of § 2802, without which there is no basis to hold him personally liable under § 558.1.  (*See* § IV.A.)  The Court should not infer otherwise because the SAC alleges that employees were required to seek reimbursement through third-party benefits processor Motus, which "provided reimbursement processing and/or administration services to employees."  SAC ¶¶ 26, 201, which contradicts that Mr. Rouhana had any direct involvement.  *See Leitzke*, 2014 WL 3583706, at *4 (courts need not draw inferences contradicted by other allegations or are otherwise unreasonable).  Count IV, thus, also fails to cure the group pleading defects on which the Court dismissed the FAC.  (*See* Adv. 89 at 8-11.)

**E.    Count VII Under Labor Code § 226(a) Fails To State A Claim.**

The Court should dismiss Count VII because the SAC fails to plead sufficient facts to state a plausible claim under Labor Code § 226(a), authorizing statutory penalties for an employer's "knowing and intentional failure" to provide itemized wage statements, Cal. Lab. Code § 226(a), or any basis on which to hold Mr. Rouhana personally liable.

Plaintiffs seek penalties under § 226(e).  (SAC ¶ 222.)  But non-compliant wage statements alone do not warrant penalties; an employee must show an injury flowing from the non-compliance.  *See Hill v. Pacific Maritime Ass'n*., No. 24-cv-00336-JSC, 2025 WL 1282628, at *3 (N.D. Cal. May 2, 2025).  This injury requirement is met only if an employer does not include the

nine items in § 226(a), *and* (2) as a result, employees "cannot promptly and easily determine," from the wage statement, the information in § 226(e)(2)(B)(i)-(iv). Cal. Lab. Code § 226(e)(2)(B).

The SAC fails to satisfy either prong of the injury requirement.  The SAC does not allege that any Plaintiff received any wage statement that did not include any of the nine required items. The SAC's allegation that "California Sub-Class plaintiffs . . . could not properly quantify their pay and/or earnings for purposes of filing accurate taxes and believed benefits and employer contributions were made when they were not, resulting in out-of-pocket medical expenses and lost contributions" (SAC ¶ 216), is inadequate because it does allege facts identifying what information set forth in § 226(e)(2)(B) was missing, or explain how that missing information prevented any employee from calculating their wages. *See Hill*, 2025 WL 1282628, at *3 (dismissing § 226(e) claim because plaintiffs failed to plead injury caused by lack of accurate wage statements).

Instead, Plaintiffs' theory is that, because "deducted funds [from wage statements] were not remitted to the respective entities for such alleged purposes," the wage statements were by default "inaccurate."  (SAC ¶ 214.)  In other words, Plaintiffs do ***not*** allege that deductions were missing from wage statements.  Plaintiffs' theory is not cognizable under § 226(a), and it is derivative of the other inadequately plead wage claims.  *See Hill*, 2025 WL 1282628, at *3 (dismissing § 226(a) claim based on inadequately plead wage and hour claims).  The SAC also contains no factual allegations specifying any action Mr. Rouhana took that links him to any alleged violations of § 226(a), without which there is no basis to hold him personally liable under § 558.1.  (*See* § IV.A.)  The Court should not infer otherwise because the SAC alleges that the Company utilized third-party payroll processor UKG to "administer CSSE's payroll operations" and "was responsible for . . . "processing payroll deductions, including deductions for health insurance premiums, retirement contributions, garnishments, federal and/or state taxes, or other

benefits" and "generating pay statements" (SAC ¶ 25), which contradicts that Mr. Rouhana had

any direct involvement.  *See Leitzke*, 2014 WL 3583706, at *4 (courts need not draw inferences

contradicted by other allegations or are otherwise unreasonable).  Moreover, the SAC alleges that

"***Defendants***," without specifying who, "failed . . . to furnish . . . accurate itemized statements."

(SAC ¶ 213 (emphasis added).)  Count VII, thus, fails to cure the group pleading defects on which

the Court dismissed the FAC.  (*See* Adv. 89 at 8-11.)

## V.   <u>Count IX Under The FLSA Fails To State A Claim.</u>

### A.   **The SAC Fails To Plead Sufficient Facts To State An FLSA Violation.**

The Court should dismiss Count IX because the SAC fails to plead sufficient facts to state

a plausible claim under the FLSA's minimum and overtime wage requirements, 29 U.S.C. §§ 201,

206-207.  Nor does it plead any basis on which to hold Mr. Rouhana personally liable.

Plaintiffs' FLSA claims are duplicative of their §§ 1194, and 1197 claims for failure to pay

minimum and overtime wages, and should be dismissed for failure to meet the requirements to

state a plausible claim under *Landers*.  (*See* § IV.B.)  *See also Barajas v. Blue Diamond Growers*,

No. 1:20-CV-00679 JLT SKO, 2023 WL 2333548, at *10-11 (E.D. Cal. Mar 2, 2023) (noting that,

"[f]ollowing *Landers*, courts repeatedly found allegations corresponding to the elements for an

FLSA claim could not withstand a motion to dismiss," and dismissing FLSA claims alleging only

that overtime violations occurred "routinely"); *Scott v. Cintas Corp*., No. 3:23-cv-05764-JSC,

2024 WL 1421277, at *3 (N.D Cal. Apr. 2, 2024) (dismissing FLSA overtime claims based on

conclusory allegation that employer "failed to pay [plaintiff] … the overtime wages" he was

entitled to under the FLSA); *Perez*, 2020 WL 4344911, at *8 (dismissing FLSA claims because

plaintiffs could have, but did not, "allege facts demonstrating there was at least one workweek in

which they worked in excess of forty hours and were not paid overtime wages").

The SAC also contains no factual allegations showing that Mr. Rouhana qualifies as an "employer" subject to potential liability under the FLSA.  FLSA liability extends to individuals who "exercise[] 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship." *Lowenthal v. Quicklegal, Inc.*, No. 16-cv-03237-LB, 2016 WL 5462499, at *8 (N.D. Cal. Sept. 28, 2016) (*quoting Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009)).  The SAC alleges through impermissible group pleading that "each Defendant exercised control over the nature and structure of the employment relationship or economic control over the relationship, including day-to-day operations."  (SAC ¶ 242.)  This vague and conclusory allegation merely parrots the elements of personal liability under the FLSA, which is insufficient to state a plausible claim against Mr. Rouhana.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  There are no non-conclusory allegations supporting that Mr. Rouhana had any involvement in the day-to-day oversight of any employees.  (*See* SAC ¶ 243.)  The allegation that he "exercised significant operational control ... including payroll and payroll administration" (*id.*), is not supported by any facts, and is contradicted by the allegation that the Company used third-party UKG to oversee payroll administration functions and, thus, should not be accepted as true.  *See Leitzke*, 2014 WL 3583706, at *4.  In sum, the SAC bases its claim of personal liability under the FLSA solely on Mr. Rouhana's officer/director status, and "officer-, director-, or majority-shareholder-status alone is [not] sufficient to qualify as an 'employer'" liable under the FLSA.  *Id.* at *9.

## B.    The SAC Fails To Plead Facts To Support An FLSA Collective Action.

For the first time, Plaintiffs seek to bring their FLSA claims as a collective action.  Because the SAC fails to plead facts that state an FLSA claim against Mr. Rouhana, the Court need not consider whether the SAC adequately pleads the requirements for bringing an FLSA collective

action.  It does not.  Plaintiffs have failed to adequately allege that (1) they and the class were subject to any common, *illegal* policy or practice that violated the FLSA, or (2) that they and the class were similarly situated as to their employment relationships and pay provisions.  *Shann v. Durham Sch. Servs., L.P.*, 182 F. Supp. 3d 1044, 1046-47 (C.D. Cal. 2016).

### 1.   The SAC Fails To Allege A Common, Illegal Policy Or Practice That Violated The FLSA.

To properly plead their collective class claims to represent all current and former employees of the Company and/or Debtors employed in the United States, Plaintiffs must allege that the Company subjected them and all class members to the same common, *illegal* policy or practice on a nationwide basis.  *Mendez v. H.J. Heinz Co., L.P.*, No. CV125652GHKDTBX, 2012 WL 12888526, at *4 (C.D. Cal. Nov. 13, 2012) ("To adequately assert class allegations, Plaintiff must allege facts that would plausibly suggest that members of the putative class are subjected to the same offending policies.").

The SAC fails to allege the existence of any common, *illegal* policy or practice that violated the FLSA's wage and hour provisions, which is a required element to bring an FLSA claim as a collective action.  (*Id.*)  Plaintiffs' vague and conclusory allegations that "Defendants" had "employment policies, practices and procedures . . . which violate the FLSA," "create[d] and maintain[ed] policies, practices and customs that knowingly deny employees" their rights under the FLSA, and that "[l]iability is based on a systemic course of wrongful conduct by Defendants" that "was widespread, repeated, and consistent" (SAC ¶¶ 3, 5, 43, 45), are insufficient to this requirement.  *See Harding v. Time Warner, Inc.*, No. 09CV1212WQH-WMC, 2010 WL 457690, at *5 (S.D. Cal. Jan. 26, 2010) (dismissing "practice" allegations where there were no "specific factual allegations which suggest that, in practice, [the employer's] policies resulted in" the

wrongful conduct alleged); *Landers*, 771 F.3d at 644 ("we do not agree that conclusory allegations that merely recite the statutory language are adequate").

Instead, Plaintiffs' theory appears to be that the Company had a "standard practice . . . to provide each employee with an employee handbook." (SAC ¶ 63.)  There are no allegations, however, that any policy or procedure within the handbook violated the FLSA.  Rather, the allegations suggest that the handbook was FLSA-compliant.  (*See, e.g., id*. at 65 (alleging that the employee handbook had a policy of paying overtime consistent with FLSA requirements).)

> **2.     The SAC Fails To Allege That Plaintiffs And The Entire Class Had Similarly Situated Employment Conditions Or Pay Provisions.**

To successfully bring an FLSA claim on behalf of themselves and "all similarly situated persons," a named plaintiff must show that he or she is similarly situated to the absent members of the collective action and present "some identifiable factual or legal nexus [that] binds together the various claims of the class members . . .."  *Heath v. Google Inc.*, 215 F. Supp. 3d 844, 850-51 (N.D. Cal. 2016) (quoting *Russell v. Wells Fargo & Co.*, No. C 07-3993 CW, 2008 WL 4104212, at *3 (N.D. Cal. Sept. 3, 2008)).  However, the basis must be beyond mere conclusory allegations that their employment conditions were substantially similar to the class.  *Shann*, 182 F. Supp. 3d at 1046 (dismissing national FLSA collective claims where plaintiffs failed to specify their own job titles and descriptions or the job titles and descriptions of the class members).

In a collective action "plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018).  The SAC fails to allege any facts about Plaintiffs' job locations, titles, duties, exempt or non-exempt status, wage provisions, work schedules, or any other aspects of their employment.  For that reason alone, the Court should dismiss the FLSA collective action because there is no basis to determine whether

their working conditions were substantially similar to each other, let alone the proposed nationwide collective class. Collective actions require a proposed group of similarly situated employees or employees with "similar work experiences." *See Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWX), 2015 WL 4698475, at *7 (C.D. Cal. Apr. 27, 2015) (denying conditional certification where plaintiff failed to provide "the modest factual showing that he is "similarly situated" to other proposed collective group members' job requirements and pay provisions[.]").

To survive a motion to dismiss, the complaint must allege the plaintiff had similar experiences to the other employees in the putative class, which Plaintiffs do not do. *Mendez*, 2012 WL 12888526, at *4 (dismissing putative class claims because the plaintiff did not allege facts "to demonstrate or suggest that any member of the putative class, in California or nationwide, had similar work experiences"). The SAC's conclusory allegations that they and class members were "similarly situated," had "substantially similar pay provisions," had an "employment relationship" that was "identical or substantially similar," and the alleged harm did "not depend on the personal circumstances" of any of them (SAC ¶¶ 31, 40, 42), are insufficient. *Compare Shann*, 182 F. Supp. 3d at 1046, *with Fernandez v. Tox Corp.*, 677 F. Supp. 3d 1089, 1099 (C.D. Cal. 2023) (finding sufficient allegations where the complaint included three potential opt-in collective members with the same or similar job requirements and pay provisions.). In fact, the SAC concedes the proposed, nationwide class did ***not*** share substantially similar working conditions, acknowledging that compensation was dependent upon: whether an employee was "eligible" or "bonus-eligible," what the terms of each employee's "written employment agreement" were (which are not alleged), whether an employee was "actively employed" and in "good standing"; and, whether an employee met "performance" metrics. (*Id*. ¶¶ 64, 66, 67, 69, 71, 73, 74.)

Plaintiffs also fail to allege a single fact to support that they have any basis to know what the employment conditions of the collective class they seek to represent were, and instead plead solely upon information and belief.  District courts have found such tactics impermissible.  *See Mendez*, 2012 WL 12888526, at *4; *see also Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 756523, at *3 (C.D. Cal. Feb. 25, 2016) (dismissing overtime claim where plaintiff "[did] not allege the basis for his knowledge and belief that other [ ] employees worked shifts in excess of eight hours and/or forty hours without adequate compensation.").  For all of these reasons, the collective class allegations should be dismissed.

## **CONCLUSION**

Mr. Rouhana requests dismissal of all claims against him with prejudice and without leave to amend, given that this is Plaintiffs' fourth iteration of a complaint and any further pleading would be futile.[13]  *See In re Oakwood Homes Corp.*, 325 B.R. 696, 699 (Bankr. D. Del. 2005).

---

[13] In addition, a class action under Fed. R. Civ. P. 23 ("Rule 23") is also not allowed in this court.  *See In re Musicland Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007); *see also* Mr. Rouhana's Motion to Dismiss the FAC; Ms. Newmark's Motion to Dismiss the SAC; *In re Chaparral Energy, Inc*., No. 16-11144 (LSS), 2018 WL 818309, at *4 (Bankr. D. Del. Feb. 9, 2018).

Dated:  February 20, 2026
Wilmington, DE

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Donald J. Detweiler*
Donald J. Detweiler (DE Bar No. 3087)
1313 N. Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email:  don.detweiler@wbd-us.com

-and-

Cathy A. Hinger (admitted *pro hac vice*)
Victoria A. Bruno (admitted *pro hac vice*)
2001 K Street, NW
Suite 400 South
Washington, D.C. 20006
Telephone: (202) 467-6900
Facsimile: (202) 467-6910
Email: cathy.hinger@wbd-us.com
Email: victoria.bruno@wbd-us.com

*Counsel for Defendant William J. Rouhana, Jr.
And Amy L. Newmark*