**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., *et al.* [1], <br><br> Debtors. | Case No. 24-11442 (MFW) <br><br> (Jointly Administered) |
| BRIAN SKAJEM, LISA PAPATZIMAS, ERIN TUTTLE, DAVID ELLENDER, DARA COHEN, MATT LOZE, JESSICA STOECKELER, HEATHER BUNDY, CAREY CAMPBELL, KELLY BURKE HOPKINS, COURTNEY SMITH, on behalf of themselves and behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., REDBOX AUTOMATED RETAIL, LLC, WILLIAM J. ROUHANA, JR., AMY NEWMARK, JOHN T. YOUNG, ROBERT H. WARSHAUER, BART SCHWARTZ, and DOES 1-500, inclusive, <br><br> Defendants. | Adv. Pro. No. 24-50128 (MFW) |

**PLAINTIFFS' OMNIBUS BRIEF IN OPPOSITION TO THE MOTIONS
TO DISMISS THE SECOND AMENDED COMPLAINT**

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are: 757 Film Acquisition LLC (4300); Chicken Soup for the Soul Entertainment Inc. (0811); Chicken Soup for the Soul Studios, LLC (9993); Chicken Soup for the Soul Television Group, LLC; Crackle Plus, LLC (9379); CSS AVOD Inc. (4038); CSSESIG, LLC (7150); Digital Media Enterprises LLC; Halcyon Studios, LLC (3312); Halcyon Television, LLC (9873); Landmark Studio Group LLC (3671); Locomotive Global, Inc. (2094); Pivotshare, Inc. (2165); RB Second Merger Sub LLC (0754); Redbox Automated Retail, LLC (0436); Redbox Entertainment, LLC (7085); Redbox Holdings, LLC (7338); Redbox Incentives LLC (1123); Redwood Intermediate, LLC (2733); Screen Media Films, LLC; Screen Media Ventures, LLC (2466); and TOFG LLC (0508). The Debtors' corporate headquarters and service address is 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND .................................................................................................3

    A.     Rouhana and Newmark Acquire CSSE and Redbox and Asserted Control Over Such Companies. ................................................................3

    B.     Employees Did Not Receive Bonuses Pursuant to Sales Incentive Plans, Non-Discretionary Cash Retention Award or Other Non-Discretionary Bonuses. ................................................................4

    C.     Employees Were Not Provided with Medical or Other Benefits, Yet Deductions Continued to be Taken from Their Paychecks. ................5

    D.     Employees Were Not Paid Wages or Reimbursed for Travel Expenses. ................................................................6

    E.     Defendants Warshauer and Young are Appointed to the Board and SRC. ................................................................7

    F.     Defendant Schwartz and CSSE's Bankruptcy Filing. ................8

    G.     The SRC Perpetuated Mismanagement Post-Petition Following the Interim DIP Order. ................................................................9

    H.     The Bankruptcy Court Converts the Debtors' Cases to Chapter 7 After Learning About the Magnitude of Mismanagement and Lack of Funding. ................................................................10

    I.     Plaintiffs Commence this Adversary Proceeding Behalf of Themselves and Potential Class Members. ................................11

LEGAL STANDARD ................................................................................................13

I.     MOTION TO DISMISS. ................................................................13

ARGUMENT ................................................................................................14

I.     THE SAC ADEQUATELY PLEADS FRAUD (COUNT I). ................14

    A.     Plaintiffs Allege Defendants Knowingly Made Material Misrepresentations and Omissions Regarding Wage Payments, Reimbursements, and Reinstatement of Healthcare. ................15

    B.     Plaintiffs Plausibly Allege Intent. ................................................19

i

C.      Plaintiffs Plausibly Allege Reliance Based on the Material Misrepresentations or Omissions Because the Employees Continued Working At All Times...............................................................23

II.      THE SAC ADEQUATELY PLEADS CONVERSION (COUNT II). ...............................24

III.     THE SAC PLAUSIBLY PLEADS VIOLATIONS OF THE CALIFORNIA LABOR CODE AGAINST EACH DEFENDANT.........................................................27

A.      Plaintiffs Have Standing to Bring California Labor Code Claims. ........................27

B.      Each Individual Defendant Face Personally Liability Under Section 558.1 of the Cal. Lab. Code. .........................................................................28

C.      Failure to Pay Wages (Count III) is Properly Pled under California Law. ..........................................................................................................30

D.      Failure to Timely Pay Wages (Count IV) is Properly Pled under California Law. ..........................................................................................32

E.      Violation of Labor Code Cal. Lab. Code § 221, Et Seq. (Count V) is Properly Pled under California Law.......................................................37

F.      Failure to Reimburse Expenses (Count VI) is Properly Pled Under California Law. ..........................................................................................41

G.      Failure to Provide Accurate Wage Statements (Count VII) is Properly Pled under California Law. ......................................................................43

H.      Failure to Pay Wages at Time of Termination (Count VIII) is Properly Pled under California Law. ......................................................................47

IV.      THE PLAINTIFFS SUFFICIENTLY STATED A CLAIM FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT..........................................49

A.      Plaintiffs State a Viable FLSA Claim................................................................49

B.      Plaintiffs Plausibly Allege Defendants Are "Employers" Under the FLSA..........................................................................................................51

C.      Plaintiffs Adequately Plead a Collective Action. .................................................53

V.       ALTERNATIVELY, THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND. ..........................................................................................55

CONCLUSION..............................................................................................................56

17774350

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fischer v. Machado*,
50 Cal.App.4th 1069 (Cal. Ct. App. 1996) ...............................................................25

*Allen v. Bd. of Pub. Educ. for Bibb Cnty.*,
495 F.3d 1306 (11th Cir. 2007) ...............................................................................50

*Alpizar-Fallas v. Favero*,
908 F.3d 910 (3d Cir. 2018)....................................................................................14

*Alvarenga v. Carlson Wagonlit Travel, Inc.*,
1:15-cv-01560-AWI-BAM, 2016 WL 466132 (E.D. Cal. Feb. 8, 2016) ...............26

*In re Am. Bus. Fin. Servs.*,
384 B.R. 80 (Bankr. D. Del. 2008) .........................................................................13

*Arneault v. Diamondhead Casino Corp.*,
277 F. Supp. 3d 671 (D. Del. 2017)........................................................................55

*Arroyo v. Internat. Paper Co.*,
611 FSupp3d 824 (N.D. Cal. 2020) ..................................................................42, 44

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................13

*Axonic Cap. LLC v. Gateway One Lending & Fin.*,
No. CV 18-5127 PSG (SSX), 2019 WL 4138024 (C.D. Cal. May 22, 2019) ........19

*Aylesbury Mercantile Co. v. Fitch*,
99 P. 1089 (Okla. 1962) ..........................................................................................25

*Barajas v. Blue Diamond Growers Inc.*,
No. 1:20-CV-0679 JLT SKO, 2022 WL 1103841 (E.D. Cal. Apr. 13, 2022)........33

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................13

*Benak v. Alliance Capital Mgmt. L.P.*,
435 F.3d 396 (3d Cir. 2006).....................................................................................54

*Bernstein v. Health Net Life Ins. Co.*,
Case No. 12-cv-717-AJB(JMA), 2013 WL 12095240 (S.D. Cal. Apr. 4, 2013).....14

17774350

*Boucher v. Shaw*,
572 F.3d 1087 (9th Cir. 2009) ...............................................................................52

*Bowman v. Presley*,
2009 OK 48, 212 P.3d 1210.....................................................................................15

*Bradstreet v. Wong*,
75 Cal. Rptr. 3d 253 (Cal. Ct. App. 2008) ...............................................................36

*Bunkley v. Cole Haan, LLC*,
2025 WL 50688 (E.D. Cal. Jan. 8, 2025) .................................................................33

*Bunta v. Superior VacuPress, L.L.C.*,
218 N.E.3d 838 (Ohio 2022)....................................................................................25

*Cabardo v. Patacsil*,
248 F.Supp.3d 1002 (E.D. Cal. 2017) (discussing 2013 amendment to § 226) ......44

*Chao v. A-One Med. Servs., Inc.*,
346 F.3d 908 (9th Cir. 2003) ...................................................................................50

*In re Chicken Soup for the Soul Entertainment Inc., et al.*,
Case No. 24-11442 (TMH) (Bankr. D. Del. July 2, 2024) ...................................8, 11

*Colavito v. New York Organ Donor Network, Inc.*,
860 N.E.2d 713 (N.Y. 2006).....................................................................................25

*Copper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) .............................................................................15, 24

*Cordell v. PICC Lines Plus LLC*,
No. 16-CV-01814-TEH, 2016 WL 4702654 (N.D. Cal. Sept. 8, 2016) ..................40

*Covillo v. Specialty's Café*,
No. C-11-00594 DMR, 2011 WL 6748514 (N.D. Cal. Dec. 22, 2011)....................40

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ...................................................................................13

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ...................................................................................13

*Davis v. Abington Memorial Hospital*,
765 F.3d 236 (3d Cir. 2014)...............................................................................49, 51

*Derum v. Saks & Co.*,
95 F.Supp.3d 1221 (S.D. Cal. 2015) (noting *Price* predates 2013 amendments)..............44, 45

iv

*DHP Holdings II Corp. v. Peter Skop Indus., Inc. (In re DHP Holdings II Corp.)*,
    435 B.R. 220 (Bankr. D. Del. 2010) ......................................................................33

*DLH, Inc., v. Russ*,
    566 N.W.2d 60 (Minn.1997)..................................................................................25

*Doe v. Princeton Univ.*,
    30 F.4th 335 (3rd Cir. 2022) ................................................................................13

*Dunn v. FastMed Urgent Care*,
    P.C., No. CV 2018-0934 MTZ, 2019 WL 4131010 (Del. Ch., Aug. 30, 2019) ......23

*Espinoza v. Hepta Run, Inc.*,
    74 Cal. App. 5th 44 (2022) ..............................................................................29, 31

*Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.*,
    665 F. Supp. 3d 1214 (S.D. Cal. 2023*)*.................................................................13

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ................................................................................24

*Furry v. East Bay Publ'g, LLC*,
    2018 WL 6930903 (Cal. App. 1st Dist. 2018).......................................................45

*GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*,
    83 Cal.App.4th 409 (Cal. Ct. App. 2000) ............................................................17

*Gentry v. Superior Court*
    165 P.3d 556 (Cal. 2007) ......................................................................................53

*Glenn Arms Assocs. v. Century Mortg. & Inv. Corp.*,
    680 P.2d 1315 (Colo.App. 1984).........................................................................25

*Goonewardene v. ADP, LLC*,
    6 Cal. 5th 817 (2019) ...........................................................................................29

*Greene v. Mongie*,
    2025 UT App 11, 564 P.3d 536 ...........................................................................15

*Greif v. Sanin*,
    74 Cal. App. 5th 412 (Cal. Ct. App. 2022) ..........................................................25

*Hanrahan v. Nashua Corp.*,
    752 S.W.2d 878 (Mo. Ct. App. 1988)...................................................................15

*Harding v. Time Warner*,
    No. 09CV1212WQH-WMC, 2010 WL 457690 (S.D. Cal. Jan. 26, 2010) ............54

v

*Hassell v. Uber Techs., Inc.*,
No. 20-cv- 04062-PJH, 2020 WL 7173218 (N.D. Cal. Dec. 7, 2020)....................................42

*Heyser v. Noble Roman's Inc.*,
933 N.E.2d 16 (Ind. Ct. App. 2010)....................................................................................15

*Hill v. Pac. Mar. Ass'n*,
No. 24-CV-00336-JSC, 2025 WL 1282628 (N.D. Cal. May 2, 2025) .............................44, 45

*Hubbard v. Shankle*,
138 S.W.3d 474 (Tex. App. 2004).......................................................................................15

*Hurley v. TCF Banking & Sav., F.A.*,
414 N.W.2d 584 (Minn. Ct. App. 1987)...............................................................................15

*Huynh v. Jabil Inc.*,
No. 22-CV-07460-WHO, 2023 WL 1802417 (N.D. Cal. Feb. 7, 2023) .................................33

*Joe Hand Promotions, Inc. v. Creative Entertainment, LLC*,
978 F. Supp. 2d 1236 (M.D. Fla. 2013).................................................................................25

*Johnson v. Rodier*,
242 Ga. App. 496, 529 S.E.2d 442 (2000)...........................................................................15

*Kamath v. Robert Bosch LLC*,
No. 2:13-CV-08540-CAS, 2014 WL 2916570 (C.D. Cal. June 26, 2014)..............................38

*Kao v. Holiday*,
219 Cal.Rptr. 580 (Ca.App. 2017).......................................................................................48

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................................................15

*Kim v. Westmoore Partners, Inc.*,
201 Cal.App.4th 267 (Cal. Ct. App. 2011) ..........................................................................25

*Lambert v. Ackerley*,
180 F.3d 997 (9th Cir. 1999) ..............................................................................................52

*Landers v. Quality Communications, Inc.*,
771 F.3d 638 (9th Cir. 2014) ........................................................................................ *passim*

*Li v. A Perfect Day Franchise, Inc.*,
281 F.R.D. 373 (N.D. Cal. 2012).........................................................................................52

*In re LifeUSA Holding, Inc.*,
242 F.3d 136 (3d Cir. 2001)................................................................................................24

*Lord v. Souder*,
  748 A.2d 393 (Del. 2000) .................................................................................15

*Lyman v. Walzer Melcher LLP*,
  *No.* 19STCV32486, 2025 WL 1907779 (Cal.Super. June 10, 2025).....................................34

*Martin v. Ohio State Univ. Found.*,
  139 Ohio App. 3d 89, 742 N.E.2d 1198 (2000)...................................................15

*Martinez v. UPMC Susquehanna*,
  986 F.3d 261 (3rd Cir. 2021) ......................................................................13, 36

*McDermott v. Clondalkin Grp., Inc.*,
  649 F. App'x 263 (3d Cir. 2016) ..................................................................14

*McKeeman v. Corestates Bank, N.A.*,
  751 A.2d 655 (Pa.Super.Ct.2000) ................................................................25

*In re Mervyn's Holdings, LLC*,
  426 B.R. 488 (Bankr. D. Del. 2010) .............................................................18

*Morey v. Page*,
  802 S.W.2d 779 (Tex. Ct.App.1990) ............................................................25

*N. Am. Truck & Trailer, Inc. v. M.C.I. Commc'n Servs., Inc.*,
  2008 S.D. 45, 751 N.W.2d 710 ....................................................................15

*Naranjo v. Spectrum Sec. Servs., Inc.*,
  15 Cal. 5th 1056 (2024) ..............................................................................48

*Naranjo v. Spectrum Sec. Servs., Inc.*,
  547 P.3d 980 (Cal. 2024) ........................................................................45, 46

*Nelson v. Gas Rsch. Inst.*,
  121 P.3d 340 (Colo. App. 2005) ..................................................................15

*In re Oakwood Homes Corp.*,
  325 B.R. 696 (Bankr. D. Del. 2005) ..........................................................55, 56

*Oman v. Delta Air Lines, Inc.*,
  466 P.3d 325 (Cal. 2020) .............................................................................34

*Patel v. Vaghashia*,
  2018 WL 3216516 (Cal Ct. App. July 2, 2018)...............................................45

*People v. Nationwide Asset Servs., Inc.*,
  2009 NY Slip Op 29403, 26 Misc. 3d 258, 888 N.Y.S.2d 850 (Sup. Ct.).............................15

17774350

*Pham v. Bast*,
   No. 17-CV-04194-WHO, 2018 WL 4003387 (N.D. Cal. Aug. 22, 2018) .............................40

*Price v. Starbucks Corp.*,
   192 Cal. App. 4th 1136 (Cal. Ct. App. 2011) ...................................................................44, 45

*Ralphs Grocery Co. v. Superior Court*,
   5 Cal.Rptr.3d 687 (Cal. Ct. App. 2003) ..................................................................................38

*Reyes v. Five Diamond Cold Storage, Inc.*,
   2024 WL 3011123 (E.D. Cal. June 11, 2024) .........................................................................30

*Reynolds v. Bement*,
   116 P.3d 116 ............................................................................................................................36

*Reynolds v. Bement*,
   116 P.3d 1162 (Cal. 2005) .......................................................................................................36

*Rios v. Linn Star Transfer, Inc.*,
   No. 19-cv-07009-JSC, 2020 WL 1677338 (N.D. Cal. Apr. 6, 2020) ......................................35

*Rsch. Corp. v. Alequin*,
   247 Va. 143, 439 S.E.2d 387 (1994)........................................................................................15

*Sanford v MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ...................................................................................................19

*Sanowicz v. Bacal*,
   234 Cal.App.4th 1027 (Cal. Ct. App. 2015) ...........................................................................26

*ScroeBlue, LLC v. Locum Tele PC*,
   No. 2:23-cv-00345-WLH-AS, 2024 WL 3304515 (C.D. Cal. May 29, 2024)........................24

*Sharp v. The Walt Disney Co.*,
   No. 22STCV39275, 2025 WL 2742728 (Cal.Super. Sep. 08, 2025)........................................34

*Sihler v. Fulfillment Lab, Inc*,
   No. 3:20-CV-01528-H-MSB, 2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ...........................21

*Skajem, et al, v. Chicken Soup for the Soul Entertainment, et al*,
   Case No. 24STCV18214 (Super. Ct. Cal. 2024) .....................................................................28

*Smith v. HSBC Bank, USA, N.A.*,
   2018 WL 2753129 (Cal. Ct. App. June 8, 2018) .....................................................................45

*Smith v. November Bar N Grill LLC*,
   441 F. Supp. 3d 830 (D. Ariz. 2020) .......................................................................................50

17774350

*State Sec. Ins. Co. v. Frank B. Hall & Co.*,
258 Ill. App. 3d 588, 630 N.E.2d 940 (1994) ........................................................................15

*State v. Twitchell*,
832 P.2d 866 (Utah Ct.App.1992) .........................................................................................25

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ...............................................................................................................13

*Tan v. Grubhub, Inc.*,
171 F.Supp.3d 998 (N.D. Cal. 2016) ....................................................................................41

*Taylor-Rush v. Multitech Corp.*,
217 Cal. App. 3d 103 (Cal. Ct. App. 1990) .........................................................................36

*Tech. & Intell. Prop. Strategies Grp. PC v. Fthenakis*,
No. C 11-2373 MEJ, 2011 WL 3501690 (N.D. Cal. Aug. 10, 2011) ....................................40

*Thai v. International Business Machines Corp.*,
93 Cal.App.5th 364 (Cal. Ct. App. 2023) ............................................................................42

*In re Thebus*,
483 N.E.2d 1258 (Ill. 1985) ..................................................................................................25

*United States v. Peters*,
962 F.2d 1410 (9th Cir. 1992) .........................................................................................19, 22

*Usher v. White*,
64 Cal. App. 5th 883 (Cal. Ct. App. 2021) ...............................................................28, 31, 46

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ..............................................................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
328 F.Supp.3d 963 (N.D. Cal. 2018) ....................................................................................17

*Voris v. Lampert*,
446 P.3d 284 (Cal. 2019) ...........................................................................................24, 25, 26

*Wadlington v. Cont'l Med. Servs., Inc.*,
907 So. 2d 631 (Fla. Dist. Ct. App. 2005) ............................................................................15

*Wang Lab'ys, Inc. v. Ma Lab'ys, Inc.*,
No. C 95-2274 SC, 1995 WL 729298 (N.D. Cal. Dec. 1, 1995) ...........................................21

*Warm Springs Props., Inc. v. Andora Villa, Inc.*,
526 P.2d 1106 (1974)............................................................................................................25

ix

*Weiss v. NNN Cap. Fund I, LLC*,
    No. 14-CV-2689-H-NLS, 2015 WL 11990929 (S.D. Cal. Apr. 3, 2015) ................................ 17

*Williams v. Allstate Ins. Co.*,
    B272353 2017 WL 6350378 (Cal Ct. App. Dec. 13, 2017) .................................................... 44

*Woltkamp v. Los Rios Classified Emp. Ass'n*,
    539 F.Supp.3d 1058 (E.D. Cal. 2021) ............................................................................ 13, 35

*Youndt v. First Nat. Bank of Port Allegany*,
    2005 PA Super 42, 868 A.2d 539 (2005) ............................................................................ 15

*Zavala v. Wal–Mart Stores, Inc.*,
    No. 03–5309, 2010 WL 2652510 (D.N.J. June 25, 2010) .................................................... 55

*Zavala v. Wal Mart Stores Inc.*,
    691 F.3d 527 (2012) ............................................................................................................ 55

**Statutes**

29 U.S.C. § 203(d) ........................................................................................................................ 52

Cal. Lab. Code § 201 ................................................................................................................... 47

Cal. Lab. Code § 203 ......................................................................................................... 35, 47, 48

Cal. Lab. Code § 204 ............................................................................................................ *passim*

Cal. Lab. Code § 210 ................................................................................................................... 33

Cal. Lab. Code § 221 ......................................................................................................... 37, 38, 40

Cal. Lab. Code § 225.5 ........................................................................................................... 37, 38

Cal. Lab. Code § 226(a) ............................................................................................... 43, 44, 45, 46

Cal. Lab. Code § 226(e)(2)(B) ..................................................................................................... 44

Cal. Lab. Code Section 558.1 ................................................................................................ *passim*

Cal. Lab. Code §§ 1194 and 1197 ................................................................................ 30, 31, 32, 49

Cal. Lab. Code § 2802 ............................................................................................................. 41, 43

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................................................... 13

Rule 8 ................................................................................................................................... 3, 33, 40

Rule 9(b) ......................................................................................................... *passim*

Rule 12(b)(6)...............................................................................................13, 40

Rule 15 ..............................................................................................................55

17774350

Plaintiffs Brian Skajem, Lisa Papatzimas, Erin Tuttle, David Ellender, Dara Cohen, Matt Loze, Jessica Stoeckeler, Heather Bundy, Carey Campbell, Kelly Burke Hopkins,  and Courtney Smith (the "Plaintiffs"), by and through their undersigned counsel, respectfully submit this omnibus brief (the "Opposition Brief") in opposition to the *Defendant Amy L. Newmark's Motion to Dismiss Second Amended Complaint*; *Defendant Bart Schwartz's Motion to Dismiss Second Amended Complaint*; *Defendant William J. Rouhana, Jr.'s Motion to Dismiss Second Amended Complaint*; *Defendants Robert H. Warshauer and John T. Young, Jr.'s Motion to Dismiss Second Amended Complaint* (collectively, the "Motions to Dismiss") and the briefs in support thereof [Adv. 24-50128, D.I.s 98, 99 (the "Newmark Brief"), 100, 101 (the "Schwartz Brief"), 103, 105 (the "Warshauer and Young Brief"), 102, 104 (the "Rouhana Brief")]. In support of this opposition, the Plaintiffs offer the *Declaration of Tara C. Pakrouh in Support of Plaintiffs' Omnibus Brief in Opposition to the Motions to Dismiss the Second Amended Complaint* (the "Pakrouh Declaration"), which is being filed contemporaneously herewith, and respectfully state as follows:

## PRELIMINARY STATEMENT[1]

This action is brought on behalf of the putative class of former employees of Chicken Soup for the Soul Entertainment, Inc. ("CSSE" or the "Company"), as the parent company for several other subsidiaries, and certain of its related affiliates (collectively with CSSE, the "CSSE Companies") dating back to at least 2022. This case is about the above-captioned defendants' (each individually a "Defendant", and collectively, the  "Defendants") concoction and participation in a scheme to defraud  former employees by deducting money from their paychecks under the guise of contributions toward medical and dental insurance premiums and 401(k) contributions,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the SAC (as defined below).

17774350

depriving those same employees of wages due, and then siphoning those funds away and leaving the employees without insurance, certain benefits, and/or 401(k) contributions. The harm suffered by the employees continued all the way through the bankruptcy proceedings, through different corporate governorships, all resulting in the employees losing insurance coverage, and being forced to incur millions of dollars in unreimbursed medical expenses. This wanton misconduct plainly violates the California Labor Code ("Cal. Lab. Code") and the Fair Labor Standards Act ("FLSA") and further constitutes conversion and fraud.

Plaintiffs have worked diligently to identify and plead claims against the individuals who exercised control over CSSE's operations and are responsible for the nonpayment of wages and unlawful deductions at issue. The SAC reflects that effort, tying each Defendant to specific conduct based on documentary evidence, sworn testimony, and certain Defendants' own admissions—which are themselves facts.

The SAC alleges a continuous course of conduct beginning in 2022 and continuing through CSSE's bankruptcy and conversion, during which employees were not paid earned wages while deductions for health benefits and other contributions continued. Prepetition, Defendants Rouhana and Newmark controlled the CSSE's finances and payroll functions, failed to pay wages and bonuses, and permitted deductions for benefits that were not maintained—resulting in lapsed coverage and unreimbursed out-of-pocket expenses. In the weeks before the petition date, payroll ceased entirely.

Postpetition, Defendants Schwartz, Young, and Warshauer assumed sole control of CSSE's operations through the Strategic Review Committee (the "SRC"). They represented that wages would be addressed but instead directed employees to continue working without pay, failed to implement consistent payroll, and allowed deductions to continue to be taken from employees'

2

17774350

paychecks despite the absence of benefits. The Chapter 11 cases ultimately converted to Chapter 7, and employees were terminated without receiving all funds due.

The SAC pleads detailed, defendant-specific allegations supporting each claim, including violations of the Cal. Lab. Code, the FLSA, and common law. These allegations more than satisfy Rule 8—and, where applicable, Rule 9(b). Because Plaintiffs plausibly allege and plead sufficient facts supporting that each Defendant exercised control and failed to ensure payment of wages, compliance with Cal. Lab. Code, and proper handling of deductions, the Motions to Dismiss should be denied.

## FACTUAL BACKGROUND

### A.    Rouhana and Newmark Acquire CSSE and Redbox and Asserted Control Over Such Companies.

In 2008, defendants William J. Rouhana, Jr. ("Rouhana") and Amy Newmark ("Newmark") purchased the "warm hearted" brand Chicken Soup for the Soul ("CSS") and later formed CSSE in 2017. *Second Amended Complaint* [Adv. 24-50128, D.I. 95] (the "SAC"), ¶ 52. Rouhana and Newmark actively operated the CSSE Companies either personally or through the parent, Chicken Soup for the Soul, LLC. SAC ¶¶ 53–54, P. 5 n.4. Rouhana served as CSSE's CEO and Chairman of the board of directors (the "Board").  SAC ¶ 19. These roles, as well as his clear control of CSS and its affiliates, allowed Rouhana and Newmark, his wife and a corporate officer of CSSE and/or Board member of CSSE, to assert overarching control of the CSSE Companies. SAC ¶¶ 19–20.

In 2022, CSSE acquired Redbox Entertainment Inc. ("Redbox"), a business centered on physical media rentals through a nationwide kiosk network that was experiencing sustained structural decline, in 2022. SAC ¶¶ 58–59. Concurrent with the merger closing, CSSE entered into an amended and restated credit agreement with HPS Investment Partners LLC ("HPS"), whereby

3

17774350

CSSE not only assumed Redbox's liabilities, but also became the borrower under additional term loan and revolving credit facilities. SAC ¶ 60.  As of 2024, CSSE, Redbox, and other affiliated entities employed in excess of 1,200 people.  SAC ¶ 8.  During the relevant period, such employees were not paid wages, including required minimum wages and overtime pay, benefits, bonuses, or reimbursements owed to them. SAC ¶ 7.

> **B.      Employees Did Not Receive Bonuses Pursuant to Sales Incentive Plans, Non-Discretionary Cash Retention Award or Other Non-Discretionary Bonuses.**

Certain employees, as a condition of employment, agreed to annual, non-discretionary cash bonuses pursuant to the terms of their employment agreements. SAC ¶ 66. In addition, for sales-related employees, CSSE implemented a Sales Incentive Plan ("SIP") that set forth defined annual bonus opportunities and incentive targets tied to sales performance and was structured across designated portions of each calendar year. *Id*.  Under these arrangements, the annual cash bonus and SIP compensation were intended to be earned based on the achievement of specified performance metrics during the applicable measurement periods.  *Id*.

Between October of 2022 and September of 2023, Rouhana sent or caused to be sent a series of emails stating that employees would be paid some portion of their bonuses, would be paid at a later date, and/or that they would not be paid at all.  SAC ¶¶ 67–72. Notwithstanding the employee contracts requiring payment of the SIP as a nondiscretionary bonus or these communications, CSSE failed to remit the SIP nondiscretionary bonuses owed to eligible employees, and as of filing of this Opposition Brief, such payments remain outstanding.  SAC ¶ 66.

In or around April 2024, CSSE also offered employees a 2024 Cash Retention Award, intended to incentivize continued employment through the end of 2024 by providing two advance-payments, service-based installments that were earned upon the employee's continued active

17774350

employment and good standing through specified dates later in the year. SAC ¶ 74. However, employees were not paid this retention award either. *Id.*

### C. Employees Were Not Provided with Medical or Other Benefits, Yet Deductions Continued to be Taken from Their Paychecks.

In January 2024, CSSE confirmed that Premera, CSSE's then insurance provider, had denied employees' 2023 health insurance claims. SAC ¶ 75.  In February and March 2024, CSSE informed its employees multiple times that Premera had ceased processing health insurance claims for services rendered during the November 30 through December 31, 2023, coverage period. SAC ¶ 76. CSSE advised employees not to make direct payments to providers, if possible, acknowledged that some employees had already been required to pay out-of-pocket, and represented that "Premera and/or the provider will reimburse you" for any such payments upon resolution of the claims issues. *Id.*

On or about April 18, 2024, CSSE informed employees that claims processing through Premera for 2023 had been reinstated, and to contact the provider regarding denied claims or for repayment of claims they had paid out of pocket. SAC ¶ 78.  Although CSSE represented that such payments would be reimbursed once the claims disruption was resolved, employees have not been reimbursed for those expenses as of the date of this Opposition Brief. SAC ¶ 79.

During the period in which the Premera coverage lapsed, employees incurred out-of-pocket medical expenses for covered healthcare services that would have been paid under the Premera policy. *Id.* At all relevant times, however, employees' wage statements reflected deductions for employee medical benefit premiums, among other related deductions. *Id.*

In late 2023, CSSE switched health insurance providers from Premera to Blue Cross Anthem ("Anthem"), effective January 1, 2024. SAC ¶ 80. After sending two written notices of nonpayment, on or around June 14, 2024, Anthem formally terminated the *Administrative Services*

17774350

*Agreement* for nonpayment, stating that CSSE owed more than $1.85 million in delinquent balances and that all claims incurred on or after May 14, 2024, would be denied, reversed, or rejected, with employees responsible for payment to providers. SAC ¶¶ 81–83.

On or around June 18, 2024, both CSSE and Rouhana individually informed employees that Anthem had terminated CSSE's health plan and was denying claims. SAC ¶ 84. Deductions, however, continued to be taken from employees' pay checks (when such payroll was actually remitted), for health, dental, and other fringe benefits. SAC ¶ 87. Although CSSE represented that such payments would be reimbursed and/or reinstated once the claims disruption was resolved, employees have not been reimbursed for those deductions or expenses as of the date of this Opposition Brief. *Id*. On information and belief, medical insurance benefit deductions and other wages were intertwined with other entities owned by Rouhana, and such entities continued to receive payments throughout the relevant periods, despite health benefits not being provided to employees. SAC ¶ 88.

### D. Employees Were Not Paid Wages or Reimbursed for Travel Expenses.

Pursuant to the Employee Handbook, "[e]mployees may be reimbursed for travel expenses" for Company travel-related expenses. SAC ¶ 89. At all relevant times, employees submitted requests for reimbursement pursuant to CSSE's policies and process. *Id*. Pursuant to the Employee Handbook, payroll was to be remitted "on a bi-weekly basis for the work performed from Saturday to Friday for the prior two weeks." SAC ¶ 90.

Between approximately June 7, 2024 and June 28, 2024, CSSE and Rouhana sent a series of communications updating and informing employees that payroll and reimbursements for travel expenses would be paid late, but in the near future. SAC ¶ 91–97.

CSSE continued to deduct medical premiums from employees' paychecks, including in June 2024. SAC ¶ 98. Employees failed to receive their payroll and all reimbursements due and

6

17774350

owing inconsistent with the Employee Handbook and CSSE's policies. *Id*.  On June 28, 2024, only a few hours after Rouhana's alleged final "update," CSSE sent an email to employees informing them that CSSE and certain of its affiliates had filed for bankruptcy overnight. SAC ¶ 97.

**E.      Defendants Warshauer and Young are Appointed to the Board and SRC.**

On or about April 29, 2024, CSSE, Redbox, and HPS entered into a *Forbearance Agreement* (the "Forbearance Agreement").  SAC ¶ 99.  On or about May 3, 2024, defendants John T. Young ("Young") and Robert H. Warshauer ("Warshauer") were added to CSSE's Board as independent directors, pursuant to such Forbearance Agreement.   Defendants Young and Warshauer were also appointed to the Strategic Review Committee (the "SRC"). SAC ¶ 100.

Young and Warshauer, however, failed to perform even basic due diligence to ensure that employees were paid properly in the years preceding their appointments and likewise failed to ensure that employees were paid during the weeks and months following their appointment. SAC ¶ 101.  On or about May 7, 2024, Young and Warshauer attended a meeting of the Board in their capacities as Board members. SAC ¶ 102.   At that meeting, members of the Board's audit committee expressly instructed management to ensure that CSSE was timely planning for and addressing its employment-related obligations, tax obligations, and other related corporate liabilities. *Id*.

On or about June 11, 2024, Rouhana circulated an email to Young and Warshauer, as well as to the other Board members, purporting to terminate them. SAC ¶ 105. Neither Young nor Warshauer believed that Rouhana had the authority to effectuate such termination. *Id*. On or about June 14, 2024, while Young and Warshauer believed they remained Board members and members of the SRC, health benefits for CSSE employees were terminated by Anthem.  SAC ¶ 106.  At the same time, and under the watch of the Board and the SRC, CSSE continued to deduct medical premiums and benefits from employees' paychecks. *Id*.

7

17774350

**F.      Defendant Schwartz and CSSE's Bankruptcy Filing.**

At the end of June 2024, Rouhana stepped down as CEO of CSSE and was replaced by defendant Bart Schwartz ("Schwartz") on or around June 28, 2024.  SAC ¶ 107.

On the same date, June 28, 2024 (the "Petition Date"), CSSE filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, signed by Defendant Schwartz. SAC ¶ 108; Case No. 24-11442, D.I. 1.  Despite stepping down as CEO, Rouhana remained a director of CSSE and the other debtors in the above-captioned bankruptcy proceedings (with CSSE, the "Debtors") as of the date of the filing.  *See* SAC ¶ 110; Case No. 24-11442, D.I. 7 ¶ 1. Despite having deducted significant amounts from employees' paychecks prepetition, including but not limited to funds taken under the guise of contributions for medical benefits and certain taxes that were not paid for the relevant time period, the Debtors had *de minimis* amounts of money in their respective bank accounts. SAC ¶ 109.

On the Petition Date, the Debtors also filed numerous motions, including the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Reimbursable Expenses, and Other Obligations on Account of Compensation and Benefits Program and (B) Continue Compensation and Benefits Programs; and (II) Granting Related Relief* [Case No. 24-11442, D.I. 3] ("Wage Motion"); SAC ¶ 111. The Wage Motion admits that the Debtors failed to pay employees for at least one pay period pre-petition, and that Anthem health insurance policies lapsed at least one month prior to the Petition Date.  *Id.*

The Bankruptcy Court held the first day hearing on July 1, 2024 ("First Day Hearing") which continued into a second day on July 2, 2024 to address the various motions filed. SAC ¶ 112. Schwartz testified at the First Day Hearing to the control he had over CSSE's operations, stating that he was "making [an] effort to make decisions for the other members of the [B]oard. But the primary goal being to take care of the employees." Transcript of First Day Hearing, *In re*

8

*Chicken Soup for the Soul Entertainment Inc., et al.*, Case No. 24-11442 (TMH) (Bankr. D. Del. July 2, 2024) ("First Day Hearing 2 Transcript"), attached to Pakrouh Declaration as **Ex. A**, at 44:7-11; SAC ¶ 113.

Although Schwartz was actively involved in the operation of the Debtors, and despite his statement to the Bankruptcy Court, he failed to perform due diligence regarding unpaid wages, benefits, premiums, and out-of-pocket expenses.  SAC ¶ 116. On or about July 2, 2024, an email was sent on behalf of Schwartz stating that the Bankruptcy Court authorized the payment of ordinary course employees' wages and benefits, including amounts necessary to procure the reinstatement of health insurance and other obligations that CSSE had not met. SAC ¶ 117. However, health insurance was not reinstated and at least one post-petition payroll would go unpaid under Schwartz's leadership. SAC ¶ 118.

G.    **The SRC Perpetuated Mismanagement Post-Petition Following the Interim DIP Order.**

On July 4, 2024, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing and (V) Granting Related Relief* [Case No. 24-1142, D.I. 85] ("Interim DIP Order"); SAC ¶ 119. Under the Interim DIP Order, the SRC, consisting of Young, Warshauer, and Schwartz, was "empowered to be the sole body entitled to manage all of the affairs and operations of the Debtors and their subsidiaries…". Interim DIP Order at ¶ 18; SAC ¶ 119. Under the Interim DIP Order, CSSE was authorized to borrow: (i) up to $3.5 million for past due payroll and payroll due on July 5, 2024; (ii) up to $2.85 million for payroll deductions; and (iii) up to $1.65 million for payments to Anthem for healthcare premiums.  SAC ¶ 119.

9

Control of CSSE and the Debtors was solely in the hands of the SRC at this point, including Young, Warshauer and Schwartz, and which, as constituted, had complete control of the Chapter 11 cases. SAC ¶ 120. During this period, the employees were not timely paid for at least one pay period, and upon payment for a prepetition pay period that was issued post-petition, employees continued to have deductions from their wages for benefits that were not provided. SAC ¶ 124.

The *Interim Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Reimbursable Expenses, and Other Obligations on Account of Compensation and Benefits Programs and (B) Continue Compensation and Benefits Programs; and (II) Granting Related Relief* ("Interim Wage Order") [Case No. 24-11442 D.I. 75]; SAC ¶ 125, further directed the Debtors to pay prepetition wages to the employees in the amount of nearly $3.5 million with over $2.8 million to be paid toward "Health and Welfare Benefits" and the "401(K) Plan." Such directed payments were not made. SAC ¶ 125.

The SRC was aware that the deductions were not being appropriately applied toward providing medical and dental insurance and other benefits for the employees. SAC ¶ 126. As a result, employees were not adequately compensated, as ordered by the Bankruptcy Court, while deductions continued to be improperly taken out of employees' paychecks for medical and dental insurance, 401(k) contributions, and/or other fringe benefits that employees did not receive. *Id.*

### H. The Bankruptcy Court Converts the Debtors' Cases to Chapter 7 After Learning About the Magnitude of Mismanagement and Lack of Funding.

After learning that HPS would not fund the DIP, on July 10, 2024, the Bankruptcy Court, following an oral motion of the SRC, entered an *Order Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code and Grating Related Relief* ("Order to Convert") [Case No. 24-11442, D.I. 120]; SAC ¶ 129. The conversion of the case from Chapter 11 to Chapter 7 meant that all employees were terminated at that time. SAC ¶ 129.

17774350

At the same July 10, 2024 hearing, counsel for the Debtors expressed significant concerns regarding the conversion of payroll taxes and medical benefit deductions. SAC ¶ 130. Specifically, counsel stated that it was their belief that "payroll taxes had been converted, which I think was over a nine-month period. The medical benefit deductions had been converted during the two and a half months before the filing." Hearing Transcript of Status Conference, *In re Chicken Soup for the Soul Entertainment Inc., et al.*, Case No. 24-11442 (TMH) (Bankr. D. Del. July 10, 2024) ("Status Conference Transcript"), attached to Pakrouh Declaration as **Ex. B**, at 14:9-17; *see also* SAC ¶ 130.

On or about July 10, 2024, Defendants Young and Warshauer sent an email to all employees informing them that the Court had approved the oral motion to convert the cases and informing such employees that, CSSE lacked the requisite funds to pay employees for their post-petition services. SAC ¶ 131. On or about July 18, 2024, employees received a final email reiterating that the cases had been converted to Chapter 7, informing employees that all employees were terminated upon conversion of the cases, and advising that employees file a proof of claim. SAC ¶ 134. Such employees did not, and have not, as of the filing of this Opposition Brief, received payment for all amounts due upon their termination, including but not limited to outstanding wages/payroll, 401(k) contributions, reimbursements, commissions, vacation/PTO time, and reimbursement for medical benefits. SAC ¶ 135.

I.      **Plaintiffs Commence this Adversary Proceeding Behalf of Themselves and Potential Class Members.**

On August 12, 2024, the Trustee filed the applications, to which Rouhana objected, initiating a contested matter. *See e.g.* Case No. 24-11442l, D.I. 224; D.I. 225; D.I. 226.  Depositions of at least Rouhana, Young, and Warshauer were taken.  *See* Case No. 24-11442l*,* D.I. 395; D.I. 403; D.I. 404.  Counsel for the Plaintiffs attended the same.  The testimony provided in those

depositions, as well as information provided to Plaintiffs after the original complaint was filed provide a basis for the additional allegations in the amended complaints and implicated the new defendants in this Proceeding.[2]

On September 6, 2024, the Plaintiffs, on behalf of themselves and potential class members, filed their original complaint against George L. Miller, in his capacity as Chapter 7 Trustee for the bankruptcy estates of CSSE and Redbox (the "Trustee"), Rouhana, Newmark, HPS Partners, LLC, Anthem Blue Cross, and Does 1-500 [Adv. 24-50128, D.I. 1] (the "Complaint") for violations of the Cal. Lab. Code and FLSA, and for conversion and fraud.

Plaintiffs informally discussed allegations in the Complaint with all Defendants, some of which provided informal discovery in connection with the same. On November 9, 2024, the Plaintiffs voluntarily dismissed defendant HPS without prejudice and on January 22, 2025, the Plaintiffs also dismissed defendant Anthem without prejudice. *See* Adv. D.I. 8 and 15.

After filing the Complaint, the Plaintiffs became aware of new evidence implicating new defendants. The Bankruptcy Court granted a motion to amend on May 6, 2025 [Adv. 24-50128, D.I. 29] and the *First Amended Complaint* was filed on May 8, 2025 [Adv. 24-50128, D.I. 30] (the "FAC"), adding Young, Warshauer and Schwartz as defendants in the adversary proceeding.

On December 9, 2025, the Court issued an order [Adv. 24-50128, D.I. 90] dismissing the FAC, but granting leave to amend. On January 8, 2026, the Plaintiffs filed the SAC, clarifying certain claims and allegations against the Defendants.  The Motions to Dismiss should be overruled because the SAC clearly corrected the concerns the Court had with the FAC by stating claims and factual allegations against each Defendant while also adhering to the necessary pleading standards.

---

[2] Plaintiffs intend to further develop the factual record supporting their counts against all Defendants in this adversary proceeding through discovery under the Bankruptcy Rules and Federal Rules.

17774350

## LEGAL STANDARD

### I.    MOTION TO DISMISS.

A Rule 12(b)(6) motion "test[s] the sufficiency of the factual allegations in plaintiff's complaint." *In re Am. Bus. Fin. Servs.*, 384 B.R. 80, 84 (Bankr. D. Del. 2008); *Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.,* 665 F. Supp. 3d 1214, 1220 (S.D. Cal. 2023*).* "To survive a motion to dismiss, a complaint need not be detailed," but only needs to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3rd Cir. 2021) (citing Fed. R. Civ. P. 8(a)(2)); *see also Woltkamp v. Los Rios Classified Emp. Ass'n*, 539 F.Supp.3d 1058, 1065 (E.D. Cal. 2021). That requires only "plausibly suggesting" facts sufficient to draw the reasonable inference that the pleader is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The short and plain statement is enough to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Martinez*, 986 F.3d at, 265 (quoting *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and view them in the light most favorable to the non-moving party. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3rd Cir. 2022); *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).

Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. But plausible does not mean probable; "it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the claims. *Twombly*, 550 U.S. at 556. The issue is not whether the plaintiff will succeed on the merits but whether the plaintiff is entitled to offer evidence to support the claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).

In actions for fraud, Fed. R. Civ. P. 9(b)'s heightened pleading standard applies. *Davidson*

13

17774350

*v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). When alleging fraud, the plaintiff must state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Particularity" simply requires placing the defendant on notice "of the precise misconduct with which [it is] charged" by "alleg[ing] the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## ARGUMENT[3]

### I.    THE SAC ADEQUATELY PLEADS FRAUD (COUNT I).

Although the SAC pleads in detail the material misrepresentations and omissions made by each of these Defendants, Defendants improperly assert that the Court should disregard those allegations on the theory that no fraud claim has been alleged, even though those allegations are substantiated by documentary evidence, including screenshots of emails sent by Defendants or their representatives, as well as Defendants' own testimony. *See* Newmark Brief at p. 9-10; Schwartz Brief at p. 9; Young and Warshauer Brief at p. 10; Rouhana Brief at p. 9. To allege a fraud claim there must be (i) a material misrepresentation or omission; (ii) knowledge that the misrepresentation is false, or a reckless indifference to the truth; (iii) the misrepresentation was made with the intent to mislead; (iv) the plaintiff took an action or inaction in reasonable reliance

---

[3] Defendants Rohana and Newmark repeatedly assert throughout their briefs that the SAC's use of "information and belief" fails to satisfy the pleading standard for the various violations alleged. *See* Newmark Brief at pp. 8, 27; Rouhana Brief at pp. 6 n.9, 8, 30. This argument is misplaced. Where plaintiffs allege certain factual information that is "peculiarly within the defendant's knowledge or control," pleading on information and belief is entirely appropriate, so long as the claims are supported with factual allegations sufficient to render them plausible. *See McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) (explaining that pleading on information and belief is permissible under these circumstances) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)); *see also Bernstein v. Health Net Life Ins. Co.*, Case No. 12-cv-717-AJB(JMA), 2013 WL 12095240, at *4 (S.D. Cal. Apr. 4, 2013) (citing *Hightower v. Tilton*, No. C08-1129-MJP, 2012 WL 1194720, at *3 (E.D. Cal. Apr. 10, 2012) ("pleading 'on information and belief' is sufficient to survive a motion to dismiss as long as the other *Iqbal-Twombly* factors are satisfied")).

17774350

on the misrepresentation; and (v) the plaintiff suffered damages as a result of reliance. *Compare Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2009) *with Lord v. Souder,* 748 A.2d 393, 402 (Del. 2000).[4]

Fed. R. Civ. P. 9(b) creates a heightened pleading standard for pleading fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs must plead the "who, what, when, where, and how" that would suggest fraud. *See Copper v. Pickett*, 137 F.3d 616, 625, 627 (9th Cir. 1997).

**A.**     **Plaintiffs Allege Defendants Knowingly Made Material Misrepresentations and Omissions Regarding Wage Payments, Reimbursements, and Reinstatement of Healthcare.**

Defendants first argue that the SAC includes statements made that were true at the time they were made, or that the statements were not attributable to Defendant(s), and thus, the first and second elements of fraud are not met. Rouhana Brief at p. 9; Young and Warshauer Brief at pp. 10-11; Schwartz Brief at pp. 10-12; Newmark Brief at pp. 9-10. However, the SAC includes several misrepresentations and omissions made by, or attributable to, Defendants that were not just

---

[4] For the avoidance of doubt, the Plaintiffs bring this Count under California's common law. Plaintiffs cite both California and Delaware common law to show that no conflict of law or choice of law analysis is necessary. To the extent a nationwide class is certified on Count I, the laws of each of the applicable states do not conflict and a choice of law analysis on these grounds is likewise unnecessary. Plaintiffs are aware of members of the putative class that resided in multiple states, including but not limited to: Oklahoma, New York, Utah, Minnesota, Texas, Ohio, Illinois, Florida, Colorado, Indiana, Georgia, Virginia, Pennsylvania, Missouri, and South Dakota. Fraud generally has the same elements across such states. *See e.g., Bowman v. Presley*, 2009 OK 48, 212 P.3d 1210, 1217; *People v. Nationwide Asset Servs., Inc*., 2009 NY Slip Op 29403, 13, 26 Misc. 3d 258, 278, 888 N.Y.S.2d 850, 867 (Sup. Ct.); *Greene v. Mongie*, 2025 UT App 11, 564 P.3d 536, 542; *Hurley v. TCF Banking & Sav., F.A*., 414 N.W.2d 584, 586 (Minn. Ct. App. 1987); *Hubbard v. Shankle,* 138 S.W.3d 474, 482 (Tex. App. 2004); *Martin v. Ohio State Univ. Found*., 139 Ohio App. 3d 89, 98, 742 N.E.2d 1198, 1205 (2000); *State Sec. Ins. Co. v. Frank B. Hall & Co*., 258 Ill. App. 3d 588, 592, 630 N.E.2d 940, 943 (1994); *Wadlington v. Cont'l Med. Servs., Inc*., 907 So. 2d 631, 632 (Fla. Dist. Ct. App. 2005); *Nelson v. Gas Rsch. Inst*., 121 P.3d 340, 344 (Colo. App. 2005); *Heyser v. Noble Roman's Inc*., 933 N.E.2d 16, 19 (Ind. Ct. App. 2010); *Johnson v. Rodier*, 242 Ga. App. 496, 498, 529 S.E.2d 442, 444 (2000); *Rsch. Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994); *Youndt v. First Nat. Bank of Port Allegany*, 2005 PA Super 42, 868 A.2d 539, 545 (2005); *Hanrahan v. Nashua Corp*., 752 S.W.2d 878, 883 (Mo. Ct. App. 1988); *N. Am. Truck & Trailer, Inc. v. M.C.I. Commc'n Servs., Inc*., 2008 S.D. 45, 751 N.W.2d 710, 713.

17774350

promissory in nature.  Further, the SAC alleges that the Defendants either knew or had reason to know based on the information available to them, that the context of such material misrepresentation or omission was deceitful and false.  SAC ¶ 144.

The SAC alleges that Rouhana made repeated misrepresentations to Plaintiffs involving, among others, that (i) he would pay the employees their wages; (ii) the out-of-pocket medical expenses that employees paid when their insurance lapsed—from Defendants' nonpayment— would be reimbursed; and (iii) Plaintiffs would be covered for medical and dental benefits.  SAC ¶ 139; *see also* SAC ¶¶ 67-79, 84, 86- 88, 91- 98. Defendant Rouhana argues that several of the statements attributable to Rouhana in the SAC are true and thus do not satisfy the first element. Rouhana Brief at p. 9-10.  This argument fails.  The misrepresentations made by Rouhana, even if framed as promissory, were objectively and subjectively false.  *See e.g.* SAC ¶¶ 67-74 (Rouhana providing continued assurances to employees that bonuses, incentive compensation, and other payments would be paid, despite never occurring); ¶¶ 75-88 (Rouhana proving assurances that health, dental, and other fringe benefits would be reinstated and reimbursements would subsequently occur for deductions that were being taken out of employees' paycheck, despite reimbursements never occurring; ¶¶ 89-98 (Rouhana providing assurances that payroll and reimbursement will be paid, despite it never occurring). The SAC alleges objective facts demonstrating that employees continued to work without pay and that deductions for medical benefits were taken from their paychecks despite no coverage being provided (or expenses reimbursed) and those funds being diverted elsewhere, and those facts cannot reasonably be characterized as mere inferences or as promissory statements, but rather reflect Rouhana's opportunistic *post hoc* conduct borne out by the record.

Newmark committed fraud by knowingly and intentionally omitting material statements to

17774350

the Plaintiffs and taking no action to remedy the misrepresentations or omissions made by Rouhana. SAC ¶ 140. Specifically, Newmark was a Board member, primarily responsible for (and had control of) payment of employee wages and benefits, and was married to Rouhana at the time he made his fraudulent statements regarding bonuses, benefits, payroll, and other payments, making her more likely to know Defendant Rouhana's statements were false as she benefitted from the scheme he was orchestrating. *Id.* As such, the fraud committed by Newmark was her failure to correct or remedy the fraudulent statements made by Rouhana when she had a duty to do just that. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 328 F.Supp.3d 963, 986 (N.D. Cal. 2018) (citing *Chiarella v. United States*, 445 U.S. 222, 235, 100 S. Ct. 1108, 1118, 63 L. Ed. 2d 348 (1980) (stating if there is a duty to speak, than a claim of fraud can be based upon nondisclosure)); *see also Weiss v. NNN Cap. Fund I, LLC,* No. 14-CV-2689-H-NLS, 2015 WL 11990929, at *5 (S.D. Cal. Apr. 3, 2015) ("There are 'four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff…'")(citation omitted); *see also GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.,* 83 Cal.App.4th 409, 419 (Cal. Ct. App. 2000) (stating under California law, it is generally recognized that corporate officers and directors have a fiduciary duty to the organization).

While it is true that if defendants "engage in different wrongful conduct" with each actor "playing different parts," it is insufficient to simply "lump" the defendants together and assert that everyone did everything, *United States ex rel. Anita Silingo v. WellPoint, Inc.*, engage, 677 (9th Cir. 2018). Defendants Young, Warshauer, and Schwartz, as the sole members of the SRC, all committed fraud and each had "the exact same role in a fraud," meaning the SAC does not need to distinguish between each of these Defendants. *Id.*

17

Once Young, Warshauer, and Schwartz had full control of CSSE, they communicated to the employees that their priority was the immediate payment of wages.  *See* SAC ¶ 122.  However, the Defendants had no reasonable basis to believe this would be possible given the understanding that they had, or should have had, about CSSE from their roles with the Company both pre- and post-petition.

Pre-petition, Young and Warshauer attended Board meetings where there were discussions of employee payments, tax obligations, and liquidity issues.  SAC ¶¶ 102, 103.  Post-petition, and pursuant to the Interim DIP Order, Young and Warshauer were fully in control of CSSE as the sole members of the SRC (along with Schwartz).  SAC ¶¶ 119, 120. Schwartz served as CSSE's interim CEO for a brief time pre-petition and was, for all intents and purposes, solely running CSSE. SAC ¶¶ 107, 112, 113.  As discussed above, post-petition Defendant Schwartz served on the SRC, along with Young and Warshauer, and was actively operating CSSE, which included overseeing payment of employees, payroll, and benefits.[5]  SAC ¶ 120.

Post-petition, when the SRC was in complete control of the Company, Young, Warshauer, and Schwartz retained professionals and lawyers to help advise them on employee benefit and wage requirements. SAC ¶ 121.  The SAC alleges that the SRC failed to ensure that Plaintiffs were timely paid and receiving benefits and reimbursement that they were entitled.  SAC ¶ 123.  The SRC was asking employees to work during the bankruptcy with no appreciation for the financial situation of the Company.  SAC ¶ 123; *see also* Transcript of Deposition of Robert Warshauer (Nov. 5, 2024) ("Warshauer Transcript"), attached to the Pakrouh Declaration as **Ex. C**, at 84:4-15.[6]

---

[5] Schwartz testified that his responsibilities as both CEO and a member of the SRC included overseeing payment of employees, payroll, and benefits.  SAC ¶ 115.

[6] For additional support in this Opposition Brief, Plaintiffs cite to the judicial docket, which the Court can take judicial notice of. *In re Mervyn's Holdings, LLC*, 426 B.R. 488, 496 (Bankr. D. Del. 2010) (citing *Benak v. Alliance Capital*

18

While actively in control of CSSE post-petition Young, Warhsauer, and Schwartz misrepresented to employees that payroll would be fully paid; CSSE affairs and operations would be stabilized; employee medical benefits would be reinstated; and employees would be informed of updates. SAC ¶ 122. However, during their tenure, those statements were proven to be false. And, following Schwartz's resignation from the Board, Young and Warshauer sent an email to all employees that the case was converting to Chapter 7 because CSSE was unable to pay employees. SAC ¶ 131. In sum, employees were not paid, CSSE affairs were not stabilized, medical benefits were not reinstated, and employees were left with countless questions, which the SRC never answered. *See* SAC ¶¶ 133, 134.

Given their knowledge of CSSE's financial condition, through either Rouhana and Newmark's control prepetition or Young, Warshauer, and Schwartz's control post-petition, surrounding the financial difficulties of CSSE, the Defendants either knew the statements were false when made or, giving them the benefit of the doubt, made the statements with a reckless indifference to the truth.

### B.    Plaintiffs Plausibly Allege Intent.

Defendants next argue that the SAC fails to plead intent. Newmark Brief at p. 10; Rouhana Brief at pp. 10; Young and Warshauer Brief at pp. 10-11; Schwartz Brief at p. 12. In alleging fraud, a party can plead intent generally. *Sanford v MemberWorks, Inc.*, 625 F.3d 550, 557-58 (9th Cir. 2010) (quoting Fed. R. Civ. P. 9(b)). The intent to defraud may be inferred from a defendant's statements and conduct. *United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992). In fact, District Court's in California have held that because intent for common law fraud may be pled generally, it is sufficient to simply say that intent existed. *See Axonic Cap. LLC v. Gateway One*

---

*Mgmt. L.P.*, 435 F.3d 396, 401 (3d Cir. 2006)) (affirming judicial notice of newspaper articles "not for the truth of the facts reported, but to show that information was in the public realm at the time").

17774350

*Lending & Fin.*, No. CV 18-5127 PSG (SSX), 2019 WL 4138024, at *11 (C.D. Cal. May 22, 2019). As such, all that is required at this stage to properly plead intent is sufficient facts for the court to infer the requisite intent to defraud.

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, is instructive. 158 Cal. App. 4th 226, (Cal. Ct. App. 2007). There, the California Court of Appeals for the Second District found the defendants made promissory-type oral and written representations to investors about a financing transaction—such as statements that the preferred stock offering was effectively a "done deal" and that bridge notes would be repaid from its proceeds—while participating in drafting and distributing offering documents and expressly soliciting investors. *Id.* at 240. The court held these allegations sufficiently pleaded fraudulent intent because the complaint alleged the representations were false and known to be false when made, including by failing to disclose known limitations in the placement agent agreement that undermined the promised repayment, and because Roth's role in drafting, distributing the documents, and soliciting investors supported an inference that it intended investors to rely on those representations, warranting reversal of the trial court's dismissal. *Id.* at 240-243.

Here, SAC alleges cumulative communications (or lack thereof in the face of a duty to disclose) and conduct both prepetition on the part of Rouhana (and Newmark through her omissions during the same period) when they were both in control of CSSE and were siphoning the funds away from the company [SAC ¶ 88]; and post-petition on the part of Young, Warshauer, and Schwartz by acknowledging the conversion scheme and that it was happening post-petition [SAC ¶¶ 124, 126], asking employees to work and representing that they would be paid [*See* SAC ¶131; *see also* Warshauer Transcript at 90:16-20], and then conveniently converting the case before any supposed liability would attach [*see* SAC ¶¶ 131 & 132; *see also* Young and Warshauer

20

Brief at p. 26]. Because the Defendants were the main architects of CSSE they should be analyzed in the same way as the defendants in *Roth*.[7]

Furthermore, the SAC alleges that Rouhana controlled all aspects of CSSE, was privy to the financial difficulties of CSSE (SAC ¶¶ 19, 52, 54, 55, 56, 57), and clearly knew that CSSE would be unable to pay out the bonuses or health benefits. Medical insurance deductions and other wages were intertwined with entities owned by Rouhana (and Newmark) and those entities continued to receive payments throughout the relevant prepetition period. SAC ¶ 88. This was confirmed with the post-petition investigation performed by Debtors' counsel, even though they could not undo the conversion for the benefit of employees post petition: "payroll taxes had been converted, which I think was over a nine-month period. The medical benefit deductions had been converted during the two and a half months before the filing." Status Conference Transcript at 14:9-17. These objective facts of Rouhana's scheme to siphon money away from employees allow a reasonable inference to be drawn that intent to defraud was present at the time his statements were made. Even if his statements were to be considered promissory, Rouhana intended to defraud the employees because he was primarily involved in the scheme to defraud the employees. *See Sihler v. Fulfillment Lab, Inc,* No. 3:20-CV-01528-H-MSB, 2020 WL 7226436, at *11 (S.D. Cal. Dec. 8, 2020) (even without direct evidence, intent can be proved through the existence of a fraudulent scheme which allows the court to infer a defendant's specific intent to defraud).

The basis for the intent by Newmark is pled in a similar way. Newmark was a Board member, primarily responsible for (and had control) payment of employee wages and benefits, and

---

[7] Defendants' argument that the statements are promissory in nature is a convenient mischaracterizations, and in any event does not insulate them from liability given the fact that the SAC properly alleged fraud. Even if the statements are promissory, promissory statements are actionable under fraud if a party pleads specific facts that lead to a reasonable inference that the defendant had no intention to perform at the time of the statement. *See Wang Lab'ys, Inc. v. Ma Lab'ys, Inc.,* No. C 95-2274 SC, 1995 WL 729298, at *14 (N.D. Cal. Dec. 1, 1995). As discussed below, that is exactly what the SAC does.

17774350

was married to Rouhana at the time he made his fraudulent statements regarding bonuses, benefits, payroll, and other payments, making her more likely to know Defendant Rouhana's statements were false as she benefitted from the scheme he was orchestrating.  SAC ¶¶ 20, 140, 168, 180. Further, the entities owned by Rouhana and Newmark continued to receive payments throughout the relevant prepetition period.  SAC ¶ 88.  Just like Rouhana, Newmark was primarily involved in the scheme to defraud employees and thus clearly had an intent to defraud the employees by failing to correct or remedy the fraudulent statements made by Defendant Rouhana when she had a duty to do just that. SAC ¶ 140.

To reemphasize, intent can be pled generally and may be inferred from a defendant's statements and conduct.  *United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992).  When considering the totality of the statements and conduct by Young, Warshauer, and Schwartz during the relevant period, it is evident that their conduct supports an inference of an intent to defraud.

As discussed *supra* p. 18, these Defendants, as the sole members of the SRC, had a clear understanding of the financial issues of CSSE.  *See e.g.* SAC ¶¶ 102, 103, 113, 121.  Despite this, the SRC continued to have employees working during the bankruptcy and even assured employees that the top priority was the immediate payment of past due wages. *See* Warshauer Transcript at 84:4-15; *see also* SAC ¶ 122.  While the SRC resigned prior to the official conversion, there is no question that at the time they resigned they knew that: (i) CSSE could not pay employees, (ii) the case was going to be converted, and (iii) Judge Horan did not want employees working without the ability to be paid. *See* SAC ¶ 131; *see also* Warshauer Transcript at 90:16-20.  Further, the SRC was aware that deductions continued to be taken out despite not being properly applied towards providing medical and dental insurance, and other benefits for employees.  SAC ¶¶ 124, 126.  As such, Young, Warshauer, and Schwart's communications and conduct while they were

22

exclusively in control creates an inference that they intended to defraud employees by assuring employees that they would stabilize CSSE's affairs and operations post-petition, asking people to work post-petition, representing that employees would be paid post-petition, and nonetheless resigning prior to conversion in an attempt to potentially avoid liability,[8] despite clearly understanding what conversion meant.

As such, the SAC clearly pleads particular facts relating to Defendants communications and conduct that infer, at the time the statements were made, Rouhana, Newmark, Young, Warshauer, and Schwartz had no intention, or basis, of following through and thus the requisite intent for fraud is satisfied. *Dunn v. FastMed Urgent Care*, P.C., No. CV 2018-0934 MTZ, 2019 WL 4131010, at * 8 (Del. Ch., Aug. 30, 2019).

**C.      Plaintiffs Plausibly Allege Reliance Based on the Material Misrepresentations or Omissions Because the Employees Continued Working At All Times.**

Newmark and Rouhana take pains arguing that the SAC fails to adequately allege reliance. Newmark Brief at p. 10; Rouhana Brief at p. 12.  But, the SAC does exactly that.  The SAC alleges that Plaintiffs actually and reasonably relied on the material misrepresentations and omissions relating to wages and benefits being forthcoming by continuing to work for the CSSE.  *See e.g.* SAC ¶ 145.  The only reasonable explanation of why the Plaintiffs would keep working despite not being paid is because they reasonably believed that the wages, reimbursements, benefits due and owing to them were going to be paid, based on the statements made to them by Defendants.

Rouhana claims that "Plaintiffs must plead sufficient facts to establish that each member of the class reasonably relied on the predictive statement by taking, or refraining from taking, actions in response." Rouhana Brief at p. 12.  However, Defendant Rouhana improperly relies on

---

[8] *See* Young and Warshauer Brief at p. 26 ("In fact, employees were not terminated as a result of the chapter 7 conversion until after Messrs. Warshauer and Young had left the SRC.").

23

*Yarger v. ING Bank* where the facts and legal standard are inapposite. *Yarger* was decided at the class certification stage and was focused on fraud relating to misleading advertisements. 285 F.R.D. 308, 327 (D. Del. 2012). The other cases cited by Defendant Rouhana in this section are also inapposite for, among other reasons, involving class certification which is premature at this stage.[9]

In short, Plaintiffs plausibly plead the "who," "what," "when," "where" and "how" of the fraud. *See e.g. ScroeBlue, LLC v. Locum Tele PC,* No. 2:23-cv-00345-WLH-AS, 2024 WL 3304515, at *7 (C.D. Cal. May 29, 2024); *see also Copper v. Pickett*, 137 F.3d 616, 625, 627 (9th Cir. 1997) (plaintiffs need to plead the "who, what, when, where, and how" that would suggest fraud). Therefore, this Court should not dismiss Count I.[10]

## II.    THE SAC ADEQUATELY PLEADS CONVERSION (COUNT II).

In their respective briefs, Rouhana and Defendant Newmark allege that the California Supreme Court's ruling in *Voris* precludes the Plaintiffs' conversion claim. Rouhana Brief at p. 14; Newmark Brief at p. 10. Both Defendants state that a conversion claim for wage conversion cannot be brought under California law. Whereas, Defendants Young, Warshauer, and Schwartz argue that Delaware law does not recognize a conversion claim for money. Warshauer and Young Brief at p. 12; Schwartz Brief at pp. 13-14. These arguments are confused and without merit.

As an initial matter, to the best of the Plaintiffs' knowledge, none of the members of the putative class are residents of Delaware (discovery will confirm this) and Delaware law is not applicable. Additionally, at this early juncture, the Plaintiffs need not engage in thorough conflicts

---

[9] *In re LifeUSA Holding, Inc.,* 242 F.3d 136, 138-40 (3d Cir. 2001) (vacating appeal after plaintiffs presented different facts, allegations, and theories that were presented to the district court); *In re First All. Mortg. Co*., 471 F.3d 977, 990 (9th Cir. 2006) (finding class certification proper when there was a centrally-orchestrated scheme to mislead borrowers).

[10] While Defendants Young, Warshauer, and Schwartz do not argue a lack of reliance, for the avoidance of doubt, this argument applies to them as well given employees continued to work until the case was converted.

24

17774350

of law analysis. [11] Therefore, the Plaintiffs do not address those assertions alleged by Defendants under Delaware law.

Under California law, "the tort of conversion comprises three elements: '(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages.'" *Voris v. Lampert*, 446 P.3d 284, 290 (Cal. 2019). "Conversion is any act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights therein*." Fischer v. Machado*, 50 Cal.App.4th 1069, 1072 (Cal. Ct. App. 1996). Conversion claims can apply to money where the plaintiff can allege interference with a "possessory interest in a specific, identifiable sum, such as when a trustee or agent misappropriates the money entrusted to him." *Kim v. Westmoore Partners, Inc.*, 201 Cal.App.4th 267, 284 (Cal. Ct. App. 2011). A defendant does not have to obtain any benefit for a valid conversion claim to be found. *See e.g.*, *Greif v. Sanin*, 74 Cal. App. 5th 412, 449 (Cal. Ct. App. 2022) (stating questions of the defendant's motive are ordinarily immaterial). All that is required is the plaintiff's ownership or right to possession of property, defendant's interference with that right, and resulting damages to the plaintiff. *Voris*, 446 P.3d at 290.

As outlined in the SAC, among other benefits and funds converted by the Defendants were certain "non-discretionary bonuses, commissions and accrued earned performance-based

---

[11] Plaintiffs are aware of members of the putative class that resided in multiple states, including but not limited to: Oklahoma, New York, Utah, Minnesota, Texas, Ohio, Illinois, Florida, Colorado, Indiana, Georgia, Virginia, and Pennsylvania, Missouri, and South Dakota. Conversion generally has the same elements across such states; therefore, no conflicts of law analysis is needed to the extent a nationwide class if certified as to Count II. *See e.g. Aylesbury Mercantile Co. v. Fitch*, 99 P. 1089, 1089 (Okla. 1962); *Morey v. Page*, 802 S.W.2d 779, 786 (Tex. Ct.App.1990) (citing *Waisath v. Lack's Stores, Inc*., 474 S.W.2d 444, 446 (Tex.1971)); *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n. 3 (Pa.Super.Ct.2000); *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985); *see also Warm Springs Props., Inc. v. Andora Villa, Inc*., 526 P.2d 1106, 1108 (1974)(finding that "specifically identifiable monies" may be the subject of a conversion claim); *State v. Twitchell*, 832 P.2d 866, 870 (Utah Ct.App.1992); *Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006) (citations omitted); *DLH, Inc., v. Russ,* 566 N.W.2d 60, 71 (Minn.1997); *Bunta v. Superior VacuPress, L.L.C.*, 218 N.E.3d 838, 844 (Ohio 2022); *Joe Hand Promotions, Inc. v. Creative Entertainment, LLC*, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013); *Glenn Arms Assocs. v. Century Mortg. & Inv. Corp.,* 680 P.2d 1315, 1317 (Colo.App. 1984)(citing *Byron v. York Investment Co.,* 296 P.2d 742 (Colo. 1956)).

17774350

bonuses." SAC ¶ 146. This is precisely the kind of property interest that California courts have previously found constitute an adequate property interest to support a count for conversion. *See e.g.*, *Sanowicz v. Bacal*, 234 Cal.App.4th 1027, 1042 (Cal. Ct. App. 2015) (the court finding that the defendant's interference with the plaintiff's commissions constituted conversion). The SAC alleges that Plaintiffs held property interests, which the Defendants interfered with. *See* e.g., SAC ¶ 66 (non-discretionary bonuses); SAC ¶ 130 (payroll taxes and medical benefits); SAC ¶ 152 (deductions for underlying benefits and/or entitlements). The Defendants' actions deprived such Plaintiffs of their interest in such property.

Rouhana and Newmark point to *Voris v. Lamport* to support their allegations that a claim for conversion under these facts is not cognizable under California law. Newmark Brief at p. 10; Rouhana Brief at p. 14. However, the facts before the Court are different than those underpinning the *Voris* decision. In *Voris*, the Plaintiff alleged claims primarily for standard unpaid wages. *See gen., Voris v. Lamport* 446 P.3d 284, 286 (Cal. 2019). Here, the Plaintiffs allege facts related to the conversion of, among other things, payroll taxes and medical benefit deductions from employees' paychecks (SAC ¶ 130) and wages and benefits (SAC ¶ 153). The SAC further alleges that while Plaintiffs and other employees went without their benefits while deductions continued to be taken from their pay, entities owned by Defendants Rouhana and Newmark continued to receive payments. *See* SAC ¶ 88. Furthermore, because the funds that were converted by the Defendants are capable of being identified by discovery, such conversion claim should survive the Motions to Dismiss. *See Alvarenga v. Carlson Wagonlit Travel, Inc.*, 1:15-cv-01560-AWI-BAM, 2016 WL 466132, at *5 (E.D. Cal. Feb. 8, 2016) (quoting *Brock v. Concord Automobile Dealership, LLC*, No. 14-cv-01889-HSG, 2015 WL 3466543 (N.D. Cal. June 1, 2015) (stating "it is not necessary to plead the specific sum of money; instead, Plaintiff must plead facts that

26

17774350

plausibly indicate that a sum is 'capable of identification.'").[12]

The SAC also sufficiently pleads facts demonstrating that each individual Defendant exercised significant dominion and control over the property that was converted.[13]

For the reasons stated herein, the Plaintiffs have adequately alleged valid claim for conversion.

## III.    THE SAC PLAUSIBLY PLEADS VIOLATIONS OF THE CALIFORNIA LABOR CODE AGAINST EACH DEFENDANT.

### A.    Plaintiffs Have Standing to Bring California Labor Code Claims.

Preliminarily Schwartz, Young and Warshauer argue that Plaintiffs lack standing to bring claims under the Cal. Lab. Code because the SAC allegedly pleads only that Plaintiffs bring those claims on behalf of the California Sub-Class, without alleging that Plaintiffs themselves were employed in California. *See* Schwartz Brief at p. 16; Young and Warshauer Brief at p. 13. That argument mischaracterizes the SAC.  The SAC expressly alleges that Plaintiffs bring these claims on behalf of the California Sub-Class comprised of employees who worked for Defendants in California, and further alleges that Plaintiffs themselves were employees of CSSE who performed work for Defendants as part of that workforce. *See* SAC ¶¶ 4, 16, 29, 31, 162, 174, 187. The named Plaintiffs comprise some of the California Sub-Class as demonstrated by their proofs of claim filed in these cases (*see e.g.,* Claim No. 6-1 (Erin Tuttle proof of claim with address "2102 Mathews Ave #C Redondo Beach, CA 90278", attached to Pakrouh Declaration as **Ex. D**) and the California

---

[12] The SAC sufficiently pleads facts regarding how Warshauer, Young and Schwartz, as members of the SRC, oversaw payroll, including deductions from Plaintiffs' paychecks for benefits not remitted, while in their positions. SAC ¶¶ 106, 120, 123, 124, 126, 130, 157-58. The SAC also pleads sufficient facts to demonstrate that each individual Defendant, during his or her respective time with the CSSE Companies, authorized withdrawals from employee paychecks for benefits that such employees never received. *See, e.g.* SAC ¶ 139-150. The Defendants' actions interfered with Plaintiffs' vested property interest in certain funds and benefits, resulting in harm to the Plaintiffs and potential class members. SAC ¶ 160.

[13] Schwartz, Young and Warshauer also allege that they are not liable for conversion because they did not exercise dominion over or dispose of Plaintiffs' of their funds. Schwartz Brief at pp. 14-15; Warshauer and Young Brief at p. 12. The record belies this statement because Warshauer and Young were exercised complete control over the Debtors' estates during the pendency of the cases. *See e.g.*, SAC ¶ 120.

27

17774350

Superior Court action that is pending and brought by the same named Plaintiffs. *See Skajem, et al, v. Chicken Soup for the Soul Entertainment, et al*, Case No. 24STCV18214 (Super. Ct. Cal. 2024) (Highberger, Dept. 10). At the pleading stage, Plaintiffs are not required to prove their place of employment or plead detailed jurisdictional facts; they must plausibly allege that they and the members of the California Sub-Class worked for Defendants in California and were subject to the same wage violations. The SAC does exactly that. Defendants' attempt to manufacture a standing defect from the subclass allegations is therefore misplaced.

> **B.** **Each Individual Defendant Face Personally Liability Under Section 558.1 of the Cal. Lab. Code.**

Defendants argue that individual liability under Cal. Lab. Code § 558.1 does not apply, but these arguments are misplaced. Rouhana Brief at pp. 14-21; Newmark Brief at pp. 10-22; Warshauer and Young Brief at pp. 14, 24-26; Schwartz Brief at pp. 9, 16-21. Section 558.1 expressly permits claims under §§ 203, 226, 226.7, 1193.6, 1194, and 2802 against any "person acting on behalf of an employer," including owners, directors, officers, or managing agents. Cal. Lab. Code § 558.1; *see Usher v. White*, 64 Cal. App. 5th 883, 893 (Cal. Ct. App. 2021) (noting that the statute targets individual officers involved in wage violations and aims to prevent individuals from evading obligations to employees). Section 558.1 is not an independent cause of action; rather, it attaches individual liability to violations of the enumerated statutes.

The California Legislature enacted Cal. Lab. Code § 558.1, which expressly permits a cause of action under §§ 203, 226, 226.7, 1193.6, 1194, and 2802 against any "person acting on behalf of an employer," including owners, directors, officers, or managing agents. Cal. Lab. Code § 558.1; *See Usher v. White*, 64 Cal. at 94 (stating "By making certain individuals such as owners, directors, officers, and managing agents personally liable, the Legislature sought to 'discourage [such individuals] from rolling up their operations and walking away from debts to

28

workers.'")(citing Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 588 (2015–2016 Reg. Sess.) as amended Sept. 4, 2015, p. 5)). Section 558.1 is not an independent cause of action; rather, it allows violations of the enumerated Cal. Lab. Code provisions to attach individual liability to those acting on behalf of the employer.

To establish liability under § 558.1, an individual must exercise oversight of the company's operations or influence over corporate policy in a way that contributes to Cal. Lab. Code violations. *Espinoza v. Hepta Run, Inc.*, 74 Cal. App. 5th 44, 59–60 (2022).  Personal involvement in day-to-day operations or authorship of specific policies is not required; what matters is control or influence over decisions that result in violations.  *Id.*

Here, Rouhana and Newmark, as CEO and Board members, exercised control over corporate operations, payroll, and wage-related decisions.  *See* SAC ¶¶ 19, 20, 54, 55, 56, 57, 110. Similarly, Defendants Young, Warshauer, and Schwartz, as SRC and Board members, exercised control over the operations of CSSE and the Debtors.  *See* SAC ¶¶ 21, 22, 23, 113, 115, 120, 122. Through these roles and actions, each Defendant had oversight and influence over corporate policies and practices that resulted in the Cal. Lab. Code violations alleged. As discussed further below, the SAC provides specific allegations demonstrating the basis for each Defendant's control with respect to the different factual issues giving rise to each claim.[14]

---

[14] Plaintiffs' factual allegations describing the relationships among UKG, Motus, the Company, and the Debtors do not absolve Defendants of liability under California law. First, to the contrary, UKG and Motus are insulated from liability under governing California law (*see, e.g., Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 820–22 (2019) (holding that payroll companies or vendors that perform administrative services for an employer are not "employers" under the Cal. Lab. Code absent control of wages, hours, or working conditions and owe no independent contractual or tort duty to employees for wage claims)). Although *Goonewardene* involved a payroll processor, its reasoning applies with equal force to reimbursement administrators like Motus. Like the payroll vendor in *Goonewardene*, Motus functioned in a ministerial capacity as a service provider, acting at the direction of the employer and as an extension of the employer's payroll or reimbursement operations, without authority to authorize payments, determine policy, or exercise control over employees' compensation. *Id*. at 823, 834.

Second, Plaintiffs allege these facts solely to explain the operational relationships as they are presently understood, not as concessions regarding control or responsibility. *See* SAC ¶¶ 88 (alleging that the entities were operationally intertwined), 89-90.  At the July 10, 2024 hearing, Debtors' counsel represented that conversion occurred prepetition

29

### C.    Failure to Pay Wages (Count III) is Properly Pled under California Law.

Defendants advance two principal arguments as to Count III: (i) that Plaintiffs fail to state a wage claim, and (ii) that no individual defendant can be liable because the SAC does not plausibly allege affirmative actions of the Defendants that caused violations of Cal. Lab. Code § 558.1. First, Defendants argue the SAC fails to plead a minimum wage or overtime violation because it does not identify any specific workweek, hours worked, rate of pay, or unpaid wages, and instead alleges only that employees were unpaid for "some or all" wages, which they contend is insufficient under *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014) and *Reyes v. Five Diamond Cold Storage, Inc.*, 2024 WL 3011123, at *6 (E.D. Cal. June 11, 2024). Newmark Brief at pp. 13–14; Rouhana Brief at pp. 18–19; Young and Warshauer Brief at p. 17. Second, Defendants argue Count III fails as to the individual defendants because the SAC relies on impermissible group pleading and alleges only high-level roles, not facts showing that any Defendant personally caused a violation as required under § 558.1.  Newmark Brief at p. 12; Rouhana Brief at pp. 14–16; Schwartz pp. 18–19, 21; Young and Warshauer Brief at 17–19. Defendants are wrong.

Defendants' argument that Plaintiffs fail to state a claim under Cal. Lab. Code §§ 1194 and 1197 ignores the SAC's specific, non-conclusory allegations identifying actual periods of nonpayment. Plaintiffs allege that, pre-petition, under Rouhana and Newmark's control, employees were not paid earned wages and compensation—including employment- and transaction-based compensation—for a defined pay period preceding the bankruptcy filing, giving

---

but could not confirm whether conversion was ongoing at that time, stating that it was their belief that "payroll taxes had been converted, which I think was over a nine-month period," and that "the medical benefit deductions had been converted during the two and a half months before the filing." Status Conference Transcript at 14:9–17. Plaintiffs further allege that conversion of funds deducted from employees' paychecks continued post-petition. *See* SAC ¶¶ 124, 130. Discovery will further develop these facts and will show that Defendants, through their roles, authority, and decision-making power, ultimately exercised control over the Company at various times and are properly subject to liability.

30

17774350

rise to minimum wage and overtime violations. SAC ¶¶ 67–74, 163–166. The SAC further alleges that this same nonpayment continued post-petition, when employees continued working but were not paid for at least one pay period while the SRC controlled the Debtors prior to conversion. SAC ¶¶ 106, 124, 166, 167. These are not abstract allegations—they identify specific work periods during which employees performed work and were not paid at all. That is sufficient to state a claim under §§ 1194 and 1197, as it plausibly alleges that employees were paid below minimum wage (*i.e.,* not paid at all) and were not paid overtime for hours worked in excess of statutory thresholds. Defendants' reliance on *Landers* is misplaced because, unlike the generalized allegations there, the SAC pleads defined unpaid pay periods tied to Defendants' control, including pre-petition nonpayment under Rouhana and Newmark and continued post-petition nonpayment under the SRC. These allegations more than satisfy the pleading standard.[15]

It is undisputed that Defendants acted as directors and/or officers of CSSE and thus are implicated by Section 558.1. *See* SAC ¶¶ 19–23, 53-55, 100, 107, 110. Additionally, the Defendants satisfy the test set out in *Usher* that they "had sufficient participation in the activities of the employer—including, for example, over those responsible for the alleged wage and hour violations— such that the 'owner' may be deemed to have contributed to, and thus have 'cause[d]' such violations." *Usher v. White*, 64 Cal. App. 5th 883, 886 (Cal. Ct. App. 2021); *see also Espinoza*

---

[15] Young and Warshauer contend that the wages due on June 21 and July 5 were paid pursuant to the Court's July 5 Order; but no further wages were paid or payable on or before July 10, when Young and Warshauer resigned. *See* Young and Warshauer Brief at p.19. The June 21, 2024 payroll represents the last identified point at which the Company was required to make a payroll payment under its established two-week payroll practice. First Day Hearing Day 2 Transcript at 86:21-23 ("…the debtors did not make their June 21st payroll to employees at the normally scheduled time."). Counting forward from that date, the next payroll dates would have been July 5, 2024 and July 19, 2024. The payment made on July 5, however, merely satisfied the payroll associated with the June 21 payroll cycle (*see* SAC ¶ 24); it did not cover the wages employees earned for work performed after June 21, including the period employees continued to work through the Petition Date and into the following pay period. Defendants Young and Warshauer therefore rely on the fact that a payment occurred on July 5, but that payment did not satisfy the Company's ordinary payroll practice or the Employee Handbook with respect to wages earned for post-June 21 work. Accordingly, Plaintiffs have identified specific pay periods during which SRC failed to pay employee wages while they remained in control of the Debtors.

31

17774350

*v. Hepta Run, Inc.,* 74 Cal. App. 5th 44, 59 (Cal. Ct. App. 2022). Defendants' own testimony under oath and subject to penalty of perjury confirmed that they had control of the Company. *See* SAC ¶¶ 110, 112–115, 119–123, 166–168. Plaintiffs alleged facts based on that testimony and contemporaneous emails that Defendants controlled day-to-day operations through participation in managing or overseeing the individuals responsible for providing the employees' wages. *See* SAC ¶¶ 110, 112–115, 119–123, 166–168.[16] The SAC also alleges that the Defendants either participated in or failed to adequately investigate the issues with not paying the employees and improper wage deductions. SAC ¶¶ 87–88, 97–98, 101, 109, 116, 123–126, 130, 166–168, 188–195.

Thus, the SAC sufficiently and plausibly states a claim under sections 1194 and 1197.

**D.     Failure to Timely Pay Wages (Count IV) is Properly Pled under California Law.**

Defendants advance two main arguments as to Count IV: (i) Plaintiffs fail to allege any facts establishing a semi-monthly violation under Section 204; and (ii) there can be no individual liability under Section 204 because the section applies only to "employers." Newmark Brief at p. 16; Schwartz Brief at pp. 7 & 19; Rouhana Brief at p. 21; Young and Warshauer Brief at pp. 19–21. Both arguments fail.

Section 204 requires that all wages other than certain express exclusions are due and payable twice during each calendar month. Cal. Lab. Code § 204. If a person fails to pay wages to an employee as required under section 204, they shall be subject to an initial penalty of $100 for

---

[16] The SAC alleges that each Defendant had significant participation in managing or overseeing employees and payroll functions: Rouhana was responsible for "operations and financial activities," including payroll and benefits; exercised significant operational control (¶¶ 110 & 166); Newmark had "primary responsibility for the payment of wages and benefits" and exercised payroll administration control (¶¶ 140 & 168); Young, as SRC member, part of group "managing the day-to-day of the company" and overseeing payroll and employee-related operations (¶¶ 119–123 & 167); Warshauer, SRC member, participated in operational and payroll oversight through SRC (¶¶ 119–123 & 167); Schwartz, as CEO/SRC member, was directly responsible for payroll, benefits, and operational decision-making (¶¶ 112–115, 122 & 167).

32

each failure and $200 for each subsequent or willful violation. Cal. Lab. Code § 210.  Cal. Lab. Code § 210 allows employees to recover for violations of Section 204. *See* Ca. Lab. Code § 210 ("The penalty shall either be recovered by the employee as a statutory penalty pursuant to Section 98 *or* by the Labor Commissioner as a civil penalty through the issuance of a citation or pursuant to Section 98.3") (emphasis added).  To survive a motion to dismiss, counts relating to section 204 must allege facts sufficient to support such claims.  *See Barajas v. Blue Diamond Growers Inc.,* No. 1:20-CV-0679 JLT SKO, 2022 WL 1103841, at *21 (E.D. Cal. Apr. 13, 2022).[17]

Preliminarily, Young and Warshauer contend that Section 204 of the Cal. Lab. Code does not permit a private right of action.  *See* Young and Warshauer Brief at p. 19. That assertion is incorrect. The cases on which they rely are federal district court decisions interpreting California law. *Id.* citing *Dawson v. HITCO Carbon Composites, Inc*., 2017 WL 7806618, at *5 (C.D. Cal. Jan. 20, 2017); *Bunkley v. Cole Haan, LLC*, 2025 WL 50688, at *7 (E.D. Cal. Jan. 8, 2025).  This Court has acknowledged that state courts are better positioned to interpret their own law and have done so, contrary to what Young and Warshauer assert.[18]

Sections 204 and 210 when read together, plainly allow aggrieved employees to bring actions against employers for violations of the same.  *See* Ca. Lab. Code § 210 ("In addition to, and entirely independent and apart from, any other penalty provided in this article, every person

---

[17] At the pleading stage, Plaintiffs need only allege facts supporting a plausible inference that Defendants failed to comply with these timing requirements. *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644–45 (9th Cir. 2014) (Rule 8 requires plausibility, not payroll-level detail). Courts applying *Landers* to wage claims likewise reject the notion that plaintiffs must identify specific pay periods or instances of underpayment at the pleading stage. *See Huynh v. Jabil Inc.*, No. 22-CV-07460-WHO, 2023 WL 1802417, at *3 (N.D. Cal. Feb. 7, 2023). Although *Huynh* ultimately dismissed the plaintiff's section 204 claim, that ruling turned on defects not present here: the plaintiff failed to address the claim in his opposition and did not allege that wages were not paid on the required twice-monthly schedule. *Id.* at *4. The court therefore dismissed the claim with leave to amend and required it to be pled separately from the general unpaid-wages cause of action. *Id.* Here, by contrast, Plaintiffs plead a standalone Section 204 claim and expressly allege that Defendants failed to pay wages on the required twice-monthly schedule, satisfying the pleading requirements identified in *Huynh*.

[18] *See e.g. DHP Holdings II Corp. v. Peter Skop Indus., Inc. (In re DHP Holdings II Corp.),* 435 B.R. 220, 227 (Bankr. D. Del. 2010) ("Although the parties have not identified any unsettled state law issues, a state court would be better positioned to identify and resolve any such issues, should they arise).

17774350

who fails to pay the wages of each employee as provided in Sections … 204… shall be subject to a penalty…   The penalty shall either be recovered by the employee as a statutory penalty pursuant to Section 98 or by the Labor Commissioner[.]”).   In interpreting the statute, California courts routinely allow individual employees, as well as those on behalf of putative class members, to prosecute those claims and do not deny those litigants relief due to lack of standing.   *See e.g., Oman v. Delta Air Lines, Inc.,* 466 P.3d 325, 332-333 (Cal. 2020) (the United States Court of Appeals for the Ninth Circuit certified questions of California law to the California Supreme Court regarding asking about the application of various California wage and hour laws—specifically section 204—to flight attendants who brought putative class action claims, including specifically section 204, against airlines; California Supreme Court did not dismiss for lack of standing but rather held in pertinent part section 204 applies only to pay periods during which an employee predominantly works inside California); *Sharp v. The Walt Disney Co.,* No. 22STCV39275, 2025 WL 2742728, at *5 (Cal.Super. Sep. 08, 2025) (denying defendant’s motion for summary judgment where plaintiff, individually, brought section 204 claims against defendant; court did not dismiss claims due to lack of standing, but rather held defendant “failed prove as a matter of law that [p]laintiff did not report conduct which he reasonably believed constituted violation of Labor Code section 204”); *Lyman v. Walzer Melcher LLP, No.* 19STCV32486, 2025 WL 1907779, at *3 (Cal.Super. June 10, 2025) (denying defendant’s motion for summary adjudication of plaintiff’s section 204 claims—brought in plaintiff’s individual capacity).   Therefore, this argument is without merit.

With respect to alleging a substantive section 204 claim, the SAC satisfies the pleading standard. It alleges that the California Sub-Class plaintiffs were not paid wages twice per month as required by Cal. Lab. Code § 204, supported by multiple missed and delayed payroll periods

34

and contemporaneous Company emails acknowledging late and unpaid wages.   SAC ¶¶ 92–98, 101, 111, 114, 116, 118, 123–126, 131, 166-168, 174–175, 180–181. Post-petition, the SRC was actively involved in operating the Company at the time of the untimely July 5, 2024 payment, which failed to include the prior two weeks of accrued wages.[19] Taken together, the SAC pleads concrete, contemporaneous facts supporting a plausible inference that Defendants failed to pay wages in compliance with section 204's semi-monthly timing requirements.

Defendants uniformly rely on *Rios v. Linn Star Transfer, Inc.,* No. 19-cv-07009-JSC, 2020 WL 1677338 (N.D. Cal. Apr. 6, 2020) to argue that they cannot be held individually liable under Cal. Lab. Code § 204. Newmark Brief at p. 15; Schwartz Brief at p. 21; Rouhana Brief at p. 19; Young and Warshauer Brief at pp. 19–22. That reliance is misplaced because that case is factually distinguishable from the present one.[20]

All Defendants except Schwartz[21] argue that the IWC Wage Order definition of "employer," as interpreted in *Martinez v. Combs*, governs the application of this claim and precludes liability against them because they are corporate officers or directors. *See* Newmark

---

[19] The June 21, 2024 payroll represents the last identified point at which the Company was required to make a payroll payment under its established two-week payroll practice (First Day Hearing Day 2 Transcript at 86:21–23); counting forward, the next payroll dates would have been July 5 and July 19, 2024, but the July 5 payment merely satisfied the June 21 payroll cycle and did not cover wages earned after June 21, including work performed through the Petition Date and into the following pay period. *See* SAC ¶ 24.

[20] *Rios* addressed whether individual corporate officers could be held liable under Cal. Lab. Code § 204 for an employer's routine failure to timely pay wages, where the only alleged misconduct was nonpayment. *Rios*, 2020 WL 1677338, at *2. Unlike *Rios*, the facts here do not involve a passive failure by an employer to comply with wage-timing statutes such as Cal. Lab. Code § 204, nor do Plaintiffs seek to impose liability based solely on Defendants' corporate titles. Rather, Plaintiffs allege that Defendants were aware that employee deductions were not being applied to provide benefits, yet permitted deductions for medical, dental, retirement, and other benefits to continue, including after the Court's orders and post-petition. *See e.g.,* SAC ¶¶ 44, 87, 88, 126, & 130. This case therefore involves affirmative conduct and control over employee funds, not the routine employer wage obligations addressed in *Rios.* The *Rios* court drew a distinction between statutory wage-payment obligations that apply only to employers, and conduct-based violations that require intentional acts capable of being committed by individuals. The court emphasized that Cal. Lab. Code § 203 liability may attach to individuals precisely because it requires a "willful" failure to pay wages, reflecting intentional conduct. *Rios*, 2020 WL 1677338, at *4. By contrast, Cal. Lab. Code § 204 liability was rejected in *Rios* only because it concerns an employer's obligation to designate and maintain regular paydays. Here, Plaintiffs allege intentional acts involving the control and conversion of employee funds, not merely a failure to pay wages on a designated payday. *See e.g.,* SAC 166-68, 178, 180-81, 192-95, 206-07, 218, 229, 243-45.

[21] The Schwartz Brief does not make this argument. As such the argument is waived as to Schwartz.

17774350

Brief at p. 15; Rouhana Brief at pp. 19–20; Young and Warshauer Brief at pp. 16, 19–20. The IWC's wage orders define "employer" as "any person…who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." Industrial Welfare Commission Order No. 12-2001 at § 2(F). However, Defendants read *Martinez* too broadly in asserting that their status as corporate officers or directors categorically shields them from liability.

While corporate agents do not incur liability "merely by reason of their official position," they may be held personally liable where they act outside the scope of their agency. *Reynolds v. Bement*, 116 P.3d 1162, 1169–70 (Cal. 2005), abrogated on other grounds by *Martinez v. Combs*, 231 P.3d 259 (Cal. 2010). California courts have long recognized that a corporate officer who "directly authorize[s] or actively participate[s] in wrongful or tortious conduct" may be individually liable. *Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103, 113 (Cal. Ct. App. 1990). Likewise, principals may be liable for wage violations where they act outside the scope of their agency—for example, by abdicating their responsibilities as corporate officers or directors to ensure that wages are timely paid or by knowingly failing to ensure that employees are compensated in accordance with California law. *See Bradstreet v. Wong*, 75 Cal. Rptr. 3d 253, 265–66 (Cal. Ct. App. 2008) (noting that principals of a closely held corporation may be liable for unpaid wages where a basis exists to treat them as alter egos of the corporation).[22]

Here, Plaintiffs allege that Defendants acted outside the permissible scope of their agency by, among other things, abdicating their responsibilities as corporate officers and/or directors to ensure that wages were timely paid and knowingly allowing California Sub-Class plaintiffs to go

---

[22] Young and Warshauer's contention that the failure to pay wages timely is not action that falls outside the scope of their agency is unpersuasive. Young and Warshauer Brief at p. 20 (citing to treatises and out-of-state authority). California law recognizes such theories of liability. *Bradstreet v. Wong*, 75 Cal. Rptr. 3d 253 at 265–66; *Reynolds v. Bement*, 116 P.3d 116 at 1169–70; *Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103 at 113.

36

17774350

uncompensated in violation of California law. SAC ¶¶ 148, 179–180, 184, 193–195. Specifically, the SAC alleges that each Defendant actively participated in and was directly involved in the violations of the Cal. Lab. Code. Specifically, it alleges that the individual Defendants had contemporaneous knowledge of payroll shortfalls and ongoing wage-payment problems, including through internal communications acknowledging delayed or missed payroll. SAC ¶¶ 93–95, 166–68. The SAC further alleges that these Defendants exercised control over, and participated in, decisions affecting whether and when wages would be paid, including decisions to prioritize other expenditures and continue business operations despite known payroll deficiencies. SAC ¶¶ 180–81. It also alleges that the individual Defendants permitted the Company to continue operating while employees went unpaid or were paid late, and that those decisions directly resulted in missed or delayed wage payments to California employees. SAC ¶¶ 124, 128, 175, 194–95.

Because the SAC plausibly alleges violations of section 204, Count IV is adequately pled and should not be dismissed.

### E.    Violation of Labor Code Cal. Lab. Code § 221, Et Seq. (Count V) is Properly Pled under California Law.

Defendants argue that Count V should be dismissed because: (1) the SAC fails to allege sufficient facts showing that unlawful deductions were actually made; and (2) there can be no individual liability under Section 221 because the section applies only to "employers." Newmark Brief at pp. 16–17; Schwartz Brief at p. 19; Rouhana Brief at p. 21–22; Young and Warshauer Brief at pp. 21–22. Neither argument warrants dismissal at the pleading stage.

Cal. Lab. Code § 221 states "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." *Id.* at § 221.[23]  Courts have noted that "[s]ection 221 was enacted in order to prevent employers from

---

[23] Additionally, Cal. Lab. Code § 225.5 states that "in addition to, and entirely independent and apart from, any other

37

utilizing secret deductions or kickbacks to pay employees less than their stated wages. *Ralphs Grocery Co. v. Superior Court*, 5 Cal.Rptr.3d 687, 691-92 (Cal. Ct. App. 2003); *Kamath v. Robert Bosch LLC*, No. 2:13-CV-08540-CAS, 2014 WL 2916570, at *6 (C.D. Cal. June 26, 2014) *citing Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal.4th 217, 231, 64 Cal.Rptr.3d 407, 165 P.3d 133 (2007) (section 221 is designed to "prevent the use of secret deductions or 'kickbacks' to make it appear the employer is paying a required or promised wage, when in fact it is paying less") "'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." *Id*.

The SAC alleges precisely the type of misconduct Cal. Lab. Code § 221 was designed to prevent. Plaintiffs allege that, prepetition, Defendants Rouhana and Newmark deducted wages for benefits, taxes, and other contributions but failed to remit those amounts for their intended purposes—resulting in the lapse of Premera coverage, denial of claims, and subsequent termination of Anthem coverage for nonpayment—leaving employees without benefits despite ongoing payroll deductions. *See* SAC ¶¶ 2, 79–80, 81–84, 87–88, 97–98, 140, 168, 180, 188, 191. This claim directly addresses the improper deductions taken out of the Plaintiffs' paychecks the only time they were paid post-petition. But for the employees' purported receipt of benefits, they would have received wages. Plaintiffs further allege that Defendants Young and Warshauer knowingly permitted the continued deduction of amounts for insurance and other items from Plaintiffs' paychecks that would have otherwise been their wages when no benefits were in place,[24]

---

penalty provided in this article, every **person** who unlawfully withholds wages due any employee in violation of Section 212, 216, **221**, 222, or 223 shall be subject to a civil penalty…." *Id*. (emphasis added). Here, the Defendants were "persons" who withheld wages due to employees.

[24] Additionally, the pay stub [D.I. 178], and incorporated below, is evidences such continued deductions during the relevant period. *See* SAC p. 37.

38

17774350



resulting in the withholding of wages that employees otherwise would have received. SAC at ¶

17774350

124.[25]

Newmark and Rouhana rely on *Cordell v. PICC Lines Plus LLC*, No. 16-CV-01814-TEH, 2016 WL 4702654 (N.D. Cal. Sept. 8, 2016), to argue that Plaintiffs' Cal. Lab. Code § 221 claim must be dismissed because Cal. Lab. Code § 221 purportedly does not allow for individual liability and is not enumerated in section 558.1. Newmark Brief at p. 16; Rouhana Brief at p. 21.  However, *Cordell* does not address Cal. Lab. Code § 221 at all, and its reasoning is confined to materially different Labor Code sections and factual allegations.

Defendants Warshauer and Young cite *Pham v. Bast*, No. 17-CV-04194-WHO, 2018 WL 4003387 (N.D. Cal. Aug. 22, 2018), to allege that they cannot be held individually liable under Cal. Lab. Code § 221 because Plaintiffs do not allege that they personally oversaw the third-party payroll processor. Young and Warshauer Brief at p. 21. That reliance is misplaced. First, *Pham* arose in the context of a public university defendant and the court's analysis focused on whether the University of California and its officials were exempt from Labor Code provisions regulating wages and benefits as matters of internal university affairs.  Second, to the extent *Pham* addressed individual liability, the court dismissed claims against individual supervisors because the complaint alleged only that they acted within the scope of their employment, without alleging any conduct beyond ordinary supervisory functions. *Id*. at *8. The court expressly noted that the plaintiff did not allege that the supervisors acted outside the scope of their employment or engaged in affirmative misconduct. That is not the case here. Plaintiffs do not seek to impose liability based

---

[25] Notwithstanding the foregoing, Courts routinely reject attempts to resolve Cal. Lab. Code § 221 claims at the pleading stage based on demands for granular payroll detail. *See Covillo v. Specialty's Café,* No. C-11-00594 DMR, 2011 WL 6748514, at *5–6 (N.D. Cal. Dec. 22, 2011) (denying motion to dismiss and holding that whether a compensation program constituted an unlawful wage deduction presents factual issues not resolvable under Rule 12(b)(6)). At this stage, Plaintiffs need not itemize every deduction or attach payroll records—Rule 8 requires plausibility, not proof. *See Tech. & Intell. Prop. Strategies Grp. PC v. Fthenakis*, No. C 11-2373 MEJ, 2011 WL 3501690, at *7–8 (N.D. Cal. Aug. 10, 2011) (holding allegations of unauthorized wage deductions sufficient to state a § 221 claim).

17774350

solely on Defendants' corporate titles or routine supervisory roles, but instead allege that Defendants exercised control over payroll-related functions and employee funds and caused wages or wage-derived funds to be unlawfully withheld, diverted, or converted.

Further, all Defendants except Schwartz[26] attempt to shield themselves by relying on the more restrictive IWC definition of "employer," arguing it limits their liability. *See* Newmark Brief at pp. 16–17; Rouhana Brief at p. 21–22; Young and Warshauer Brief at pp. 21–22. That argument fails because, as discussed above, *supra* pp. 36 & 37, they acted outside the scope of their agency. Plaintiffs allege that Defendants acted outside the permissible scope of their agency by, among other things, abdicating their responsibilities as corporate officers and/or directors by failing to make required payments or remit employee benefit contributions to third-party providers such as Primera or Anthem, and by similarly neglecting any other obligations necessary to maintain employee benefits, coverage, or contributions. *See* SAC ¶¶ 75–80, 81–84, 87–88, 126, 148, 179–180, 184, 193–195.

As such, Plaintiffs plausibly plead a claim against each Defendant as to Count V.

## F.    Failure to Reimburse Expenses (Count VI) is Properly Pled Under California Law.

Defendants contend that Plaintiffs' claim for failure to pay expense reimbursements pursuant to Cal. Lab. Code § 2802 was pled in unspecified or conclusory fashion. Newmark Brief at pp. 17–18; Rouhana Brief at p. 22; Schwartz Brief at p. 19; Young and Warshauer Brief at pp. 22–23. Not so.

Section 2802 requires that an employer indemnify employees "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802; *see also Tan v. Grubhub, Inc.*, 171 F.Supp.3d 998, 1005 (N.D.

---

[26] The Schwartz Brief does not make this argument. As such the argument is waived as to Schwartz.

41

Cal. 2016).   When an employer knows or has reason to know that an employee has incurred an expense which employer is required to reimburse under the Cal. Lab. Code, then he or she has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense. *See Arroyo v. Internat. Paper Co.*, 611 FSupp3d 824, 845 (N.D. Cal. 2020). To state a claims under section 1802, a plaintiff much allege: (1) the employee made expenditures or incurred losses, (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer, and (3) the expenditures or losses were reasonable and necessary. *Id*. at 844-45.

The SAC alleges that Defendants Rouhana and Newmark had knowledge of categories of unreimbursed business expenses, as permitted by the Employee Handbook, including overdraft fees, travel expenses, and declined to authorize reimbursement, despite controlling the company's finances and decision-making. *See* SAC ¶¶ 64, 89, 200, 202, 204, 206.  For the Defendants Young, Warshauer, and Schwartz, the SAC alleges that they failed to reimburse the employees for various business-related expenses in the ordinary course of business and that they also failed to reimburse the employees for their medical expenses incurred while they were falsely informed they had coverage.  *See* SAC ¶¶ 79, 123, 126, 204–205, 207.

Defendants Rouhana and Newmark rely on *Hassell v. Uber Techs., Inc.,* No. 20-cv- 04062-PJH, 2020 WL 7173218, at *3 (N.D. Cal. Dec. 7, 2020) to argue that Plaintiffs fail to allege the nature, necessity, or amount of business-related expenses. Rouhana Brief at p.22; Newmark Brief at p. 25. That argument is meritless: unlike the plaintiffs in *Hassell*, Plaintiffs here specifically allege details regarding CSSE's reimbursement policies and the nature of the unreimbursed expenses that the Plaintiffs incurred due to their performance of their job responsibilities, including travel, mileage, food, and other necessary costs. *See* SAC ¶¶ 64, 89, 95, 202, 204; *see also*, *Thai*

17774350

*v. International Business Machines Corp.*, 93 Cal.App.5th 364 (Cal. Ct. App. 2023) (stating that an employer's reimbursement obligation turns on whether the expenses were actually due to the performance of the employee's duties).

Section 2802 is subject to the definition of § 558.1 which permits an action to be brought against any person acting on behalf of an employer, such as an "owner, director, officer, or managing agent of the employer."  The SAC alleges that Defendants Rouhana and Newmark exercised control over the Company's finances and the payment of employee wages, benefits, and reimbursements, and that Defendants Young, Warshauer, and Schwartz, as members of the SRC, had exclusive authority to manage all affairs and operations of the Company—including the mechanisms for payment and reimbursement—yet failed to ensure reimbursement of employee expenses. *See* ¶¶ 120-22, 140, 168, 180, 206–208. Furthermore, the Debtors' own Wage Motion admit that the Debtors routinely reimbursed employees for business-related costs and expenses incurred during an employee's performance of job duties. Case No. 24-11442 (TMH), D.I. 3 ¶ 20.

Therefore, Plaintiffs plausibly plead a claim against each Defendant as to Count VI.

### G.      Failure to Provide Accurate Wage Statements (Count VII) is Properly Pled under California Law.

Defendants contend that Plaintiffs' claim for inaccurate wage statements lacks factual support and should be dismissed, arguing that Plaintiffs have not alleged a distinct injury. Newmark Brief at pp. 18–20; Rouhana Brief at p. 23–24; Young and Warshauer Brief at pp. 23–24. [27]

Section 226(a) requires an employer to furnish timely and accurate itemized statements of

---

[27] Defendant Schwartz's brief merely argues that the SAC does not plead sufficient facts for him to be found personally liable for violations of the Cal. Lab. Code. Schwartz Brief at p. 19. Defendant Schwartz has thereby implicitly waived his right to challenge whether the SAC pleads sufficient facts to evidence a violation of Cal. Lab. Code § 226(a) generally.

43

17774350

their employees' wages that show several items such as the gross wages earned, all deductions from the wages, and the net wages earned. Cal. Lab. Code § 226(a). A claim for damages under Section 226(e) requires a showing that there was a violation of Section 226(a) that was knowing and intentional, and that the violation caused a resulting injury. *Arroyo*, 611 F.Supp.3d 824 at 835. "An employee is deemed to suffer injury if the employer fails to provide accurate and complete information as required by § 226(a) and 'the employee cannot promptly and easily determine' the required information from the wage statement alone. Cal. Lab. Code § 226(e)(2)(B). *Id.*

All Defendants, except Schwartz,[28] argue that Count VII should be dismissed because there is no alleged distinct injury separate and apart from the wage-and-hour claims and cite to *Hill v. Pac. Mar. Ass'n*, No. 24-CV-00336-JSC, 2025 WL 1282628, at *3 (N.D. Cal. May 2, 2025) and *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (Cal. Ct. App. 2011). Newmark Brief at pp. 18–20; Rouhana Brief at p. 23–25; Young and Warshauer Brief at pp. 23–24. However. Defendants rely on outdated and misapprehensive case law. The *Price* case was decided in 2011 and determined that an injury under section 226 could not be satisfied simply based on one of the itemized requirements in a wage statement being absent. 192 Cal. App.4th at 1142. Section 226 was amended in 2013 to clarify when an employee is deemed to have suffered an injury—namely, when "the employer fails to provide accurate and complete information as required by any one or more items…of subdivision (a)." *See Cal. Lab. Code* § 226(e)(2)(B); *see also Cabardo v. Patacsil*, 248 F.Supp.3d 1002, 1011 (E.D. Cal. 2017) (discussing 2013 amendment to § 226); *see also Derum v. Saks & Co.*, 95 F.Supp.3d 1221, 1230 (S.D. Cal. 2015) (noting *Price* predates 2013 amendments). Several unpublished California opinions have also recognized *Price* as superseded by statute. *Williams v. Allstate Ins. Co.*, B272353 2017 WL 6350378, at *13 (Cal Ct. App. Dec.

---

[28] The Schwartz Brief does not make this argument. As such the argument is waived as to Schwartz.

44

17774350

13, 2017) (clarifying that "injury arises from defects in the wage statement, rather than from a showing that an individual experienced harm as a result of the defect"); *Smith v. HSBC Bank, USA, N.A.*, 2018 WL 2753129, at *5 (Cal. Ct. App. June 8, 2018); *Patel v. Vaghashia*, 2018 WL 3216516, at *4 (Cal Ct. App. July 2, 2018). As such, *Price* is outdated law, and *Hill*—the other case the respective Defendants cite—misapprehends the law by relying primarily on *Price*'s reasoning to reach the same conclusion. *Hill,* 2025 WL 1282628 at *3-4.

Instead, the current state of the law instructs that an injury is suffered by a wage statement simply failing to provide accurate and complete information and the employee being unable to promptly and easily determine such information. *Derum*, 95 F.Supp.3d at 1229. Here, as detailed by a screenshot of the post-petition paycheck above, Plaintiffs were not provided with accurate wage statements because they represented that deductions were made ostensibly for insurance, 401(k) contributions, and other purposes when that was not the case.  SAC ¶ 124. Plaintiffs were also unable to determine the proper amount of wages owed to them and whether they had received full compensation because, among other reasons, Plaintiffs believed they were actually receiving the benefits of insurance, 401(k) contributions, and/or other benefits stemming from the wage deductions.

Defendants Young and Warshauer argue that the SAC fails to allege that any potential violation of Section 226(a) was knowing and intentional. Young and Warshauer Brief at p. 24. Under California law, a plaintiff need only show that the defendant was aware of the facts underlying the violation; knowledge that the conduct was unlawful is not required. *Furry v. East Bay Publ'g, LLC*, 2018 WL 6930903 (Cal. App. 1st Dist. 2018). While California courts have recognized a good faith defense to mitigate the potential additional damages provided for under the remedies provision. *Naranjo v. Spectrum Sec. Servs., Inc.*, 547 P.3d 980, 989 (Cal. 2024)

17774350

(recognizing a good faith defense to mitigate potential damages under Section 226(e)(1)). However, even the *Naranjo* court is careful to state that this defense applies merely to mitigate damages under certain circumstances, it does not change the fact that a defendant's actions constitute a violation of the Cal. Lab. Code when they fail to complete with Section 226(a). *Id.*

Here, the SAC alleges that each Defendant was aware of the facts supporting the violations, rendering any "good faith defense" inapplicable. Rouhana, as CEO, communicated with employees about medical benefits while deductions continued. SAC ¶¶ 77, 79, 215, 217, 220, 222. Newmark, as owner and Board member responsible for oversight of wages and benefits, similarly had knowledge of the violations. SAC ¶¶ 140, 217, 220, 244. Warshauer and Young, as Board members and SRC participants, also had sufficient knowledge to support knowing and intentional violations. SAC ¶¶ 21–22, 101–104, 119–20, 123-24, 218. Schwartz, as interim CEO and SRC member, oversaw operations post-petition, signed the Debtors' petitions acknowledging the company's records, and had control over payroll and benefits, supporting the allegation that violations under his oversight were knowing and intentional. SAC ¶¶ 23, 107–08, 112–15, 218.

Because Section 226(a) is one of the sections of the Cal. Lab. Code enumerated in section 558.1, personal liability attaches to each individual Defendant if they "had sufficient participation in the activities of the employer" including oversight over those individuals directly responsible for the failure to pay wages "such that [they] may be deemed to contributed to the violation." *Usher* 64 Cal.App.5th 883 at 886.   Here, the SAC alleges that Defendants Rouhana and Newmark exercised control over payroll and wage reporting and failed to provide accurate wage statements, resulting in harm to employees. *See* SAC ¶¶ 140, 168, 180, 214–217. The SAC further alleges that Defendants Young, Warshauer, and Schwartz, while in control of the Company's operations, likewise failed to ensure accurate wage statements were provided, causing similar harm to

46

17774350

employees. *See* SAC ¶¶ 181, 195, 214–216, 218.

Therefore, Plaintiffs plausibly plead a claim against each Defendant as to Count VII.

**H.    Failure to Pay Wages at Time of Termination (Count VIII) is Properly Pled under California Law.[29]**

Defendants advance three principal arguments as to Count VIII: (i) that Plaintiffs fail to plead facts about their individual circumstances; (ii) that no individual defendant can be liable because the SAC does not plausibly allege that Young and Warshauer took any affirmative actions causing violations of Cal. Lab. Code § 201 or § 558.1, including personal involvement in unpaid wages or terminations; and (iii) that Plaintiffs did not plead any facts suggesting that any alleged violations of Cal. Lab. Code § 203 were committed willfully. These arguments fail.

To be clear, Plaintiffs are bringing a claim under § 203 due to Defendants' willful violation of § 201.  Section 201 requires that upon discharge of an employee, the employer must immediately pay all wages earned and unpaid at the time of discharge. Cal. Lab. Code § 201. Section 203 states that if an employer willfully fails to pay in accordance with Section 201, the wages of the employee who is discharged will continue as a penalty until paid. Cal. Lab. Code § 203. Section 203 is also subject to section 558.1, extending liability to officers and directors. CA Labor § 558.1.

The SAC alleges that Defendants Young, Warshauer, and Schwartz knowingly sought conversion of the Chapter 11 cases with full awareness that conversion would terminate employees and cut off wage obligations, and that the conversion was pursued on the premise that the estates would no longer be required to pay employees—leading to the immediate termination of employees without pay on the same day conversion was effectuated. *See* SAC ¶¶ 119–123, 126, 128–131; *see also* Warshauer Transcript at 90:16-20 (the reason for converting the case was due

---

[29] The SAC lists these defendants as well as CSSE, Redbox Automated Rental, LLC, AND DOES 1-500 in this count.

17774350

to an inability to pay the employees).[30] The SAC further alleges that these Defendants exercised exclusive control over the decision to convert and the timing of that decision, including with knowledge of outstanding payroll obligations, supporting a reasonable inference that conversion was strategically pursued to avoid paying employees for post-petition work and constitutes a willful failure to pay wages. See SAC ¶¶ 119–122, 123–126, 129–131, 181, 195.

To be "willful" and allow waiting time penalties, the employer's refusal to pay wages upon discharge need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due; "willful" merely means that the employer intentionally failed or refused to perform an act which was required to be done. *See Kao v. Holiday*, 219 Cal.Rptr. 580 (Ca.App. 2017). *See also Naranjo v. Spectrum Sec. Servs., Inc.,* 15 Cal. 5th 1056, 1087 (2024) ("penalties will be imposed on "employers who lack a good excuse" while employers who face genuine legal uncertainty and make mistakes of law that are reasonable and supported by evidence will be spared). Given the foregoing, a willful violation is established here based on Defendants' own testimony under oath and subject to penalty of perjury, as well as their own statements to employees.

Section 203 is subject to § 558.1's definition of "employer." The SAC includes several allegations that Defendants Young, Warshauer, and Schwartz controlled day-to-day operations of the Company during the pendency of the Chapter 11 cases. *See e.g. supra* p. 32, n. 16; *see also* SAC ¶¶ 119–123, 229. The Interim DIP Order affirmed that the SRC, consisting of Defendants Young, Warshauer, and Schwartz were "empowered to be the sole body entitled to manage all of the affairs and operations of the Debtors and their subsidiaries…" Interim DIP Order ¶ 18.

---

[30] And as Young and Warshauer emphasized in their resignation letter, "Judge Horan made it clear that no employee is expected to provide any services for which there is no ability of the company to pay for those services." *See* SAC ¶ 131.

48

17774350

Defendants Young and Warshauer attended meetings of the Board and were present when the Board discussed several employment-related obligations and corporate liabilities. *See* SAC at ¶ 102. The SAC also includes numerous allegations of Defendants' personal involvement in the willful nonpayment of wages due and owing at the time of termination, triggering personal liability under section 558.1. *E.g.* SAC ¶¶ 123, 126-131, 223-233; *see also* First Day Hearing Day 2 Transcript at 38:25-39:1, 40:1-3, 86:21-87:3, 88:2-10; Interim DIP Order at ¶ 18;   Young, Warshauer, and Schwartz's roles as decision-makers and their continued withholding of wages satisfies the willfulness standard.

Thus, the SAC sufficiently and plausibly states a claim under sections 201 and 203.

## IV. THE PLAINTIFFS SUFFICIENTLY STATED A CLAIM FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT.

### A. Plaintiffs State a Viable FLSA Claim.

Defendants first argue that the SAC fails to state a plausible FLSA violation because it does not allege specific wage-and-hour facts—such as a particular workweek, hours worked, or unpaid wages—in violation of *Landers*. Newmark Brief at p. 22; Rouhana Brief at p. 25; Young and Warshauer Brief at p. 30. Schwartz separately relies on *Davis v. Abington Memorial Hospital,* 765 F.3d 236 (3d Cir. 2014), to argue Plaintiffs fail to plead specific overtime facts. Schwartz Brief at p. 21.[31]

To state a claim under the FLSA, Plaintiffs must allege that "(1) [they were] employee[s] of Defendants, (2) [they were] covered under the FLSA, and (3) Defendants failed to pay [them]

---

[31] The Defendants Rouhana and Newman complain that Plaintiffs' FLSA claim is duplicative of Cal. Lab. Code §§ 1194 and 1197. Newmark Brief at p. 22; Rouhana Brief at p. 25. That argument misses the import of the FLSA claim. FLSA serves as the federal counterpart of the Cal. Lab. Code and provide a cause of action for members of the Nationwide Sub-Class. The FLSA claim is pled to provide relief for Class Members located outside of California because Defendants operated in commerce as a nationwide enterprise affecting commerce. SAC ¶¶ 53 & 240. Those Class Members therefore have standing to bring FLSA claims because they worked for Defendants in other states and otherwise meet the statutory threshold for coverage. As a result, the claims are not duplicative but are designed to redress the same wage-and-hour violations for different groups of employees under the applicable statutes.

17774350

minimum wage or overtime wages." *Smith v. November Bar N Grill LLC*, 441 F. Supp. 3d 830, 834–35 (D. Ariz. 2020). Coverage exists where employees are "engaged in commerce or in the production of goods for commerce," or are employed by "an enterprise engaged in commerce." *Chao v. A-One Med. Servs., Inc.,* 346 F.3d 908, 913 (9th Cir. 2003) (citing 29 U.S.C. §§ 203(b), 203(s)). And to plead overtime specifically, a plaintiff must allege that he or she "worked overtime without compensation" and that the employer "knew or should have known of the overtime work." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.,* 495 F.3d 1306, 1314 (11th Cir. 2007).

The SAC satisfies these standards. It alleges that Plaintiffs were employees of Defendants SAC ¶ 16, that Defendants operated a nationwide enterprise affecting commerce (*id.* ¶¶ 53 & 240), and—critically—that Defendants failed to pay required wages, including minimum wage and overtime compensation. *Id.* ¶¶ 237–239 ("Defendants have failed to pay … the required minimum wage" and "required overtime compensation"). The SAC further alleges that employees were not paid all wages, commissions, and/or non-discretionary bonuses and/or PTO due, that they were paid "less than the minimum wage … for some or all of the hours worked," and that "some or all" employees "were not paid … for the overtime hours worked." *Id.* ¶¶ 40, 42, 44, 66–74 & 237–239. Specifically, Plaintiffs allege, and the Debtors' own Wage Motion confirms, that employees were not paid for defined workweeks pre-petition, including accrued wage and benefit obligations for employment- and transaction-based compensation, under Rouhana and Newmark's control. SAC ¶¶ 66–74. 111 ("Debtors [under the control of Rouhana) failed to pay employees for at least one pay period pre-petition"). That same nonpayment continued post-petition. Plaintiffs allege that while the SRC controlled the Debtors, employees continued working but were not paid for at least one pay period prior to conversion. SAC ¶ 124 ("employees were not timely paid for at least one pay period [post-petition]"). Despite these ongoing payroll failures, the SRC converted the cases

50

17774350

without curing those wage defaults. SAC ¶¶ 129–131.These allegations are not abstract—they are tied to a specific course of conduct in which Defendants allegedly withheld wages, failed to remit payroll deductions, and continued to operate the business while employees remained unpaid.

Defendants' reliance on *Landers* is misplaced. Unlike *Landers*, which involved generalized allegations untethered to any specific workweek, Plaintiffs here allege, for example, specific, identifiable unpaid pay periods both pre- and post-petition, including a conceded pre-petition pay failure and a defined post-petition pay period in which employees were not paid at all. SAC ¶¶ 111, 124. Plaintiffs also allege they were not paid minimum wages and "required overtime compensation" for "some or all" hours worked. SAC ¶¶ 40, 42, 44, 237–239. That is sufficient at the pleading stage. Schwartz's reliance on *Davis*, likewise fails. *Davis* involved a failure to allege any specific instance of unpaid work; here, Plaintiffs allege actual unpaid workweeks and unpaid overtime compensation tied to those periods. SAC ¶¶ 40, 42, 44, 111, 124, 237–239.

At bottom, the SAC alleges a straightforward FLSA violation: Plaintiffs performed work during identifiable pay periods—both pre- and post-petition—for which they were not paid wages or earned compensation. That is more than sufficient to state a claim.

### B.    Plaintiffs Plausibly Allege Defendants Are "Employers" Under the FLSA.

Defendants next argue that the SAC fails to plausibly allege that any individual Defendant is an FLSA "employer," contending, for example that the SAC's allegation that "each Defendant exercised control over the nature and structure of the employment relationship" is impermissible group pleading and a conclusory recitation of the legal standard. Newmark Brief at p. 23; Schwartz at pp. 21–23; Rouhana Brief at p. 26; Young and Warshauer Brief at pp. 27–29. They further argue that the SAC alleges only high-level roles and is contradicted by allegations that third-party administrators handled payroll.

This argument ignores both the breadth of the FLSA and the specific allegations in the

17774350

SAC. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The definition of an employer "is to be given an expansive interpretation." *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999). When deciding what an "employer" is, the Ninth Circuit applies a four-factor test in considering whether an individual is an employer: "Whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 397 (N.D. Cal. 2012) (quoting *Lambert*, 180 F.3d at 1001-02, 1012) *see also Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (FLSA liability extends to individuals who "exercise control over the nature and structure of the employment relationship," or "economic control" over the relationship.").

Consistent with that expansive definition, the SAC alleges that each Defendant exercised operational and economic control over wage payment decisions, including whether employees would be paid at all:

- The SAC alleges facts, including through Defendant Rouhana's own testimony, that was responsible for prepetition "operations and financial activities," including payroll and benefits, and exercised significant operational control over the Company. Through Defendant Rouhana's own statements and actions, employees were not paid wages. SAC ¶¶ 19, 54–57, 67, 69–72, 74, 77, 85, 88, 94–97, 110 & 243.[32]

- Defendant Newmark had "primary responsibility for the payment of wages and benefits" and exercised payroll administration control. Through Defendant Newmark's actions, employees were not paid wages. *Id.* at ¶¶ 20, 56–57, 140, 168, 180, 206 & 244.

- The SAC alleges facts, including testimony, that Defendant Young "manag[ed] the day-to-day of the company" as an SRC member, asked employees to work during the Chapter 11, and oversaw payroll and employee-related operations. Through Defendant Young's own testimony statements and actions, employees were not paid wages and

---

[32] Defendant Rouhana admits as much in his Brief. Rouhana Brief at p. 6 ("Once MR. Rouhana resigned and the bankruptcy petition was filed, control of CSSE and Debtors was 'solely in the hands of the SRC.'").

52

17774350

effectively terminated upon their conversion recommendation to the Court. *Id.* at ¶¶ 100–106, 119–129, 131 & 245.

- The SAC alleges facts, including through Defendant Warshauer's own testimony, that he asked employees to work during the Chapter 11 and participated in operational and payroll oversight through the SRC. Through Defendant Warshauer's own testimony statements and actions, employees were not paid wages and effectively terminated upon their conversion recommendation to the Court. *Id.* at ¶¶ 100–106, 119–129, 131 & 245.

- The SAC alleges facts, including through Defendant Schwartz's own testimony that he asked employees to work during the Chapter 11 and was directly responsible for payroll, benefits, and operational decision-making as CEO/SRC member. Through Defendant Schwartz's own testimony statements and actions, employees were not paid wages and effectively terminated upon their conversion recommendation to the Court. *Id.* at ¶ 112–115, 117, 119–129 & 245.

These allegations identify who controlled payroll decisions, when that control was exercised, and how it resulted in nonpayment. At the pleading stage, that is sufficient to allege employer status. Defendants' attempt to recast these allegations as "group pleading" fails where the SAC attributes conduct to Defendants based on their respective control during distinct time periods.[33]

### C.    Plaintiffs Adequately Plead a Collective Action.

Defendants Newmark and Rouhana argue that the SAC fails to plausibly allege a collective action because it does not identify a common unlawful "policy" and does not allege that Plaintiffs are "similarly situated" with identical working conditions.  Newmark Brief at p. 24–27; Rouhana Brief at p. 26–27.

That argument is flawed for two reasons. First, it improperly focuses on an "illegal policy" when the cases Defendants cite clearly prohibit an illegal practice. The California Supreme Court in *Gentry v. Superior Court* 165 P.3d 556 (Cal. 2007) recognized that "class actions play an

---

[33] Defendants Young and Warshauer against contend that the wages due on June 21 and July 5 were paid pursuant to the Court's July 5 Order; but no further wages were paid or payable on or before July 10, when Young and Warshauer resigned. *See* Young and Warshauer Brief at p. 30. However, as explained in *supra* n. 21, Plaintiffs have identified specific pay periods during which SRC failed to pay employee wages while they remained in control of the Debtors.

53

important function in enforcing overtime laws" and that "illegal practice[,]" not policies, specifically are permitted to "prove the employer's wrongdoing…."  Defendants' cases support the *Gentry's* import. In *Mendez v. H.J. Heinz Co., L.P.,* the United States District Court of Central California described plaintiff's class allegations as challenging an "offending policy," but the allegations themselves concerned a practice—namely, the rounding of employee time records and the disciplining of employees for clocking out one minute early, based on meetings held to discuss the attendance discipline rules. No. CV125652GHKDTBX, 2012 WL 12888526, at *4 (C.D. Cal. Nov. 13, 2012).  In other words, the allegations describe the implementation of those practices on a factory-wide basis, not a formally promulgated corporate policy applicable nationwide. The Court held only that the allegations, as pled, showed implementation at the factory level and did not yet plausibly establish statewide or nationwide application, and granted leave to amend. *Id.* Likewise, in *Harding v. Time Warner*, No. 09CV1212WQH-WMC, 2010 WL 457690, at *5 (S.D. Cal. Jan. 26, 2010), the United States District Court of Southern California recognized that a practice of rounding time records could theoretically give rise to liability under the FLSA and California law, but dismissed the complaint because the plaintiff failed to plead basic factual allegations showing that the practice actually resulted in underpayment. Here, Plaintiffs allege a common, company-wide illegal practice—a uniform course of nonpayment of wages—affecting employees across the company, including pre-petition nonpayment under Rouhana and Newmark and continued post-petition nonpayment under the SRC. *See* SAC ¶¶ 19–20, 54–57, 67, 69–72, 74, 77, 85, 88, 94–97, 100–106, 110, 112–115, 117, 131, & 243 119, 124, 128, 237–239.

Second, it interprets "similarly situated" too narrowly and at an inappropriate stage of the case. Here, employees performed work for the Company and were not paid. That shared harm is

54

17774350

sufficient at the pleading stage to plausibly allege that Plaintiffs are similarly situated..[34] *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 534 (2012) (stating to certify an FLSA collective action, the court must make a finding of fact that the members of the collective action are "similarly situated."). At the certification stage, not at the motion to dismiss stage, courts apply a two-tier approach to certification of a collective action; the first being "fairly lenient standard," which may be satisfied by "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Zavala v. Wal–Mart Stores, Inc.,* No. 03–5309, 2010 WL 2652510, at *2 (D.N.J. June 25, 2010) (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493, 495 (D.N.J.2000)). As set forth above, the company-wide illegal practice of nonpayment of wages and unlawful deductions, establishes that Plaintiffs are similarly situated victims of the same. Therefore, Defendants' focus on the alleged individualized differences is misplaced and premature.

## V.    ALTERNATIVELY, THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND.

If the Court determines that the Defendants established a basis to dismiss the SAC, the Court should grant Plaintiffs leave to amend. Rule 15 provides that a party may amend a pleading by leave of court, and that leave "shall be freely given when justice so requires." *In re Oakwood Homes Corp.*, 325 B.R. 696, 699 (Bankr. D. Del. 2005) (quoting Fed. R. Civ. P. 15). "The Third Circuit has adopted a liberal approach to the amendment of pleadings" so that a claim will be decided on the merits, rather than technicalities. *Arneault v. Diamondhead Casino Corp.*, 277 F. Supp. 3d 671, 674 (D. Del. 2017). A Court should grant leave to amend unless Defendant can

---

[34] California courts have adopted a "modest factual showing" standard for the conditional certification stage, which requires that "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Zavala*, 691 F.3d at 536 n.4 (2012) quoting *Symczyk,* 656 F.3d at 193 (citing *Smith v. Sovereign Bancorp, Inc.,* No. 03–2420, 2003 WL 22701017, at *3 (E.D.Pa. Nov. 13, 2003)).

17774350

show undue delay, bad faith, dilatory motive, undue prejudice, futility, or repeated failure to cure deficiencies. *In re Oakwood*, 325 B.R. at 699.  To the extent applicable, the Bankruptcy Court should permit Plaintiffs to file a third amended complaint to address any deficiencies if necessary.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Defendants' Motions to Dismiss Plaintiffs' Second Amended Complaint.


Dated:  March 24, 2026
      Wilmington, Delaware          **MORRIS JAMES LLP**

             */s/ Tara C. Pakrouh*
             Tara C. Pakrouh (DE Bar No. 6192)
             Cortlan S. Hitch (DE Bar No. 6720)
             Siena B. Cerra (DE Bar No. 7290)
             Samantha L. Rodriguez (DE Bar No. 7524)
             3205 Avenue North Blvd., Suite 100
             Wilmington, DE 19803
             Telephone: (302) 888-6800
             Facsimile: (302) 571-1750
             E-mail: tpakrouh@morrisjames.com
                    chitch@morrisjames.com
                    scerra@morrisjames.com
                    srodriguez@morrisjames.com

             *Counsel to Plaintiffs*

56

17774350